UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IBRAHIM SHARQAWI<br>539 Longmill Lane<br>Orange Park, FL  32065<br><br>      Plaintiff,<br><br>v.<br><br>THE KIRBY COMPANY<br>A Division of The Scott Fetzer Company<br>1920 West 114th Street<br>Cleveland, OH  44102<br><br>      *Please serve:*<br>      The Scott Fetzer<br>      Company<br>      28800 Clemens Road<br>      Westlake, OH  44114<br><br>      and<br><br>THE SCOTT FETZER COMPANY<br>28800 Clemens Road<br>Westlake, OH  44114<br><br>      *Please serve:*<br>      Corporate Creations<br>      Network, Inc.<br>      119 E. Court Street<br>      Cincinnati, OH  45202<br><br>      Defendants. | CASE NO.<br><br>JUDGE<br><br>PLAINTIFF'S COMPLAINT<br><br>**(Jury Demand Endorsed Herein)** |

Plaintiff, Ibrahim Sharqawi, by and through counsel, for his Complaint against Defendants, The Kirby Company ("Kirby") and The Scott Fetzer Company ("Scott Fetzer"), states and alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action for declaratory judgment and permanent injunctive relief, equitable relief, and damages arising from Defendants' wrongful acts stemming from Plaintiff's former employment with Defendants, The Scott Fetzer Company and its unincorporated subsidiary, The Kirby Company.

2. Plaintiff, as described in the specific allegations below, alleges that Defendants' wrongful acts entitle him to relief under Title VII of the Civil Rights Act, 42 U.S.C. §§2000e, et seq., as amended by the Civil Rights Act ("CRA") of 1991; Ohio Revised Code §§4112, et seq., and supplemental state claims.

## NATURE OF ACTION

3. This action arises under: Title VII of the Civil Rights Act of 1964 as amended ("Title VII"), 42 U.S.C. § 2000e, *et seq.*; Civil Rights Act of 1866 as amended by the Civil Rights Act of 1992, 42 U.S.C. §§ 1981, 1981a; the Florida Civil Rights Act of 1992 as amended ("FCRA"), Fla Stat. § 760, *et seq.*; the Ohio Civil Rights Act as amended, Ohio Rev. Code ¶ 4112, *et seq.*; and Florida and Ohio common law.

## PARTIES

4. Plaintiff, of Middle Eastern descent, is a resident of the state of Florida, and was Defendants' employee from 1991 through October 8, 2018.

5. At all relevant times to this Complaint, Defendant Kirby was a division of Scott Fetzer, headquartered in Cuyahoga County, conducting business throughout Ohio on a regular basis, and Plaintiff's "employer" as the term is defined under 42 U.S.C. § 2000e, Fla. Stat. § 760.02(7), and Ohio Rev. Code § 4112.01(2).

2

6. At all times relevant to this Complaint, Defendant Scott Fetzer was a corporation headquartered in Cuyahoga County, conducting business throughout Ohio on a regular basis, and Plaintiff's "employer" as the term is defined under 42 U.S.C. § 2000e, Fla. Stat. § 760.02(7), and Ohio Rev. Code § 4112.01(3).

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), as the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different States.

8. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as part of the Plaintiff's claims arise under the laws of the United States.

9. Venue properly lies in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.  Moreover, Defendants' contract states:  "This Agreement shall be construed under and governed by the law of the State of Ohio without giving effect to the choice of law principles of any jurisdiction."  (Ex. 1 at 5.)

10. Plaintiff fulfilled and exhausted all preliminary administrative requirements prior to instituting this action by filing a charge of discrimination with the Florida Commission on Human Relations ("FCHR") within one year of the discrimination, for which he received a Notice of Determination on or about November 26, 2019.  (Ex. 2.)

11. Compensatory damages are sought pursuant to 42 U.S.C. §2000e-5, as amended by the CRA of 1991, §102 (b)(1)(2) and (3).

12. Costs and attorneys' fees may be awarded pursuant to 42 U.S.C. §2000e-5(k), as amended by §§ 103, 107 and 113 of the CRA of 1991.

**FACTUAL ALLEGATIONS**

13. In 1991, Plaintiff began his employment with Defendants Kirby and Scott Fetzer as a Sales Representative selling Kirby vacuum cleaners.

14. Due to his success as a Sales Representative, Defendants authorized Plaintiff to open his own Kirby distributorship, which he did in 2003, selling products he purchased from Scott Fetzer's Factory Distributors.

15. In 2005, Defendants promoted Plaintiff to Division Manager, allowing him to maintain his own distributorship with inventory he purchased directly from Scott Fetzer, while managing approximately 20 Kirby vacuum stores and training Factory Distributors.

16. On November 1, 2010, Defendants promoted Plaintiff to Divisional Supervisor supervising between 25 and 45 stores, and paying him a $250,000 annual base salary, but required him to sign a "Divisional Supervisor Agreement" ("the DSA contract" or "the contract") prepared exclusively by Defendants (Ex. 1), and dissolve his distributorship.

17. Although the DSA contract identifies Plaintiff as an independent contractor, Plaintiff was Defendants' *employee*, as evidenced not only by Defendants' *right* to exert control over Plaintiff's employment, but by their *actual* control over nearly every facet of his employment.

18. For example, Defendants required Plaintiff to, inter alia, dissolve his distributorship; rent and maintain an out-of-the-home office; organize and lead rallies, meetings, and training seminars; travel from Florida to Cleveland four times per year for Divisional Supervisor meetings; visit each store he supervised at least once every three months; document his travel time; submit his calendar and travel reports to Kirby's president of North American Field Sales each month; spend specific hours working in his non-home office each day

he was not traveling; pay for approximately 25 to 40% of his travel and accommodation expenses; pay all costs associated with training his Sales Representatives, including training materials and conference room rental; employ an administrative assistant; pay all payroll taxes for himself and his administrative assistant; pay into the Florida unemployment and worker's compensation systems; and pay for all his travel and lodging expenses when visiting the stores he supervised.

19. From 2005, when Plaintiff became a Division Manager, until the end of December 2017, Plaintiff reported directly to Kirby's then-president of North American Field Sales, Bud Miley, and worked under Miley's supervision without incident.

20. In January 2018, Bud Miley resigned, and Scott Fetzer hired Kevin Reitmeier to replace him, at which time Plaintiff began reporting directly to Reitmeier.

21. Almost immediately after becoming Plaintiff's direct supervisor, Reitmeier began harassing Plaintiff by, *inter alia*, calling him between 6:00 AM and 7:00 AM nearly every morning; sending him rude, demanding, and bullying text messages between 6:00 AM and 7:00 AM nearly every morning; and demanding to know his whereabouts and activities at all times.

22. Upon information and belief, Reitmeier did not harass any non-Middle Eastern Divisional Supervisors, with excessive early morning telephone calls, demands to know their whereabouts, and/or rude, demeaning, and harassing text messages.

23. On May 25, 2018, Plaintiff's daughter opened a cannabidiol ("CBD") store in Florida.

24. On June 27, 2018, Reitmeier interrogated Plaintiff for more than an hour regarding his daughter's CBD store, including whether Plaintiff had loaned her money for the store, and whether Plaintiff earned income from the store.

5

25. Two days later, on June 29, 2018, David Lamb, Scott Fetzer's Vice President and General Counsel, interrogated Plaintiff by phone regarding his daughter's CBD store, expressed concern that the CBD store was precluding Plaintiff from fulfilling his DSA contract's "best efforts" provision, and demanded that Plaintiff provide him with information regarding other Kirby/Scott Fetzer employees' CBD involvement.

26. During their telephone call, Plaintiff reported to Lamb that Reitmeier was treating him worse than his counterparts who were not of Middle Eastern descent, and harassing him based on his national origin, but neither Lamb, nor anyone else from Kirby or Scott Fetzer initiated an investigation into Plaintiff's report, or took prompt or effective remedial action to end the harassment and discrimination.

27. Almost immediately after Plaintiff reported and opposed Reitmeier's harassment and discrimination, Reitmeier's harassment of Plaintiff increased, including more frequent phone calls and text messages with increased demands, including requiring Plaintiff to re-compile and re-submit numerous extensive reports that Plaintiff had already completed and submitted.

28. On July 12, 2018, Plaintiff attended a meeting in Cleveland, Ohio, during which Reitmeier told him that he wanted all distributors and supervisors to begin informing on other distributors and supervisors who were involved in the CBD industry.

29. After the Cleveland meeting concluded, Reitmeier interrogated Plaintiff by phone for approximately 45 minutes regarding various employees Reitmeier believed were involved in the CBD industry, to which Plaintiff responded that he felt uncomfortable discussing distributors' and divisional supervisors' involvement in the CBD industry.

30. Upon information and belief, Reitmeier did not subject non-Middle Eastern Divisional Supervisors or Distributors to such incessant calls, text messages, and/or interrogations regarding Kirby distributors' and supervisors' involvement in the CBD industry.

31. Shortly after his July 12, 2018 conversations with Reitmeier, Plaintiff called Lamb and reiterated that Reitmeier was harassing and discriminating against him based on his national origin, but again, neither Lamb, nor anyone else from Kirby or Scott Fetzer, initiated an investigation, or took prompt or effective remedial action to end the harassment and discrimination.

32. During the week of August 20, 2018, Reitmeier traveled with Plaintiff to visit four of the Factory Distributors Plaintiff supervised, during which Reitmeier spent most of the time questioning Plaintiff about distributors and supervisors who were involved in the CBD industry.

33. In fact, three of the four Factory Distributors Plaintiff and Reitmeier visited the week of August 20, 2018, none of whom is of Middle Eastern descent, owned a CBD store, and told Plaintiff they had already disclosed to Reitmeier that they owned a CBD store, and that Reitmeier had not said it was problematic.

34. On September 4, 2018, Reitmeier asked Plaintiff to resign in exchange for a month of severance pay.

35. On September 17, 2018, Plaintiff retained Caryn Groedel & Associates Co., LPA for legal advice and representation in connection with the aforementioned facts, and on September 27, 2018, attorney Caryn M. Groedel sent Lamb a letter informing him that she had been retained to represent Plaintiff, and outlining what she perceived to be Defendants' various violations of the law.

36. Three weeks later, on October 8, 2018, Lamb terminated Plaintiff's employment.

## COUNT ONE
**(Breach of Contract)**

37.     Plaintiff realleges each paragraph above as if fully set forth herein.

38.     Paragraph 8 of Plaintiff's contract says, "the parties hereto are separate entities, that the Company is contracting with [Plaintiff] as an independent contractor, and that neither is the agent nor the employee of the other for any purpose."  (Ex. 1 at 2.)

39.     Defendants breached paragraph 8 of the contract by, *inter alia*, exerting full control over Plaintiff's employment and treating him like an employee -- despite contractually agreeing that he would be an independent contractor -- including requiring him to rent and maintain an out-of-the-home office; organize and lead rallies, meetings, and training seminars; travel from Florida to Cleveland four times per year for Divisional Supervisor meetings; visit each store he supervised at least once every three months; document his travel time; submit his calendar and travel reports to Kirby's president of North American Field Sales each month; spend specific hours working in his non-home office each day he was not traveling; pay all costs associated with training his Sales Representatives, including training materials and conference room rental; employ an administrative assistant; pay all payroll taxes for himself and his administrative assistant; pay into the Florida unemployment and worker's compensation systems; and pay thousands of dollars per month on travel and lodging expenses for the travel Defendants required of him.

40.     Defendants breached the implied covenant of good faith and fair dealing by engaging in opportunistic behavior and conduct that was beyond Plaintiff's reasonable expectations.

41.     Defendants' breach of contract reflects and demonstrates an outrageous and conscious disregard for Plaintiff's rights, which had a great probability of causing, and did cause,

8

Plaintiff to sustain substantial damages, thereby rendering Defendants liable for punitive damages.

42. As a direct and proximate result of Defendants' breach of contract, Plaintiff has incurred economic, emotional, and other damages in excess of Seventy-Five Thousand Dollars ($75,000.00).

**COUNT TWO**
**(Unjust Enrichment)**

43. Plaintiff realleges each paragraph above as if fully set forth herein.

44. Defendants were unjustly enriched by misclassifying Plaintiff as an independent contractor, but *requiring* him to pay hundreds of thousands of dollars of *their* expenses, including payroll taxes, an administrative assistant's salary, travel costs, training expenses, office rent and expenses, equipment leases, worker's compensation, and unemployment compensation.

45. Defendants avoided incurring and paying these costs by misclassifying Plaintiff as an independent contractor, and telling him he was an independent contractor, yet requiring him to pay these expenses and others.

46. Defendants are, and were, aware of the benefits they unjustly received as a result of misclassifying Plaintiff as an independent contractor and requiring him to pay the above-described expenses, among others.

47. Defendants retained the benefit Plaintiff conferred upon them under circumstances where it would be unjust to do so without payment to Plaintiff.

48. The DSA contract does not govern this dispute because it was procured in bad faith. Defendants deliberately mislabeled and misclassified Plaintiff as an independent contractor, while knowing they would exert total control over the terms and conditions of his

employment, and require him to pay the above-described costs, and others, in order to avoid paying the costs themselves -- as Plaintiff's employers.

49. Defendants' conduct reflects and demonstrates an outrageous and conscious disregard for Plaintiff's rights, which had a great probability of causing, and did cause, Plaintiff to sustain substantial damages, thereby rendering Defendants liable for punitive damages.

50. As a result of Defendants' foregoing actions, Plaintiff has suffered damages, including lost wages and mental anguish, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

## COUNT THREE
### (Violation of Public Policy – Retaining Legal Counsel)

51. Plaintiff realleges each paragraph above as if fully set forth herein.

52. The right to consult an attorney is a clear public policy, manifested in the United States Constitution, the Ohio Constitution, and common law.

53. An employer who terminates an employee even in part because the employee consulted an attorney regarding his employment rights, jeopardizes that clear public policy.

54. Defendants terminated Plaintiff's employment at least in part because he consulted an attorney regarding his employment rights.

55. Defendants lacked an overriding business justification for terminating Plaintiff's employment.

56. Defendants' conduct reflects and demonstrates an outrageous and conscious disregard for Plaintiff's rights, which had a great probability of causing, and did cause, Plaintiff to sustain substantial damages, thereby rendering Defendants liable for punitive damages.

57. As a result of Defendants' violation of public policy, Plaintiff has suffered damages, including lost wages and mental anguish, in an amount in excess of Seventy-Five

Thousand Dollars ($75,000.00).

## COUNT FOUR
### (National Origin Discrimination)

58. Plaintiff realleges each paragraph above as if fully set forth herein.

59. Plaintiff is a member of a protected class pursuant to Fla. Stat. § 760.01, due to his national origin.

60. During his employment with Defendants, Plaintiff was the only Divisional Supervisor of Middle Eastern descent.

61. Plaintiff was, and is, equally and/or more qualified than his similarly situated co-workers who are not of Middle Eastern descent.

62. Defendants subjected Plaintiff to discriminatory and disparate treatment based on his race.

63. Defendants took adverse employment actions against Plaintiff, and treated him worse than his similarly situated co-workers who are not of Middle Eastern descent, with respect to the terms and conditions of employment, based, at least in part, on his national origin, including by, *inter alia*, subjecting him to incessant calls and text messages; interrogating him regarding other employees' CBD industry involvement; requiring him to report on other employees' CBD industry involvement; requesting he resign;  and terminating his employment.

64. From the beginning of his employment through the date of his termination, Defendants did not terminate, or request the resignation of, Plaintiff's similarly-situated counterparts who are not of Middle Eastern descent – even those who Defendants knew were directly involved in the CBD industry.

65. Defendants' discriminatory conduct deprived Plaintiff of equal employment opportunities based, at least in part, on his national origin.

11

66.     Defendants' conduct reflects and demonstrates an outrageous and conscious disregard for Plaintiff's rights, which had a great probability of causing, and did cause, Plaintiff to sustain substantial damages, thereby rendering Defendants liable for punitive damages.

67.     As a result of Defendants' actions, Plaintiff has suffered damages, including lost wages and mental anguish, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

## COUNT FIVE
### (Retaliation)

68.     Plaintiff realleges each paragraph above as if fully set forth herein.

69.     Plaintiff engaged in the protected activity of reporting and opposing Reitmeier's discrimination and harassment to David Lamb.

70.     Defendants were aware that Plaintiff engaged in the protected activity of reporting and opposing Reitmeier's discrimination and harassment.

71.     After, and at least in part as a result of Plaintiff reporting and opposing Reitmeier's misconduct to Lamb, Defendants retaliated against Plaintiff by, *inter alia*, calling and texting him more frequently outside regular business hours; increasing the frequency of his interrogations; requesting he resign; and and terminating his employment.

72.     By retaliating against Plaintiff, Defendants violated Plaintiff's rights under Title VII, Fla. Stat. § 448.102, and Ohio Rev. Code § 4112.02 .

73.     Defendants' conduct reflects and demonstrates an outrageous and conscious disregard for Plaintiff's rights, which had a great probability of causing, and did cause, Plaintiff to sustain substantial damages, thereby rendering Defendants liable for punitive damages.

74.     As a result of Defendants' conduct, Plaintiff has suffered damages, including lost wages and mental anguish, in an amount in excess of Seventy-Five Thousand Dollars

($75,000.00).

**DAMAGES**

WHEREFORE, Plaintiff respectfully prays that this Honorable Court:

    A.    Issue a declaratory judgment that the practices complained of herein are unlawful and void, and the appropriate injunctive relief to remedy the practices complained of herein;

    A.    Order Defendants to make Plaintiff whole by providing compensation for violation of his civil rights, emotional distress, and punitive damages, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00);

    B.    Award Plaintiff back pay, front pay, and reimbursement for his lost wages, in an amount to be proven at trial;

    C.    Award Plaintiff his attorney's fees, costs, and disbursements;

    D.    Award Plaintiff pre- and post-judgment interest at the statutory rate; and

    E.    Award such other relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Alanna Klein Fischer*
Alanna Klein Fischer (0090986)
*afischer@groedel-law.com*
Caryn M. Groedel (0060131)
*cgroedel@groedel-law.com*
Matthew Grimsley (0092942)
*mgrimsley@groedel-law.com*
CARYN GROEDEL & ASSOCIATES CO., LPA
31340 Solon Road, Suite 27
Cleveland, OH  44139
Phone:  (440) 544-1122
Fax:     (440) 996-0064
Attorneys for Plaintiff

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

*/s/ Alanna Klein Fischer*
Alanna Klein Fischer