IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

IBRAHIM SHARQAWI,                          CASE NO. 1:20-CV-00271

                        Plaintiff,

        -vs-                               JUDGE PAMELA A. BARKER

THE KIRBY COMPANY *et al.*,

                                           MEMORANDUM OF OPINION AND
                                           ORDER
                        Defendants.

    This matter comes before the Court upon the Motion to Dismiss pursuant to Fed. R. Civ. P.

12(b)(6) of Defendants The Kirby Company and The Scott Fetzer Company, filed on April 1, 2020.

(Doc. No. 4.)  Plaintiff Ibrahim Sharqawi filed a Brief in Opposition on April 15, 2020.  (Doc. No.

5.)  Defendants filed a Reply In Support of their Motion to Dismiss on April 29, 2020.  (Doc. No. 6.)

    For the following reasons, Defendant's Motion to Dismiss is GRANTED IN PART and

DENIED IN PART as follows.

I.      Background

    A.      Factual Background

    The Complaint contains the following factual allegations.  In 1991, Plaintiff Ibrahim Sharqawi

("Plaintiff" or "Sharqawi") began a career in direct sales for Defendant The Kirby Company

("Kirby"), a division of Defendant The Scott Fetzer Company ("Fetzer," or, collectively with Kirby,

"Defendants").  (Doc. No. 1 at ¶¶ 4, 5.)  Sharqawi, a Florida resident of Middle Eastern descent, sold

Kirby-branded vacuum cleaners.  (*Id.* at ¶ 13.)  From 1991 through 2003, Sharqawi was a successful

vacuum salesman, and in 2003, Defendants authorized Sharqawi to open his own Kirby

distributorship.  (*Id.* at ¶ 14.)  In 2005, Defendants promoted Sharqawi to Division Manager.  (*Id.* at

¶ 15.)  As Division Manager, Sharqawi maintained his own distributorship while also managing approximately 20 Kirby vacuum stores and training Factory Distributors.  (*Id.*)

In 2010, Defendants promoted Sharqawi again, this time to the role of Divisional Supervisor. (*Id.* at ¶ 16.)  As Divisional Supervisor, Sharqawi supervised between 25 and 45 stores.  (*Id.*) Defendants required Sharqawi to dissolve his distributorship and sign a "Divisional Supervisor Agreement" ("DSA").  (*Id.*)  The DSA identified Plaintiff as an independent contractor.  (*Id.* at ¶ 17; *see also* Doc. No. 1-4 at ¶ 8.)  Sharqawi alleges that, while the DSA identified him as an independent contractor, in practice, he was Defendants' employee due to the amount of control Defendants exerted over Sharqawi's employment.  (Doc. No. 1 at ¶ 17.)  According to Sharqawi, as a Divisional Supervisor, he was required to:

> [D]issolve his distributorship; rent and maintain an out-of-the-home office; organize and lead rallies, meetings, and training seminars; travel from Florida to Cleveland four times per year for Divisional Supervisor meetings; visit each store he supervised at least once every three months; document his travel time; submit his calendar and travel reports to Kirby's president of North American Field Sales each month; spend specific hours working in his non-home office each day he was not traveling; pay for approximately 25 to 40% of his travel and accommodation expenses; pay all costs associated with training his Sales Representatives, including training materials and conference room rental; employ an administrative assistant; pay all payroll taxes for himself and his administrative assistant; pay into the Florida unemployment and worker's compensation systems; and pay for all his travel and lodging expenses when visiting the stores he supervised.

(*Id.* at ¶ 18.)

From 2005 through December 2017, Sharqawi reported to Kirby's then-president of North American Field Sales, Bud Miley.  (*Id.* at ¶ 19.)  Sharqawi alleges that he "worked under Miley's supervision without incident."  (*Id.*)  However, Sharqawi alleges that things changed in January 2018, when Miley resigned and was replaced by Kevin Reitmeier.  (*Id.* at ¶ 20.)  Sharqawi alleges that, "almost immediately after becoming Plaintiff's direct supervisor, Reitmeier began harassing"

2

Sharqawi, including calling him and sending demanding text messages to him between 6 a.m. and 7 a.m. nearly every day, and "demanding to know [Sharqawi's] whereabouts and activities at all times." (*Id.* at ¶ 21.)  According to Sharqawi, Reitmeier "did not harass any non-Middle Eastern Divisional Supervisors[ ] with excessive early morning telephone calls, demands to know their whereabouts, and/or rude, demeaning, and harassing text messages."  (*Id.* at ¶ 22.)

Sharqawi alleges that Reitmeier's behavior intensified after Sharqawi's daughter opened a cannabidiol ("CBD") store in Florida in May 2018.  (*Id.* at ¶ 23.)  Sharqawi alleges that on June 27, 2018, Reitmeier "interrogated Plaintiff for more than an hour regarding his daughter's CBD store, including whether Plaintiff had loaned her money for the store, and whether Plaintiff earned income from the store."  (*Id.* at ¶ 24.)

According to Sharqawi, on June 29, 2018, two days after Reitmeier questioned Sharqawi about his daughter's CBD store, Fetzer's Vice President and General Counsel David Lamb "interrogated Plaintiff by phone regarding his daughter's CBD store . . . ."  (*Id.* at ¶ 25.)  Sharqawi alleges that Lamb expressed concern that Sharqawi's daughter's CBD store "was precluding Plaintiff from fulfilling his DSA contract's 'best efforts' provision . . . ."  (*Id.*)  Further, Lamb "demanded" that Sharqawi provide information on any other "Kirby/Scott Fetzer employees' CBD involvement."  (*Id.*)

During his June 29, 2018 phone call with Lamb, Sharqawi alleges that he "reported to Lamb that Reitmeier was treating him worse than his counterparts who were not of Middle Eastern descent, and harassing him based on his national origin . . . ."  (*Id.*)  According to Sharqawi, neither Lamb, nor any other Kirby or Fetzer employee initiated an investigation into Sharqawi's allegations of discrimination against Reitmeier.  (*Id.*)  Rather, "almost immediately after" Sharqawi reported

3

Reitmeier's harassment, Reitmeier's harassment of Sharqawi intensified.  (*Id.* at ¶ 27.)  Reitmeier called and texted Sharqawi more frequently and demanded that Sharqawi recompile and resubmit several reports that Sharqawi had already submitted.  (*Id.*)

Sharqawi also alleges that Reitmeier continued to harass him about involvement in the CBD industry.  (*Id.* at ¶ 28.) Sharqawi alleges that at a July 12, 2018 meeting in Cleveland, Ohio, Reitmeier told Sharqawi that Reitmeier "wanted all distributors and supervisors to begin informing on other distributors and supervisors who were involved in the CBD industry."  (*Id.*)  Reitmeier followed up this in-person demand with a 45 minute-long phone call to Sharqawi in which he "interrogated" Sharqawi "regarding various employees Reitmeier believed were involved in the CBD industry . . . ."  (*Id.* at ¶ 29.)  Sharqawi alleges that he told Reitmeier that "he felt uncomfortable discussing distributors' and divisional supervisors' involvement in the CBD industry."  (*Id.*)  Sharqawi alleges that Reitmeier did not subject non-Middle Eastern Divisional Supervisors or Distributors to the same incessant harassment regarding Kirby distributors' and supervisors' involvement with the CBD industry.  (*Id.* at ¶ 30.)

Following his two July 12, 2018 conversations with Reitmeier, Sharqawi again called Lamb and reiterated his allegations of harassment and national origin discrimination against Reitmeier.  (*Id.* at ¶ 31.)  Sharqawi alleges that Lamb, Kirby, and Fetzer failed to heed this second complaint or attempt to take any remedial action.  (*Id.*)

According to Sharqawi, Reitmeier continued to badger him about Kirby distributors' and supervisors' involvement in the CBD industry.  (*Id.* at ¶ 32.)  During the week of August 20, 2018, Reitmeier traveled with Sharqawi to visit four of Sharqawi's Factory Distributors.  (*Id.*)  Sharqawi alleges that Reitmeier "spent most of the time questioning Plaintiff about distributors and supervisors

who were involved in the CBD industry." (*Id.*)  Sharqawi alleges that three of the four Factory Distributors he and Reitmeier visited were indeed involved in the CBD industry, and that they told Sharqawi that they had already disclosed their involvement to Reitmeier.  (*Id.* at ¶ 33.)  According to Sharqawi, Reitmeier had not told these three Factory Distributors that their involvement in the CBD industry was problematic.  (*Id.*)

On September 4, 2018, Reitmeier asked for Sharqawi's resignation.  (*Id.* at ¶ 34.)  Sharqawi retained counsel on September 17, 2018.  (*Id.* at ¶ 35.)  On September 27, 2018, Sharqawi's attorney sent Lamb a letter outlining what she perceived to be Defendants' various violations of law.  (*Id.*)  On October 8, 2018, Lamb "terminated Plaintiff's employment."  (*Id.* at ¶ 36.)

### B.  Procedural History

Sharqawi filed a Complaint on February 6, 2020.  (Doc. No. 1.)  Sharqawi alleges five claims against Defendants: (1) breach of contract, (2) unjust enrichment, (3) violation of public policy—retaining legal counsel, (4) national origin discrimination, and (5) retaliation.  (*Id.* at ¶¶ 37-74.)  Sharqawi seeks a declaratory judgment, compensatory and punitive damages, and attorney fees and costs.  (*Id.* at "Damages," A-E.)  Defendants filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on April 1, 2020.  (Doc. No. 4.)  Sharqawi filed a Brief in Opposition to Defendants' Motion to Dismiss on April 15, 2020, to which Defendants replied on April 29, 2020.  (Docs. No. 5, 6.)  Thus, Defendants' motion is ripe for resolution.

### II.  Standard of Review

Defendants move for dismissal based on Sharqawi's failure to state a claim under Fed. R. Civ. P. 12(b)(6).  Under Fed. R. Civ. P. 12(b)(6), the Court accepts the plaintiff's factual allegations as true and construes the Complaint in the light most favorable to the plaintiff. *See Gunasekara v. Irwin*,

551 F.3d 461, 466 (6th Cir. 2009). In order to survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the Complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n*., 528 F.3d 426, 430 (6th Cir.2008) (quoting in part *Twombly*, 550 U.S. at 555–56, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679, 129 S.Ct. 1937.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Gunasekera*, 551 F.3d at 466 (quoting in part *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)) (quoting *Twombly,* 127 S.Ct. at 1964). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-

technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937.

## IV.    Analysis

### A.    Breach of Contract (Count One)

In Count One, Sharqawi alleges that Defendants breached the DSA when Defendants exerted full control over Sharqawi's employment and treated him like an employee, rather than an independent contractor, in contravention of the DSA.  (Doc. No. 1 at ¶¶ 38, 39.)  Specifically, Sharqawi alleges that Defendants treated him as an employee, rather than an independent contractor, when Defendants required Sharqawi to:

> [R]ent and maintain an out-of-the-home office; organize and lead rallies, meetings, and training seminars; travel from Florida to Cleveland four times per year for Divisional Supervisor meetings; visit each store he supervised at least once every three months; document his travel time; submit his calendar and travel reports to Kirby's president of North American Field Sales each month; spend specific hours working in his non-home office each day he was not traveling; pay all costs associated with training his Sales Representatives, including training materials and conference room rental; employ an administrative assistant; pay all payroll taxes for himself and his administrative assistant; pay into the Florida unemployment and worker's compensation systems; and pay thousands of dollars per month on travel and lodging expenses for the travel Defendants required of him.

(*Id.* at ¶ 39.)  Sharqawi further alleges that Defendants breached the implied covenant of good faith and fair dealing when they engaged in "opportunistic behavior and conduct" that surpassed Sharqawi's reasonable expectations and disregarded his rights.  (*Id.* at ¶¶ 40, 41.)

In their Motion to Dismiss, Defendants argue that Sharqawi fails to plead any factual allegations that, if true, establish that Defendants breached the DSA by exerting so much control over his job performance that Sharqawi became Defendants' employee, rather than remained an independent contractor.  (Doc. No. 4-1 at PageID# 64.)  Defendants further contend that Sharqawi's

allegation that the DSA requirements "transform him into an employee" is not dispositive of an employee-employer relationship "because the parties to the Agreement *specifically contemplate* such behavior as that of an independent contractor." (*Id.*)

In response, Sharqawi argues that the DSA's identification of Sharqawi as an independent contractor does not bar him from asserting his breach of contract claim because courts routinely look to the "economic reality" to determine whether the relationship between the parties was, in practice, one of an employer-employee. (Doc. No. 5 at PageID# 83.) Sharqawi contends that he adequately plead facts demonstrating that Defendants controlled so much of his work to render him an employee, rather than an independent contractor. (*Id.* at PageID# 84.) Sharqawi also contends that whether he was an independent contractor or employee is a fact-intensive question inappropriate for the Motion to Dismiss stage. (*Id.* at PageID# 85.) Finally, Sharqawi points out that the two cases Defendants rely upon in their Motion were appellate reviews of rulings on summary judgment motions, rather than motions to dismiss and are thus inapposite at this early stage of the litigation. (*Id.*)

In their Reply, Defendants reiterate their argument that Sharqawi failed to plead facts that, if true, establish that Defendants controlled Sharqawi's work enough to render him an employee. (Doc. No. 6 at PageID# 93.) Defendants argue Sharqawi fails to plead any facts that could demonstrate an employer-employee relationship existed under the eight factors Ohio courts analyze when determining the nature of the relationship between the parties. (*Id.* at PageID# 93-95.)

"The elements for a breach of contract claim are that a plaintiff must demonstrate by a preponderance of the evidence (1) that a contract existed, (2) that the plaintiff fulfilled his obligations, (3) that the defendant failed to fulfill his obligations, and (4) that damages resulted from this failure." *Williams v. Richland County Children Servs.*, 861 F. Supp. 2d 874, 885 (N.D. Ohio 2011) (*citing*

8

*Telxon Corp. v. Smart Media of Delaware, Inc.*, Case Nos. 22098, 22099, 2005 WL 2292800, at *20 (Ohio App. 9th Dist. 2005)).  The Court agrees with Defendants that there is no dispute that Sharqawi and Defendants were parties to a contract—namely, the DSA.  (Doc. No. 1-4.)  The key analysis with respect to Sharqawi's breach of contract claim is whether Sharqawi remained an independent contractor as set forth in the DSA, or if Defendants exerted enough control over his work performance to transform him into an employee.

Under Ohio law, "[w]hether someone is an employee or an independent contractor is ordinarily an issue to be decided by the trier of fact. The key factual determination is who had the right to control the manner or means of doing the work." *Bostic v. Connor*, 37 Ohio St.3d 144, 145-46 (1988); *see also Fox v. Nationwide Mut. Ins. Co.*, 117 N.E.3d 121, 130 (Ohio App. 10th Dist. 2018) (quoting *Barcus v. Bueher*, No. 14-AP-942, 2015 WL 4628724, at *3 (Ohio App. 10th Dist. 2015)).  "If the employer reserves the right to control the manner and means of doing the work, as well as the result, then an employer-employee relationship is created. . . . On the other hand, if the employer only specifies the result and the worker determines the manner and means of doing the job, then an independent contractor relationship is created." *Fox*, 117 N.E.3d at 130, internal citations omitted.  Courts must consider multiple factors when determining what kind of relationship exists, "including who controls the details and quality of the work; who controls the hours worked; who selects the materials, tools, and personnel used; who selects the routes travelled; the length of employment; the type of business; the method of payment; and any pertinent agreements or contracts." *Id.*

As an initial matter, the Court notes that Sharqawi correctly points out that the two cases to which Defendants draw extensive comparisons in their Motion—*Fox v. Nationwide* and *Haynes v.*

*Kirby*—are appellate reviews of summary judgment rulings that hinged on the independent contractor versus employee analysis.  (Doc. No. 5 at PageID# 85.)  Defendants do not address this argument in their Reply, nor direct the Court's attention to any cases with a procedural posture similar to the instant matter.

The Court finds that, at this juncture, Sharqawi has plausibly alleged sufficient facts to suggest that a breach of contract occurred when Defendants treated him as an employee, rather than an independent contractor.  Sharqawi alleges the existence of a contract, that he performed his obligations under the DSA, that Defendants failed to treat him as an independent contractor, and that he suffered damages as a result.  (Doc. No. 1 at ¶¶ 16-18, 37-42.)  Sharqawi further alleges that Defendants controlled his work details and quality in such a way that they forced him to act as an employee, rather than an independent contractor when Defendants required him to organize and lead rallies for distributors, maintain an out-of-the-home office, travel to every store that he supervised— anywhere between 25 and 45 stores—every three months, maintain specific office hours on the days that he did not travel, employ and compensate an administrative assistant at his own expense, and pay for a variety of expenses, including travel and state and federal taxes.  (Doc. No. 1 at ¶¶ 16, 18.)

Sharqawi also alleges that Defendants paid him a $250,000 base salary as Divisional Supervisor, but required him to dissolve his own successful distributorship in order to become a Divisional Supervisor.  (*Id.* at ¶ 16.)  Sharqawi's alleged salary is at least one notable factual difference between the instant case and *Haynes v. Kirby* and *Fox v. Nationwide*.  In *Haynes*, the Sixth Circuit noted that "Kirby paid no salary or benefits to Haynes."  *Haynes v. Kirby Co*., 78 F.3d 584 at *3 (6th Cir. 1996).  In *Fox*, Nationwide paid the plaintiff's retail insurance agency on commission and the plaintiff paid taxes on her "self-employed income."  *Fox*, 117 N.E.3d at 133.  Sharqawi, on

the other hand, alleges that Defendants paid him a "base salary of $250,000."  (Doc. No. 1 at ¶ 16.)  The method of compensation is one factor courts examine when determining whether a plaintiff was an independent contractor or an employee.  *See, e.g., State ex rel. Peyton v. Schumacher*, No. 00AP-78, 2000 WL 1715901, at *2 (Ohio App. 10th Dist. 2000).  Accepting Sharqawi's allegation that Defendants paid him a salary as true, this suggests that Sharqawi may have been Defendants' employee, not independent contractor.  *Id.* (truck driver's compensation by "the ton hauled and not hourly wage or salary," indicated that he was an independent contractor, not employee).  At this stage in the litigation, the Court need not determine whether Sharqawi was an employee or independent contractor under these facts.  Rather, the Court finds that Sharqawi "alleged sufficient facts to create a plausible claim for relief," which is sufficient to overcome Defendants' Motion to Dismiss.  *Jammal v. Am. Family Ins.*, No. 1:13-CV-437, 2013 WL 4049673, at *5 (N.D. Ohio Aug. 9, 2013).  Accordingly, Defendants' Motion to Dismiss Sharqawi's breach of contract claim (Count One) is denied.

## B.    Unjust Enrichment (Count Two)

In Count Two, Sharqawi alleges that Defendants were unjustly enriched "by misclassifying Plaintiff as an independent contractor, but *requiring* him to pay hundreds of thousands of dollars of *their* expenses, including payroll taxes, an administrator assistant's salary, travel costs, training expenses, office rent and expenses, equipment leases, worker's compensation, and unemployment compensation."  (Doc. No. 1 at ¶ 44.)  Sharqawi alleges that Defendants are aware of the benefits that they unjustly received and that Defendants retained these benefits "under circumstances where it would be unjust to do so without payment to" Sharqawi.  (*Id.* at ¶¶ 46, 47.)  Sharqawi alleges that "[t]he DSA contract does not govern this dispute because it was procured in bad faith" because

11

Defendants intentionally mislabeled Sharqawi as an independent contractor, rather than as an employee, to avoid paying such costs themselves.  (*Id.* at ¶ 48.)

Defendants argue that Sharqawi's unjust enrichment claim should be dismissed because the DSA governed Sharqawi's and the Defendants' relationship, and Sharqawi cannot recover on a theory of unjust enrichment when a valid express contract existed.  (Doc. No. 4-1 at PageID# 67.)

Sharqawi's counterargument is twofold.  First, he contends that he adequately plead his unjust enrichment claim in the alternative to his breach of contract claim, as is permitted under Fed. R. Civ. P. 8.  (Doc. No. 5 at PageID# 86.)  Second, he asserts that Defendants procured the DSA in bad faith and, therefore, he may recover on both his unjust enrichment and breach of contract claims.  (*Id.*)

In their Reply, Defendants reiterate their argument that Sharqawi's unjust enrichment claim fails because an express contract governed his relationship with Defendants.  (Doc. No. 6 at PageID# 95.)  Defendants also argue that Sharqawi "alleges no facts to support his conclusory allegation that the Agreement 'was procured in bad faith.'"  (*Id.*)  Defendants further argue that the express terms of the DSA undermine Sharqawi's allegation of bad faith because the DSA clearly outlined each of the costs for which Sharqawi was responsible at the outset of his relationship with Defendants.  (*Id.* at PageID# 96.)

Unjust enrichment occurs under Ohio law when a party is "in receipt of benefits which he is not justly entitled to retain." *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (1984) (quoting *Hummel v. Hummel*, 133 Ohio St. 520, 525 (1938)).  To establish a claim for unjust enrichment, a party "must demonstrate that (1) he conferred a benefit upon a defendant, (2) the defendant had knowledge of the benefit, and (3) the defendant retained the benefit under circumstances where it would be unjust to do so without payment." *RG Long & Assocs., Inc. v. Kiley*, No. CA2014–10–129,

12

2015 WL 3824365, at *2 (Ohio Ct. App. 12th Dist. June 22, 2015).  Moreover, "a party may not maintain a claim for unjust enrichment when 'an express contract covering the same subject matter exists,' in absence of bad faith."  *Eberhard v. Chicago Title Ins. Co.*, No. 1:11-cv-834, 2012 WL 13029534, at *16 (N.D. Ohio March 31, 2012) (quoting *Randolph v. New England Mut. Life Ins. Co.*, 526 F.2d 1383, 1387 (6th Cir. 1975).  "The bad faith must be in inducing the party to enter into the contract or terminating the contract."  *Id.* (citing *Randolph*, 526 F.2d at 1387).

The Court holds that Sharqawi has stated a plausible claim for unjust enrichment at this early stage of the litigation.  Sharqawi has alleged that Defendants procured the DSA in bad faith by deliberately mislabeling him within the contract as an "independent contractor," but subsequently requiring him to pay for thousands of dollars in expenses so that Defendants could dodge these expenses themselves.  (Doc. No. 1 at ¶ 44-48.)  Thus, at this juncture, Sharqawi's unjust enrichment claim should survive Defendants' motion to dismiss.  *See, e.g., Commodigy OG Vegas Holdings LLC v. ADM Labs*, 417 F. Supp. 3d 912, 927 (N.D. Ohio 2019).

Defendants' argument that the contractual terms undermine Sharqawi's bad faith allegation is unavailing at this stage.  Defendants argue that paragraphs 1, 6-8, and 10 of the DSA detailed "every cost Plaintiff allegedly incurred."  (Doc. No. 6 at PageID# 95-95.)  The Court disagrees with Defendants.  While some of Sharqawi's allegedly unfair expenses are covered in the DSA, others are not.  For example, the DSA does not state that Sharqawi is responsible for renting and maintaining an out-of-the-home office, nor does it state that he is responsible for hiring and paying an administrative assistant.  Sharqawi has alleged that he agreed to be an independent contractor for Defendants but found himself saddled with "hundreds of thousands of dollars of *their* expenses." (Doc. No. 1 at ¶ 44.)  If Defendants induced Sharqawi to enter into the DSA by offering him

independent contractor status, but subsequently required Sharqawi to pay for thousands of dollars of expenses, Defendants "may have obtained a benefit the value of which Plaintiff may be entitled to recover." *DuBrul v. Citrosuco N. Am., Inc.*, 892 F. Supp. 2d 892, 915-16 (S.D. Ohio 2012).

Further, Sharqawi sufficiently plead his unjust enrichment claim, independent of his bad faith allegation, because he alleges that Defendants "required" him to pay for certain expenses not clearly covered by the DSA.  (Doc. No. 1 at ¶ 18.)  As discussed *supra*, the DSA does not explicitly state that Sharqawi was required to rent and maintain an out-of-the-home office and hire an administrative assistant.  (*Id.*)  Accepting as true Sharqawi's allegation that Defendants required him to pay for these non-contractual requirements, then Sharqawi may have paid for these requirements at his own cost and to Defendants' benefit.  *See DuBrul*, 892 F. Supp. 2d at 915-16.

Accordingly, Defendants' Motion to Dismiss Sharqawi's unjust enrichment claim (Count Two) is denied.

### C.     Violation of Public Policy—Retaining Legal Counsel (Count Three)

In his third claim, Sharqawi alleges that Defendants terminated his employment "at least in part because he consulted an attorney regarding his employment rights."  (Doc. No. 1 at ¶ 54.) Sharqawi alleges that Defendants lacked an overriding business justification for terminating his employment and that Defendants' conduct jeopardizes a clear public policy favoring the right to consult an attorney.  (*Id.* at ¶ 52-56.)  Sharqawi alleges that Defendants' outrageous conduct damaged him in excess of $75,000 and renders Defendants liable for punitive damages.  (*Id.* at ¶¶ 56, 57.)

In their Motion to Dismiss, Defendants argue that Sharqawi's violation of public policy claim fails as a matter of law because Florida, not Ohio, law governs this claim, and Florida law does not recognize a public policy exception to at-will employment.  (Doc. No. 4-1 at PageID# 68.)

14

Defendants argue that, per Ohio's choice-of-law rules, Ohio law dictates that "tort claims are governed by the law of the state in which the injury was committed, unless a party shows that another state has a more significant relationship to the action." (*Id.* at PageID# 68-69 (internal quotations omitted).)  According to Defendants, under the four-factor test Ohio courts apply to determine whether another state has a more significant relationship to the action, Sharqawi cannot demonstrate that Ohio has a more significant relationship to the action to overcome the presumption that Florida law applies. (*Id.*)  Defendants also argue that, even if Ohio tort law applies, Sharqawi's claim still fails because Sharqawi is not Defendants' employee. (*Id.* at PageID# 72.)  Defendants further argue that, even if Ohio law applies and Sharqawi is considered Defendants' employee, Sharqawi's claim fails because he does not allege sufficient evidence to establish his public policy claim. (*Id.*)

In his Opposition, Sharqawi argues that Ohio, not Florida, law applies to his tort claim because Ohio "has a more significant relationship" to his lawsuit because the Defendants are located in Ohio and therefore, their decision to terminate Sharqawi's alleged employment occurred in Ohio. (Doc. No. 8 at PageID# 87-88.)  Further, Sharqawi argues Ohio has a more significant relationship than Florida because Sharqawi's relationship with Defendants was centered in Ohio because Defendants required Sharqawi to travel to Ohio to attend meetings and because the DSA was prepared by Defendants, who are headquartered in Ohio. (*Id.* at PageID# 88.)

In their Reply, Defendants reiterate their argument that Sharqawi's violation of public policy claim fails because it arises under Florida, not Ohio, law. (Doc. No. 6 at PageID# 96.)  Defendants argue that Sharqawi incorrectly attempts to combine the first and second factors in the "most significant relationship" analysis. (*Id.*)  Defendants argue that Sharqawi's Complaint contains no allegations regarding where Defendants' decision to terminate Sharqawi's employment occurred, or

that Sharqawi was actually terminated in Ohio.  (*Id.*)  Further, even if Sharqawi alleged that the

termination decision originated in Ohio, such allegations do not overcome this matter's more

significant ties to Florida.  (*Id.* at PageID# 97.)  Defendants also argue that Sharqawi's alleged four

visits to Cleveland per year pale in comparison to a decade of alleged employment in Florida.  (*Id.* at

PageID# 99.)

### 1.    Choice of Law

A court exercising diversity jurisdiction must apply the choice-of-law rules of the forum state.

*Reilly v. Alcan Aluminum Corp.*, No. 98-3566, 1999 WL 313879, at *2 (6th Cir. 1999).  In *Charash*

*v. Oberlin College*, the Sixth Circuit recognized:

> Ohio choice of law rules are applicable here, and the Ohio Supreme Court has held
> that the Restatement (Second) of Conflicts governs choice of law questions in this
> state.  *Morgan v. Biro Mfg. Co.*, 15 Ohio St. 3d 339, 342, 474 N.E.2d 286 (1984);
> *Macurdy v. Sikov & Love*, 894 F.2d 818, 820 (6th Cir. 1990).  As we noted in *Macurdy*,
> Ohio continues to recognize *lex loci delicti*, the place where the tort occurs, but that
> principle no longer automatically determines which state's law applies.  Rather, the
> court must apply the Restatement analysis. *Id.*

*Charash v. Oberlin College*, 14 F.3d 291, 296 (6th Cir. 1994).

The Restatement (Second) of Conflicts "incorporates the general principle that 'the local law

of the state which, with respect to that issue, has the most significant relationship to the occurrence

and the parties' should be applied in tort situations."  *Reilly*, 1999 WL 313879, at *3.  According to

the Restatement, courts analyze the following factors: "(a) the place where the injury occurred, (b)

the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place

of incorporation and place of business of the parties, and (d) the place where the relationship, if any,

between the parties is centered."  *Id.*, quoting Restatement (Second) of Conflicts of Laws, § 145(2).

"[T]hese contacts are to be evaluated according to their relative importance with respect to the particular issue." *Id.*

In this case, the first factor, the place where the injury occurred, weighs in favor of applying Florida law.  At all relevant times, Sharqawi was a resident of and worked in Florida.  (Doc. No. 1 at ¶¶ 4, 18.)  When Lamb allegedly terminated Sharqawi's employment on October 8, 2018, Sharqawi worked in Florida, not Ohio.  (*Id.* at ¶¶ 4, 18, 36.)  Accordingly, the injury to Sharqawi—his alleged wrongful termination—occurred in Florida, where he lived and worked.  *See Reilly*, 1999 WL 313879, at *3 ("[A]n inquiry into the place where the injury occurred unequivocally points to the preeminence of Georgia's interests," because the plaintiff resided in Georgia for six years prior to his dismissal and because he was based out of the company's Georgia offices.).  *See also Kirk v. Shaw Envt'l., Inc.*, No. 1:09-cv-1405, 2010 WL 2162018, at *5 (N.D. Ohio May 25, 2010) (concluding that the plaintiff's injury occurred in Ohio because the plaintiff primarily resided in Ohio and worked out of an Ohio-based office at the time of his termination).  Because the place of the injury is Florida, the presumption exists that Florida is the state with the most significant relationship to this lawsuit, assuming that Ohio's interest does not outweigh Florida's interest under the remaining factors.  *See Hoyt v. Nationwide Mut. Ins. Co.*, No. 04AP–941, 2005 WL 3220192, at *6 (Ohio App. 10th Dist. 2005).

The second factor, the place where the conduct causing the injury occurred, weighs in favor of applying Ohio law.  Sharqawi alleges that both Defendants are headquartered in Ohio.  (Doc. No. 1 at ¶¶ 5, 6.)  Sharqawi further alleges that Lamb, Defendant Fetzer's Vice President and General Counsel, terminated Sharqawi on October 8, 2018 for illegitimate reasons.  (*Id.* at ¶¶ 25, 34.)  Thus,

the dismissal decision "emanated" from Ohio.  *See Reilly*, 1999 WL 313879, at *3; *see also Kirk*, 2010 WL 2162018, at *6.

In arguing that the second factor weighs in favor of applying Florida law, Defendants argue that because Sharqawi's alleged injury occurred in Florida, the conduct that caused the alleged injury also occurred in Florida.  Neither case Defendants cite supports this contention.  First, in *Hoyt v. Nationwide Mut. Ins. Co.*, the court found that the plaintiff sustained her injury in New Jersey, because she "lived and worked in New Jersey."  *Hoyt*, 2005 WL 3220192, at *6.  The court did not directly address the second factor and did not make a finding about which state the injurious conduct emanated from.  *Id.*  Second, *Walker v. Nationwide* is distinct from this case because *Walker* is an appellate affirmation of a summary judgment motion.  *Walker v. Nationwide Mut. Ins. Co.*, No. 16AP-894, 2018 WL 2113629, at *4 (Ohio App. 10th Dist. 2018). In *Walker*, the appellate court found that there was "scant evidence" to support the plaintiff's assertion that the injurious conduct emanated from Ohio.  *Id.*  The court noted that the defendant "submitted two affidavits in support of its contention that the decision to terminate Walker's employment was made and carried out in Tennessee" and that the plaintiff pointed to no evidence that demonstrated a reason to doubt the affiants or any inconsistency in the defendant's evidence.  *Id.*  However, evidence has not yet been submitted in this case.  Sharqawi has alleged that Defendants are headquartered in Ohio and that Lamb, Fetzer's Vice President and General Counsel, terminated his employment.  (Doc. No. ¶¶ 5, 6, 36.)  Accordingly, this factor favors applying Ohio law, rather than Florida law.

The third factor, the residence and/or place of business of the parties, does not weigh in favor of the application of either Florida or Ohio law.  *See Reilly*, 1999 WL 313879, at *3.  Defendants' principal place of business is Ohio.  (Doc. No. 1 at ¶¶ 5, 6.)  Sharqawi is a resident of and worked in

Florida.  (*Id.* at ¶¶ 4, 18.)  Accordingly, this factor does not favor application of either Florida law or Ohio law.  *See Kirk*, 2010 WL 2162018, at *6.

Finally, the fourth factor, where the parties' relationship was centered, favors application of Florida law.  Sharqawi worked as a Divisional Supervisor from his Florida office from November 1, 2010 through October 8, 2018.  (Doc. No. 1 at ¶¶ 16, 36.)  Prior to his promotion to Divisional Supervisor, Sharqawi, a Florida resident, had been affiliated with Defendants since he began selling Kirby vacuums in 1991.  (*Id.* at ¶¶ 4, 13.)  Sharqawi maintained an out-of-home office in Florida, employed an administrative assistant in Florida, and paid into the Florida unemployment and worker's compensation systems, all in furtherance of his work as a Kirby Divisional Supervisor.  (*Id.* at ¶ 18.)  The Court is unpersuaded by Sharqawi's argument that his relationship with Defendants was centered in Ohio because Sharqawi made quarterly trips to Cleveland for supervisor meetings. (Doc. No. 5 at PageID# 88.)  The Court agrees with Defendants that Sharqawi's years of work in Florida, rather than his handful of trips to Cleveland, are indicative of the locus of the relationship. (Doc. No. 6 at PageID# 99.)

Considering the Restatement § 145 factors outlined above, the Court finds that Florida has the most significant relationship to the case.  Thus, Florida law governs Sharqawi's violation of public policy tort claim.

### 2.    Application of Florida Law to Sharqawi's Public Policy Claim

According to "Florida's established rule for termination of at-will employment, 'where the term of employment is discretionary with either party or indefinite, then either party for any reason may terminate it at any time and no action may be maintained for breach of the employment contract.'"  *Bruley v. Vill. Green Mgmt. Co.*, 592 F. Supp. 2d 1381, 1384-85 (M.D. Fla. Dec. 9, 2008)

(quoting *DeMarco v. Publix Super Markets, Inc.*, 384 So.2d 1253, 1254 (Fla.1980).  Florida "does not have such a public policy exception" to this rule.  *Id.* at 1385.  Thus, "to bring a non-contract claim for wrongful discharge in Florida, an employee must rely on statutory causes of action created by the Legislature."  *Id.* (citing *Hartley v. Ocean Reef Club, Inc.*, 476 So.2d 1327, 1330 (Fla. 3d Dist. App. 1985)).  Sharqawi does not identify any such statutory cause of action—nor does one exist under Florida law—and so this claim fails.  *Id.*  Accordingly, Defendants' Motion to Dismiss Sharqawi's violation of public policy claim is granted.

### D.    National Origin Discrimination (Count Four)

In his fourth claim, Sharqawi alleges that, due to his national origin, he is a member of a protected class pursuant to Fla. Stat. § 760.01.  (Doc. No. 1 at ¶ 59.)  Sharqawi alleges that, during his employment with Defendants, he was the only Divisional Supervisor of Middle Eastern descent, and that he is equally and/or more qualified than his similarly situated co-workers who are not of Middle Eastern descent.  (*Id.* at ¶¶ 60, 61.)  Sharqawi alleges that Defendants subjected him to discriminatory and disparate treatment and took adverse actions against him based on his race.  (*Id.* at ¶¶ 62, 63.)  These adverse actions included subjecting him to incessant calls and text messages, interrogating him about other Kirby employees' involvement with the CBD industry, requiring Sharqawi to report if other employees were involved in the CBD industry, requesting Sharqawi resign from Kirby, and ultimately terminating his employment.  (*Id.* at ¶ 63.)  Sharqawi alleges that throughout his employment, Defendants neither terminated nor requested resignations from Sharqawi's non-Middle Eastern, similarly situated counterparts, even from employees that Defendants knew were directly involved in the CBD industry.  (*Id.*)  Sharqawi alleges that, as a result

of Defendants' discrimination, he was denied equal employment opportunities based on his national origin and sustained substantial damages in excess of $75,000.  (*Id.* at ¶¶ 65-67.)

Defendants argue that Sharqawi's fourth claim fails on its face because Sharqawi failed to exhaust his administrative remedies as required by the Florida Civil Rights Act (FCRA).  (Doc. No. 4-1 at PageID# 75.)  Defendants argue that to satisfy the exhaustion requirement, Sharqawi must file an administrative complaint with the Florida Commission on Human Resources (FCHR) within one year of the alleged violation, and, if the FCHR renders a no cause determination, Sharqawi must *also* request an administrative hearing within 35 days.  (*Id.*)  Defendants argue that Sharqawi's failure to request an administrative hearing within 35 days of the FCHR's no cause determination bars him from bringing a civil suit for discrimination or retaliation under the FCRA.  (*Id.*)  Defendants further argue that, even if Sharqawi had correctly exhausted all of his administrative remedies, his discrimination claim still fails because he was an independent contractor, not Defendants' employee. (*Id.* at PageID# 76.)

In his Brief in Opposition, Sharqawi does not address Defendants' argument that he failed to exhaust his administrative remedies under Florida law.  Instead, Sharqawi argues that he plead both his national origin and retaliation claims under the FCRA, as well as Title VII and the Ohio Civil Rights Act.  (Doc. No. 5 at PageID# 90.)  Sharqawi argues that he satisfied Title VII's administrative exhaustion requirements when he filed an administrative claim with the FCHR and then filed this lawsuit within 180 days of the FCHR's no cause determination.  (*Id.*)  Sharqawi further argues that Ohio law does not require employees "to exhaust administrative remedies before filing a lawsuit for national origin discrimination or retaliation." (*Id.*)  Further, Sharqawi argues that whether he was an employee or an independent contractor ought not to be resolved at the Motion to Dismiss stage.  (*Id.*)

21

Rather, Sharqawi argues that it is enough that he alleged that he was Defendants' employee at this stage.  (*Id.* at PageID# 90-91.)

In their Reply, Defendants argue that Sharqawi cannot maintain his national origin discrimination claim under the FCRA because he failed to exhaust his administrative remedies under Florida law.  (Doc. No. 6 at PageID# 102.)  Defendants argue that Sharqawi's failure to allege that he also requested an administrative hearing following the FCHR's "no cause" determination is fatal to his claim.  (*Id.*)

As an initial matter, the Court notes that Sharqawi did not bring his national origin discrimination claim under Ohio law or Title VII.  In Count Four, Sharqawi alleges that he "is a member of a protected class pursuant to Fla. Stat. § 760.01, due to his national origin."  (Doc. No. 1 at ¶ 59.)  Sharqawi does not allege in his Complaint that his national origin claim arises under Title VII or Ohio law.  Indeed, Count Four says nothing about either Title VII or Ohio law.  If Sharqawi intended to bring Count Four under Title VII and Ohio law, he could have done so, as he did in Count Five of his Complaint ("By retaliating against Plaintiff, Defendants violated Plaintiff's rights under Title VII, Fla. Stat. § 448.102, and Ohio Rev. Code § 4112.02.").  (Doc. No. 1 at ¶ 72.)  Therefore, the Court will interpret Sharqawi's claims as plead in the Complaint: 1.) in Count Four, Sharqawi claims national origin discrimination under the FCRA only, and 2.) in Count Five, he claims retaliation under Title VII, and Florida and Ohio law.

A "[p]laintiff must exhaust administrative remedies before filing suit under . . . the FCRA." *Ceus v. City of Tampa*, No: 8:16-cv-1513-T-36TBM, 2018 WL 10140155, at *6 (M.D. Fla. Jan. 8, 2018).  To maintain a civil action under the FCRA, a plaintiff must file a complaint with the FCHR within one year of the alleged violation. *Miller v. Fla. Hosp. Waterman*, No. 5:13–cv–249, 2013 WL

5566063, at *3 (M.D. Fla. Oct. 8, 2013).  If the FCHR determines that no reasonable cause exists to believe that a violation occurred and dismisses the complaint, the aggrieved person may file for an administrative appeal within 35 days of the FCHR's decision.  The FCRA is clear: "If the aggrieved person does not request an administrative hearing within the 35 days, the claim will be barred."  Fla. Stat. § 760.11(7).  "In other words, when the FCHR issues a 'no cause' determination on a discrimination or retaliation claim, the complainant is required to follow the administrative procedures set forth under Florida law. The failure to follow these administrative procedures and to request an administrative hearing within 35 days of the 'no cause' determination bars the complainant from bringing a civil suit for discrimination or retaliation under the FCRA."  *Miller*, 2013 WL 5566063, at *3.  *See also Schober v. Town of Fort Myers Beach, Fla*, No. 2:13-CV-857-FtM-38CM, 2014 WL 6469881, at *6 (M.D. Fla. Nov. 17, 2014).

Here, Sharqawi alleges that he "exhausted all preliminary administrative requirements prior to instituting this action by filing a charge of discrimination with the Florida Commission on Human Relations ("FCHR") within one year of the discrimination, for which he received a Notice of Determination on or about November 26, 2019."  (Doc. No. 1 at ¶ 10.; *see also* Doc. No. 1-5 at PageID# 39-40.)  However, nowhere in his Complaint does Sharqawi allege that he requested an administrative hearing within 35 days of receipt of the FCHR's no cause determination letter.  Sharqawi's failure to "request an administrative hearing with 35 days of the 'no cause' determination bars [Sharqawi] from bringing a civil suit for discrimination or retaliation under the FCRA."  *Miller*, 2013 WL 5566063, at *3.  Thus, the Court dismisses Count Four, Sharqawi's national origin discrimination claim.

23

### E. Retaliation (Count Five)

In his final claim, Sharqawi alleges that Defendants retaliated against him after he "engaged in the protected activity of reporting and opposing Reitmeier's discrimination and harassment to David Lamb." (Doc. No. 1 at ¶ 69.) Sharqawi alleges that Defendants were aware that he engaged in the protected activity, but nevertheless retaliated against him by increasing the frequency of the harassing calls and texts, frequently interrogating him about employees' CBD involvement, requesting Sharqawi's resignation, and eventually terminating his employment. (*Id.* at ¶ 71.) Sharqawi alleges that Defendants violated his rights under Title VII, Fla. Stat. § 448.102, and Ohio Rev. Code § 4112.02 when they retaliated against him. (*Id.* at ¶ 72.) Sharqawi alleges that Defendants' outrageous conduct damaged Sharqawi in excess of $75,000, and renders Defendants liable for punitive damages. (*Id.* at ¶¶ 73, 74.)

In their Motion to Dismiss, Defendants argue that Sharqawi's retaliation claim is barred under the FCRA because Sharqawi failed to exhaust his administrative remedies when he failed to request an administrative appeal. (Doc. No. 4-1 at PageID# 77.) Defendants further argue that his retaliation claim is barred under Title VII and Ohio law because Sharqawi is not Defendants' employee, but an independent contractor. (*Id.*) Defendants contend that Title VII's and Ohio's protections against retaliation extend only to employees, not independent contractors, and therefore, Sharqawi's claim fails as a matter of law. (*Id.* at PageID# 77-78.)

In response, Sharqawi argues that he satisfied Title VII's administrative remedy exhaustion requirements and that Ohio law does not require exhaustion, and therefore, he may bring his retaliation claim under both. (Doc. No. 5 at PageID# 90.) He also argues that whether he is an

employee or independent contractor is an inappropriate question at the motion to dismiss stage and should be allowed to proceed on his retaliation claim as an alleged employee.  (*Id.* at PageID# 91.)

In reply, Defendants argue that Florida, not Ohio, law governs Sharqawi's retaliation claim. (Doc. No. 6 at PageID# 103.)  Because Ohio treats employment discrimination and retaliation claims as tort causes of action, Florida law governs for the same reasons that it governs Sharqawi's violation of public policy tort claim.  (*Id.*)  Defendants also reiterate their argument that Sharqawi was an independent contractor, not employee, and so his Title VII claim also fails.  (*Id.* at PageID# 104.)

First, as discussed above, a court exercising diversity jurisdiction must apply the choice-of-law rules of the forum state.  *Reilly*, 1999 WL 313879, at *3.  "To determine the law applicable to employment discrimination claims, Ohio treats the cause of action as a tort."  *Partin v. Telxon Corp.*, No. C-1-98-503, 2001 U.S. Dist. LEXIS 25181, at *17 (S.D. Ohio Jun. 25, 2001) (citing *Reilly*, 1999 WL 313879, at *3).  Under Ohio's choice-of-law rules, the Restatement (Second) of Conflicts governs.  *Reilly*, 1999 WL 313879, at *3.  In tort situations, the Restatement (Second) of Conflicts "incorporates the general principle that 'the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties . . . .'"  *Id.*  As discussed *supra*, Florida has the most significant relationship to the occurrence and parties at issue here.  Accordingly, Florida, not Ohio, law applies to Sharqawi's retaliation claim.  *See id.* at *3-4 (affirming dismissal of plaintiff's Ohio employment discrimination claim because Georgia, rather than Ohio, law applied).

Under similar situations, courts have found that plaintiffs may not maintain claims under the Ohio Civil Rights Act if, under Ohio's choice-of-law analysis, a different state has a more significant relationship to the tort occurrence and the parties.  In *Reilly*, the Sixth Circuit affirmed the district court's dismissal of the plaintiff's employment discrimination tort claims under Ohio law.  *Reilly*,

25

1999 WL 313879, at *3.  The court concluded that the "applicable legal framework" for the plaintiff's employment discrimination tort claims was "provided by Georgia law," where the plaintiff lived and worked for six years prior to his termination, rather than Ohio law.  *Id.*  Because the plaintiff "sought redress only under Ohio tort principles," the district court's dismissal of the plaintiff's Ohio claims was proper.  *Id.  See also Bachochin v. Shire PLC*, No. 1:06-CV-486, 2008 WL 339810, at *8 (S.D. Ohio Feb. 6, 2008) (dismissing plaintiff's employment discrimination claim because "Texas rather Ohio law governs any potential state law challenge to Shire's failure to transfer Bachochin").

Because Florida law, rather than Ohio law governs Sharqawi's retaliation claim, Defendants' Motion to Dismiss Sharqawi's Ohio retaliation claim is granted.

Second, as discussed above, a plaintiff must exhaust his administrative remedies to maintain an action under the FCRA.  *See supra; see also* Fla. Stat. § 760.11(11).  Sharqawi does not allege that he exhausted his administrative remedies under the FCRA, as he failed to request an administrative hearing within 35 days of receipt of his no reasonable cause letter.  *See supra.*  Therefore, Sharqawi's retaliation claim is barred under the FCRA.  Defendants' Motion to Dismiss Sharqawi's Florida retaliation claim is granted.

The only claim left to address in Count Five is Sharqawi's Title VII retaliation claim.  Title VII prohibits retaliating against employees who oppose unlawful employment practices.  *See* 42 U.S.C. § 2000e-3(a). "To establish a prima facie case of retaliation a plaintiff must establish that: (1) [ ]he engaged in a protected activity; (2) [his] 'exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was 'materially adverse' to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action.'"

*Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 775 (quoting *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014)).

First, Sharqawi alleges that he engaged in a protected activity when he complained to Lamb about Reitmeier's alleged racial discrimination and harassment.  (Doc. No. 1 at ¶¶ 26, 31, 69.) "[C]omplaining about allegedly unlawful conduct to company management is classic opposition activity." *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 469 (6th Cir. 2012) (citing *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 580 (6th Cir. 2000)).  Second, Sharqawi alleges that Defendants were aware that he engaged in the protected activity because he complained directly to Lamb, Vice President and General Counsel of Defendant Fetzer.  (Doc. No. 1 at ¶ 26, 31, 70.)  Third, Sharqawi alleges that Defendants took several materially adverse actions against him, including Reitmeier's increase in the frequency of harassing calls and demands to Sharqawi, Reitmeier's request that Sharqawi resign on September 4, 2018, and finally Lamb's termination of Sharqawi's employment on October 8, 2018.  (*Id.* at ¶¶ 27, 34, 36, 71.)  Termination of employment is a materially adverse action.  *See Wasek*, 682 F.3d at 470.  Fourth, Sharqawi alleges that Defendants took these materially adverse actions against him because Sharqawi complained repeatedly about Reitmeier's allegedly discriminatory behavior to Lamb.  (*Id.* at ¶ 71.)   When Defendants' termination of Sharqawi's employment is considered against the backdrop of his repeated complaints to Lamb about Reitmeier's racial discrimination and Defendants' alleged failure to address it, Sharqawi's allegations are sufficient to raise a plausible inference that his termination was motivated in part by his protected complaints.  *See, e.g., Parker v. Strawser Constr., Inc.*, 307 F. Supp. 3d 744, 761 (S.D. Ohio 2018).

Lastly, the Court rejects Defendants' argument that Sharqawi's Title VII claim necessarily fails because Sharqawi was Defendants' independent contractor, not employee.  (Doc. No. 4-1 at

PageID# 78.)  As discussed *supra*, the Court finds that Sharqawi plead sufficient facts to support his allegation that he was Defendants' employee, rather than independent contractor.

Accordingly, because Sharqawi sufficiently plead a claim for retaliation under Title VII, Defendants' Motion to Dismiss Sharqawi's Title VII retaliation claim is denied.

## V.      Conclusion

Accordingly, and for all the reasons set forth above, Defendants' Motion to Dismiss (Doc. No. 4) is GRANTED IN PART and DENIED IN PART as follows: Defendants' Motion to Dismiss Count 1 ("Breach of Contract") is DENIED; Defendants' Motion to Dismiss Count 2 ("Unjust Enrichment") is DENIED; Defendants' Motion to Dismiss Count 3 ("Violation of Public Policy—Retaining Legal Counsel") is GRANTED; Defendants' Motion to Dismiss Count 4 ("National Origin Discrimination") is GRANTED; Defendants' Motion to Dismiss Count 5 ("Retaliation") is DENIED with respect to Plaintiff's Title VII retaliation claim and GRANTED with respect to Plaintiff's Florida and Ohio retaliation claims.

**IT IS SO ORDERED.**


   *s/Pamela A. Barker*
   PAMELA A. BARKER
Date:  October 23, 2020   U. S. DISTRICT JUDGE