IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **IBRAHIM SHARQAWI** | : |
| Plaintiff, | : |
| v. | : Case No. 1:20-cv-00271-PAB |
| **THE KIRBY COMPANY**, *et al.*, | : Judge Pamela A. Barker |
| Defendants. | : |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Ryan J. Morley (0077452)
Morena L. Carter (0088825)
LITTLER MENDELSON, P.C.
Key Tower
127 Public Square, Suite 1600
Cleveland, OH 44114-9612
Telephone: 216.696.7600
Facsimile:  216.696.2038
rmorley@littler.com
mlcarter@littler.com

Attorneys for Defendants
The Kirby Company and
The Scott Fetzer Company

I.  **INTRODUCTION**

The Kirby Company, a division of the Scott Fetzer Company[1], manufactures home cleaning systems sold by independent Factory Distributors (also referred to as "Distributors"). There is no dispute that (1) Plaintiff Ibrahim Sharqawi contracted with Kirby to be an independent contractor, serve as a Divisional Supervisor, and to abide by the terms and conditions set forth in the Divisional Supervisor Agreement ("Agreement"); (2) Kirby paid Plaintiff the amounts owed to him under the Agreement, including a monthly payment of $20,833; and (3) Kirby terminated the Agreement pursuant to its terms on or about October 8, 2018.

Plaintiff, through his Amended Complaint, now brings six claims against Kirby and Scott Fetzer: (1) breach of contract; (2) unjust enrichment; (3) national origin discrimination; (4) retaliation; (5) retaliatory counterclaim; and (6) malicious prosecution. (*See generally* Plaintiff's Amended Complaint ("AC")).

Plaintiff's breach of contract, retaliatory counterclaim, and malicious prosecution claims, however, must be dismissed for failure to state a claim upon which relief could be granted.

II.  **FACTUAL BACKGROUND**

Under the Agreement entered into by Plaintiff and Kirby on November 1, 2010, the parties agreed Plaintiff would serve as an independent contractor in a role called "Divisional Supervisor". (AC ¶15; Exhibit 1 to the Complaint ("Ex. 1"), ¶¶8, 9). As a result of entering into the Agreement, Plaintiff agreed to "pay any Social Security, unemployment, workmen's compensation, or other tax upon or for himself and those person's employed by him." (AC ¶17; Ex. 1, ¶8). In addition, the Agreement unequivocally required Plaintiff to perform all of the services alleged in Paragraphs 17 and 40 of the Amended Complaint, with the associated expenses either covered by the fee paid

---

[1] Kirby is an unincorporated division of The Scott Fetzer Company.

1

to Plaintiff or borne by Plaintiff per the explicit terms of the Agreement. (AC ¶¶15, 17, 40; Ex. 1, ¶¶1, 3, 6-8, 10).

### III. PROCEDURAL BACKGROUND

Plaintiff Ibrahim Sharqawi instituted this lawsuit against Defendants on February 6, 2020, alleging claims for breach of contract, unjust enrichment, violation of public policy, national original discrimination in violation of Florida law, and retaliation in violation of Title VII, Ohio law, and Florida law. (Doc. #1). On April 1, 2020, Defendants filed a Motion to Dismiss seeking dismissal of all claims against it. (Doc. #4). On October 23, 2020, this Court granted Defendants' Motion to Dismiss in part, thereby dismissing Plaintiff's violation of public policy, national origin discrimination (Florida law), and retaliation claims (Florida and Ohio law). On November 11, 2020, Kirby filed a counterclaim against Plaintiff, asserting a claim for breach of contract. (Doc. #12). On April 8, 2021, Plaintiff filed a Motion for Leave to File an Amended Complaint, which this Court subsequently granted on April 26, 2021. (Doc. #20). While Plaintiff added two new claims related to Kirby's counterclaim – an ambiguous claim for a "retaliatory counterclaim" and a claim for malicious prosecution – Plaintiff's additional claims simply fail as a matter of law.

### IV. LAW AND ANALYSIS

#### A. Rule 12(b)(6) Standard of Review

A case must be dismissed if the complaint states no claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "A motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). Consequently, a court must construe the complaint in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir.

2008); *Murphy v. Sofamor Danek Gp, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997). A court, however, does not have to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, a court must grant a motion to dismiss under Rule 12(b)(6) if there is no law to support a claim of the type made, or of facts sufficient to make a valid claim, or if on the face of the complaint, there is an insurmountable bar to relief indicating that the plaintiff has no claim. *Little v. UNUM Provident Corp.*, 196 F. Supp. 2d 659, 662 (S.D. Ohio 2002) (*citing Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978)).

   **B. Plaintiff Fails to State a Claim for Breach of Contract (Count One)**

  Plaintiff's breach of contract claim alleges that Defendants breached Paragraph 8 of the Agreement by "exerting full control over Plaintiff's employment and treating [Plaintiff] like an employee." (AC ¶40).[2] Nevertheless, Plaintiff's attempt to characterize his breach of contract claim as one for "misclassification" misses the mark.

  Plaintiff acknowledges that he entered into a valid and enforceable contract with Kirby. (*See* AC ¶¶15, 38-43). Accordingly, whether Defendants are liable to Plaintiff for breaching the Agreement is a matter to be decided solely under contract law. While Plaintiff alleges that he was treated "like an employee," Plaintiff does not argue that he was misclassified under any wage and hour laws, and, in fact, Plaintiff alleges he was a highly compensated individual – making at least $250,000 per year. (*See* AC ¶15). Thus, Plaintiff's allegation that Defendants breached the Agreement is simply a breach of contract claim, regardless of whether or not he was properly

---

[2] To the extent Plaintiff claims he is entitled to punitive damages as a result of Defendants' alleged breach of contract (Compl. ¶41), such an allegation fails as a matter of law. *See Lucarell v. Nationwide Mut. Ins. Co.,* 152 Ohio St. 3d 453, 462 (2018) ("Ohio common law provides that punitive damages may not be awarded for breach of contract, no matter how willful the breach.").

3

classified as an independent contractor. *See Bolling v. Clevepak Corp.*, 20 Ohio App. 3d 113, 120 fn. 7 (6th Dist. Dec. 28, 1984) ("[T]he employer-employee relationship is one arising in contract."); *Hudson vs. Tektronix*, 2d Dist. Stark No. 1406, 1981 Ohio App. LEXIS 12014, at *2 (Apr. 9, 1981) ("It is well settled principle of law in Ohio that the master-servant, or employer-employee relationship is one of contract, express or implied[.]").

To establish a breach of contract claim, Plaintiff must allege facts demonstrating four elements: "(1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff." *L.I. Development-Ohio, L.L.C. v. 6150 SOM Ctr. Rd., L.L.C.*, 2019-Ohio-3514, ¶12 (8th Dist. Aug. 29, 2019). From the face of the Amended Complaint, there is no dispute that Kirby and Plaintiff were parties to an enforceable contract.[3] (*See* AC ¶¶15, 38-43). Plaintiff, however, fails to provide any factual allegations that, if proven true, would demonstrate either Defendant breached the Agreement. Rather, the only purported "breaches" identified by the Amended Complaint are costs and services Plaintiff specifically agreed to incur and perform under the terms of the Agreement.

Plaintiff first alleges that Defendants somehow breached the Agreement because he was paid a "fixed salary, which was paid on a set monthly basis." (AC ¶40). Yet, the Agreement specifically provided that Plaintiff would be paid "each month a sum equal to the sums of the amounts shown on Exhibit B" of the Agreement. (Ex. 1, ¶3). Thus, paying Plaintiff on a monthly basis is not a breach of contract – it was required by the explicit terms of the Agreement.

Plaintiff then alleges that Defendants breached the Agreement by "requiring him to rent and maintain an out-of-the-home office," "spend specific hours working in his non-home office

---

[3] In Ohio, "contract formation requires an offer, acceptance, consideration, and mutual assent between two or more parties with the legal capacity to act." *Firefighters Cmty. Credit Union v. Woodside Mortg. Servs.*, 2019-Ohio-3363, ¶18 (8th Dist. Aug. 22, 2019).

4

each day he was not traveling," and "employ an administrative assistant." (AC ¶40). Plaintiff, however, fails to identify how these purported requirements violated any terms of the Agreement. If anything, Plaintiff's maintenance of an out-of-home-office and his employment of an administrative assistant constitute expenses to be paid out of the fee paid to Plaintiff or paid by Plaintiff under Paragraph 8 of the Agreement. (AC ¶15, Ex. 1, ¶¶6, 8). In addition, Plaintiff agreed to spend time performing the activities specified in the Agreement: "The Divisional Supervisor is expected to devote whatever efforts are necessary to achieve the highest level of such performance on the part of the Distributors in the Territory in keeping with applicable law and ethical selling practices as promulgated from time to time by the Company." (Ex. 1, ¶6).

Next, Plaintiff alleges that Defendants breached the Agreement because Plaintiff was required to "organize and lead rallies, meetings, and training seminars." (AC ¶40). Again, Plaintiff's performance of these services was contemplated by the Agreement – specifically, in Paragraph 6, as well as the third "Whereas" statement, which explicitly states that Plaintiff would be required to educate and train Distributors "by use of Company provided training aids, manuals and otherwise." (Ex. 1, Page ID#: 22, third "Whereas"). Therefore, even if Plaintiff was required to organize and lead rallies, meetings, and training seminars, he was required to do so per the clear terms of the Agreement, and was paid to do so.

Plaintiff also alleges that Defendants breached the Agreement by requiring him to "pay all costs associated with his training of Sales Representatives, including training materials and conference room rentals," and "pay thousands of dollars per month on travel and lodging expenses for the travel Defendants required of him." (AC ¶40). Nonetheless, the Agreement explicitly states that the money paid to Plaintiff by the Company under the Agreement was meant to cover those types of expenses:

5

> The Divisional Supervisor shall use his best efforts to provide prompt Aid and Service to each and every Distributor in the Territory *without additional charge or expense to the Company*. . . . The Divisional Supervisor *is expected to devote whatever efforts are necessary to achieve the highest level of such performance* on the part of the Distributors in the Territory….

(Ex. 1, ¶6) (emphasis added). Given that Plaintiff does not allege that he did not receive the $250,000 due to him annually under the Agreement (AC ¶15), Plaintiff fails to allege any breach of contract.

In addition, Plaintiff alleges that Defendants breached the Agreement by requiring him to "travel from Florida to Cleveland four times per year" and "visit each store he supervised at least once every three months." (AC ¶40). Yet, Plaintiff contractually agreed to service Distributors outside of Florida. (*See* Ex. 1, Page ID##: 30-37). Further, because Kirby is located in Cleveland, Ohio, Plaintiff understood he had to travel to Ohio to attend meetings. What's more, Plaintiff knew from the plain language in Paragraph 6 of the Agreement that these travel expenses were covered by the amounts paid to him under Paragraph 3 of the Agreement – which he alleges he received. (AC ¶15).

What's more, Plaintiff alleges Defendants breached the Agreement because it required him to "document his travel time" and "submit his calendar and travel reports [] each month." (AC ¶40). However, the Agreement contemplated that Plaintiff would maintain business records and "furnish to the Company all information, including reports, answers to questionnaires, and other data" to "assist the Company in the computation of [Plaintiff's] fees . . . and in the proper conduct of his business." (Ex. 1, ¶7). Thus, Plaintiff contractually agreed to perform these very tasks under the terms of the Agreement, and these purposed requirements cannot constitute a breach of contract.

6

Finally, Plaintiff alleges that Defendants breached the Agreement because he was improperly required to "pay all payroll taxes for himself and his administrative assistant [and] pay into the Florida unemployment and worker's compensation systems." (AC ¶40). Yet, Paragraph 8 of the Agreement specifically states: "[T]he Divisional Supervisor shall pay any Social Security, unemployment, worker's compensation, or other tax upon or *for himself and those persons employed by him*." (Ex. 1, ¶8) (emphasis added). This language forecloses any purported breach by the Company based upon requiring Plaintiff to pay these contractually agreed to costs.

Accordingly, from the face of the Amended Complaint, none of Plaintiff's allegations, even if true, would establish that either Defendant breached the Agreement. Rather, Plaintiff's allegations merely demonstrate that Plaintiff was paid amounts due to him under the Agreement and that Plaintiff performed services and incurred costs that were contemplated in the Agreement. Thus, Count One should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

    **C.**    **Plaintiff Fails to State a Claim for "Retaliation Based on Defendants' Retaliatory Counterclaim" (Count Five)**

Plaintiff's claim for a "retaliatory counterclaim" fails as a matter of law. While Plaintiff conveniently fails to set forth the source of the public policies allegedly forming the basis of his claim, Plaintiff's claim is legally unsustainable for several reasons. First, "Ohio law does not 'recognize a common-law claim when remedy provisions are an essential part of the statutes on which the plaintiff depends for the public policy claim and when those remedies adequately protect society's interest by discouraging the wrongful conduct.'" *Wakefield v. Children's Hosp.*, 2008 U.S. Dist. LEXIS 91835, at *25 (S.D. Ohio Aug. 12, 2008), citing, *Leininger v. Pioneer Nat'l Latex*, 115 Ohio St.3d 311, 317 (2007). In this case, Plaintiff's retaliation claim is apparently premised on Kirby's allegedly retaliating against him by filing a counterclaim. Both Ohio and

7

federal law, however, protect employees from such retaliatory conduct. *See EEOC v. Outback Steakhouse, Inc.*, 75 F. Supp. 2d 756, 758 (N.D. Ohio Nov. 15, 1999) ("[T]he filing of lawsuits, not in good faith and instead motivated by retaliation, can be the basis for a claim under Title VII."); *Kendel v. Local 17-A UFCW*, 835 F. Supp. 2d 421, 429 (Dec. 5, 2011) ("[B]oth the Ohio Supreme Court and a federal court within [the Sixth] Circuit have recognized that 'the filing of a lawsuit or a counterclaim can constitute an adverse employment action.'"). Thus, Plaintiff's allegation that Kirby took an adverse employment action against him in the form of a retaliatory counterclaim addresses actions that are prohibited by employment-law statutes, which provide adequate remedies, and his claim fails as a matter of law.

Second, even if Plaintiff intended to assert Kirby violated Title VII by filing a counterclaim – his claim again fails before it can begin. "Plaintiffs bringing claims under Title VII must exhaust the administrative remedies available to them, prior to filing suit in a federal court." *Berryman v. Supervalu Holdings, Inc.,* 2008 U.S. Dist. LEXIS 24034, at *5 (S.D. Ohio Mar. 13, 2008). Here, Plaintiff fails to allege that he exhausted his administrative remedies regarding his claim for "retaliation" based on a "retaliatory counterclaim." Rather, Plaintiff alleges he received the Notice of Determination attached to Plaintiff's Amended Complaint as Exhibit 2 on or about November 26, 2019 – nearly a year before Defendant Kirby filed its counterclaim. (AC ¶8). Likewise, Plaintiff's Right to Sue letter from the EEOC (which Plaintiff failed to attach to his Amended Complaint) found no probable cause for Plaintiff's alleged national origin discrimination claim in violation of Title VII. (AC ¶9). Therefore, from the face of the Amended Complaint, Plaintiff failed to exhaust his administrative remedies pertaining to a "retaliatory counterclaim" and he is foreclosed from bringing suit under Title VII for such conduct. *See Younis v. Pinnacle Airlines, Inc.,* 610 F.3d 359, 363 (affirming dismissal of Title VII retaliation claim for failure to exhaust

8

administrative remedies); *Berryman*, 2008 U.S. Dist. LEXIS 24034 at *11 (dismissing Title VII harassment claim for failure to exhaust administrative remedies); *Wakefield v. Children's Hosp.*, 2008 U.S. Dist. LEXIS 91835, at *21-22 (S.D. Ohio Aug. 12, 2008) (dismissing Title VII color and national origin discrimination claims for failure to exhaust administrative remedies).

Finally, even if Plaintiff had somehow plead a cognizable retaliation claim *and* exhausted his administrative remedies, Plaintiff alleges no facts that, if proven true, satisfy the standards for retaliation. To that end, under both Ohio and federal law, Plaintiff was required to assert facts demonstrating: (1) he engaged in a protected activity; (2) Kirby knew of his protected activity; (3) Kirby took an *adverse employment action* against him; and (4) a causal connection existed between the protected activity and the materially adverse action. *See Pingle v. Richmond Heights Local Sch. Dist. Bd. of Educ.,* 2015 U.S. Dist. LEXIS 146218, at *39 (N.D. Ohio Oct. 27, 2015), citing, *EEOC v. New Breed Logistics,* 783 F.3d 1057, 1066 (6th Cir. 2015). Yet, Plaintiff's Amended Complaint is devoid of any facts establishing an "adverse *employment* action." In fact, Plaintiff's contractual relationship with Defendant Kirby ended in October 2018 (AC ¶35) – nearly two years prior to Kirby filing its counterclaim *(see* Doc. #13). Even if Plaintiff was Kirby's "employee", the filing of a counterclaim *two years* after the alleged employment relationship ended does not constitute an adverse employment action under either federal or Ohio law. *See, e.g., Lucarell v. Nationwide Mut. Ins. Co.,* 7th Dist. Mahoning No. 13 MA 74, 2015-Ohio-5286, ¶61 (Dec. 17, 2015), overruled on other grounds, *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St. 3d 453 (2018) (explaining that "there was no adverse employment action" because the defendant filed its counterclaim "almost an entire year after [the plaintiff's] employment ended"). Thus, for this additional reason, Plaintiff's retaliation claim based on a "retaliatory counterclaim" must be dismissed for failure to state a claim upon which relief could be granted.

### D. Plaintiff Fails to State a Claim for Malicious Prosecution (Count Six)

Plaintiff's malicious prosecution claim also fails as a matter of law. In Ohio, the elements of the tort for malicious prosecution in civil litigation are: "(1) malicious institution of prior proceedings against the plaintiff by defendant; (2) lack of probable cause for the filing of the prior lawsuit; (3) *termination of the prior proceedings in plaintiff's favor*; and (4) *seizure of plaintiff's person or property during the course of the prior proceedings*." *Robb v. Chagrin Lagoons Yacht Club*, 75 Ohio St. 3d 264, 269 (1996) (emphasis added); *Gray v. Hamilton*, 2021 U.S. App. LEXIS 12185, at *3 (6th Cir. 2021). The Ohio Supreme Court clarified that a "proceeding is 'terminated in favor of the accused' only when its final disposition indicates that the accused is innocent." *Ash v. Ash*, 72 Ohio St. 3d 520, 522 (1995). As "Ohio courts generally disfavor malicious prosecution claims based on civil proceedings," the "requirements for maintaining such a claim are [] strictly applied." *180 Indus., LLC v. Brunner Firm Co., L.P.A.*, 2020 U.S. Dist. LEXIS 182444, at *8 (S.D. Ohio Oct. 1, 2020).

In this case, Plaintiff's Amended Complaint fails to identify any prior proceeding that was terminated in his favor to support a malicious prosecution claim. Rather, Plaintiff bases his malicious prosecution claim on Defendants' counterclaim (AC ¶¶77-90) – a claim which is still pending resolution before this Court. Thus, Plaintiff places the proverbial cart before the horse and his malicious prosecution claim must be dismissed for failure to state a claim upon which relief could be granted. *See Compuserve Inc. v. Saperstein,* 1999 U.S. App. LEXIS 498, at *6 fn. 2 (6th Cir. 1999) ("A cause of action for malicious prosecution in [Ohio] does require a termination in the plaintiff's favor."); *Nyce v. Jones,* 2019 U.S. Dist. LEXIS 97898, at *26-27 (S.D. Ohio June 11, 2019); *Fill v. Youngstown,* 7th Dist. Mahoning No. 86 CA 175, 1987 Ohio App. LEXIS 7409, at *4 (June 11, 1987) ("Not only must the original prosecution be terminated at the time the

10

complaint in the action is filed, but it must have terminated in favor of the plaintiff who is bringing the action for malicious prosecution.").[4]

In addition, Plaintiff's Amended Complaint fails to identify any property that was seized as a result of Kirby's counterclaim. As the Ohio Supreme Court explained, a "cause of action for malicious civil prosecution will lie *only in cases where there is a prejudgment seizure of property*, *i.e.*, where there essentially has been a judgment against, and a concomitant injury suffered by, a defendant before he has had a chance to defend himself." *Robb*, 75 Ohio St. 3d at 270 (emphasis added). "As a result, dismissal is appropriate when a party fails to allege that such a seizure occurred." *Barrio Bros., LLC v. Revolucion, LLC*, 2020 U.S. Dist. LEXIS 113656, at *15 (N.D. Ohio June 30, 2020). Here, Plaintiff's Amended Complaint and his malicious prosecution claim are devoid of factual allegations establishing that any seizure occurred as a result of Kirby's counterclaim. For this additional reason, Plaintiff's malicious prosecution claim must be dismissed for failure to state a claim. *See id.* at *16-17 ("Defendants' failure to allege a seizure of their property requires dismissal."); *Robb*, 75 Ohio St. 3d at 270 ("Since appellants presented no evidence of seizure, we affirm the judgment of the appellate court on this issue."); *Ahlbeck v. Joelson*, 6th Dist. Lucas No. L-96-413, 1997 Ohio App. LEXIS 3519, at *11-12 (Aug. 8, 1997) (affirming dismissal because "[t]he record [was] devoid of the necessary elements of arrest of the person or seizure of property").

---

[4] While Plaintiff does not assert whether his malicious prosecution claim is brought under Ohio or federal law, the outcome is the same. *See Mango v. City of Columbus*, 2020 U.S. Dist. LEXIS 161340, at *32 (S.D. Ohio Sept. 3, 2020) ("Although the elements necessary to prove malicious prosecution differ under federal and Ohio law, *both require a plaintiff to prove that the prosecution was terminated in her favor*. This element is similarly interpreted under federal and Ohio law.") (emphasis added).

11

## V. CONCLUSION

In sum, Plaintiff fails to present any factual allegations that, if proven true, would establish Defendants breached a material term of the Agreement. Plaintiff was paid $20,833 per month to perform the activities set forth in the Agreement. Moreover, Plaintiff's retaliatory counterclaim and malicious prosecution claims fail as a matter of law. Therefore, Defendants respectfully ask that this Court dismiss Counts One, Five, and Six with prejudice.

Dated:  May 10, 2021

Respectfully submitted,

*/s/ Ryan J. Morley*
Ryan J. Morley (0077452)
Morena L. Carter (0088825)
LITTLER MENDELSON, P.C.
Key Tower
127 Public Square, Suite 1600
Cleveland, OH 44114-9612
Telephone: 216.696.7600
Facsimile:  216.696.2038
rmorley@littler.com
mlcarter@littler.com

Attorneys for Defendants,
The Kirby Company and The Scott Fetzer Company

## CERTIFICATION AS TO ADHERENCE TO LOCAL RULE 7.1(f)

Pursuant to Local Rule 7.1(f), the undersigned certifies the foregoing *Memorandum In Support of Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)* adheres to the page limitations set forth in Local Rule 7.1(f) for standard track cases.

*/s/ Ryan J. Morley*
One of the Attorneys for Defendants
The Kirby Company and The Scott Fetzer Company

4839-9452-1065.1 / 056013-1160