IN THE COURT OF UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IBRAHIM SHARQAWI | ) | CASE NO. 1:20-cv-00271-PAB |
| | ) | |
| Plaintiff, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| v. | ) | **PLAINTIFF'S POSITION** |
| | ) | **STATEMENT ON DISCOVERY** |
| THE KIRBY COMPANY, *et. al.* | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Ibrahim Sharqawi, by and through counsel, hereby submits his Position Statement on Discovery, pursuant to the Court's October 7, 2021 Order.

## I.    FACTS

On March 2, 2021, Defendants propounded discovery requests upon Plaintiff:   24 interrogatories, and **110** Requests for Production of Documents ("RFPs").   (Ex.  1.)

On May 17, 2021, Plaintiff propounded discovery requests upon Defendants:  22 Interrogatories, 17 RFPs, and 95 Requests for Admission ("RFAs").  (Ex. 2.)

On May 25, 2021, Plaintiff responded to Defendants' discovery requests.

On July 14, 2021, Defendants responded to Plaintiff's discovery requests, but produced no documents.  (Ex. 3.)

On August 6 and 9, 2021, Plaintiff transmitted amended responses to Defendants' document requests, and produced 200 pages of documents.

On August 16, 2021, defense counsel sent Plaintiff's counsel a discovery deficiency letter ("DDL") (Ex. 4), to which Plaintiff's counsel responded on August 30, 2021.  (Ex. 5.)

On September 2, 2021, counsel for the parties discussed the various discovery disputes raised in their respective letters.

Following the September 2, 2021 meeting, Plaintiff's counsel asked Plaintiff to gather the documents and information defense counsel requested.

On September 13, 2021, Plaintiff's counsel provided a supplemental response to defense counsel's August 16, 2021 discovery deficiency letter.  (Ex. 6.)

Although counsel for the parties agreed to meet and confer by phone on September 14, 2021, regarding outstanding discovery issues, Plaintiff's counsel was unable to attend the call, and Plaintiff's counsel's law clerk, Nicholas Kerr, attended in her stead, as he is  knowledgeable about this case, including  the status of discovery.

On September 17, 2021, Mr. Kerr sent defense counsel an email confirming the discovery issues discussed in their September 14 meet-and-confer, and described the efforts Plaintiff's counsel's office was making to obtain the requested documents.  (Ex. 7.)

On October 1, 2021, defense counsel transmitted a **50-page** discovery deficiency letter to Plaintiff's counsel.  (Ex. 8.)

On October 13, 2021, after numerous failed attempts to resolve the discovery disputes between the parties, Plaintiff's counsel transmitted a DDL to defense counsel, identifying specific deficiencies in Defendants' discovery responses.  (Ex. 9.)  On October 20, 2021, counsel for the parties conferred once again, to try to resolve their various discovery disputes.

Following the meeting, the parties exchanged lists of specific documents and information for which they were awaiting from each other.  (Ex. 10.)

On November 3, 2021, counsel for the parties conferred for a third time to discuss the ongoing discovery disputes.

While some issues have been resolved, many remain.

## II.    SUMMARY

As of November 3, 2021, Plaintiff's counsel has produced 3,051 pages of responsive documents to defense counsel:  200 pages on August 6, 2021; 454 pages on October 6, 2021; 557 pages on October 15, 2021; and 2,039 pages on October 25, including:

- Plaintiff's personal income tax returns for **2010 through 2020;**

- The tax returns for Plaintiff's various business entities for the same years;

- Plaintiff's bank account statements from 2015 through 2018; and

- Plaintiff's AT&T phone logs for his personal cell phone from January 1, 2017 to January 1, 2019.

Since Defendants' initial document production on September 2, 2021, they produced 47 additional pages of documents, all of which are from the Miami District Office of the Equal Employment Opportunity Commission.

The documents Defendants have thus far refused to produce, or have refused to identify as having already produced, include:

- Any documents establishing their alleged damages;

- Documents upon which they relied when terminating Plaintiff;

- Documents upon which they relied on when concluding that Plaintiff breached his contract;

- Documents reflecting their investigations into the outside business activities of other Divisional Supervisors who reported to Kevin Reitmeier between 2010 and 2018; and

- Documents pertaining to Plaintiff's comparators (including documents relating to their performance, their reimbursements, their outside business activities, and their contracts).

Defendants have also, thus far, failed and refused to provide the full identity and contact information for the individuals named in their Answers to Plaintiff's Interrogatories.

## III. SPECIFIC DEFICIENCIES IN DEFENDANTS' DISCOVERY RESPONSES

### A. Defendants numerous unsupported "attorney-client privilege" and "work product doctrine" objections.

As stated above, Plaintiff propounded 22 interrogatories and 17 requests for production of documents ("RFPs"). Defense counsel objected to 8 of Plaintiff's Interrogatories (1, 2, 6, 8, 11, 15, 19, and 21), and 11 of Plaintiff's RFPs (2, 3, 7, 8, 9, 10, 11, 13, 14, 15, and 16), claiming

the requests sought documents or information that "**may** be protected from disclosure by the attorney-client privilege and/or work-product doctrine." (Emphasis added) (Ex. 3.) .

**B.     <u>Defense counsel refuses to provide contact information for witnesses.</u>**

Defense counsel has also failed and refused to provide contact information for the individuals named in their Interrogatory Answers, despite uncase law unequivocally holding that such information is not privileged. *See State v. Hoop*, 134 Ohio App. 3d 627, 640, 731 N.E.2d 1177 (12th Dist.1999); *Lauritzen v. Atlantic Greyhound Corp.*, 8 F.R.D. 237, 238 (E.D.Tenn.1948), *aff'd*, 182 F.2d 540 (6th Cir.1950); Staff Notes to Civ.R. 26; *Gotch v. Ensco Offshore Co.* (W.D. La. 1996), 168 F.R.D. 567, 570 ("the qualified work product immunity contained in Rule 26(b)(3) applies only to documents and tangible things – not to facts"); *Mead Corp. v. Riverwood Natural Resources Corp.*, 145 F.R.D 512, 518 (D.Minn.1992).

**C.     <u>Defendants failed to provide documents supporting their alleged damages.</u>**

Defendants counterclaimed against Plaintiff for breach of contract, alleging that, "[a]s a direct and primary result of Sharqawi's wrongful conduct, Kirby has suffered and continues to suffer damages in an amount that is not presently ascertainable but exceeds $75,000 .00 and will be established at trial." (Ex. 11, Defendants' 11-11-20 Counterclaim; Doc. #12).  Here it is -- 12 months after Defendants filed their Counterclaim -- and they have yet to produce even one document establishing this alleged $75,000+ of damages.

Plaintiff's Interrogatory no. 16 asks for the economic value of Plaintiff's alleged breach of the DSA contract. (Ex. 2 at 7.)  Defense counsel objected, claiming the Interrogatory "calls for a narrative response best suited for depositions" – depositions defense counsel has heretofore been unwilling to schedule until the parties "resolve the outstanding issues with written discovery". (Ex. 12.)

Plaintiff's Interrogatory no. 17 asks for a description of Defendants' alleged damages (Ex. 2 at 7), to which defense counsel objected, again, on the basis that it "calls for a narrative response best suited for depositions" (Ex. 3).

Plaintiff's Interrogatory no. 18 asks for a description of Defendants' efforts to mitigate their damages.  Defense counsel objected once again, claiming it "calls for a narrative response best suited for depositions".  (Id.)

Thus far, Defendants have failed to produce *any* documents supporting their alleged damages, which their Counterclaim states exceeds $75,000.00.  And they have failed and refused to answer Interrogatories requesting a description of their damages.

**D.    Defendants' failure to produce documents they relied on when terminating Plaintiff.**

Plaintiff's RFP no. 13 requests the documents upon which Defendants relied when deciding to terminate Plaintiff.  Defendants responded by stating they would produce responsive documents.  (Ex. 3.)  The only document Defendants have produced in the 5 months since they received Plaintiff's discovery requests, is a 10/8/18 letter from Kevin Reitmeier to Plaintiff claiming Plaintiff was being terminated for allegedly breaching paragraphs 6, 12, and 13 of the DSA Contract (Ex. 13) -- provisions requiring  Plaintiff to use his "best efforts", to refrain from recruiting or contracting Defendants' employees for any other entity, and to refrain from disparaging Defendants.  (Id.)_

Through today, however, Defendants have failed to produce any documents, or identify any documents they claim they produced, supporting their claim that Plaintiff breached any of these contract provisions.

**E.    Defendants failed to produce investigation-related documents pertaining to the outside business activities of Plaintiff's similarly situated Divisional Supervisors who reported to Kevin Reitmeier.**

In the parties' September 2 and October 20, 2021 meet-and-confer telephone conferences, defense counsel stated that Plaintiff's outside business activities constituted a

breach of contract and prove that Plaintiff was an independent contractor.  Plaintiff's RFP no. 15 requests all investigation-related documents between 1/1/12 and 10/31/20, pertaining to January Defendants' investigations of Divisional Supervisors' involvement in outside businesses.  (Ex. 2 at 11.)  Defense counsel objected on the basis of relevance, overbreadth, and that the requested documents "may" be protected by the attorney-client privilege and/or work-product doctrine (Ex. 3 at 15), and refused to produce *any* documents reflecting their investigations into the outside business activities of Plaintiff's similarly situated Divisional Supervisors who reported to Kevin Reitmeier during the relevant time period.

### F.  **Defendants' failure to produce *any* comparator documents.**

"In the Sixth Circuit, the key to determining whether a 'comparator' is similarly situated depends whether the individuals are similar in all relevant respects and engaged in acts of comparable seriousness."  *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 751 (6th Cir. 2012).  The 6th Circuit further clarified, in *McMillan v. Castro,* that "the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in 'all *relevant* aspects.'"  405 F.3d 405 (6th Cir. 2005).  (Emphasis added.)  The Sixth Circuit has even found a plaintiff and an employee working in a different department with a different supervisor to be "similarly situated".  *Seay v.* TVA, 339 F.3d 454 (6th Cir. 2003).

Plaintiff was a Divisional Supervisor, submitting reports of his sales and regularly communicating with Kevin Reitmeier, the then-President of N. American Field Sales for Kirby.  All other Divisional Supervisors who similarly reported to Kevin Reitmeier are Plaintiff's comparators.

Plaintiff's RFPs 1, 2, 3, 5, 7, 9, 11, 15 request comparator-related discovery, including but not limited to sales performance, policies and procedures, personnel files, reimbursements, disciplinary records, etc. (Ex. 2 at 9-11), to which defense counsel objected, claiming that "any documents pertaining to anyone other than Plaintiff are not relevant to the claims and defenses in

this lawsuit."  (Ex. 3 at 9-12, 14), and other similar objections (Id. at 13, 15).  But it is not for defense counsel to determine relevance; that determination is to be made by the Court.  *US v. McQueen*, 1994 U.S. App. LEXIS 30652 (6th Cir. 1994).

Plaintiff claims discrimination and retaliation under Title VII, and is defending against Defendants' breach of contract counterclaim.  Comparator evidence is an essential part of any Title VII case; without it, plaintiff's case is in danger of being dismissed.  See generally, *Hobbs v. Lucas City. Sheriff's Office*, 2021 U.S. Dis. LEXIS 88475 (ND Ohio); *Quinn-Hunt v. Bennett Enters*, 211 Fed.Appx. 452 (6th Cir. 2006); *Wagner v. Matsushita Elec. Components Corp. of Am.*, 93 Fed.Appx. 714 (6th Cir. 2004).  "The refusal of a defendant to disclose requested comparator information denies plaintiffs the opportunity to determine whether the evidence actually reveals comparator status and different treatment, **crucial elements of the claim that the trier of fact must determine**."  *Bobo v. UPS*, 665 F.3d 741 (6th Cir. 2012).  (Emphasis added.)

As of November 3, 2021, defense counsel has failed to produce *any* comparator evidence.

## IV.    CONCLUSION

Plaintiff's counsel has made numerous attempts to resolve the discovery disputes between the parties.  Plaintiff requests an opportunity to address these issues with the Court via a motion to compel, or in a telephone conference with the Court, if, by November 15, 2021, Defendants fail to produce the discovery described herein.

Respectfully submitted,

*/s/ Caryn M. Groedel*
Caryn M. Groedel (0060131)
*cgroedel@groedel-law.com*
CARYN GROEDEL & ASSOCIATES,
CO., LPA
31340 Solon Road, Suite 27
Cleveland, OH  44139
Telephone: 440-544-1122
Facsimile:  440-996-0064

Counsel for Plaintiff

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was filed electronically this 3rd day of November, 2021.  Notice of this filing will be sent to all parties by the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Caryn M. Groedel*
Caryn M. Groedel

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**IBRAHIM SHARQAWI**    :
           :
   Plaintiff,    :
           :  Case No. 1:20-cv-00271-PAB
   v.       :
           :
**THE KIRBY COMPANY,** *et al.*, :  Judge Pamela A. Barker
           :
   Defendants.  :
           :

## <u>DEFENDANT THE KIRBY COMPANY FIRST SET OF DISCOVERY REQUESTS PROPOUNDED UPON PLAINTIFF IBRAHIM SHARQAWI</u>

Defendant The Kirby Company ("Kirby"), by its attorneys, Littler Mendelson P.C., and pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedures, request Plaintiff Ibrahim Sharqawi answer, in writing and under oath, the following First Set of Interrogatories and First Set of Requests for Production of Documents (collectively "Discovery Requests") thirty (30) days from the date of service of this request and serve them upon Kirby's counsel at the law offices of Littler Mendelson, 1100 Superior Avenue, 20th Floor, Cleveland, OH 44114.

## <u>INSTRUCTIONS</u>

In answering these Discovery Requests, furnish all information that is available to Plaintiff, including information known to Plaintiff or any of his present or former agents, employees, attorneys, consultants, or representatives of their own personal knowledge, as well as all information in the possession of said present or former agents, employees, attorneys, consultants, or representatives.

If Plaintiff cannot answer a particular Discovery Request in full after exercising due diligence to secure the information to do so, so state and answer to the extent possible, specifying Plaintiff's inability to answer the remainder, and stating whatever information or knowledge

EXHIBIT 1

Plaintiff has concerning the unanswered portions. If Plaintiff's answer is qualified, at any particular time, set forth the terms and details of such qualification(s).

Any request for documents seeks all documents in Plaintiff's care, custody, or control, or which are in the care, custody, or control of Plaintiff's agents, employees, attorneys (except for privileged information), consultants, experts, families, relatives, or otherwise. In the event that any document referred to in Plaintiff's response is not in his possession, custody, or control, please specify what disposition was made of it and by whom such document is now possessed, held in custody, or controlled.

In the event that any document referred to in Plaintiff's response has been destroyed, please specify the date of destruction, manner of destruction, the reason for destruction, the identity of the person authorizing destruction, the identity of the person destroying the document, and the identity of the custodian of the document on the date and at the time of destruction.

Where documents are requested, production shall be made, with the exception of those being entitled to privilege, of all documents in the possession of Plaintiff and/or in the possession of Plaintiff's agents, employees, representatives, and attorneys. If any documents identified or requested herein are withheld for any reason under a claim of privilege or immunity or any other claim, the particular documents withheld will be described by providing the following information:

    a.      The date of the document;

    b.      The author or addressor of the document;

    c.      The recipient or addressee of the document;

    d.      The number of pages of the document;

    e.      The general subject matter of the document;

f.      The name of each person who sent, received, and obtained copies of the document;

g.      A general description of the document (i.e., letter, report, memoranda, etc.);

h.      The basis of the privilege asserted with respect to or other alleged ground for non-production of the document.

In the event that Plaintiff files a proper and timely objection to any particular Discovery Request, answer all portions of that request that do not fall within the objection. For instance, if Plaintiff objects to a request for production on the ground that it is too broad because it asks for information concerning years Plaintiff contends are not relevant to this lawsuit, at least provide an answer for all years Plaintiff admits are relevant to this lawsuit.

If Plaintiff contends that he may not answer a question or produce documents on the ground that some or all of the requested information and/or documents are protected or privileged, set forth the privilege claimed, the facts on which he relies to support his claim of privilege, and the scope of the privilege. Proceed to answer with all requested information or documentation for which protection or privilege is not claimed.

Each request for documents to be produced contemplates production of the documents in their entirety, without abbreviation, redaction, or expurgation.

If Plaintiff cannot produce a document after exercising due diligence to secure it, so state and produce whatever portion of said document possible, specifying Plaintiff's inability to answer the remainder and state whatever information and knowledge he has concerning the document he is unable to produce. If any such document was, but is no longer in Plaintiff's possession, custody, or control, state how it was disposed of and the reason for such disposition.

If any document called for by any Discovery Request has been destroyed, the document is to be identified as follows:

3

a.       Addressor (if applicable);

b.       Addressee (if applicable);

c.       Indicated or blind copies;

d.       Date;

e.       Subject matter;

f.       Number of pages;

g.       Attachments and appendices;

h.       All persons to whom it was distributed, shown, or explained;

i.       Date of destruction;

j.       Manner and reason for destruction; and

k.       Persons who authorized destruction and destroyed the document.

The past tense shall be construed to include the present tense, and vice versa, to make the request inclusive rather than exclusive.

Regardless of whether any of these Discovery Requests, instructions, and definitions use a term in the plural or singular form, the term shall be construed in both the singular and plural forms as is necessary to require the most inclusive response.

These Discovery Requests shall be considered continuing in nature, and supplemental answers and documents shall be submitted as soon as additional information becomes available to Plaintiff, pursuant to Rule 26(e) of the Federal Rules of Civil Procedure.

## **DEFINITIONS**

The following definitions apply to the First Set of Discovery Requests:

1.       "Plaintiff" refers to Plaintiff Ibrahim Sharqawi.

2.　　"Defendants" refers to Defendants The Kirby Company and The Scott Fetzer Company.

3.　　"Kirby" refers to Defendant The Kirby Company.

4.　　"Scott Fetzer" refers to Defendant The Scott Fetzer Company.

5.　　"Lawsuit" means and refers to the present lawsuit which is pending in the United States District Court for the Northern District of Ohio captioned *Ibrahim Sharqawi v. The Kirby Company, et al.*, Case No. 1:20-cv-00271-PAB.

6.　　"Complaint" means and refers to Plaintiff's Complaint filed in the Lawsuit.

7.　　"Counterclaim" means and refers to Kirby's Counterclaim filed in the Lawsuit.

8.　　"Document" or "documents" means the original and any copy, regardless of origin or location, of any writing or records or electronically stored information of any type or description, including, but not limited to, the original and any copy of any book, pamphlet, periodical, letter, memorandum, telegram, report, record, study, inter-office or intra-office communication, handwritten or other note, working paper, email, diary, calendar, application, permit, chart, paper, graph, survey, index, tape, disk data sheet or data processing card, minutes of meetings, notes, agreements, contracts, memoranda, diagram, illustration, photograph, digital image, telegram, written analysis, report, recording, transcription or memoranda made of any telephone conversation, written communication (including, but not limited to, any letters, inter- or intra-office communication or telegram), bulletins, instructions, questionnaires, surveys, charts, graphs, papers, books or other documents, tape recordings or other sound, digital, or visual reproduction materials, magnetic tapes, disks, flash drives, hard drives or other storage media used in connection with computer and data processing equipment, and any other written, tangible or physical objects, however produced or reproduced, upon which words, phrases or

other alphabetical or numerical characters or information by appropriate transcription methods may be used, produced, printed out, written or otherwise made accessible, any of which are in the possession, custody, or control of Plaintiff or his agents, attorney(s) or employees. It includes the original and any copy with notations, markings or writing thereon and any drafts thereof.

9.      The term "electronically stored information" or "ESI" shall mean information created, stored, and utilized in digital form, requiring the use of computer hardware and software, as a native file.

10.     The term "all documents" means every document or group of documents as defined above, that are known to Plaintiff, or that can be located or discovered by reasonably diligent efforts.

11.     The term "communication(s)" means every manner or means of disclosure, transfer, or exchange of information, whether in person, by telephone, mail, electronic mail, text message, personal delivery, or otherwise.

12.     The words "refer to" or "relate to" shall mean: pertains to, pertaining to, contains, concerns, describes, embodies, mentions, constituting, supports, corroborates, demonstrates, provides, evidences, shows, refutes, disputes, rebuts, controverts, or contradicts.

13.     A document "relates" or "pertains" or is "relating" or "pertaining" to a given subject matter if it constitutes, contains, comprises, consists of, embodies, identifies, states, refers to, deals with, sets forth, proposes, shows, evidences, discloses, describes, discusses, explains, summarizes, concerns, or otherwise addresses in any way the subject matter of the Interrogatories and/or Requests for Production of Documents.

14.     The term "person" means and includes any natural person, individual, proprietorship, association, limited liability company, joint venture, firm, partnership,

6

corporation, estate, trust, receiver, syndicate, municipal corporation, party, and/or any other form of business enterprise or legal entity, governmental body, group of natural persons or entity, including any employee or agent thereof.

15.     The term "Interrogatory" or "Interrogatories" means the Interrogatories set forth in the First Set of Interrogatories.

16.     As used herein, the singular shall include the plural, the plural shall include the singular, and the masculine, feminine, and neuter shall include each of the other genders.

17.     The words "and" and "or" shall be construed either conjunctively or disjunctively to bring within the scope of these requests any documents which might otherwise be construed to be outside their scope.

18.     "Identify" or "identification" means:

a.     When used in reference to a natural person, their:

i.     Full name;

ii.     Relationship to Plaintiff (e.g., friend, co-worker, familial relationship, spouse, etc.);

iii.     Present or last known home and business address (including street name and number, city or town, state, and zip code); and

iv.     Present or last known telephone number.

b.     When used in reference to a document:

i.     If dated, the date;

ii.     If titled, the title;

iii.     If signed, the signatory;

iv.     If addressed, the addressee;

v.     A description of the contents of the document;

    vi.        The person who has possession, custody, or control over the original;

    vii.        Each person(s) who has possession, custody, or control over each copy of the document;

    viii.        The person(s) who prepared the document;

    ix.        The circumstances surrounding the preparation of the document, including the reason(s) for the preparation of the document; and

    x.        The circumstances regarding how the document was obtained, including the reasons why it was obtained and from whom or where it was obtained.

c.        When in reference to an oral communication or event:

    i.        The date;

    ii.        The identity of any person participating in or overhearing any part or all of the oral communication or event; and

    iii.        The full name, present or last known home and business address (including street name and number, city or town, state, and zip code) and present or last known telephone number of all persons participating or overhearing any part or all of the oral communication or event.

d.        When in reference to an entity:

    i.        Full name;

    ii.        Present or first known pertinent business street address, city, state, phone number; and

    iii.        The person associated with the entity who has knowledge of the information concerning the subject matter of the interrogatory.

## **FIRST SET OF INTERROGATORIES**

**Interrogatory 1.**    Identify each and every individual Plaintiff will call as a witness at any trial, deposition, or hearing in this case.

**ANSWER:**

**Interrogatory 2.** Identify all persons supplying information to answer these Interrogatories, identifying what Interrogatory(ies) each person assisted in answering and what information was provided by each person.

**ANSWER:**

**Interrogatory 3.** Identify all persons with any knowledge or information, or whom Plaintiff or Plaintiff's agents, representatives, or attorneys believe have knowledge or information, of any of the claims, allegations, and damage requests that Plaintiff is making against Defendants in the Lawsuit and provide a brief description of the information or knowledge each person possesses.

**ANSWER:**

**Interrogatory 4.** Identify all persons with any knowledge or information, or whom Plaintiff or Plaintiff's agents, representatives, or attorneys believe have knowledge or information, of Plaintiff's defenses to the Counterclaim and provide a brief description of the information or knowledge each person possesses.

**ANSWER:**

**Interrogatory 5.** Identify all persons with any knowledge or information, or whom Plaintiff or Plaintiff's agents, representatives, or attorneys believe have knowledge or information, of any of claims, allegations, and damage requests that Kirby is making against Plaintiff in the Lawsuit and provide a brief description of the information or knowledge each person possesses.

**ANSWER:**

**Interrogatory 6.**    Identify all persons with whom Plaintiff or Plaintiff's agents, representatives, or attorneys have communicated with concerning the Divisional Supervisor Agreement attached to the Complaint and provide the date(s) and form (e.g., orally, by email, or text) of each communication, and describe the substance of each communication.

**ANSWER:**

**Interrogatory 7.**    Identify all persons with whom Plaintiff or Plaintiff's agents, representatives, or attorneys have communicated concerning the Lawsuit, any of the claims in the Lawsuit, any of the allegations in the Lawsuit, any of the defenses in Lawsuit, and/or any of the damages being sought in connection with the Lawsuit and provide the date(s) and form (e.g., orally, by email, or text) of the communication, and describe the substance of each communication.

**ANSWER:**

**Interrogatory 8.**    Identify each current employee, former employee, current independent contractor, and former independent contractor of either Kirby or Scott Fetzer whom Plaintiff or Plaintiff's agents, representatives, or attorneys have communicated since Plaintiff's Divisional Supervisor Agreement was terminated by Kirby and provide the date(s) and form (e.g., orally, by email or text) of the communication(s), and describe the substance of each communication.

**ANSWER:**

10

**Interrogatory 9.**        State each and every date on which Defendants allegedly breached the Divisional Supervisor Agreement attached to the Complaint.

**ANSWER:**

**Interrogatory 10.**        Identify any and all documents that reflect or relate to the communications identified in Interrogatories No. 6, 7, and 8.

**ANSWER:**

**Interrogatory 11.**        State whether Plaintiff or any person acting on Plaintiff's behalf has obtained and/or solicited written, recorded, transcribed, or oral statements from any person in connection with the allegations, defenses, or damages in this Lawsuit, and if so, identify the person who gave the statement, the date the statement was given and the date the statement was prepared, the individual who contacted the person who gave the statement, the date the person who gave the statement was contacted, the person in custody of the statement, and all persons who were present at the time the statement was given.

**ANSWER:**

**Interrogatory 12.**        Identify every place of business (profit or non-profit), governmental agency, and other person or entity to which Plaintiff has applied for employment (including self-employment and work as an independent contractor) from November 1, 2010 through the present, and for each place listed, provide the following: the date of application; the salary or wage level of the position applied for; a brief description of the position applied for; whether Plaintiff was offered a position and, if so, whether Plaintiff accepted the position, the date Plaintiff accepted the position, whether Plaintiff did not accept the position, and why

11

Plaintiff rejected the position or otherwise failed to obtain the position; and if Plaintiff was not offered a position, an explanation as to why Plaintiff was not given the position (if known).

**ANSWER:**

**Interrogatory 13.**    State whether Plaintiff has received any income from any source(s), other than from Kirby, since November 1, 2010, including, but not limited to, unemployment compensation, workers' compensation, disability benefits, pension or other retirement benefits, social security benefits, welfare benefits, loans, or other government benefits and state the nature of each source of income, state the gross amount of each payment from the source, and state the date(s) of each payment.

**ANSWER:**

**Interrogatory 14.**    Identify every place Plaintiff has been employed (including self-employment and work as an independent contractor) since November 1, 2010 and identify each employer, identify the position(s) held by Plaintiff with each employer, state the dates Plaintiff held each position, and state the reason(s) for separation from each job.

**ANSWER:**

**Interrogatory 15.**    Identify every business in which Plaintiff has had a financial and/or ownership interest and/or invested money since November 1, 2010 and identify each business name, state the dates in which Plaintiff maintained his interest in each business listed, identify the number of hours Plaintiff worked at each business each week, identify the gross earnings, commissions, and benefits Plaintiff has received to date from each business itemized on an annual basis, and identify any and all other persons who also had a financial and/or

12

ownership interest and/or invested money in each business.

**ANSWER:**


**Interrogatory 16.**    Identify all e-mail addresses (such as Gmail, Yahoo!, Hotmail, AOL, AT&T, etc.), social networking accounts (for on-line services such as Facebook, Twitter, MySpace, Google+, Instagram, Picasa, Tumblr, etc.), professional networking site accounts (for on-line services such as LinkedIn, Monster.com, etc.), back-up or other on-line third-party storage accounts (such as iCloud, Google Docs, Dropbox, Mozy, etc.), or any other on-line sites, services, blogs, wikis, or message boards, that Plaintiff has used or maintained since November 1, 2010.

**ANSWER:**


**Interrogatory 17.**    Identify every telephone or cellular phone account and corresponding phone number(s), maintained, used or accessed by Plaintiff, for business or personal use, from November 1, 2010 to the present. For each phone number state the carrier (e.g., Verizon, AT&T, etc.), the make and model of the device associated with that phone number, and the range of dates during which Plaintiff used each phone number and associated device.

**ANSWER:**


**Interrogatory 18.**    Identify each and every electronic storage device (including, but not limited to computers, hard drives, cellular or smart phones, or hand held devices) that Plaintiff has either owned or used for personal and/or professional reasons since November 1,

13

2010. For each electronic storage device state the make (e.g., Apple, IBM) of the electronic storage device; the model (e.g., iPad, Thinkpad) of the electronic storage device; the period of time Plaintiff used the electronic storage device; whether or not the electronic storage device is presently in Plaintiff's possession, custody, or control and, if so, the present location of the device; if the electronic storage device is no longer in Plaintiff's possession, custody, or control, the date (month, day and year) upon which the electronic storage device ceased being in Plaintiff's possession, custody, or control, the manner of disposal of the electronic storage device, and the identity of who, if anyone, is currently in possession of the electronic storage device; if the electronic storage device is a cellular or smart phone, identify the telephone number associated with each cellular or smart phone identified herein.

**ANSWER:**

**Interrogatory 19.**    Has Plaintiff ever been convicted of, pleaded guilty to, or pleaded no contest to a crime? If so, please provide the date, court, county, state, and describe the nature of the charges, and state the sentence and/or fine imposed.

**ANSWER:**

**Interrogatory 20.**    Identify all claims, charges, lawsuits, and grievances that Plaintiff has filed; a business owned, operated, controlled, and/or invested in by Plaintiff has filed; to which Plaintiff has been a party; or to which a business owned, operated, controlled, and/or invested in by Plaintiff has been a party (including, but not limited to, bankruptcy claims, workers' compensation claims, unemployment compensation claims, discrimination and retaliation claims, personal injury claims, claims for government benefits, garnishment actions, collection actions, and divorce proceedings); for each claim, charge, suit or grievance, provide

14

the following information:

> (a)  Identify by name, address, and telephone number all parties to the matter;

> (b)  State the agency or court with whom the matter was filed;

> (c)  State the date on which the matter was filed;

> (d)  State the name or number assigned to the matter;

> (e)  Provide a detailed summary of the resolution or disposition of the matter; and

> (f)  Identify the attorney(s) who represented Plaintiff in the matter.

**ANSWER:**

**Interrogatory 21.**    Identify every proceeding in which Plaintiff has ever provided sworn testimony, including the name, number, date, and location of each such proceeding, and a description of the testimony provided.

**ANSWER:**

**Interrogatory 22.**    Identify all expert witnesses that Plaintiff expects to use: (a) as a witness at trial or at any hearing in this case; (b) as a consultant in this case; or (c) in support of Plaintiff's position with regard to any motion presented in this case. With respect to each person:

> a.  State the subject matter(s) about which each witness is expected to testify;

> b.  State the area of expertise and background (e.g., education, experience, professional affiliations, certifications, publications) of each witness;

> c.  Provide a detailed summary of the facts and opinions about which each witness is expected to testify;

> d.  State the grounds for each fact or opinion about which each witness is expected to testify;

> e.  Identify all documents that support the substance of the facts or opinions about which each witness is expected to testify;

15

     f.     Identify the information and documents that were provided to each witness for use in this Lawsuit;

     g.    State the dates on which Plaintiff, Plaintiff's agents and/or representatives, and/or Plaintiff's attorney(s) met with, communicated with, or consulted with each witness;

     h.    Identify every document that each witness had reviewed or prepared (or that has been prepared at the direction of the witness) that related to the fact or opinions about which the witness is expected to testify; and

     i.     Identify every document sent by Plaintiff (or his agents, representatives, and/or attorneys) to the expert, received by the Plaintiff (or his agents, representatives, and/or attorneys) from the expert, or passing between Plaintiff (or his agents, representatives, and/or attorneys) and the expert.

**ANSWER:**


**Interrogatory 23.**    If Plaintiff was unable to work at any time since October 1, 2018, for any reason, including, but not limited to illness, disability, care of a family member, vacation, or school attendance:

    (a)    State the dates on which Plaintiff was unable to work;

    (b)    State the reason(s) Plaintiff was unable to work;

    (c)    State whether Plaintiff or Plaintiff's family member sought any medical attention, and where, when, and from whom; and

    (d)    Identify all persons, other than Plaintiff, who has knowledge of facts related to Plaintiff's claim that Plaintiff was unable to work and with respect to each person, state with specificity the facts known and how such knowledge was obtained.

**ANSWER:**


**Interrogatory 24.**    For all physicians, surgeons, therapists (physical or otherwise), psychiatrists, psychologists, or other mental or physical health care professionals or personal, clergy, social workers, marriage or family counselors who examined Plaintiff or from whom Plaintiff sought evaluation or treatment for any physical illness or condition or any psychological

or mental illness or condition, during the time period from November 1, 2010 to the present, please state:

>    a.    The name, address, and telephone number of said person;
>
>    b.    The date or dates of examination, consultation, or treatment;
>
>    c.    The condition for which such examination, consultation, or treatment was provided;
>
>    d.    A description of the treatment provided, including listing any medications prescribed by such health care professional, as well as any diagnosis and/or prognosis given; and
>
>    e.    The date, location, and duration of any hospitalization or institutionalization resulting therefrom.

**ANSWER:**

## **FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 1:**  Please produce any and all documents and electronically stored information upon which any expert witness retained by Plaintiff (or his agents, representatives, and/or attorneys) is expected to rely at trial.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 2:**  Please produce any and all documents and electronically stored information that set forth the facts and opinions as to which any expert witness is expected to testify at trial.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 3:**  Please produce any and all exhibits, including documents and electronically stored information that Plaintiff intends to introduce at

17

trial in this Lawsuit.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 4:** Please produce any and all documents and electronically stored information described in Plaintiff's initial disclosures in Plaintiff's possession, custody, or control.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 5:** Please produce any and all documents and electronically stored information that refer or relate to Plaintiff's answers to the Interrogatories, including documents and electronically stored information identified in response to any Interrogatory, and any and all documents and electronically stored information that were consulted to answer any Interrogatory.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 6:** Please produce any and all documents and electronically stored information to be offered as evidence at any deposition, hearing, or trial involving the Lawsuit.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 7:** Please produce any and all statements, whether written or otherwise recorded, taken by Plaintiff, Plaintiff's representatives, agents, or attorneys, with respect to the allegations in the Lawsuit and/or the defenses in the Lawsuit including, but not limited, to the statements identified in Interrogatory No. 11.

18

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 8:** To the extent not already produced in response to any other document request, please produce any and all affidavits, statements, and declarations obtained by Plaintiff or Plaintiff's agents, representatives, or attorneys related to this Lawsuit.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 9:** To the extent not already produced in response to any other document request, Please produce any and all documents and electronically stored information that contain any statements or admissions by Kirby, Scott Fetzer, or any current or former employee or representative of Kirby or Scott Fetzer that support or relate to the claims or defenses in this Lawsuit.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 10:** Please produce any and all documents and electronically stored information which support or pertain to Plaintiff's claim for damages including, but not limited to, documents which would support the amount of damages that Plaintiff has sustained, including those identified in Plaintiff's initial disclosures and the Lawsuit.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 11:** Please produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on Plaintiff's allegations that Defendants' engaged in "wrongful acts stemming from Plaintiff's former

19

employment with Defendants" as alleged in Paragraph 1 of the Complaint.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 12:** Please produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on Plaintiff's allegations that Plaintiff was employed by Kirby as alleged in Paragraph 1 of the Complaint.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 13:** Please produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on Plaintiff's allegations that Plaintiff was employed by Scott Fetzer as alleged in Paragraph 1 of the Complaint.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 14:** Please produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on Plaintiff's allegations that "Plaintiff was Defendants' employee from 1992 through October 8, 2018" as alleged in Paragraph 4 of the Complaint.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 15:** Please produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on Plaintiff's allegations that "In 1991, Plaintiff began his employment with Defendants Kirby and Scott Fetzer as a Sales Representative selling Kirby vacuum cleaners" as alleged in Paragraph 13 of

the Complaint.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 16:** Please produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on Plaintiff's allegations that "Due to his success as a Sales Representative, Defendants authorized Plaintiff to open his own Kirby distributorship, which he did in 2003, selling products he purchased from Scott Fetzer's Factory Distributors" as alleged in Paragraph 14 of the Complaint.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 17:** Please produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on Plaintiff's allegations that "In 2005, Defendants promoted Plaintiff to Division Manager, allowing him to maintain his own distributorship with inventory he purchased directly from Scott Fetzer, while managing approximately 20 Kirby vacuum stores and training Factory Distributors" as alleged in Paragraph 15 of the Complaint.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 18:** Please produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on Plaintiff's allegations that "On November 1, 2010, Defendants promoted Plaintiff to Divisional Supervisor supervising between 25 and 45 stores, and paying him a $250,000 annual base salary, but required him to sign a "Divisional Supervisor Agreement" ("the DSA contract" or "the contract") prepared exclusively by Defendants (Ex. 1), and dissolve his distributorship" as

21

alleged in Paragraph 16 of the Complaint.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 19:** Please produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on Plaintiff's allegations that "Although the DSA contract identifies Plaintiff as an independent contractor, Plaintiff was Defendants' *employee*, as evidenced not only by Defendants' *right* to exert control over Plaintiff's employment, but by their *actual* control over nearly every facet of his employment" as alleged in Paragraph 17 of the Complaint.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 20:** Please produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on Plaintiff's allegations that "Defendants required Plaintiff to, inter alia, dissolve his distributorship; rent and maintain an out-of-the-home office; organize and lead rallies, meetings, and training seminars; travel from Florida to Cleveland four times per year for Divisional Supervisor meetings; visit each store he supervised at least once every three months; document his travel time; submit his calendar and travel reports to Kirby's president of North American Field Sales each month; spend specific hours working in his non-home office each day he was not traveling; pay for approximately 25 to 40% of his travel and accommodation expenses; pay all costs associated with training his Sales Representatives, including training materials and conference room rental; employ an administrative assistant; pay all payroll taxes for himself and his administrative assistant; pay into the Florida unemployment and worker's compensation systems; and pay for all his travel and lodging expenses when visiting the stores he supervised" as alleged in

22

Paragraph 18 of the Complaint.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 21:** Please produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on Plaintiff's allegations that "Plaintiff reported directly to Kirby's then-president of North American Field Sales, Bud Miley, and worked under Miley's supervision without incident" as alleged in Paragraph 19 of the Complaint.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 22:** Please produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on Plaintiff's allegations that "In January 2018, Bud Miley resigned, and Scott Fetzer hired Kevin Reitmeier to replace him, at which time Plaintiff began reporting directly to Reitmeier" as alleged in Paragraph 20 of the Complaint.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 23:** Please produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on Plaintiff's allegations that "Almost immediately after becoming Plaintiff's direct supervisor, Reitmeier began harassing Plaintiff by, *inter alia*, calling him between 6:00 AM and 7:00 AM nearly every morning; sending him rude, demanding, and bullying text messages between 6:00 AM and 7:00 AM nearly every morning; and demanding to know his whereabouts and activities at all times" as alleged in Paragraph 21 of the Complaint.

23

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 24:** Please produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on Plaintiff's allegations that "Upon information and belief, Reitmeier did not harass any non-Middle Eastern Divisional Supervisors, with excessive early morning telephone calls, demands to know their whereabouts, and/or rude, demanding, and harassing text messages" as alleged in Paragraph 22 of the Complaint.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 25:** Please produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on Plaintiff's allegations that "On May 25, 2018, Plaintiff's daughter opened a cannabidiol ("CBD") store in Florida" as alleged in Paragraph 23 of the Complaint.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 26:** Please produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on Plaintiff's allegations that "On June 27, 2018, Reitmeier interrogated Plaintiff for more than an hour regarding his daughter's CBD store, including whether Plaintiff had loaned her money for the store, and whether Plaintiff earned income from the store" as alleged in Paragraph 24 of the Complaint.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 27:** Please produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on Plaintiff's allegations that "Two days later, on June 29, 2018, David Lamb, Scott Fetzer's Vice President and General Counsel, interrogated Plaintiff by phone regarding his daughter's CBD store, expressed concern that the CBD store was precluding Plaintiff from fulfilling his DSA contract's 'best efforts' provision, and demanded that Plaintiff provide him with information regarding other Kirby/Scott Fetzer employees' CBD involvement" as alleged in Paragraph 25 of the Complaint.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 28:** Please produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on Plaintiff's allegations that "During their telephone call, Plaintiff reported to Lamb that Reitmeier was treating him worse than his counterparts who were not of Middle Eastern descent, and harassing him based on his national origin, but neither Lamb, nor anyone else from Kirby or Scott Fetzer initiated an investigation into Plaintiff's report, or took prompt or effective remedial action to end the harassment and discrimination" as alleged in Paragraph 26 of the Complaint.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 29:** Please produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on Plaintiff's allegations that "Almost immediately after Plaintiff reported and opposed Reitmeier's harassment and discrimination, Reitmeier's harassment of Plaintiff increased, including more frequent phone calls and text messages with increased demands, including requiring Plaintiff to

recompile and resubmit numerous extensive reports that Plaintiff had already completed and submitted" as alleged in Paragraph 27 of the Complaint.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 30:** Please produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on Plaintiff's allegations that "On July 12, 2018, Plaintiff attended a meeting in Cleveland, Ohio, during which Reitmeier told him that he wanted all distributors and supervisors to begin informing on other distributors and supervisors who were involved in the CBD industry" as alleged in Paragraph 28 of the Complaint.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 31:** Please produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on Plaintiff's allegations that "After the Cleveland meeting concluded, Reitmeier interrogated Plaintiff by phone for approximately 45 minutes regarding various employees Reitmeier believed were involved in the CBD industry, to which Plaintiff responded that he felt uncomfortable discussing distributors' and divisional supervisors' involvement in the CBD industry" as alleged in Paragraph 29 of the Complaint.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 32:** Please produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on Plaintiff's allegations that "Upon information and belief, Reitmeier did not subject non-Middle Eastern

26

Divisional Supervisors or Distributors to such incessant calls, text messages, and/or interrogatories regarding Kirby distributors' and supervisors' involvement in the CBD industry" as alleged in Paragraph 30 of the Complaint.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 33:** Please produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on Plaintiff's allegations that "Shortly after his July 12, 2018 conversations with Reitmeier, Plaintiff called Lamb and reiterated that Reitmeier was harassing and discrimination against him based on his national origin, but again, neither Lamb, nor anyone else from Kirby or Scott Fetzer, initiated an investigation, or took prompt or effective remedial action to end the harassment and discrimination" as alleged in Paragraph 31 of the Complaint.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 34:** Please produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on Plaintiff's allegations that "During the week of August 20, 2018, Reitmeier traveled with Plaintiff to visit four of the Factor Distributors Plaintiff supervised, during which Reitmeier spent most of the time questioning Plaintiff about distributors and supervisors who were involved in the CBD industry" as alleged in Paragraph 32 of the Complaint.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 35:** Please produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on Plaintiff's

allegations that "In fact, three of the four Factor Distributors Plaintiff and Reitmeier visited the week of August 20, 2018, none of whom is of Middle Eastern descent, owned a CBD store, and told Plaintiff they had already disclosed to Reitmeier that they owned a CBD store, and that Reitmeier had not said it was problematic" as alleged in Paragraph 33 of the Complaint.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 36:** Please produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on Plaintiff's allegations that "On September 4, 2018, Reitmeier asked Plaintiff to resign in exchange for a month of severance pay" as alleged in Paragraph 34 of the Complaint.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 37:** Please produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on Plaintiff's allegations that "On September 17, 2018, Plaintiff retained Caryn Groedel & Associates Co., LPA for legal advice and representation in connection with the aforementioned facts, and on September 27, 2018, attorney Caryn M. Groedel sent Lamb a letter informing him that she had been retained to represent Plaintiff, and outlining what she perceived to be Defendants' various violations of the law" as alleged in Paragraph 35 of the Complaint.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 38:** Please produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on Plaintiff's allegations that "on October 8, 2018, Lamb terminated Plaintiff's employment" as alleged in

Paragraph 36 of the Complaint.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 39:** Please produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on Plaintiff's allegations that "Defendants breached paragraph 8 of the contract by, *inter alia*, exerting full control over Plaintiff's employment and treating him like an employee – despite contractually agreeing that he would be an independent contractor – including requiring him to rent and maintain an out-of-the-home office; organize and lead rallies, meetings, and training seminars; travel from Florida to Cleveland four times per year for Divisional Supervisor meetings; visit each store he supervised at least once every three months; document his travel time; submit his calendar and travel reports to Kirby's president of North American Field Sales each month; spend specific hours working in his non-home office each day he was not traveling; pay all costs associated with training his Sales Representatives, including training materials and conference room rental; employ an administrative assistant; pay all payroll taxes for himself and his administrative assistant; pay into the Florida unemployment and worker's compensation systems; and pay thousands of dollars per month on travel and lodging expenses for the travel Defendants required of him" as alleged in Paragraph 39 of the Complaint.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 40:** Please produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on Plaintiff's allegations that "Defendants breached the implied covenant of good faith and fair dealing by engaging in opportunistic behavior and conduct that was beyond Plaintiff's reasonable

expectations" as alleged in Paragraph 40 of the Complaint.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 41:** Please produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on Plaintiff's allegations that "Defendants were unjustly enriched by misclassifying Plaintiff as an independent contractor, but *requiring* him to pay hundreds of thousands of dollars of *their* expenses, including payroll taxes, an administrative assistant's salary, travel costs, training expenses, office rent and expenses, equipment leases, worker's compensation, and unemployment compensation" as alleged in Paragraph 44 of the Complaint.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 42:** Please produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on Plaintiff's allegations that "The DSA contract does not govern this dispute because it was procured in bad faith.  Defendants deliberately mislabeled and misclassified Plaintiff as an independent contractor, while knowing they would exert total control over the terms and conditions of his employment, and require him to pay the above-described costs, and others, in order to avoid paying the costs themselves – as Plaintiff's employers" as alleged in Paragraph 48 of the Complaint.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 43:** Please produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on Plaintiff's

allegations that "Plaintiff engaged in the protected activity of reporting and opposing Reitmeier's discrimination and harassment to David Lamb" as alleged in Paragraph 69 of the Complaint.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 44:** Please produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on Plaintiff's allegations that "Defendants were aware that Plaintiff engaged in the protected activity of reporting and opposing Reitmeier's discrimination and harassment" as alleged in Paragraph 70 of the Complaint.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 45:** Please produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on Plaintiff's allegations that "After, and at least in part as a result of Plaintiff reporting and opposing Reitmeier's misconduct to Lamb, Defendants retaliated against Plaintiff by, *inter alia*, calling and texting him more frequently outside regular business hours; increasing the frequency of his interrogations; requesting he resign; and terminating his employment" as alleged in Paragraph 71 of the Complaint.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 46:** Please produce any and all documents, including, but not limited to, all federal, state, and local income tax returns (including schedules and attachments), Form W-2s, Form 1099s, payroll checks and stubs, bank statements, canceled checks, and receipts that disclose all actual or deferred income earned by Plaintiff from any

source or any other compensation or remuneration for services of any kind received by or accruing to Plaintiff from November 1, 2010 to the present.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 47:** Please produce any and all documents and electronically stored information, including, but not limited to, all federal, state, and local income tax returns (including schedules and attachments), Form W-2s, Form 1099s, payroll checks and stubs, bank statements, canceled checks, and receipts, that disclose all actual or deferred income earned by Plaintiff, including but not limited to any actual or deferred income from any business Plaintiff owned, operated, controlled, invested in, incorporated, served as a board member and/or officer of, or has had any direct or indirect involvement from any source, or any other compensation or remuneration for services of any kind received by or accruing to Plaintiff as related to any business Plaintiff owned, operated, controlled, invested in, incorporated, served as a board member and/or officer of, or has had any direct or indirect involvement from November 1, 2010, to the present.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 48:** Please produce any and all documents related to any and all income from any employer, self-employment, business venture, investment income, gifts, or any income supplement of any form since November 1, 2010.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 49:** Please produce any and all documents setting forth the terms of any pension or profit sharing plan, or other benefits to which Plaintiff

32

may be entitled from any employer either presently or in the future.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 50:** Please produce any and all documents and electronically stored information reflecting any employment benefits Plaintiff received from any employer since November 1, 2010 (including, but not limited to, 401(k) plans, health care insurance, retirement plans, stock purchase plans, employee discounts, bonuses, etc.).

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 51:** Please produce any and all documents and electronically stored information that refer or relate to the Divisional Supervisor Agreement attached to the Complaint.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 52:** Please produce any and all documents and electronically stored information that refer or relate to any agreements, other than the Divisional Supervisor Agreement attached to the Complaint, between Plaintiff and Kirby.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 53:** Please produce any and all documents and electronically stored information that refer or relate to any agreements between Plaintiff and Scott Fetzer.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 54:** Please produce any and all documents and electronically stored information that refer or relate to each and every consulting relationship entered into by Plaintiff with any person or entity since November 1, 2010.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 55:** Please produce any and all documents and electronically stored information that refer or relate to each and every independent contractor relationship entered into by Plaintiff with any person or entity since November 1, 2010.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 56:** Please produce any and all documents and electronically stored information that refer or relate to each and every employer (including self-employment and work as an independent contractor) of Plaintiff since November 1, 2010 identified in response to Interrogatory No. 14, including, but not limited to, agreements, documents relating to Plaintiff's job title, self-employment, job status, rate of pay or compensation, change in job titles, status, descriptions of jobs or engagements held, work performed, handbooks, policies, benefit statements, policies, and any documents that refer to or relate to Plaintiff's resignation, retirement, layoff, or termination from any subsequent employer or termination of any agreement to perform work as an employee, consultant, and/or independent contractor.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 57:** Please produce any and all documents and

34

electronically stored information, including, but not limited to, any and all business filings (e.g., documents filed with a Secretary of State), expenses reports, receipts, calendars, meeting minutes, bank statements, purchase agreements, rental agreements, real estate records, lease agreements, contracts, credit card statements, telephone records, mobile phone records, invoices, purchase orders, tax records, payroll records, employee lists, employment agreements, and employee personnel records, that refer or relate to the following entities:

a.  Southeast Regional Promotional Club, Inc.

b.  BMIB Division KDA Fund, Inc.

c.  Syatt of Jacksonville, Inc.

d.  First Coast Division Inc.

e.  B.M.I.B., Inc.

f.  NLN Division, Inc.

g.  NLN Enterprises, Inc.

h.  Budzburn, Inc.

i.  Palm Bay American Shaman LLC

j.  EGK Enterprises, Inc.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 58:** Please produce any and all documents and electronically stored information that refer or relate to each and every business owned by Plaintiff since November 1, 2010, including, but not limited to, any and all business filings (e.g., documents filed with a Secretary of State), expenses reports, receipts, calendars, meeting minutes, bank statements, purchase agreements, rental agreements, real estate records, lease agreements, contracts, credit card statements, telephone records, mobile phone records, invoices,

purchase orders, tax records, payroll records, employee lists, and employee personnel records.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 59:** Please produce any and all documents and electronically stored information that refer or relate to each and every business Plaintiff invested in since November 1, 2010, including, but not limited to, any and all business filings (e.g., documents filed with a Secretary of State), expenses reports, receipts, calendars, meeting minutes, bank statements, purchase agreements, rental agreements, real estate records, lease agreements, contracts, credit card statements, telephone records, mobile phone records, invoices, purchase orders, tax records, payroll records, employee lists, employment agreements, and employee personnel records.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 60:** Please produce any and all documents and electronically stored information that refer or relate to each and every business operated by Plaintiff since November 1, 2010, including, but not limited to, any and all business filings (e.g., documents filed with a Secretary of State), expenses reports, receipts, calendars, meeting minutes, bank statements, purchase agreements, rental agreements, real estate records, lease agreements, contracts, credit card statements, telephone records, mobile phone records, invoices, purchase orders, tax records, payroll records, employee lists, employment agreements, and employee personnel records.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 61:** Please produce any and all documents and

36

electronically stored information that refer or relate to each and every business Plaintiff controlled since November 1, 2010, including, but not limited to, any and all business filings (e.g., documents filed with a Secretary of State), expenses reports, receipts, calendars, meeting minutes, bank statements, purchase agreements, rental agreements, real estate records, lease agreements, contracts, credit card statements, telephone records, mobile phone records, invoices, purchase orders, tax records, payroll records, employee lists, employment agreements, and employee personnel records.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 62:** Please produce any and all documents and electronically stored information that refer or relate to each and every business incorporated by Plaintiff since November 1, 2010, including, but not limited to, any and all business filings (e.g., documents filed with a Secretary of State), expenses reports, receipts, calendars, meeting minutes, bank statements, purchase agreements, rental agreements, real estate records, lease agreements, contracts, credit card statements, telephone records, mobile phone records, invoices, purchase orders, tax records, payroll records, employee lists, employment agreements, and employee personnel records.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 63:** Please produce any and all documents and electronically stored information that refer or relate to each and every business of which Plaintiff has served as a board member and/or officer since November 1, 2010, including, but not limited to, any and all business filings (e.g., documents filed with a Secretary of State), expenses reports, receipts, calendars, meeting minutes, bank statements, purchase agreements, rental agreements,

37

real estate records, lease agreements, contracts, credit card statements, telephone records, mobile phone records, invoices, purchase orders, tax records, payroll records, employee lists, employment agreements, and employee personnel records.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 64:** Please produce any and all documents and electronically stored information that refer or relate to each and every business in which Plaintiff has had any direct or indirect involvement since November 1, 2010, including, but not limited to, any and all business filings (e.g., documents filed with a Secretary of State), expenses reports, receipts, calendars, meeting minutes, bank statements, purchase agreements, rental agreements, real estate records, lease agreements, contracts, credit card statements, telephone records, mobile phone records, invoices, purchase orders, tax records, payroll records, employee lists, employment agreements, employment agreements, and employee personnel records.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 65:** Please produce any and all documents and electronically stored information that refer or relate to any attempt by Plaintiff to incorporate a business since November 1, 2010.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 66:** Please produce any and all agreements and all documents and electronically stored information related to such agreements between Plaintiff and any cannabidiol ("CBD") business.

**RESPONSE:**

38

**REQUEST FOR PRODUCTION NO. 67:** To the extent not already produced in response to any other document request, please produce any and all documents related to the formation, operation, and status of any business Plaintiff owned, operated, controlled, invested in, incorporated, served as a board member and/or officer of, or has had direct or indirect involvement at any time since November 1, 2010.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 68:** Please produce any and all documents related to the formation, operation, and status of any business that Plaintiff's immediate family members (i.e., spouse, siblings, parents, in-laws, children, and step-children) have owned, operated, controlled, invested in, incorporated, served as board members and/or officers of, or have had direct or indirect involvement at any time since January 1, 2018.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 69:** Please produce any and all documents related to the planning for and opening of stores for any business that Plaintiff owned, operated, controlled, invested in, incorporated, served as a board member and/or officer of, or has had direct or indirect involvement at any time since November 1, 2010.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 70:** Please produce any and all documents related to the planning for and opening of stores for any business that Plaintiff's immediate family members (i.e., spouse, siblings, parents, in-laws, children, and step-children) owned,

39

operated, controlled, invested in, served as a board members and/or officers of, or have had direct or indirect involvement at any time since January 1, 2018.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 71:** To the extent not already produced in response to any other document request, please produce any and all documents that show the total amount of revenue and profit that has been generated to date by any business Plaintiff owned, operated, controlled, invested in, incorporated, served as a board member and/or officer of, has had direct and indirect involvement at any time since November 1, 2010.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 72:** To the extent not already produced in response to any other document request, please produce any and all documents that show the total amount of revenue and profit that has been generated to date by any business Plaintiff's immediate family members (i.e., spouse, siblings, parents, in-laws, children, and step-children) owned, operated, controlled, invested in, incorporated, served as a board member and/or officer of, has had direct and indirect involvement at any time since November 1, 2010.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 73:** Please produce any and all documents and electronically stored information, including text messages, phone calls, voice mail messages, emails, other written or oral communications, and recordings of conversations, to or from, or exchanged between Plaintiff or his agents, representatives, or attorneys and the following persons:

a.      Kevin Reitmeier;

b.      Bud Miley;

c.      David Lamb;

d.      Halle Sminchak;

e.      Timothy Updegraph;

f.      Carl Emmert;

g.      Michael Licata;

h.      Rob Terwilliger;

i.      Marc Venditti;

j.      Frank Venditti III;

k.      Matt Bragg;

h.      Any other current or former employee of Kirby or Scott Fetzer;

i.      Any other current or former Divisional Supervisor of Kirby;

j.      Any current or former independent contractors of Kirby or Scott Fetzer;

k.      Potential employers (including self-employment) with whom Plaintiff sought work since November 1, 2010;

l.      Employers that have employed Plaintiff since November 1, 2010;

m.      Persons or entities that have contracted with Plaintiff since November 1, 2010;

n.      Any other person identified in Plaintiff's initial disclosures or responses to the Interrogatories.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 74:** Please produce any and all documents and electronically stored information obtained from third parties that refer or relate to this Lawsuit and/or any of the parties thereto.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 75:** Please produce any and all diaries, calendars, appointment books and cards, notes, logs, schedules, memoranda, or any other documents and electronically stored information of Plaintiff's activities since November 1, 2010.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 76:** Please produce any and all documents and electronically stored information, including, but not limited to emails and text messages, that relate in any way to Plaintiff's role as a Divisional Supervisor with Kirby, including, but not limited to, Plaintiff's work performance, travel, territories assigned to Plaintiff in each and every Exhibit A to the Divisional Supervisor Agreement, assignments, responsibilities, the formation of Plaintiff's Divisional Supervisor Agreement, the termination of Plaintiff's Divisional Supervisor Agreement, and any policies and procedures that applied to Plaintiff.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 77:** Please produce any and all documents and electronically stored information, including, but not limited to, text messages and emails, that Plaintiff provided to, and that Plaintiff and/or Plaintiff's agents, representatives, or attorneys received from, any and every federal, state, or local government agency, including, but not limited to, the U.S. Department of Labor, the U.S. Equal Employment Opportunity Commission,

42

the Ohio Civil Rights Commission, and the Florida Commission on Human Relations in proceedings that relate in any manner to Plaintiff's alleged employment relationship with Kirby and/or Scott Fetzer and/or the allegations in the Lawsuit.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 78:** Please produce any and all correspondence and electronically stored information stored by Plaintiff on (a) personal computer(s), computer hard drive(s), cellular device(s), or any other electronic media, including all embedded information, cookies, email directories, email files, email address books, back-up tapes, software, and all portions of the hard drives and security systems that store any contact or link with the Internet that contain any information relating to the allegations in the Complaint, Counterclaim, and/or Plaintiff's role as a Divisional Supervisor with Kirby.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 79:** With respect to each expert retained by Plaintiff to testify or consulted by Plaintiff, please provide a complete copy of the expert's file as well as:

    a.    Any expert report or statement issued by the identified experts regarding their opinions or basis for their opinions as well as any draft reports;

    b.    Any and all documents upon which the expert relied or reviewed;

    c.    Any and all documents regarding the identified experts' qualifications for rendering such opinions;

    d.    Copies of each expert's curriculum vitae;

    e.    Any and all billing statements or invoices prepared by or issued by the experts;

     f.     Any and all documents passing between Plaintiff or Plaintiff's attorneys and the experts; and

     g.     Any and all other documents used, reviewed or consulted by the expert.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 80:** Please produce copies all of the pleadings and/or other documents filed in any other prior or currently pending lawsuit, grievance, charge, complaint, workers' compensation claim, unemployment compensation claim, bankruptcy, or any other claim for redress identified in response to Interrogatory No. 20.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 81:** If Plaintiff has ever been convicted of, or pled guilty, or no contest to a crime, please produce all documents relating to Plaintiff's conviction, or guilty or no contest plea, and all other documents and electronically stored information that refer to, relate to, shed light upon, or describe such documents and electronically stored information.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 82:** Please produce any and all documents, electronically stored information, or tangible things that Plaintiff copied or retained from Kirby or Scott Fetzer, including any and all documents, electronically stored information, or tangible things that Plaintiff downloaded or recorded to any electronic storage device.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 83:** Please produce any and all documents, notes, or records of any kind that Plaintiff (or anyone acting on Plaintiff's behalf) made or kept that relate to this Lawsuit.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 84:** To the extent not already produced in response to any other document request, please produce any and all documents and electronically stored information reflecting any communications Plaintiff has had with any other person (other than his attorneys) that relate to this Lawsuit.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 85:** To the extent not already produced in response to any other document request, please produce any and all documents and electronically stored information reflecting any communications Plaintiff has had with any other person (other than his attorneys) that relate to Plaintiff's Divisional Supervisor Agreement with Kirby.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 86:** Please produce Plaintiff's current or most recent resume and/or curriculum vitae, as well as every resume Plaintiff has used since November 1, 2010.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 87:** Please produce any and all degrees, diplomas, certificates, transcripts, awards, and other documents that reflect Plaintiff's

45

experience, education, and qualifications.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 88:** Please produce any and all documents and electronically stored information that pertain to Kirby's policies, practices, or procedures that applied in any way to Plaintiff, including Plaintiff's training on such policies, practices, and procedures.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 89:** Please produce any and all documents and electronically stored information that pertain to Scott Fetzer's policies, practices, or procedures that applied in any way to Plaintiff, including Plaintiff's training on such policies, practices, and procedures.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 90:** Please produce any and all documents and electronically stored information relating to payments made by Kirby to Plaintiff directly or to a person or entity authorized by Plaintiff to receive payments for services rendered by Plaintiff since November 1, 2010.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 91:** Please produce any and all documents and electronically stored information relating to payments made by Scott Fetzer to Plaintiff directly or a person or entity authorized by Plaintiff to receive payments for services rendered by Plaintiff

since November 1, 2010.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 92:** To the extent not already produced in response to any other document request, please produce any and all documents and electronically stored information relating to Plaintiff's contention that Defendants breached the Divisional Supervisor Agreement between Plaintiff and Kirby.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 93:** Please produce any and all documents and electronically stored information relating to Plaintiff's performance under his Divisional Supervisor Agreement with Kirby.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 94:** Please produce any and all documents and electronically stored information relating to Kirby's performance under Plaintiff's Divisional Supervisor Agreement with Kirby.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 95:** Please produce any and all documents and electronically stored information relating to Scott Fetzer's performance under Plaintiff's Divisional Supervisor Agreement with Kirby.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 96:** Please produce any and all documents and electronically stored information concerning any attempt by Plaintiff to obtain employment with any employer since November 1, 2010.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 97:** Please produce any and all documents and electronically stored information concerning any attempt by Plaintiff to obtain work as a consultant since November 1, 2010.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 98:** Please produce any and all documents and electronically stored information concerning any attempt by Plaintiff to obtain work as an independent contractor since November 1, 2010.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 99:** Please produce any and all documents and electronically stored information concerning any attempt by Plaintiff to purchase a business since November 1, 2010.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 100:** Please produce any and all documents and electronically stored information concerning any attempt by Plaintiff to invest in a business since November 1, 2010.

**RESPONSE:**

48

**REQUEST FOR PRODUCTION NO. 101:**     Please     produce     any     and     all documents and electronically stored information concerning any attempt by Plaintiff to incorporate a business since November 1, 2010.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 102:**     Please produce any and all emails, text messages, instant messages, photographs, video recordings, audio recordings, social media posts, "Likes", comments, tags, status updates, tweets, blog entries, and/or messages sent to or from, passing between, hosted on or posted on any email account, Facebook account, Twitter account, LinkedIn account, Skype account, Blogger/Blogspot account, or any other page, social media account or email account created, accessed and/or maintained by Plaintiff since November 1, 2010 relating to, concerning, or referring to:

    a.      Plaintiff's Divisional Supervisor Agreement with Kirby;

    b.      Plaintiff's performance under his Divisional Supervisor Agreement with Kirby;

    c.      Any current and/or former employee, representative, agent, or independent contractor of Kirby including, but not limited to:

        1.      Kevin Reitmeier;

        2.      Bud Miley;

        3.      David Lamb;

        4.      Halle Sminchak;

        5.      Timothy Updegraph;

        6.      Carl Emmert;

        7.      Michael Licata;

8.  Rob Terwilliger;

9.  Marc Venditti;

10.  Frank Venditti III;

11.  Matt Bragg;

d.  Any active, concluded, contemplated or threatened claim, charge, litigation, or lawsuit against or involving Kirby, Scott Fetzer, or any of their respective current or former employees or independent contractors;

e.  Plaintiff's claims in this Lawsuit;

f.  Plaintiff's allegations and/or damages in this Lawsuit;

g.  Kirby's claims in this Lawsuit.

h.  Kirby's allegations and/or damages in this Lawsuit:

i.  Plaintiff's efforts to obtain employment with a different employer (including self-employment) during the term of his Divisional Supervisor Agreement with Kirby;

j.  Plaintiff's employment or efforts to obtain employment (including self-employment) since the termination of his Divisional Supervisor Agreement with Kirby;

k.  Any of Plaintiff's complaints to or about Kirby and/or Scott Fetzer or any of their respective current or former employees, parent companies; or independent contractors;

l.  Payments made by Kirby or Scott Fetzer to Plaintiff directly or a person or entity authorized by Plaintiff to receive payments for services rendered by Plaintiff since November 1, 2010; and

m.  Plaintiff's other agreements with Kirby and/or Scott Fetzer.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 103:**     Please     produce     any     and     all

documents and electronically stored information generated by Plaintiff, or Plaintiff's agents or

representatives, or obtained from other persons or entities, that relate to or refer to the allegations

in the Lawsuit. This request includes all notes, timelines, summaries, tape recordings, transcripts, notes of conversations, emails, or text messages which pertain to this Lawsuit, excluding any documents protected by the attorney-client privilege or attorney work product doctrine.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 104:**    Please   produce   any   and   all documents and electronically stored information that, although not specifically requested herein, refer, relate to, or otherwise support the allegations in Plaintiff's Complaint, as well as the acts described therein, or Plaintiff's responses or defenses to the Counterclaim.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 105:**    For each cellular phone provider for any of the devices Plaintiff identified in response to Interrogatory No. 17, please execute a separate Authorization to Release Cell Phone Records in the form attached hereto.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 106:**    To the extent not already produced in response to any other document request, please produce any and all documents and electronically stored information evidencing any efforts Plaintiff has made to mitigate his damages in this Lawsuit.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 107:**    To the extent not already produced in response to any other document request, please produce any and all documents and electronically

stored information, including text messages, phone calls, voice mail messages, emails, other written or oral communications, and recordings of conversations, to or from, or exchanged between Plaintiff or his agents, representatives, or attorneys and the following persons from January 1, 2018 to the present:

a. Plaintiff's daughter described in Paragraphs 23 to 25 of the Complaint that refer or relate to the CBD store described in Paragraphs 23 to 25 of the Complaint ("CBD Store"), any other business or entity Plaintiff and/or Plaintiff's daughter owned, operated, controlled, invested in, incorporated, served as a board member and/or officer of, or has had any direct or indirect involvement;

b. Employees of the CBD Store;

c. Customers of the CBD Store;

d. All other persons associated with the CBD Store;

e. All persons related to the CBD Store or any other business or entity Plaintiff and/or Plaintiff's daughter owned, operated, controlled, invested in, incorporated, served as a board member and/or officer of, or has had any direct or indirect involvement.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 108:**		Please	produce	any	and	all documents and electronically stored information which pertain to the opening and/or operation of the CBD Store.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 109:**		Please	produce	any	and	all documents and electronically stored information which pertain to the opening and/or operation of any and all CBD stores and/or CBD businesses (other than the CBD Store) in which Plaintiff has a financial and/or ownership interest.

52

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 110:**        Please    produce    any    and    all documents and electronically stored information (including, but not limited to, full and complete clinical records, office notes, diagnoses, prescriptions, communications, hospital charts, examination records, history records, x-rays, laboratory specimens, or information related to medical expenses) prepared by, submitted to, or otherwise maintained by any of the health professionals identified in response to Interrogatory No. 24.  For each such health professional from whom such documents will be retrieved, Plaintiff is requested to execute and return to the undersigned counsel for Kirby (1) the attached Authorization for Disclosure of Health Information so that Kirby may obtain relevant records; and (2) any specific authorization for disclosure required by Plaintiff's health providers or health systems where Plaintiff sought and/or received medical treatment.

    **RESPONSE:**


                            Respectfully submitted,

                            */s/ Ryan J. Morley*
                            Ryan J. Morley (0077452)
                            Morena L. Carter (0088825)
                            LITTLER MENDELSON, P.C.
                            1100 Superior Avenue, 20th Floor
                            Cleveland, OH  44114
                            Telephone: 216.696.7600
                            Facsimile:  216.696.2038
                            Email: rmorely@littler.com
                                    mlcarter@littler.com

                            Attorneys for Defendants
                            The Kirby Company and The Scott Fetzer
                            Company

## CERTIFICATE OF SERVICE

On this 2nd day of March 2021, I hereby certify that a true and correct copy of the foregoing was served via electronic mail upon the following:

Caryn M. Groedel
cgroedel@groedel-law.com
Amanda M. Zganjar
azganjar@groedel-law.com
CARYN GROEDEL & ASSOCIATES CO., LPA
31340 Solon Road, Suite 27
Cleveland, OH  44139

/s/ Ryan J. Morley
One of the Attorneys for Defendants,
The Kirby Company and The Scott Fetzer
Company

4822-6790-5232.1 056013.1160

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IBRAHIM SHARQAWI | ) | CASE NO. 1:20-cv-00271 |
| | ) | |
| Plaintiff, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| vs. | ) | **PLAINTIFF'S INTERROGATORIES,** |
| | ) | **REQUESTS FOR PRODUCTION OF** |
| THE KIRBY COMPANY, *et al.* | ) | **DOCUMENTS, AND REQUESTS FOR** |
| | ) | **ADMISSION TO DEFENDANT THE** |
| Defendants. | ) | **KIRBY COMPANY** |
| | ) | |

**GENERAL INSTRUCTIONS**

1.     Pursuant to Rules 33, 34, and 36 of the Ohio Rules of Civil Procedure, in answering the following Interrogatories, Requests for Production of Documents, and Requests for Admissions (collectively referred to as "discovery requests"), you are to furnish all information available to you or subject to your reasonable inquiry including information in the possession of your agents, employees, attorneys, and other persons directly or indirectly employed by, or connected with, you, and anyone else otherwise subject to your control, and to serve your answers, separately and fully in writing, **under oath**, upon Caryn M. Groedel, Esq., c/o Caryn Groedel & Associates Co. LPA, 31340 Solon Road, Suite 27, Cleveland, Ohio 44139, within twenty-eight (28) days of the date of actual service of these discovery requests upon you.

2.     In answering these discovery requests, you must make a diligent search of records and other papers and materials in your possession or available to you and/or to your representatives.  If you are unable to fully answer any of these discovery requests, you must answer them as fully as possible, and specify the reason(s) for your inability to answer the remainder.

3.     If the information requested is not known, or is not reasonably available in the precise form and scope requested, or for the particular date or period specified, set forth the best information you have, along with an explanation of why your response is not completely responsive to the discovery request, and identify all documents or sources from which more complete information is obtainable.

4.     Whenever an Interrogatory or Document Request calls for information with respect to "each" one of a particular type of occurrence, communication, or other matter for which more than one exists, you must identify separately, **and in chronological order**, each instance of the occurrences, communications, or other matters referred to.  **If you exercise your right under Ohio Rule of Civil Procedure 33 to produce business records, identify each record in sufficient detail to enable Plaintiff to locate and identify, as readily as Defendants, the records from which the answer may be ascertained.**  In other words, identify the specific

EXHIBIT 2

documents you are producing in lieu of a written response, and state which documents correspond to each discovery request.

5.      If you believe that any of these discovery requests calls for information subject to a claim of confidentiality, trade secret, privilege, or work product, answer as much of the discovery request as does not, in your opinion, request confidential, secret, privileged, or work product information, **and identify each document and communication you are withholding with sufficient specificity to enable Plaintiff to understand the nature of your claim and exercise his right to challenge each such claim.** You must also state the date, author, recipients, and general subject matter of each such document.

6.      If you believe any of these discovery requests are objectionable, answer as much of each as is not, in your opinion, objectionable, **and describe with specificity the grounds for each of your objections.**

7.      When responding to **each** Interrogatory and Request for Production of Documents, identify the person(s) consulted in preparing each response.

8.      You are instructed to timely supplement your responses to all of these discovery requests, especially those requesting the identification of persons having knowledge of discoverable matters.  Without being requested to do so, you must also amend any responses when it is discovered to be no longer true.  A failure to supplement is, in substance, a knowing concealment.

9.      When asked to "identify" or "for the identity" of any natural person, set forth such person's:  (i) full name; (ii) present or last known home and work address; (iii) last known home, work, and cell phone numbers; and (iv) position and business affiliation.

10.      When asked to "identify", or "for the identity" of, any entity other than a natural person, set forth its:  (i) full name or title; (ii) address, (iii) telephone number; and (iv) the identity of all persons who acted, or who authorized another to act, on its behalf in connection with the matters referred to.

11.      If you know of a responsive document that it is not in your custody or control, set forth:  (i) its date and general type of category (*e.g.*, letter, contract, memorandum); (ii) the identity of its author; (iii) the identity of each addressee and other distributee to whom the document was transmitted;  (iv) the identity of its last known location or custodian; (v) the reason(s) for your inability to produce or locate such document; and (vi) the identity of the person or entity to whom custody or possession was given.

12.      When asked to "identify", or "for the identity" of, an oral communication, set forth:  (i) the date and place thereof or, in the case of a telephone conversation, where the parties thereto were located at the time of the communication; (ii) the identity of each person who participated in, or was present during, the communication; and (iii) identify, in accordance with the prior requirements hereof, all documents that were prepared as a consequence of, or that contain information relative to, the subject of the oral communication.

13.      When a discovery request refers to an action or event, "describe in detail", and/or "describe, in detail", mean to provide a description of the action, including when, where, and how it occurred, and who was present and/or participated in the action or event.

14.     When a discovery request refers to a document or other written or oral communication, "describe in detail", and/or "describe, in detail", mean to state:  (i) the type of document or other communication; (ii) the date it was created; (iii) the identity of all persons involved creating the document or communication; and (iv) the present location of the document or communication.

## DEFINITIONS

1.     "Scott Fetzer" means The Scott Fetzer Company, its directors, officers, trustees, employees, agents, attorneys, experts, investigators, and/or other persons acting, and/or purporting to act, on its behalf.

2.     "Kirby" means The Kirby Company, its directors, officers, trustees, employees, agents, attorneys, experts, investigators, and/or other persons acting, and/or purporting to act, on its behalf.

3.     "Defendants" refers to The Scott Fetzer Company and The Kirby Company, and all of their directors, officers, trustees, employees, agents, attorneys, experts, investigators, and/or other persons acting, and/or purporting to act, on their behalf.

4.     "Document" and "documents" refer to any printed, written, taped, recorded, graphic, computerized printout, or other tangible matter, from whatever source, however produced or reproduced, whether in draft or otherwise, whether sent or received, or neither, including, but not limited to, the original, a copy (if the original is not available), and all non-identical copies (whether different from the original because of notes made on or attached to such copy or otherwise), and/or any and all writings, correspondence, letters, telegrams, cables, telexes, contracts, proposals, agreements, minutes, acknowledgments, notes, memoranda, analyses, projections, work papers, books, forecasts or appraisals, papers, records, reports, diaries, statements, questionnaires, schedules, computer programs or data, books of account, calendars, graphs, charts, transcripts, tapes, transcripts or records, photographs, pictures or film, ledgers, registers, worksheets, summaries, digests, financial statements, and all other information or data, records, or compilations, including all underlying supporting or preparatory material now in your possession, custody, or control, or available to you, your counsel, accountants, agents, representatives, or associates.  "Document" and "documents" specifically includes documents maintained in a desk, at home, at Scott Fetzer's office, or elsewhere.

5.     The word "communication" or "communicate" includes information relating to oral communications and "documents" (as defined above), regardless of whether such document, or the information contained therein, was transmitted by its author to any other person.

6.     The term "meeting" or "meetings" means any meeting of any agent, employee, trustee, director, board member, and/or representative of Scott Fetzer, or combination of groupings of such agents, employees, trustees, directors, board members, and/or representatives. The term includes tape, audio, and/or video recordings, and/or written or other transcriptions of any such meetings, referencing by identification the particular date, time, and substance of discussion at each such meeting, all decisions made at each such meeting, the identity of those who participated in each such decision, and the particular input each person at the meeting had with respect to each such decision.

3

7.     The terms "you" and "your" include The Scott Fetze Company, The Kirby Company, and all of their directors, officers, trustees, employees, agents, attorneys, experts, investigators, and/or all other persons acting, or purporting to act, on their behalf.

8.     The word "person" includes a natural person, partnership, firm, corporation, or any other kind of business or legal entity, its agents, or employees.

9.     "Complaint" means lawsuit, administrative charge or proceeding, arbitration, mediation, grievance, or other formal or informal dispute resolution procedure, and includes all formal and informal charges, complaints, and/or report procedures created, maintained, and/or used by Defendant.

## INSTRUCTIONS ON SEARCHING FOR, AND PRODUCING, ELECTRONICALLY STORED INFORMATION

The term "ESI" includes, but is not limited to, all text files, word processing documents, presentation files, such as PowerPoint, spreadsheets, e-mail files (including "cc" and "bcc" fields and attachments), and information concerning email files (including logs of e-mail, header information, and deleted files), internet history files, graphical files in any format, data bases, calendar and scheduling information, telephone logs, contact managers, computer activity logs, and all file fragments and back up files containing electronic data that exists on desktop computers, laptops, PDAs, phones (including voice mail), servers, etc.

1.     Where ASCII search strings are sought, you are directed to search for responsive ESI by running a system-wide keyword search using the ASCII search strings identified in Plaintiff's ESI requests herein below.

2.     Where image files are sought, you are directed to search for responsive ESI by running a system-wide keyword search for JPG, TIF, BMP, GIF, PNG, and any other potentially responsive files, and produce such files.

3.     Where recording files are sought, you are directed to search for responsive ESI by running a system-wide search for MPEG4, 3GPP, MOV, AVI, MP4, WebM, FLV, MP3, MPG, WMA, RA, WAV, AIFF, and all other potentially responsive files, and produce such responsive files.

4.     You are directed to produce, **in native format**, each responsive "hit" resulting from a system-wide search.

5.     Emails must be produced in a standard file format such as .msg, .ocr, .dbx, .eml, or .pst, and must be produced so that the full header is accessible and readable, and all metadata maintained.

6.     Digital files may be produced by email to Plaintiff's counsel, or by delivering a disk to Plaintiff's counsel.

7.     Native paper documents may be produced as scanned .tif, .ocr, or .pdr files (by email or on disk), or as paper copies.

8.     **All electronically stored information must be produced in its native format,**

which means that a document originally created as a Microsoft Word file, or as an Excel spreadsheet, must be produced as a .doc or .xls file (or successor), **without redaction of metadata.**

9.      All documents saved as a .pdf file must be produced in that format, **not as a scanned copy of the saved .pdf**.

10.      All documents shall be produced in native electronic format, which could include: .doc, .docx, .txt, .rtf, .dot, .htm, .ocr, .pptx, .ppt, .pps, .xlxs, .xls, .csv, .xml, .txt, .mht, .prn, .dif and/or .slk.

11.      For documents produced as scanned documents, you shall describe when they were scanned, and shall identify who directed them to be scanned.  Such documents must be produced in their original scanned format, which could include:  .jpg, .jpeg, .tif, .tiff, .pict and/or .pdf.

12.      Your search for ESI should encompass active, deleted, and archive files, and should be conducted in a manner that does not compromise the accessibility of ESI and its metadata.

13.      If "hard" copies of ESI produced have notations thereon, the "hard" copies should also be produced, and your search for responsive documents should include a search for "hard" copies.

14.      If you produce, in whole or in part, a "hard" copy instead of ESI, you shall explain why you are not producing ESI, and if you contend ESI is no longer accessible, you shall explain the reason for its inaccessibility.

## <u>INTERROGATORIES</u>

**FOR EACH INTERROGATORY SEEKING THE IDENTITY OF PERSONS OR ENTITIES, PLEASE REFER TO THE DEFINITION OF "IDENTIFY" AND "IDENTITY" IN PARAGRAPHS 9 AND 10 OF THE GENERAL INSTRUCTIONS ON PAGE 2 OF THESE DISCOVERY REQUESTS.**

1.      Identify all individuals who provided information for Defendant's Answers to **each** of these Interrogatories, Requests for Production of Documents, and Requests for Admission.  If more than one individual supplied information, identify each individual, and state the precise discovery requests for which each individual provided information.
<u>ANSWER:</u>


2.      Identify each and every individual known to Defendant, its agents, independent contractors, employees, and/or attorneys who has knowledge or information pertaining to the facts and/or allegations set forth in the Complaint and/or Answer filed in this case, and for each individual, describe his/her knowledge, and state whether it is personal knowledge.
<u>ANSWER:</u>

3.     Identify all individuals Defendant has contacted, and/or who has contacted Defendant, pertaining to the allegations in the Complaint and/or Answer filed in this case, and for each individual, state the date and substance of each communication, identify the individual(s) who made each contact, and state whether the communications were oral, written, or both.

<u>ANSWER:</u>

4.     Identify and provide a specific description of all electronic databases and/or information-management systems that Defendant maintained at any and all times between January 1, 2012 and October 31, 2020, which hold, maintain, and/or store employee and/or independent contractor discipline-related documents, performance reviews, emails, and/or communications by and/or between supervisors, managers, H.R. Department employees, and/or internal investigators who investigate employees and/or independent contractors for allegations of wrongdoing.

<u>ANSWER:</u>

5.     Identify the individual(s) most knowledgeable about the databases and/or information management systems identified in Defendant's Answer to the preceding Interrogatory.

<u>ANSWER:</u>

6.     If, in order to respond to Plaintiff's discovery requests, Defendant searched, or caused to be searched, any physical and/or electronic files, and/or databases, describe the parameters set for the searches, and describe -- by title and location -- the files searched.  If Defendant did not conduct, or cause to be conducted, a thorough review of its books, records, and electronic databases, and/or did not seek information from any individuals in order to respond to these discovery requests, state why not.

<u>ANSWER:</u>

7.     If Defendant does not admit each document it produced in response to Plaintiff's discovery requests is a true and accurate copy of its business record, identify the specific documents Defendant contends are not true and accurate copies of its business records, and state the reason(s) for Defendant's contention that each document is not a true and accurate copy of a business record.

<u>ANSWER:</u>

8.     Identify all of Defendant's employees and/or independent contractors who reported to, and/or worked under the supervision of, Kevin Reitmeier at any and all times between December 1, 2017 and October 30, 2019, including in your Answer:  their hire or contract date, all positions they held, the dates they held each position, and their current employment status (e.g., resigned, terminated, transferred, etc.).

<u>ANSWER:</u>

9.      Describe all compensation and benefits Defendant provided Plaintiff from January 1, 2012 and October 31, 2020, including but not limited to salary, bonuses, vacation pay, sick pay, paid time off, health/disability/life insurance benefits, retirement benefits, profit sharing, stock, and all other employer contributions and/or benefits, **and state the cost of each benefit to Defendant.**
ANSWER:


10.      Identify all individuals who filed a complaint (see definition of "complaint" in paragraph 10 of the Definitions section, *supra*) or commenced administrative or court action against Defendant, alleging breach of contract, unjust enrichment, unlawful restraint on trade, and/or wrongful discharge in violation of public policy  between January 1, 2012 and October 31, 2020, and state the administrative agency or court in which each matter was filed; the identifying charge or case number; and a brief description of the nature of the action and its outcome.
ANSWER:


11.      Identify the individual who first raised the subject of terminating Plaintiff's contract with Defendant, state the date it was first raised, identify all individuals involved in the decision to terminate Plaintiff's contract and the ultimate decision maker, and state the specific reason(s) for the termination.
ANSWER:


12.      Describe any and all policies/procedures Defendant contends Plaintiff violated during his tenure as Divisional Supervisor, the date of each such violation, and what discipline, if any, Plaintiff received for each such violation.
ANSWER:


13.      Identify each Divisional Supervisor whom Defendant terminated for the same or similar reason(s) it terminated Plaintiff, identify all individuals involved in each termination decision as well as the ultimate decision maker, and state the specific reason(s) for each such termination, and the date thereof.
ANSWER:


14.      Describe in detail each occasion on which Kirby/Scott Fetzer believes Plaintiff breached any provision of the DSA, and state the dates on which Kirby/Scott Fetzer believes the breach occurred, and the manner in which Kirby/Scott Fetzer believes the breaches occurred, and the manners in which Kirby/Scott Fetzer believes Plaintiff breached the DSA.
ANSWER:


15.      Identify all individuals whom Defendants filed a complaint (see definition of "complaint" in paragraph 10 of the Definitions section, *supra*) or commenced administrative or court action against, alleging breach of contract, between January 1, 2012 and October 31, 2020,

and state the administrative agency or court in which each matter was filed; the identifying charge or case number; and a brief description of the nature of the action and its outcome.
ANSWER:


16.    Describe in detail the independent economic value (if any), and or/ the potential independent economic value (if any) derived from the purported breach of contract alleged in Kirby/Scott Fetzer's Counterclaim against Plaintiff.
ANSWER:


17.    Describe in detail the specific damages Kirby/Scott Fetzer claims to have suffered as a result of Plaintiff's alleged breach of contract.
ANSWER:


18.    Describe in detail all efforts Kirby/Scott Fetzer undertook to mitigate any damages, if any, suffered as a result of Plaintiff's purported breach of his DSA.
ANSWER:


19.    Describe in detail Defendant's reason for classifying Divisional Supervisors as independent contractors.
ANSWER:


20.    Describe in detail Defendant's reason for requiring distributorship owners to dissolve their Kirby Distributorships when entering a Divisional Supervisor Agreement with defendant.
ANSWER:


21.    For all Requests for Admission to which Defendant responds/responded with anything other than an unqualified admission, state the basis for each denial or qualification, the facts supporting it, and identify each person with knowledge of the reasons(s) for Defendant's failure to provide an unqualified admission.
ANSWER:


22.    State the facts supporting each affirmative defense Defendant asserted in its Answer to Plaintiff's Complaint.
ANSWER:

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.      All of Defendant's handbooks, personnel manuals, policies, procedures, rules, guidelines, requirements, and protocols that applied to Plaintiff, Kevin Reitmeier, all individuals who performed the duties of a Divisional Supervisor at any and all times between January 1, 2012 and October 31, 2020, and/or and all individuals involved in the decision to terminate Plaintiff's contract, during their employment with Defendant, including but not limited to those describing work rules, work guidelines, performance criteria, performance evaluations, professional behavior, communication protocol, paid time off, discipline, hiring, termination, use of Defendant's computers and other equipment, coworker sharing of equipment and/or fixtures, discrimination, retaliation, chain of command, and counseling, **including all amendments and revisions thereto**, that exist and/or existed at any and all times between January 1, 2012 and October 31, 2020.
RESPONSE:


2.      All W-2s, 1099s, performance reviews, disciplinary actions, promotion-related documents, transfer-related documents, attendance records, licenses, certifications, training documents, job descriptions, job duties, job applications, resumes, job offer letters from Defendant, interview notes, stock grants and awards, calendars, and all documents pertaining to demotions, promotions, lateral transfers, severance agreements, termination, and unemployment compensation for Plaintiff; Kevin Reitmeier; any and all individuals who performed the duties of a Kirby Divisional Supervisor at any and all times between January 1, 2012 and October 31, 2020; and all individuals involved in the decision to terminate Plaintiff's contract.
RESPONSE:


3.      All documents between January 1, 2012 and October 31, 2020 pertaining to performance targets, performance goals, and actual performance of Plaintiff and all Kirby Divisional Supervisors.
RESPONSE:


4.      All electronically stored information and data from between January 1, 2013 and November 30, 2018—sent to, received by, and/or created by Plaintiff, Kevin Reitmeier, David Lamb, Michael Nichols, Halle Sminchek, and the individuals involved in the decision to terminate Plaintiff's contract—that contain "national origin", "race", "retal!", "harass!" or "CBD," and any of the following ASCII strings:
        agree!
        arab!
        best
        brown
        cannab!
        compet!
        contract!
        daughter!
        DSA
        east!
        effort!

fam!
hash!
hemp!
illegal!
illicit!
indust!
interrogat!
middle-east!
middle east!
middle!
non-compete!
oil!
phone!
polic!
pot
race!
report!
retail!
solicit!
store!
tele!
THC
travel!
weed
RESPONSE:


5.      All versions of the Divisional Supervisor Agreement, including all drafts, revisions, amendments, supplements, and updates thereto, that exist and/or existed at any and all times between January 1, 2012 and October 31, 2020.
RESPONSE:

6.      All versions of the Divisional Supervisor Handbook, including all drafts, revisions, amendments, supplements, and updates thereto, that exist and/or existed at any and all times between January 1, 2012 and October 31, 2020.
RESPONSE:

7.      All documents, including, but not limited to, handbooks, memoranda, policies, procedures, and agreements, including all drafts, revisions, amendments, supplements, and updates thereto, that exist and/or existed at any and all times between January 1, 2012 and October 31, 2020, reflecting Defendants' requirements for Divisional Supervisors, including, but not limited to, hiring an administrator, renting office space, keeping a work calendar, travel, and maintaining office hours.
RESPONSE:

8.      All documents on which Defendant relied when deciding to classify its Divisional Supervisors as independent contractors.
RESPONSE:

10

9.     All documents discussing and/or reflecting how and/or why Defendant requires \
Kirby distributors to dissolve their Kirby Distributorship when entering into a Divisional
Supervisor Agreement/contract with Scott Fetzer.
<u>RESPONSE:</u>

10.     All documents that explain, reference, and/or describe Defendant's policies,
procedures, and protocols, at any and all times between January 1, 2012 and October 31, 2020,
for reimbursing its employees for work-related expenses.
<u>RESPONSE:</u>

11.     All documents that explain, reference, and/or describe Defendant's procedures
and protocol, at any and all times between January 1, 2012 and October 31, 2020, for
reimbursing its Divisional Supervisors for work-related expenses.
<u>RESPONSE:</u>

12.     All documents on which Defendant relied when evaluating Plaintiff's
performance as a Divisional Supervisor at any and all times between January 1, 2012 and
October 31, 2020.
<u>RESPONSE:</u>

13.     All documents on which Defendant relied when deciding to terminate Plaintiff's
Divisional Supervisor Agreement.
<u>RESPONSE:</u>

14.     All documents on which Defendant relies for its contention that Plaintiff breached
his Divisional Supervisor Agreement.
<u>RESPONSE:</u>

15.     All investigation-related documents dated at any and all times between January 1,
2012 and October 31, 2020, that pertain to investigations conducted by, and/or on behalf of,
Defendant regarding Divisional Supervisors' involvement in an outside business, including
statements taken, statements given, investigation protocol followed, complaint or report that
initiated each such investigation, and investigation results.
<u>RESPONSE:</u>

16.     All complaints, charges, allegations, and/or reports to and/or about Defendant
regarding unfair restraint of trade, misclassification of employees, breach of Divisional
Supervisor Agreements, unjust enrichment, and/or wrongful termination in violation of public
policy, at any and all times between January 1, 2012 and October 31, 2020.
<u>RESPONSE:</u>

17.     All of Defendant's document retention policies, including all drafts, revisions, amendments, supplements, and updates thereto, that exist and/or existed at any and all times between January 1, 2012 and October 31, 2020.
<u>RESPONSE:</u>

# <u>GO TO NEXT PAGE FOR REQUESTS FOR ADMISSION</u>

## REQUESTS FOR ADMISSION

1.      Admit or deny that Plaintiff was affiliated with Kirby and Scott Fetzer from February 1991 through October 8, 2018.
RESPONSE:


2.      Admit or deny that, at all times between 1991 and October 8, 2018, Kirby has been a division of Scott Fetzer.
RESPONSE:


3.      Admit or deny that, from January 2018 through October 2018, Kevin Reitmeier was Kirby's President of North American Field Sales.
RESPONSE:


4.      Admit or deny that, from December 2017 through October 8, 2018, Kevin Reitmeier was Plaintiff's supervisor and/or manager.
RESPONSE:


5.      Admit or deny that, from December 2017 through October 8, 2018, Kevin Reitmeier exercised control and decision-making power over the terms and conditions of Plaintiff's employment.
RESPONSE:


6.      Admit or deny that, in 1991, Plaintiff began his employment with Kirby and/or Scott Fetzer as a Sales Representative selling Kirby vacuum cleaners.
RESPONSE:


7.      Admit or deny that, in 2003, Plaintiff opened his own Kirby distributorship, selling products he purchased directly from Scott Fetzer's Factory Distributors.
RESPONSE:


8.      Admit or deny that, in 2005, Defendant promoted Plaintiff to Division Manager.
RESPONSE:


9.      Admit or deny that, as Division Manager, Plaintiff maintained his own distributorship.
RESPONSE:

13

10.     Admit or deny that, as Division Manager, Plaintiff maintained his own distributorship with inventory he purchased directly from Scott Fetzer.
<u>RESPONSE:</u>


11.     Admit or deny that, as Division Manager, Plaintiff maintained his own distributorship with inventory he purchased directly from Scott Fetzer, while managing approximately 20 Kirby vacuum stores and training Factory Distributors.
<u>RESPONSE:</u>


12.     Admit or deny that, on or about November 1, 2010, Kirby and/or Scott Fetzer promoted Plaintiff to Divisional Supervisor.
<u>RESPONSE:</u>


13.     Admit or deny that, as Divisional Supervisor, Defendants required Plaintiff to sign a Divisional Supervisor Agreement ("DSA").
<u>RESPONSE:</u>


14.     Admit or deny that neither Kirby nor Scott Fetzer offered Plaintiff an opportunity to add, remove, or change any terms of the DSAt he was to sign if he wanted to be a Divisional Supervisor.
<u>RESPONSE:</u>


15.     Admit or deny that Plaintiff did not add, remove, or change any terms of the DSA Defendants required him to sign if he wanted to be a Divisional Supervisor.
<u>RESPONSE:</u>


16.     Admit or deny that, according to the DSA, Defendants paid Plaintiff an annual base salary of $250,000.
<u>RESPONSE:</u>


17.     Admit or deny that, according to the DSA, Defendants required Plaintiff to dissolve his distributorship.
<u>RESPONSE:</u>


18.     Admit or deny that Plaintiff signed the DSA.
<u>RESPONSE:</u>


19.     Admit or deny that, as Divisional Supervisor, Plaintiff supervised between 25 and 45 stores.
<u>RESPONSE:</u>

20.     Admit or deny that, as a Divisional Supervisor, Kirby and/or Scott Fetzer classified Plaintiff as an independent contractor.
RESPONSE:


21.     Admit or deny that the DSA classified Plaintiff as an independent contractor.
RESPONSE:


22.     Admit or deny that, when Plaintiff was a Divisional Supervisor, Kirby and/or Scott Fetzer required him to maintain an office outside his home.
RESPONSE:


23.     Admit or deny that, when Plaintiff was a Divisional Supervisor, Kirby and/or Scott Fetzer required him to pay rent for his out-of-home office.
RESPONSE:


24.     Admit or deny that, when Plaintiff was a Divisional Supervisor, Kirby and/or Scott Fetzer dictated the specific hours he was to keep his out-of-home office open for business.
RESPONSE:


25.     Admit or deny that, When Plaintiff was a Divisional Supervisor, Kirby and/or Scott Fetzer dictate the specific hours he was to spend working his non-home office he was not traveling.
RESPONSE:


26.     Admit or deny that, at least part of the time Plaintiff was a Divisional Supervisor, Kirby and/or Scott Fetzer required him to hire and employ an administrator.
RESPONSE:


27.     Admit or deny that, when Plaintiff was a Divisional Supervisor, Kirby and/or Scott Fetzer required him to pay his administrator's wages.
RESPONSE:


28.     Admit or deny that, when Plaintiff was a Divisional Supervisor, Kirby and/or Scott Fetzer required him to pay employer-mandated payroll taxes for his administrator.
RESPONSE:


29.     Admit or deny that, when Plaintiff was a Divisional Supervisor, Kirby and/or Scott Fetzer did not withhold any taxes from his wages.
RESPONSE:

15

30.     Admit or deny that, when Plaintiff was a Divisional Supervisor, Kirby and/or Scott Fetzer did not pay any state, federal, or local taxes in connection with his employment.
<u>RESPONSE:</u>


31.     Admit or deny that, when Plaintiff was a Divisional Supervisor, Kirby and/or Scott Fetzer did not pay into any state or federal unemployment compensation funds in connection with his employment.
<u>RESPONSE:</u>


32.     Admit or deny that, when Plaintiff was a Divisional Supervisor, Kirby and/or Scott Fetzer required him to organize and lead rallies for sales representatives;
<u>RESPONSE:</u>


33.     Admit or deny that, when Plaintiff was a Divisional Supervisor, Kirby and/or Scott Fetzer required him to pay all costs associated with his rallies for sales representatives.
<u>RESPONSE:</u>


34.     Admit or deny that, when Plaintiff was a Divisional Supervisor, Kirby and/or Scott Fetzer required him to organize and lead meetings with sales representatives.
<u>RESPONSE:</u>


35.     Admit or deny that, when Plaintiff was a Divisional Supervisor, Kirby and/or Scott Fetzer required him to visit each store he supervised at least once every three months.
<u>RESPONSE:</u>


36.     Admit or deny that, when Plaintiff was a Divisional Supervisor, Kirby and/or Scott Fetzer required him to pay all costs associated with meetings and dinners with field distributors.
<u>RESPONSE:</u>


37.     Admit or deny that, when Plaintiff was a Divisional Supervisor, Kirby and/or Scott Fetzer required him to organize and lead training seminars for sales representatives.
<u>RESPONSE:</u>


38.     Admit or deny that, when Plaintiff was a Divisional Supervisor, Kirby and/or Scott Fetzer required him to pay all costs associated with his training of sales representatives.
<u>RESPONSE:</u>


39.     Admit or deny that, when Plaintiff was a Divisional Supervisor, Kirby and/or Scott Fetzer required Plaintiff to travel from Florida to Cleveland four times per year for

Divisional Supervisor meetings.
RESPONSE:


      40.     Admit or deny that, beginning in July 2016, Kirby and/or Scott Fetzer required him to pay for all work-related travel expenses he incurred.
RESPONSE:


      41.     Admit or deny that, when Plaintiff was a Divisional Supervisor, Kirby and/or Scott Fetzer required him to document his travel time.
RESPONSE:


      42.     Admit or deny that, when Plaintiff was a Divisional Supervisor, Kirby and/or Scott Fetzer required him to submit documentation, and/or a report, of his travel time to Kirby on a monthly basis.
RESPONSE:


      43.     Admit or deny that, when Plaintiff was a Divisional Supervisor, Kirby and/or Scott Fetzer required him, on a monthly basis, to email his calendar for the following month to his manager for his manager's review and/or approval.
RESPONSE:


      44.     Admit or deny that, from 2005, when Plaintiff became a Divisional manager, until the end of December 2017, Plaintiff reported directly to Kirby's then-President of North American Field Sales, Bud Miley.
RESPONSE:


      45.     Admit or deny that, from 2005, when Plaintiff became a Divisional Manager, until the end of December 2017, while working under Bud Miley's supervisions, Plaintiff worked without incident.
RESPONSE:


      46.     Admit or deny that, in January 2018, Bud Miley resigned as President of North American Field Sales.
RESPONSE:


      47.     Admit or deny that, in January 2018, Scott Fetzer hired Kevin Reitmeier to replace Bud Miley as President of North American Field Sales.
RESPONSE:

48.     Admit or deny that, in January 2018, almost immediately after becoming Plaintiff's supervisor, Defendant Reitmeier began harassing Plaintiff.
RESPONSE:


49.     Admit or deny that, in January 2018, almost immediately after becoming Plaintiff's supervisor, Defendant Reitmeier began harassing Plaintiff by calling him between 6:00 AM and 7:00 AM nearly every morning.
RESPONSE:


50.     Admit or deny that, in January 2018, almost immediately after becoming Plaintiff's supervisor, Defendant Reitmeier began harassing Plaintiff by calling him between 6:00 AM and 7:00 AM nearly every morning.
RESPONSE:


51.     Admit or deny that, in January 2018, almost immediately after becoming Plaintiff's supervisor, Defendant Reitmeier began harassing Plaintiff by sending him rude, demanding, and bullying txt messages between 6:00 AM and 7:00 AM nearly every morning.
RESPONSE:


52.     Admit or deny that, in January 2018, almost immediately after becoming Plaintiff's supervisor, Defendant Reitmeier began harassing Plaintiff by demanding to know his whereabouts and activities at all times.
RESPONSE:


53.     Admit or deny that Defendant Reitmeier did not harass any non-Middle-Eastern Divisional Supervisors with excessive early morning telephone calls, demands to know their whereabouts, and/or rude, demeaning, or bullying text messages.
RESPONSE:


54.     Admit or deny that, on or about June 27, 2018, Defendant Reitmeier interrogated Plaintiff for more than an hour regarding his daughter's CBD store.
RESPONSE:


55.     Admit or deny that, on or about June 27, 2018, while interrogating Plaintiff for more than an hour regarding his daughter's CBD store, Defendant Reitmeier asked whether Plaintiff had loaned his daughter money for the CBD store.
RESPONSE:

56.      Admit or deny that, on or about June 27, 2018, while interrogating Plaintiff for more than an hour regarding his daughter's CBD store, Defendant Reitmeier asked whether Plaintiff earned income from his daughter's CBD store.
RESPONSE:


57.      Admit or deny that, on or about June 29, 2018, David Lamb, Scott Fetzer's Vice President and General Counsel, interrogiated Plaintiff by phone regarding his daugther's CBD store.
RESPONSE:


58.      Admit or deny that, on or about June 29, 2018, while interrogating Plaintiff by phone regarding his daughter's CBD store, David Lamb, Scott Fetzer's Vice President and General Counsel, expressed concern that the CBD store was precluding Plaintiff from fulfilling the DSA's "best efforts" provision.
RESPONSE:


59.      . Admit or deny that, on or about June 29, 2018, while interrogating Plaintiff by phone regarding his daughter's CBD store, David Lamb, Scott Fetzer's Vice President and General Counsel, demanded Plaintiff provide him with information regarding other Kirby/Scott Fetzer employee's CBD involvement.
RESPONSE:


60.      Admit or deny that, on or about June 29, 2018, while David Lamb, Scott Fetzer's Vice President and General Counsel, interrogated Plaintiff by phone regarding his daughter's CBD store, Plaintiff reported to Lamb that Defendant Reitmeier was treating him worse than his counterparts who were not of middle eastern descent.
RESPONSE:


61.      Admit or deny that, on or about June 29, 2018, while David Lamb, Scott Fetzer's Vice President and General Counsel, interrogated Plaintiff by phone regarding his daughter's CBD store, Plaintiff reported to Lamb that Defendant Reitmeier was harassing him based on based on his National Origin.
RESPONSE:


62.      Admit or deny that, after David Lamb's June 29, 2018 call with Plaintiff regarding Plaintiff's daughter's CBD store in which Plaintiff reported Defendant Reitmeier was harassing him based on his national origin, neither Lamb, nor anyone else from Kirby or Scott Fetzer initiated an investigation into Plaintiff's report.
RESPONSE:


63.      Admit or deny that, after David Lamb's June 29, 2018 call with Plaintiff regarding Plaintiff's daughter's CBD store in which Plaintiff reported and opposed Defendant

Reitmeier was harassing him based on his national origin, neither Lamb, nor anyone else from Kirby or Scott Fetzer took prompt or effective remedial action to end the harassment and/or discrimination.
RESPONSE:

64.     Admit or deny that, after David Lamb's June 29, 2018 call with Plaintiff regarding Plaintiff's daughter's CBD store in which Plaintiff reported and opposed Defendant Reitmeier was harassing him based on his national origin, Defendant Reitemer increased the frequency of his phone calls to Plaintiff.
RESPONSE:

65.     Admit or deny that, after David Lamb's June 29, 2018 call with Plaintiff regarding Plaintiff's daughter's CBD store in which Plaintiff reported and opposed Defendant Reitmeier was harassing him based on his national origin, Defendant Reitemer increased the frequency of his text messages to Plaintiff to Plaintiff.
RESPONSE:

66.     Admit or deny that, after David Lamb's June 29, 2018 call with Plaintiff regarding Plaintiff's daughter's CBD store in which Plaintiff reported and opposed Defendant Reitmeier was harassing him based on his national origin, Defendant Reitemer increased the frequency of his phone calls and text messages to Plaintiff and began increasing his demands of Plaintiff.
RESPONSE:

67.     Admit or deny that, after David Lamb's June 29, 2018 call with Plaintiff regarding Plaintiff's daughter's CBD store in which Plaintiff reported and opposed Defendant Reitmeier was harassing him based on his national origin, Defendant Reitemer began requiring Plaintiff to re-compile and resubmit numerous extensive reports that Plaintiff had already completed and submitted.
RESPONSE:

68.     Admit or deny that, on or about July 12, 2018, Plaintiff attended a meeting in Cleveland, Ohio, during which Defendant Reitmeier told him that he wanted all distributors and supervisors to begin informing him of other distributors and supervisors who were involved in the CBD industry.
RESPONSE:

69.     Admit or deny that, on or about July 12, 2018, upon conclusion of the meeting in Cleveland, Ohio, during which Defendant Reitmeier told him that he wanted all distributors and supervisors to begin informing him of other distributors and supervisors who were involved in the CBD industry, Defendant Reitmeier interrogated Plaintiff by phone for approximately 45 minutes regarding various employees Reitmeier believed were involved in the CBD industry.
RESPONSE:

70.     Admit or deny that, on or about July 12, 2018, during Defendant Reitmeier's approximately 45-minute phone call with Plaintiff regarding various employees Reitmeier believed were involved in the CBD industry, Plaintiff responded that he felt uncomfortable discussing distributor's and divisional supervisor's involvement in the CBD industry.
RESPONSE:

71.     Admit or deny that, Defendant Reitmeier did not demand that non-Middle Eastern Divisonal Supervisors or Distributors disclose information regarding other employees involvement in the CBD industry.
RESPONSE:

72.     Admit or deny that, Defendant Reitmeier did subject that non-Middle Eastern Divisonal Supervisors or Distributors to incessant phone calls regarding other employees' involvement in the CBD industry.
RESPONSE:

73.     Admit or deny that, Defendant Reitmeier did subject that non-Middle Eastern Divisonal Supervisors or Distributors to incessant text messages regarding other employees' involvement in the CBD industry.
RESPONSE:

74.     Admit or deny that, Defendant Reitmeier did subject that non-Middle Eastern Divisonal Supervisors or Distributors to incessant interrogations regarding other employees' involvement in the CBD industry.
RESPONSE:

75.     Admit or deny that, soon after Plaintiff's July 12, 2018 conversations with Defendant Reitmeier, Plaintiff reiterated to David Lamb that Defendant Reitmeier was harassing him based on his national origin.
RESPONSE:

76.     Admit or deny that, soon after Plaintiff's July 12, 2018 conversations with Defendant Reitmeier, Plaintiff reiterated to David Lamb that Defendant Reitmeier was discriminating against him based on his national origin.
RESPONSE:

77.     Admit or deny that, after Plaintiff reiterated to David Lamb that Defendant Reitmeier was harassing him based on his national origin, neither Lamb nor anyone else from Kirby or Scot Fetzer, initiated an investigation regarding the harassment and discrimination.
RESPONSE:

78.     Admit or deny that, after Plaintiff reiterated to David Lamb that Defendant Reitmeier was harassing him based on his national origin, neither Lamb nor anyone else from

Kirby or Scot Fetzer, took prompt or effective remedial action to end the harassment and discrimination.
RESPONSE:

79.　　Admit or deny that, on March 5, 2020, Daniel Blalock terminated Plaintiff's employment, claiming that Plaintiff violated his contract and was "not using his best efforts."
RESPONSE:

80.　　Admit or deny that, during the week of August 20, 2018, Defendant Reitmeier traveled with Plaintiff to visit four of the Factory Distributors Plaintiff supervised.
RESPONSE:

81.　　Admit or deny that, during the week of August 20, 2018, while Defendant Reitmeier traveled with Plaintiff to visit four of the Factory Distributors Plaintiff supervised, Defendant Reitmeier spent most of the time questioning Plaintiff distributors and supervisors who were involved in the CBD industry.
RESPONSE:

82.　　Admit or deny that, during the week of August 20, 2018, while Defendant Reitmeier traveled with Plaintiff to visit four of the Factory Distributors Plaintiff supervised, none of the Factory Distributors were of Middle Eastern descent.
RESPONSE:

83.　　Admit or deny that, during the week of August 20, 2018, while Defendant Reitmeier traveled with Plaintiff to visit four of the Factory Distributors Plaintiff supervised, 3 of the 4 Factory Distributors owned a CBD store.
RESPONSE:

84.　　Admit or deny that, during the week of August 20, 2018, while Defendant Reitmeier traveled with Plaintiff to visit four of the Factory Distributors Plaintiff supervised, Defendant Reitmeier did not think it was problematic that 3 of the 4 Factory Distributors owned a CBD store.
RESPONSE:

85.　　Admit or deny that, on September 17, 2018, Defendant Reitmeier asked Plaintiff to resign in exchange for a month of severance pay.
RESPONSE:

86.　　Admit or deny that, on or about September 27, 2018, Defendants received a letter from attorney Caryn M. Groedel informing them that she had been retained to represent Plaintiff.
RESPONSE:

87.     Admit or deny that, on or about September 27, 2018, Defendants received a letter from attorney Caryn M. Groedel informing them of what she perceived to be Defendants' various violations of the law.
RESPONSE:


88.     Admit or deny that, three weeks after receiving a letter from attorney Caryn M. Groedel, Defendants terminated Plaintiff's employment.
RESPONSE:


89.     Admit or deny that, Defendants terminated Plaintiff's employment for allegedly breaching the DSA.
RESPONSE:


90.     Admit or deny that, at the time Defendants terminated Plaintiff's employment, Defendants did not seek legal action against Plaintiff for allegedly breaching the DSA.
RESPONSE:


91.     Admit or deny that, on or about August 18, 2020, Defendants file a Counterclaim against Plaintiff.
RESPONSE:


92.     Admit or deny that, on or about August 18, 2020, Defendants filed a Counterclaim against Plaintiff for allegedly breaching his DSA.
RESPONSE:


93.     Admit or deny that, on or about August 18, 2020, Defendants filed a Counterclaim against Plaintiff for allegedly breaching his DSA, and make no other allegations.
RESPONSE:


94.     Admit or deny that Defendants brought legal action against Plaintiff for allegedly breaching his DSA six months after he filed a Complaint.
RESPONSE:


95.     Admit or deny that Defendants brought legal action against Plaintiff for allegedly breaching his DSA approximately 2 years after terminating his employment.
RESPONSE:

23

*/s/ Caryn M. Groedel*
Caryn M. Groedel (0060131)
*cgroedel@groedel-law.com*
CARYN GROEDEL & ASSOCIATES CO., LPA
1340 Solon Road, Suite 27
Cleveland, OH  44139
Telephone:  (440) 544-1122
Facsimile:  (440) 996-0064
One of Plaintiff's Attorneys

## CERTIFICATE OF SERVICE

The undersigned certifies that, on this 17th day of May, 2021, the foregoing was sent by email in both Word and PDF format to Ryan J. Morley, *rmorley@littler.com*, and Morena L. Carter, *mlcarter@littler.com*, Littler Mendelson, P.C., 1100 Superior Avenue, 20th Floor, Cleveland, Ohio 44114, attorneys for Defendants.

*/s/ Caryn M. Groedel*
Caryn M. Groedel

24

STATE OF OHIO      )
           )  SS:  VERIFICATION
COUNTY OF _____ )


I, _____, _____ [title] for The Kirby Company, being first duly sworn, state that I have read the foregoing Answers to Plaintiff's Interrogatories, Requests for Production of Documents, and Requests for Admission and that the same are true to the best of my knowledge and belief.

_____
      Signature


_____
      Print Name


SWORN TO BEFORE ME and subscribed in my presence in _____, Ohio, this _____ day of _____, 2021.

_____ ___
      Notary Public


My commission expires_____ ___

25

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IBRAHIM SHARQAWI | ) | CASE NO. 1:20-cv-00271 |
| | ) | |
| Plaintiff, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| vs. | ) | |
| | ) | |
| THE KIRBY COMPANY, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANT THE KIRBY COMPANY'S REPONSES TO PLAINTIFF'S INTERROGATORIES, REQUESTS FOR PRODUCTION OF DOCUMENTS, AND REQUESTS FOR ADMISSION TO DEFENDANT THE KIRBY COMPANY

Defendant The Kirby Company ("Defendant" or "Kirby"), by and through undersigned counsel, for its Responses to Plaintiff's Interrogatories, Requests for Production of Documents, and Requests for Admission to Defendant The Kirby Company, states as follows:

## INTERROGATORIES

1.      Identify all individuals who provided information for Defendant's Answers to **each** of these Interrogatories, Requests for Production of Documents, and Requests for Admission.  If more than one individual supplied information, identify each individual, and state the precise discovery requests for which each individual provided information.

ANSWER:      Objection. Interrogatory No. 1 seeks information that may be protected from disclosure by the attorney-client privilege and/or work product doctrine. The allegations in Plaintiff's Complaint have been investigated by or at the direction of counsel. Therefore, information relating to those investigations is protected by the attorney-client privilege and/or work-product doctrine.

Without waiving these objections, Defendant states its answers to Plaintiff's discovery requests were prepared by undersigned counsel in conjunction with Defendant's compliance department.  The identities of the individuals interviewed by undersigned counsel prior to

EXHIBIT 3

preparing these answers are protected by the attorney-client privilege and work-product doctrine.

For the identity of all individuals who may have information relevant to Plaintiff's claims, see

Defendant's answer to Interrogatory No. 2. Please also note that any individual who has

information relevant to Plaintiff's claims can be contacted through undersigned counsel.

2.    Identify each and every individual known to Defendant, its agents, independent contractors, employees, and/or attorneys who has knowledge or information pertaining to the facts and/or allegations set forth in the Complaint and/or Answer filed in this case, and for each individual, describe his/her knowledge, and state whether it is personal knowledge.

ANSWER:    Objection. Interrogatory No. 2 requests information that may be protected from

disclosure by the attorney-client privilege and/or work-product doctrine.

Without waiving these objections, at this time, Defendant believes the following

individuals likely have knowledge regarding facts concerning Plaintiff's claims:

- Plaintiff

- Halle Sminchak

- Kevin Reitmeier

- David Lamb

- Glenn Novak

- Mike Nichols

- Adrienne Cvetkovic

3.    Identify all individuals Defendant has contacted, and/or who has contacted Defendant, pertaining to the allegations in the Complaint and/or Answer filed in this case, and for each individual, state the date and substance of each communication, identify the individual(s) who made each contact, and state whether the communications were oral, written, or both.

ANSWER:    Objection. Interrogatory No. 3 is vague and ambiguous, and requests information

that may be protected from disclosure by the attorney-client privilege and/or work-product

doctrine. In particular, it is not clear what is meant by "contacted."

Without waiving these objections, Defendant has not "contacted" anyone or been "contacted" by anyone regarding this lawsuit other than undersigned counsel, Plaintiff's counsel, the other defendant in this lawsuit, and the Court.

4.     Identify and provide a specific description of all electronic databases and/or information-management systems that Defendant maintained at any and all times between January 1, 2012 and October 31, 2020, which hold, maintain, and/or store employee and/or independent contractor discipline-related documents, performance reviews, emails, and/or communications by and/or between supervisors, managers, H.R. Department employees, and/or internal investigators who investigate employees and/or independent contractors for allegations of wrongdoing.

ANSWER:     Objection. Interrogatory No. 4 is overbroad in scope and time, vague and ambiguous, and seeks information that is not relevant to the claims and defenses in this lawsuit. In particular, it is not clear what is meant by "electronic databases" and "information-management systems."

Without waiving these objections, Defendant states Kirby maintained the following systems for storing information pertaining to and communications with and regarding Kirby's independent contractors (such as Plaintiff):

- Email (Outlook)
- AS/400

5.     Identify the individual(s) most knowledgeable about the databases and/or information management systems identified in Defendant's Answer to the preceding Interrogatory.

ANSWER:     Objection. Interrogatory No. 6 is overbroad in scope and time, vague and ambiguous, and seeks information that is not relevant to the claims and defenses in this lawsuit. In particular, this interrogatory calls for Defendant to speculate as to who would have "the most" knowledge of Plaintiff's about the "databases" and/or "information management systems" discussed in Interrogatory No. 5.

Without waiving these objections, the following individual has knowledge regarding Kirby's Outlook and AS/400 system: Gary Turton, Manager of MIS, The Kirby Company.

6.      If, in order to respond to Plaintiff's discovery requests, Defendant searched, or caused to be searched, any physical and/or electronic files, and/or databases, describe the parameters set for the searches, and describe -- by title and location -- the files searched.  If Defendant did not conduct, or cause to be conducted, a thorough review of its books, records, and electronic databases, and/or did not seek information from any individuals in order to respond to these discovery requests, state why not.

ANSWER:      Objection. Interrogatory No. 6 is vague and ambiguous and seeks information that

is not relevant to the claims and defenses in this lawsuit. In particular, it is not clear what is meant

by "databases," "files searched," "books," "records," or "electronic databases." In addition, this

interrogatory requests information that may be protected from disclosure by the attorney-client

privilege and/or work-product doctrine.

7.      If Defendant does not admit each document it produced in response to Plaintiff's discovery requests is a true and accurate copy of its business record, identify the specific documents Defendant contends are not true and accurate copies of its business records, and state the reason(s) for Defendant's contention that each document is not a true and accurate copy of a business record.

ANSWER:      Defendant will respond if it makes the contention set forth in this Interrogatory No.

7.

8.      Identify all of Defendant's employees and/or independent contractors who reported to, and/or worked under the supervision of, Kevin Reitmeier at any and all times between December 1, 2017 and October 30, 2019, including in your Answer:  their hire or contract date, all positions they held, the dates they held each position, and their current employment status (e.g., resigned, terminated, transferred, etc.).

ANSWER:      Objection. Interrogatory No. 8 is over broad in scope and time, vague and

ambiguous, and seeks information that is not relevant to the claims and defenses in this lawsuit.

Without waiving these objections, Defendant states no independent contractors "reported

to" or "worked under the supervision of" Kevin Reitmeier.

9.      Describe all compensation and benefits Defendant provided Plaintiff from January 1, 2012 and October 31, 2020, including but not limited to salary, bonuses, vacation pay, sick pay, paid time off, health/disability/life insurance benefits, retirement benefits, profit sharing, stock, and all other employer contributions and/or benefits, **and state the cost of each benefit to Defendant.**

ANSWER:    Plaintiff was not Defendant's employee. Therefore, Defendant did not pay or provide him with any salary, bonuses, vacation pay, sick pay, paid time off, health/disability/life insurance benefits, retirement benefits, profit sharing, stock, or any employer contributions and/or benefits.

10.    Identify all individuals who filed a complaint (see definition of "complaint" in paragraph 10 of the Definitions section, *supra*) or commenced administrative or court action against Defendant, alleging breach of contract, unjust enrichment, unlawful restraint on trade, and/or wrongful discharge in violation of public policy between January 1, 2012 and October 31, 2020, and state the administrative agency or court in which each matter was filed; the identifying charge or case number; and a brief description of the nature of the action and its outcome.

ANSWER:    Objection.  Interrogatory No. 10 is overbroad in time and scope, seeks information that is not relevant to the claims and defenses in this lawsuit, and requests information that may be protected from disclosure by the attorney-client privilege and/or work-product doctrine. Interrogatory No. 10 also seeks information that is equally available to Plaintiff from public sources.

Without waiving these objections, other than those "complaints" filed by or on behalf of Plaintiff of which Plaintiff should have knowledge, Defendant refers Plaintiff to relevant court filings made on behalf of Divisional Supervisors represented by Plaintiff's counsel.

11.    Identify the individual who first raised the subject of terminating Plaintiff's contract with Defendant, state the date it was first raised, identify all individuals involved in the decision to terminate Plaintiff's contract and the ultimate decision maker, and state the specific reason(s) for the termination.

ANSWER:    Objection. Interrogatory No. 11 is vague and ambiguous as to what is meant by "contract" and requests information that may be protected from disclosure by the attorney-client privilege and/or work-product doctrine. If Plaintiff wishes to clarify what is meant by the term "contract", Defendant will re-visit its response to this interrogatory.

12.    Describe any and all policies/procedures Defendant contends Plaintiff violated during his tenure as Divisional Supervisor, the date of each such violation, and what discipline, if any, Plaintiff received for each such violation.

ANSWER:     Objection. Interrogatory No. 12 is vague and ambiguous as to what is meant by "policies/procedures" and "discipline".

Without waiving these objections, Defendant states the basis for the termination of Plaintiff's Divisional Supervisor Agreement was set forth in a written communication provided to Plaintiff, which will be produced. Further answering, Plaintiff was not subject to discipline, and, therefore, Plaintiff was not disciplined during the term of his Divisional Supervisor Agreement.

13.     Identify each Divisional Supervisor whom Defendant terminated for the same or similar reason(s) it terminated Plaintiff, identify all individuals involved in each termination decision as well as the ultimate decision maker, and state the specific reason(s) for each such termination, and the date thereof.

ANSWER:     Objection. Interrogatory No. 13 is overbroad in time and scope, vague and ambiguous, and seeks information that is not relevant to the claims and defenses in this lawsuit. In particular, it is not clear what is meant by "terminated" or "termination". If Plaintiff wishes to clarify what is meant by the terms "terminated" and "termination", Defendant will re-visit its response to this interrogatory.

14.     Describe in detail each occasion on which Kirby/Scott Fetzer believes Plaintiff breached any provision of the DSA, and state the dates on which Kirby/Scott Fetzer believes the breach occurred, and the manner in which Kirby/Scott Fetzer believes the breaches occurred, and the manners in which Kirby/Scott Fetzer believes Plaintiff breached the DSA.

ANSWER:     Objection. Interrogatory No. 14 calls for a narrative response best suited for deposition.

Without waiving these objections, Defendant states the basis for the termination of Plaintiff's Divisional Supervisor Agreement was set forth in a written communication provided to Plaintiff, which will be produced.

15.     Identify all individuals whom Defendants filed a complaint (see definition of "complaint" in paragraph 10 of the Definitions section, *supra*) or commenced administrative or court action against, alleging breach of contract, between January 1, 2012 and October 31, 2020, and state the administrative agency or court in which each matter was filed; the identifying charge or case number; and a brief description of the nature of the action and its outcome.

6

ANSWER:    Objection.  Interrogatory No. 15 is overbroad in time and scope, seeks information

that is not relevant to the claims and defenses in this lawsuit, and requests information that may be

protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Interrogatory No. 15 also seeks information that is equally available to Plaintiff from public

sources.

16.    Describe in detail the independent economic value (if any), and or/ the potential
independent economic value (if any) derived from the purported breach of contract alleged in
Kirby/Scott Fetzer's Counterclaim against Plaintiff.

ANSWER:    Objection. Interrogatory No. 16 calls for a narrative response best suited for

deposition.

17.    Describe in detail the specific damages Kirby/Scott Fetzer claims to have suffered
as a result of Plaintiff's alleged breach of contract.

ANSWER:    Objection. Interrogatory No. 17 calls for a narrative response best suited for

deposition.

18.    Describe in detail all efforts Kirby/Scott Fetzer undertook to mitigate any damages,
if any, suffered as a result of Plaintiff's purported breach of his DSA.

ANSWER:    Objection. Interrogatory No. 18 calls for a narrative response best suited for

deposition.

19.    Describe in detail Defendant's reason for classifying Divisional Supervisors as
independent contractors.

ANSWER:    Objection.  Interrogatory No. 19 seeks information that is not relevant to the claims

and defenses in this lawsuit and requests information that may be protected from disclosure by the

attorney-client privilege and/or work-product doctrine.

Without waiving these objections, Defendant states Kirby's Divisional Supervisors are

classified as independent contractors in accordance with applicable law.

20.    Describe in detail Defendant's reason for requiring distributorship owners to
dissolve their Kirby Distributorships when entering a Divisional Supervisor Agreement with
defendant.

7

ANSWER:     Objection.  Interrogatory No. 20 seeks information that is not relevant to the claims

and defenses in this lawsuit and requests information that may be protected from disclosure by the

attorney-client privilege and/or work-product doctrine.

Without waiving these objections, Defendant states, based on information and belief, Kirby

does not require all Kirby distributorship owners to dissolve their distributorships when entering a

Divisional Supervisor Agreement Kirby.

21.     For all Requests for Admission to which Defendant responds/responded with
anything other than an unqualified admission, state the basis for each denial or qualification, the
facts supporting it, and identify each person with knowledge of the reasons(s) for Defendant's
failure to provide an unqualified admission.

ANSWER:     Objection.  Interrogatory No. 21 seeks information that is not relevant to the claims

and defenses in this lawsuit, calls for a narrative response best suited for deposition, and requests

information that may be protected from disclosure by the attorney-client privilege and/or work-

product doctrine.

22.     State the facts supporting each affirmative defense Defendant asserted in its Answer
to Plaintiff's Complaint.

ANSWER:     Objection.   Interrogatory No. 22 calls for a narrative response best suited for

deposition.

Without waiving these objections, Defendant refers Plaintiff to documents that will be

produced.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.     All of Defendant's handbooks, personnel manuals, policies, procedures, rules,
guidelines, requirements, and protocols that applied to Plaintiff, Kevin Reitmeier, all individuals
who performed the duties of a Divisional Supervisor at any and all times between January 1, 2012
and October 31, 2020, and/or and all individuals involved in the decision to terminate Plaintiff's
contract, during their employment with Defendant, including but not limited to those describing
work rules, work guidelines, performance criteria, performance evaluations, professional behavior,
communication protocol, paid time off, discipline, hiring, termination, use of Defendant's
computers and other equipment, coworker sharing of equipment and/or fixtures, discrimination,
retaliation, chain of command, and counseling, **including all amendments and revisions thereto**,
that exist and/or existed at any and all times between January 1, 2012 and October 31, 2020.

8

RESPONSE:   Objection.  Request No. 1 is overbroad in time and scope, vague and ambiguous, seeks information that is not relevant to the claims and defenses in this lawsuit, and requests information that may be protected from disclosure by the attorney-client privilege and/or work-product doctrine. In particular, it is not clear what is meant by "requirements" or "protocols."

Without waiving these objections, relevant, responsive, non-privileged documents will be produced subject to the protective order, where permitted by such order.

2.      All W-2s, 1099s, performance reviews, disciplinary actions, promotion-related documents, transfer-related documents, attendance records, licenses, certifications, training documents, job descriptions, job duties, job applications, resumes, job offer letters from Defendant, interview notes, stock grants and awards, calendars, and all documents pertaining to demotions, promotions, lateral transfers, severance agreements, termination, and unemployment compensation for Plaintiff; Kevin Reitmeier; any and all individuals who performed the duties of a Kirby Divisional Supervisor at any and all times between January 1, 2012 and October 31, 2020; and all individuals involved in the decision to terminate Plaintiff's contract.

RESPONSE:   Objection. Request No. 2 is overbroad in time and scope, vague and ambiguous, seeks information that is not relevant to the claims and defenses in this lawsuit, and requests information that may be protected from disclosure by the attorney-client privilege and/or work-product doctrine. In particular, the documents requested pertaining to Kevin Reitmeier, individuals who performed the duties of a Kirby Divisional Supervisor other than Plaintiff, and all individuals involved in the decision to terminate Plaintiff's Divisional Supervisor Agreement are not relevant to the claims and defenses in this lawsuit.

Without waiving these objections, Defendant states it is unaware of any IRS Form W-2s, IRS Form 1099s, disciplinary actions, promotion-related documents, transfer-related documents, attendance records, licenses, certifications, training documents, job descriptions, job duties, job applications, resumes, or job offer letters from Defendant to Plaintiff, or of any interview notes, stock grants and awards, or documents pertaining to demotions, promotions, lateral transfers, severance agreements, termination, and unemployment compensation for Plaintiff.  Further

answering, relevant, responsive, non-privileged documents pertaining to Plaintiff will be produced pursuant to the protective order, where permitted by such order.

3.     All documents between January 1, 2012 and October 31, 2020 pertaining to performance targets, performance goals, and actual performance of Plaintiff and all Kirby Divisional Supervisors.

RESPONSE:   Objection. Request No. 3 is overbroad in time and scope, vague and ambiguous, seeks information that is not relevant to the claims and defenses in this lawsuit, and requests information that may be protected from disclosure by the attorney-client privilege and/or work-product doctrine. In particular, documents pertaining to the performance or anyone other than Plaintiff is not relevant to the claims and defenses in this lawsuit.

Without waiving these objections, relevant, responsive, non-privileged documents pertaining to Plaintiff will be produced pursuant to the protective order, where permitted by such order.

4.     All electronically stored information and data from between January 1, 2013 and November 30, 2018—sent to, received by, and/or created by Plaintiff, Kevin Reitmeier, David Lamb, Michael Nichols, Halle Sminchek (sic), and the individuals involved in the decision to terminate Plaintiff's contract—that contain "national origin", "race", "retal!", "harass!" or "CBD," and any of the following ASCII strings:
agree!
arab!
best
brown
cannab!
compet!
contract!
daughter!
DSA
east!
effort!
fam!
hash!
hemp!
illegal!
illicit!
indust!
interrogat!
middle-east!
middle east!

middle!
non-compete!
oil!
phone!
polic!
pot
race!
report!
retail!
solicit!
store!
tele!
THC
travel!
weed

RESPONSE:  Objection.  Request No. 4 is overbroad in time and scope, unduly burdensome, vague and ambiguous, seeks information that is not relevant to the claims and defenses in this lawsuit, and requests information that may be protected from disclosure by the attorney-client privilege and/or work-product doctrine. In particular, it is not clear what is meant by "Plaintiff's contract".

Without waiving these objections, Defendant is willing to meet and confer to discuss the production of ESI with Plaintiff's counsel at a mutually agreeable time.

5.      All versions of the Divisional Supervisor Agreement, including all drafts, revisions, amendments, supplements, and updates thereto, that exist and/or existed at any and all times between January 1, 2012 and October 31, 2020.

RESPONSE:  Objection.  Request No. 5 is overbroad in time and scope, seeks information that is not relevant to the claims and defenses in this lawsuit, and requests information that may be protected from disclosure by the attorney-client privilege and/or work-product doctrine. In particular, Divisional Supervisor Agreements entered into with anyone other than Plaintiff and related documents are not relevant to the claims and defenses in this lawsuit.

Without waiving these objections, Plaintiff's Divisional Supervisor Agreement and amendments thereto will be produced.

11

6.     All versions of the Divisional Supervisor Handbook, including all drafts, revisions, amendments, supplements, and updates thereto, that exist and/or existed at any and all times between January 1, 2012 and October 31, 2020.

RESPONSE:   Objection.  Request No. 6 is overbroad in time and scope, seeks information that is not relevant to the claims and defenses in this lawsuit, and requests information that may be protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Without waiving these objections, relevant, responsive, non-privileged documents will be produced pursuant to the protective order, where permitted by such order.

7.     All documents, including, but not limited to, handbooks, memoranda, policies, procedures, and agreements, including all drafts, revisions, amendments, supplements, and updates thereto, that exist and/or existed at any and all times between January 1, 2012 and October 31, 2020, reflecting Defendants' requirements for Divisional Supervisors, including, but not limited to, hiring an administrator, renting office space, keeping a work calendar, travel, and maintaining office hours.

RESPONSE:   Objection.  Request No. 7 is overbroad in time and scope, seeks information that is not relevant to the claims and defenses in this lawsuit, and requests information that may be protected from disclosure by the attorney-client privilege and/or work-product doctrine. In particular, handbooks, policies, agreements, and any other documents pertaining to anyone other than Plaintiff are not relevant to the claims and defenses in this lawsuit.

Without waiving these objections, relevant, responsive, non-privileged documents will be produced pursuant to the protective order, where permitted by such order.

8.     All documents on which Defendant relied when deciding to classify its Divisional Supervisors as independent contractors.

RESPONSE:   Objection. Request No. 8 is overbroad in time and scope, seeks information that is not relevant to the claims and defenses in this lawsuit, and requests information that may be protected from disclosure by the attorney-client privilege and/or work-product doctrine. In particular, this request seeks documents pertaining to persons other than Plaintiff for an unspecified period of time.

9.      All documents discussing and/or reflecting how and/or why Defendant requires \ Kirby distributors to dissolve their Kirby Distributorship when entering into a Divisional Supervisor Agreement/contract with Scott Fetzer.

RESPONSE:   Objection. Request No. 9 is overbroad in time and scope, seeks information that is

not relevant to the claims and defenses in this lawsuit, and requests information that may be

protected from disclosure by the attorney-client privilege and/or work-product doctrine. In

particular, this request seeks documents pertaining to persons other than Plaintiff for an

unspecified period of time.

Without waiving these objections, relevant, responsive, non-privileged documents

regarding the requirement that Plaintiff dissolve his Kirby factory distributorship will be produced

pursuant to the protective order, where permitted by such order.

10.     All documents that explain, reference, and/or describe Defendant's policies, procedures, and protocols, at any and all times between January 1, 2012 and October 31, 2020, for reimbursing its employees for work-related expenses.

RESPONSE:   Objection. Request No. 10 is overbroad in time and scope, seeks information that

is not relevant to the claims and defenses in this lawsuit, and requests information that may be

protected from disclosure by the attorney-client privilege and/or work-product doctrine. In

particular, policies pertaining to the reimbursement of work-related expenses for employees are

not relevant to Plaintiff.

Without waiving these objections, Plaintiff's Divisional Supervisor Agreement and

amendments thereto and other documents pertaining the reimbursement of Plaintiff's expenses

will be produced pursuant to the protective order, where permitted by such order.

11.     All documents that explain, reference, and/or describe Defendant's procedures and protocol, at any and all times between January 1, 2012 and October 31, 2020, for reimbursing its Divisional Supervisors for work-related expenses.

RESPONSE:   Objection. Request No. 11 is overbroad in time and scope, vague and ambiguous,

seeks information that is not relevant to the claims and defenses in this lawsuit, and requests

information that may be protected from disclosure by the attorney-client privilege and/or work-product doctrine. In particular, it is not clear what is meant by "procedures and protocols" and the documents pertaining to the reimbursement of expenses to any person other than Plaintiff are not relevant to the claims in this lawsuit.

Without waiving these objections, relevant, responsive, non-privileged documents, to the extent any exist, will be produced pursuant to the protective order, where permitted by such order.

12.     All documents on which Defendant relied when evaluating Plaintiff's performance as a Divisional Supervisor at any and all times between January 1, 2012 and October 31, 2020.

RESPONSE:   Objection. Request No. 12 is overbroad in time and scope, seeks information that is not relevant to the claims and defenses in this lawsuit, and requests information that may be protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Without waiving these objections, relevant, responsive, non-privileged documents will be produced pursuant to the protective order, where permitted by such order.

13.     All documents on which Defendant relied when deciding to terminate Plaintiff's Divisional Supervisor Agreement.

RESPONSE:   Objection. Request No. 13 requests information that may be protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Without waiving these objections, responsive, non-privileged documents, to the extent any exist, will be produced pursuant to the protective order, where permitted by such order.

14.     All documents on which Defendant relies for its contention that Plaintiff breached his Divisional Supervisor Agreement.

RESPONSE:   Objection. Request No. 14 requests information that may be protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Without waiving these objections, responsive, non-privileged documents, to the extent any exist, will be produced pursuant to the protective order, where permitted by such order.

15.     All investigation-related documents dated at any and all times between January 1, 2012 and October 31, 2020, that pertain to investigations conducted by, and/or on behalf of, Defendant regarding Divisional Supervisors' involvement in an outside business, including statements taken, statements given, investigation protocol followed, complaint or report that initiated each such investigation, and investigation results.

RESPONSE:   Objection.  Request No. 15 is overbroad in time and scope, seeks information that

is not relevant to the claims and defenses in this lawsuit insofar as it seeks information about

anyone other than Plaintiff, and requests information that may be protected from disclosure by the

attorney-client privilege and/or work-product doctrine.

16.     All complaints, charges, allegations, and/or reports to and/or about Defendant regarding unfair restraint of trade, misclassification of employees, breach of Divisional Supervisor Agreements, unjust enrichment, and/or wrongful termination in violation of public policy, at any and all times between January 1, 2012 and October 31, 2020.

RESPONSE:   Objection.  Request No. 16 is overbroad in time and scope, seeks information that

is not relevant to the claims and defenses in this lawsuit, and requests information that may be

protected from disclosure by the attorney-client privilege and/or work-product doctrine. Request

No. 16 also seeks information that is equally available to Plaintiff from public sources.

Without waiving these objections, documents obtained from the Florida Commission on

Human Relations pertaining to Plaintiff will be produced.

17.     All of Defendant's document retention policies, including all drafts, revisions, amendments, supplements, and updates thereto, that exist and/or existed at any and all times between January 1, 2012 and October 31, 2020.

RESPONSE:   Objection. Request No. 17 is overbroad in time and scope, vague and ambiguous,

and seeks information that is not relevant to the claims and defenses in this lawsuit. In particular,

it is not clear what is meant by "retention policies". If Plaintiff wishes to clarify what is meant by

the phrase "retention policies", Defendant will re-visit its response to this request.

## REQUESTS FOR ADMISSION

1.     Admit or deny that Plaintiff was affiliated with Kirby and Scott Fetzer from February 1991 through October 8, 2018.

RESPONSE:   Objection. Defendant objects to Request for Admission No. 1 because it is vague and ambiguous. Indeed, the term "affiliated" is subject to more than one interpretation.

Without waiving these objections, Defendant denies this request.

2.      Admit or deny that, at all times between 1991 and October 8, 2018, Kirby has been a division of Scott Fetzer.

RESPONSE:   Admit.

3.      Admit or deny that, from January 2018 through October 2018, Kevin Reitmeier was Kirby's President of North American Field Sales.

RESPONSE:   Admit.

4.      Admit or deny that, from December 2017 through October 8, 2018, Kevin Reitmeier was Plaintiff's supervisor and/or manager.

RESPONSE:   Deny.

5.      Admit or deny that, from December 2017 through October 8, 2018, Kevin Reitmeier exercised control and decision-making power over the terms and conditions of Plaintiff's employment.

RESPONSE:   Deny.

6.      Admit or deny that, in 1991, Plaintiff began his employment with Kirby and/or Scott Fetzer as a Sales Representative selling Kirby vacuum cleaners.

RESPONSE:   Deny.

7.      Admit or deny that, in 2003, Plaintiff opened his own Kirby distributorship, selling products he purchased directly from Scott Fetzer's Factory Distributors.

RESPONSE:   Deny.

8.      Admit or deny that, in 2005, Defendant promoted Plaintiff to Division Manager.

RESPONSE:   Defendant admits Plaintiff contracted with Kirby in 2005 to serve as a Division Manager, and denies the remainder of this request.

9.      Admit or deny that, as Division Manager, Plaintiff maintained his own distributorship.

RESPONSE:   Objection. Defendant objects to Request for Admission No. 9 because it is vague and ambiguous. Indeed, it is unclear what "distributorship" means in the context of this request.

16

Without waiving these objections, Defendant admits Plaintiff contracted with Kirby as a Factory Distributor and a Division Manager for an overlapping period of time, and denies the remainder of this request.

10.     Admit or deny that, as Division Manager, Plaintiff maintained his own distributorship with inventory he purchased directly from Scott Fetzer.

RESPONSE:   Objection. Defendant objects to Request for Admission No. 10 because it is vague and ambiguous. Indeed, it is unclear what "distributorship" means in the context of this request.

Without waiving these objections, Defendant admits Plaintiff contracted with Kirby as a Factory Distributor and a Division Manager for an overlapping period of time and that Plaintiff purchased inventory from Kirby for his Kirby Factory Distributorship, and denies the remainder of this request.

11.     Admit or deny that, as Division Manager, Plaintiff maintained his own distributorship with inventory he purchased directly from Scott Fetzer, while managing approximately 20 Kirby vacuum stores and training Factory Distributors.

RESPONSE:   Objection. Defendant objects to Request for Admission No. 11 because it is vague and ambiguous. Indeed, it is unclear what "distributorship" and "stores" mean in the context of this request.

Without waiving these objections, Defendant admits Plaintiff contracted with Kirby as a Factory Distributor and a Division Manager for an overlapping period of time and Plaintiff purchased inventory from Kirby for his Factory Distributorship, and the territory Plaintiff managed in his role as a Division Manager included several Kirby factory distributorships. Further answering, Defendant has made reasonable inquiry regarding whether Plaintiff trained Kirby Factory Distributors as a Division Manager and the information known or readily obtainable by Defendant is insufficient to enable Defendant to admit or deny training allegedly provided by Plaintiff. Defendant also has made reasonable inquiry regarding the number of Kirby factory distributorships in his territory as a Division Manager and the information known or readily

17

obtainable by Defendant is insufficient to enable Defendant to admit or deny the exact number of

such distributorships. Defendant denies the remainder of this request.

12.     Admit or deny that, on or about November 1, 2010, Kirby and/or Scott Fetzer promoted Plaintiff to Divisional Supervisor.

RESPONSE:  Defendant admits Plaintiff contracted with Kirby to serve as a Divisional

Supervisor on November 1, 2010, and denies the remainder of this request.

13.     Admit or deny that, as Divisional Supervisor, Defendants required Plaintiff to sign a Divisional Supervisor Agreement ("DSA").

RESPONSE:  Admit.

14.     Admit or deny that neither Kirby nor Scott Fetzer offered Plaintiff an opportunity to add, remove, or change any terms of the DSA he was to sign if he wanted to be a Divisional Supervisor.

RESPONSE:  Deny.

15.     Admit or deny that Plaintiff did not add, remove, or change any terms of the DSA Defendants required him to sign if he wanted to be a Divisional Supervisor.

RESPONSE:  Objection. Defendant objects to Request for Admission No. 15 because it seeks

information regarding Plaintiff's own activities of which Plaintiff has personal knowledge.

Without waiving these objections, Defendant has made reasonable inquiry and the

information known or readily obtainable by Defendant is insufficient to enable Defendant to admit

or deny this request.

16.     Admit or deny that, according to the DSA, Defendants paid Plaintiff an annual base salary of $250,000.

RESPONSE:  Deny.

17.     Admit or deny that, according to the DSA, Defendants required Plaintiff to dissolve his distributorship.

RESPONSE:  Deny.

18.     Admit or deny that Plaintiff signed the DSA.

RESPONSE:  Admit.

19.     Admit or deny that, as Divisional Supervisor, Plaintiff supervised between 25 and 45 stores.

RESPONSE:   Objection. Defendant objects to Request for Admission No. 19 because it is vague and ambiguous. Indeed, it is unclear what "stores" means in the context of this request.

Without waiving these objections, Defendant has made reasonable inquiry and the information known or readily obtainable by Defendant is insufficient to enable Defendant to admit or deny the exact number of Kirby factory distributorships within Plaintiff's territory. Further answering, Defendant denies the remainder of this request.

20.     Admit or deny that, as a Divisional Supervisor, Kirby and/or Scott Fetzer classified Plaintiff as an independent contractor.

RESPONSE:   Admit.

21.     Admit or deny that the DSA classified Plaintiff as an independent contractor.

RESPONSE:   Objection. Defendant objects to Request for Admission No. 21 because it is vague and ambiguous. Indeed, it is unclear what "classified" means in the context of this request.

Without waiving these objections, Defendant admits the DSA describes Plaintiff as an "independent contractor, and denies the remainder of this request.

22.     Admit or deny that, when Plaintiff was a Divisional Supervisor, Kirby and/or Scott Fetzer required him to maintain an office outside his home.

RESPONSE:   Admit.

23.     Admit or deny that, when Plaintiff was a Divisional Supervisor, Kirby and/or Scott Fetzer required him to pay rent for his out-of-home office.

RESPONSE:   Deny.

24.     Admit or deny that, when Plaintiff was a Divisional Supervisor, Kirby and/or Scott Fetzer dictated the specific hours he was to keep his out-of-home office open for business.

RESPONSE:   Deny.

25.     Admit or deny that, When Plaintiff was a Divisional Supervisor, Kirby and/or Scott Fetzer dictate the specific hours he was to spend working his non-home office he was not traveling.

RESPONSE:   Deny.

26.     Admit or deny that, at least part of the time Plaintiff was a Divisional Supervisor, Kirby and/or Scott Fetzer required him to hire and employ an administrator.

RESPONSE:   Deny.

27.     Admit or deny that, when Plaintiff was a Divisional Supervisor, Kirby and/or Scott Fetzer required him to pay his administrator's wages.

RESPONSE:   Deny.

28.     Admit or deny that, when Plaintiff was a Divisional Supervisor, Kirby and/or Scott Fetzer required him to pay employer-mandated payroll taxes for his administrator.

RESPONSE:   Deny.

29.     Admit or deny that, when Plaintiff was a Divisional Supervisor, Kirby and/or Scott Fetzer did not withhold any taxes from his wages.

RESPONSE:   Objection. Defendant objects to Request for Admission No. 29 because it presumes that Plaintiff was an employee of either Scott Fetzer or Kirby.

Without waiving these objections, Defendant admits neither Scott Fetzer nor Kirby withheld any taxes from any wages because neither Scott Fetzer nor Kirby paid Plaintiff wages when Plaintiff was a Divisional Supervisor.

30.     Admit or deny that, when Plaintiff was a Divisional Supervisor, Kirby and/or Scott Fetzer did not pay any state, federal, or local taxes in connection with his employment.

RESPONSE:   Objection. Defendant objects to Request for Admission No. 30 because it presumes that Plaintiff was an employee of either Scott Fetzer or Kirby.

Without waiving these objections, Defendant admits neither Scott Fetzer nor Kirby paid any state, federal, or local taxes in connection with Plaintiff's purported employment because Plaintiff was never an employee of Scott Fetzer or Kirby.

31.     Admit or deny that, when Plaintiff was a Divisional Supervisor, Kirby and/or Scott Fetzer did not pay into any state or federal unemployment compensation funds in connection with his employment.

RESPONSE:   Objection. Defendant objects to Request for Admission No. 31 because it presumes that Plaintiff was either an employee of Scott Fetzer or Kirby.

20

Without waiving these objections, Defendant admits neither Scott Fetzer nor Kirby paid into any state or federal unemployment compensation funds in connection with Plaintiff's purported employment because Plaintiff was never an employee of Scott Fetzer or Kirby.

32.     Admit or deny that, when Plaintiff was a Divisional Supervisor, Kirby and/or Scott Fetzer required him to organize and lead rallies for sales representatives; (sic)

RESPONSE:   Objection. Defendant objects to Request for Admission No. 32 because it is vague and ambiguous. Indeed, the phrase "sales representatives" is subject to more than one interpretation.

Without waiving these objections, Defendant admits Plaintiff was required to organize and lead rallies for Kirby Factor Distributers and dealers.

33.     Admit or deny that, when Plaintiff was a Divisional Supervisor, Kirby and/or Scott Fetzer required him to pay all costs associated with his rallies for sales representatives.

RESPONSE:   Deny.

34.     Admit or deny that, when Plaintiff was a Divisional Supervisor, Kirby and/or Scott Fetzer required him to organize and lead meetings with sales representatives.

RESPONSE:   Objection. Defendant objects to Request for Admission No. 34 because it is vague and ambiguous. Indeed, the phrase "sales representatives" is subject to more than one interpretation.

Without waiving these objections, Defendant denies this request.

35.     Admit or deny that, when Plaintiff was a Divisional Supervisor, Kirby and/or Scott Fetzer required him to visit each store he supervised at least once every three months.

RESPONSE:   Objection. Defendant objects to Request for Admission No. 35 because it is vague and ambiguous. Indeed, the term "store" is subject to more than one interpretation.

Without waiving these objections, Defendant denies this request.

36.     Admit or deny that, when Plaintiff was a Divisional Supervisor, Kirby and/or Scott Fetzer required him to pay all costs associated with meetings and dinners with field distributors.

RESPONSE:   Objection. Defendant objects to Request for Admission No. 36 because it is vague and ambiguous. Indeed, the phrase "field distributors" is subject to more than one interpretation.

Without waiving these objections, Defendant denies this request.

37.     Admit or deny that, when Plaintiff was a Divisional Supervisor, Kirby and/or Scott Fetzer required him to organize and lead training seminars for sales representatives.

RESPONSE:   Objection. Defendant objects to Request for Admission No. 37 because it is vague and ambiguous. Indeed, the phrase "sales representatives" is subject to more than one interpretation.

Without waiving these objections, Defendant denies this request.

38.     Admit or deny that, when Plaintiff was a Divisional Supervisor, Kirby and/or Scott Fetzer required him to pay all costs associated with his training of sales representatives.

RESPONSE:   Objection. Defendant objects to Request for Admission No. 38 is vague and ambiguous. Indeed, the phrase "sales representatives" is subject to more than one interpretation.

Without waiving these objections, Defendant denies this request.

39.     Admit or deny that, when Plaintiff was a Divisional Supervisor, Kirby and/or Scott Fetzer required Plaintiff to travel from Florida to Cleveland four times per year for Divisional Supervisor meetings.

RESPONSE:   Defendant admits Plaintiff was required to travel to Cleveland for Divisional Supervisor meetings that typically occurred four times per year, and denies Plaintiff was required to travel from Florida.

40.     Admit or deny that, beginning in July 2016, Kirby and/or Scott Fetzer required him to pay for all work-related travel expenses he incurred.

RESPONSE:   Deny.

41.     Admit or deny that, when Plaintiff was a Divisional Supervisor, Kirby and/or Scott Fetzer required him to document his travel time.

RESPONSE:   Objection. Defendant objects to Request for Admission No. 41 because it is vague and ambiguous. Indeed, the term "document" is subject to more than one interpretation.

22

Without waiving these objections, Defendant admits Plaintiff was required to account for his time spent on travel as a Divisional Supervisor.

42.     Admit or deny that, when Plaintiff was a Divisional Supervisor, Kirby and/or Scott Fetzer required him to submit documentation, and/or a report, of his travel time to Kirby on a monthly basis.

RESPONSE:  Admit.

43.     Admit or deny that, when Plaintiff was a Divisional Supervisor, Kirby and/or Scott Fetzer required him, on a monthly basis, to email his calendar for the following month to his manager for his manager's review and/or approval.

RESPONSE:  Deny.

44.     Admit or deny that, from 2005, when Plaintiff became a Divisional manager, until the end of December 2017, Plaintiff reported directly to Kirby's then-President of North American Field Sales, Bud Miley.

RESPONSE:  Objection. Defendant objects to Request for Admission No. 44 because it is vague and ambiguous. Indeed, the term "reported" is subject to more than one interpretation.

Without waiving these objections, Defendant denies this request.

45.     Admit or deny that, from 2005, when Plaintiff became a Divisional Manager, until the end of December 2017, while working under Bud Miley's supervisions, Plaintiff worked without incident.

RESPONSE:  Objection. Defendant objects to Request for Admission No. 45 because it is vague and ambiguous. Indeed, the phrase "without incident" is subject to more than one interpretation.

Without waiving these objections, Defendant denies this request.

46.     Admit or deny that, in January 2018, Bud Miley resigned as President of North American Field Sales.

RESPONSE:  Deny.

47.     Admit or deny that, in January 2018, Scott Fetzer hired Kevin Reitmeier to replace Bud Miley as President of North American Field Sales.

RESPONSE:  Defendant admits in January 2018, Kevin Reitmeier replaced Miley and held the role of President of North American Field Sales, and denies the remainder of this request.

48.    Admit or deny that, in January 2018, almost immediately after becoming Plaintiff's supervisor, Defendant Reitmeier began harassing Plaintiff.

RESPONSE:  Deny.

49.    Admit or deny that, in January 2018, almost immediately after becoming Plaintiff's supervisor, Defendant Reitmeier began harassing Plaintiff by calling him between 6:00 AM and 7:00 AM nearly every morning.

RESPONSE:  Objection. Defendant objects to Request for Admission No. 49 because it characterizes Kevin Reitmeier as a "Defendant" when he is not a named party in this lawsuit.

Without waiving these objections, upon information and belief, Defendant admits Reitmeier communicated regularly with Plaintiff regarding legitimate business matters, which sometimes included early morning telephone calls and text messages, and denies the remainder of this request.

50.    Admit or deny that, in January 2018, almost immediately after becoming Plaintiff's supervisor, Defendant Reitmeier began harassing Plaintiff by calling him between 6:00 AM and 7:00 AM nearly every morning.

RESPONSE:  Objection. Defendant objects to Request for Admission No. 50 because it characterizes Kevin Reitmeier as a "Defendant" when he is not a named party in this lawsuit. This request is also duplicative of Request for Admission No. 49.

Without waiving these objections, upon information and belief, Defendant admits Reitmeier communicated regularly with Plaintiff regarding legitimate business matters, which sometimes included early morning telephone calls and text messages, and denies the remainder of this request.

51.    Admit or deny that, in January 2018, almost immediately after becoming Plaintiff's supervisor, Defendant Reitmeier began harassing Plaintiff by sending him rude, demanding, and bullying txt messages between 6:00 AM and 7:00 AM nearly every morning.

RESPONSE:  Objection. Defendant objects to Request for Admission No. 51 because it characterizes Kevin Reitmeier as a "Defendant" when he is not a named party in this lawsuit.

Without waiving these objections, upon information and belief, Defendant admits Reitmeier communicated regularly with Plaintiff regarding legitimate business matters, which sometimes included early morning telephone calls and text messages, and denies the remainder of this request.

52.     Admit or deny that, in January 2018, almost immediately after becoming Plaintiff's supervisor, Defendant Reitmeier began harassing Plaintiff by demanding to know his whereabouts and activities at all times.

RESPONSE:  Objection. Defendant objects to Request for Admission No. 52 because it characterizes Kevin Reitmeier as a "Defendant" when he is not a named party in this lawsuit.

Without waiving these objections, upon information and belief, Defendant admits Reitmeier communicated regularly with Plaintiff regarding legitimate business matters, including Plaintiff's activities, and denies the remainder of this request.

53.     Admit or deny that Defendant Reitmeier did not harass any non-Middle-Eastern Divisional Supervisors with excessive early morning telephone calls, demands to know their whereabouts, and/or rude, demeaning, or bullying text messages.

RESPONSE:  Objection. Defendant objects to Request for Admission No. 53 because it characterizes Kevin Reitmeier as a "Defendant" when he is not a named party in this lawsuit.

Without waiving these objections, upon information and belief, Defendant admits Reitmeier communicated regularly with Plaintiff and other Divisional Supervisors, sometimes in early morning telephone calls and text messages, regarding legitimate business matters, including their activities. Defendant further admits Reitmeier did not harass any Divisional Supervisors, including non-Middle-Eastern Divisional Supervisors. Defendant denies the remainder of this request.

54.     Admit or deny that, on or about June 27, 2018, Defendant Reitmeier interrogated Plaintiff for more than an hour regarding his daughter's CBD store.

RESPONSE:  Objection. Defendant objects to Request for Admission No. 54 because it characterizes Kevin Reitmeier as a "Defendant" when he is not a named party in this lawsuit.

Without waiving these objections, Defendant has made reasonable inquiry and the information known or readily obtainable by Defendant is insufficient to enable Defendant to admit or deny this request.

55.     Admit or deny that, on or about June 27, 2018, while interrogating Plaintiff for more than an hour regarding his daughter's CBD store, Defendant Reitmeier asked whether Plaintiff had loaned his daughter money for the CBD store.

RESPONSE:  Objection. Defendant objects to Request for Admission No. 55 because it characterizes Kevin Reitmeier as a "Defendant" when he is not a named party in this lawsuit.

Without waiving these objections, Defendant has made reasonable inquiry and the information known or readily obtainable by Defendant is insufficient to enable Defendant to admit or deny this request.

56.     Admit or deny that, on or about June 27, 2018, while interrogating Plaintiff for more than an hour regarding his daughter's CBD store, Defendant Reitmeier asked whether Plaintiff earned income from his daughter's CBD store.

RESPONSE:  Objection. Defendant objects to Request for Admission No. 56 because it characterizes Kevin Reitmeier as a "Defendant" when he is not a named party in this lawsuit.

Without waiving these objections, Defendant has made reasonable inquiry and the information known or readily obtainable by Defendant is insufficient to enable Defendant to admit or deny this request.

57.     Admit or deny that, on or about June 29, 2018, David Lamb, Scott Fetzer's Vice President and General Counsel, interrogiated (sic) Plaintiff by phone regarding his daugther's (sic) CBD store.

RESPONSE:   Deny.

58.     Admit or deny that, on or about June 29, 2018, while interrogating Plaintiff by phone regarding his daughter's CBD store, David Lamb, Scott Fetzer's Vice President and General Counsel, expressed concern that the CBD store was precluding Plaintiff from fulfilling the DSA's "best efforts" provision.

RESPONSE:   Deny.

59.     Admit or deny that, on or about June 29, 2018, while interrogating Plaintiff by phone regarding his daughter's CBD store, David Lamb, Scott Fetzer's Vice President and General

26

Counsel, demanded Plaintiff provide him with information regarding other Kirby/Scott Fetzer employee's CBD involvement.

RESPONSE:  Deny.

60.    Admit or deny that, on or about June 29, 2018, while David Lamb, Scott Fetzer's Vice President and General Counsel, interrogated Plaintiff by phone regarding his daughter's CBD store, Plaintiff reported to Lamb that Defendant Reitmeier was treating him worse than his counterparts who were not of middle eastern descent.

RESPONSE:  Objection. Defendant objects to Request for Admission No. 60 because it

characterizes Kevin Reitmeier as a "Defendant" when he is not a named party in this lawsuit.

Without waiving these objections, Defendant admits Plaintiff discussed with Lamb his

alleged concern about purportedly being singled out by Reitmeier, and denies the remainder of this

request.

61.    Admit or deny that, on or about June 29, 2018, while David Lamb, Scott Fetzer's Vice President and General Counsel, interrogated Plaintiff by phone regarding his daughter's CBD store, Plaintiff reported to Lamb that Defendant Reitmeier was harassing him based on based on his National Origin.

RESPONSE:  Objection. Defendant objects to Request for Admission No. 61 because it

characterizes Kevin Reitmeier as a "Defendant" when he is not a named party in this lawsuit.

Without waiving these objections, Defendant denies this request.

62.    Admit or deny that, after David Lamb's June 29, 2018 call with Plaintiff regarding Plaintiff's daughter's CBD store in which Plaintiff reported Defendant Reitmeier was harassing him based on his national origin, neither Lamb, nor anyone else from Kirby or Scott Fetzer initiated an investigation into Plaintiff's report.

RESPONSE:  Objection. Defendant objects to Request for Admission No. 62 because it

characterizes Kevin Reitmeier as a "Defendant" when he is not a named party in this lawsuit.

Without waiving these objections, Defendant admits an investigation into Plaintiff's

purported national origin harassment report was not initiated because Plaintiff made no such

report, and denies the remainder of this request.

63.    Admit or deny that, after David Lamb's June 29, 2018 call with Plaintiff regarding Plaintiff's daughter's CBD store in which Plaintiff reported and opposed Defendant Reitmeier was

harassing him based on his national origin, neither Lamb, nor anyone else from Kirby or Scott Fetzer took prompt or effective remedial action to end the harassment and/or discrimination.

RESPONSE:  Objection. Defendant objects to Request for Admission No. 63 because it

characterizes Kevin Reitmeier as a "Defendant" when he is not a named party in this lawsuit.

Without waiving these objections, Defendant admits remedial action to end alleged

harassment or discrimination based on Plaintiff's national origin was not taken because Plaintiff

made no reports of unlawful harassment or discrimination, and denies the remainder of this

request.

64.     Admit or deny that, after David Lamb's June 29, 2018 call with Plaintiff regarding Plaintiff's daughter's CBD store in which Plaintiff reported and opposed Defendant Reitmeier was harassing him based on his national origin, Defendant Reitemer (sic) increased the frequency of his phone calls to Plaintiff.

RESPONSE:  Objection. Defendant objects to Request for Admission No. 64 because it

characterizes Kevin Reitmeier as a "Defendant" when he is not a named party in this lawsuit.

Without waiving these objections, Defendant denies this request.

65.     Admit or deny that, after David Lamb's June 29, 2018 call with Plaintiff regarding Plaintiff's daughter's CBD store in which Plaintiff reported and opposed Defendant Reitmeier was harassing him based on his national origin, Defendant Reitemer (sic) increased the frequency of his text messages to Plaintiff to Plaintiff.

RESPONSE:  Objection. Defendant objects to Request for Admission No. 65 because it

characterizes Kevin Reitmeier as a "Defendant" when he is not a named party in this lawsuit.

Without waiving these objections, Defendant denies this request.

66.     Admit or deny that, after David Lamb's June 29, 2018 call with Plaintiff regarding Plaintiff's daughter's CBD store in which Plaintiff reported and opposed Defendant Reitmeier was harassing him based on his national origin, Defendant Reitemer (sic) increased the frequency of his phone calls and text messages to Plaintiff and began increasing his demands of Plaintiff.

RESPONSE:  Objection. Defendant objects to Request for Admission No. 66 because it

characterizes Kevin Reitmeier as a "Defendant" when he is not a named party in this lawsuit.

Without waiving these objections, Defendant denies this request.

67.     Admit or deny that, after David Lamb's June 29, 2018 call with Plaintiff regarding Plaintiff's daughter's CBD store in which Plaintiff reported and opposed Defendant Reitmeier was harassing him based on his national origin, Defendant Reitemer (sic) began requiring Plaintiff to re-compile and resubmit numerous extensive reports that Plaintiff had already completed and submitted.

RESPONSE:  Objection. Defendant objects to Request for Admission No. 67 because it

characterizes Kevin Reitmeier as a "Defendant" when he is not a named party in this lawsuit.

Without waiving these objections, Defendant denies this request.

68.     Admit or deny that, on or about July 12, 2018, Plaintiff attended a meeting in Cleveland, Ohio, during which Defendant Reitmeier told him that he wanted all distributors and supervisors to begin informing him of other distributors and supervisors who were involved in the CBD industry.

RESPONSE:  Objection. Defendant objects to Request for Admission No. 68 because it

characterizes Kevin Reitmeier as a "Defendant" when he is not a named party in this lawsuit. In

addition, Defendant objects to this request because it is vague and ambiguous. Indeed, the phrase

"distributors and supervisors" is subject to more than one interpretation.

Without waiving these objections, Defendant has made reasonable inquiry regarding what

Reitmeier said during the July 12, 2018 meeting and the information known or readily obtainable

by Defendant is insufficient to enable Defendant to admit or deny this request. Further answering,

based on information and belief, Defendant admits Plaintiff attended a meeting in Cleveland, Ohio

on July 12, 2018.

69.     Admit or deny that, on or about July 12, 2018, upon conclusion of the meeting in Cleveland, Ohio, during which Defendant Reitmeier told him that he wanted all distributors and supervisors to begin informing him of other distributors and supervisors who were involved in the CBD industry, Defendant Reitmeier interrogated Plaintiff by phone for approximately 45 minutes regarding various employees Reitmeier believed were involved in the CBD industry.

RESPONSE:  Objection. Defendant objects to Request for Admission No. 69 because it

characterizes Kevin Reitmeier as a "Defendant" when he is not a named party in this lawsuit. In

addition, Defendant objects to this request because it is vague and ambiguous. Indeed, the phrase

"distributors and supervisors" are subject to more than one interpretation.

Without waiving these objections, Defendant has made reasonable inquiry regarding Reitmeier's communications with Plaintiff on July 12, 2018, following the meeting in Cleveland, Ohio, and the information known or readily obtainable by Defendant is insufficient to enable Defendant to admit or deny this request. Further answering, Defendant denies Divisional Supervisors or Factory Distributors are employees of either Scott Fetzer or Kirby, and denies the remainder of this request.

70.    Admit or deny that, on or about July 12, 2018, during Defendant Reitmeier's approximately 45-minute phone call with Plaintiff regarding various employees Reitmeier believed were involved in the CBD industry, Plaintiff responded that he felt uncomfortable discussing distributor's and divisional supervisor's involvement in the CBD industry.

RESPONSE:  Objection. Defendant objects to Request for Admission No. 70 because it characterizes Kevin Reitmeier as a "Defendant" when he is not a named party in this lawsuit. In addition, Defendant objects to this request because it seeks information regarding Plaintiff's own activities of which Plaintiff has personal knowledge.

Without waiving these objections, Defendant has made reasonable inquiry regarding Plaintiff's communications with Reitmeier on July 12, 2018 and the information known or readily obtainable by Defendant is insufficient to enable Defendant to admit or deny this request. Further answering, Defendant denies Divisional Supervisors or Factory Distributors are employees of either Scott Fetzer or Kirby, and denies the remainder of this request.

71.    Admit or deny that, Defendant Reitmeier did not demand that non-Middle Eastern Divisonal (sic) Supervisors or Distributors disclose information regarding other employees involvement in the CBD industry.

RESPONSE:  Objection. Defendant objects to Request for Admission No. 71 because it characterizes Kevin Reitmeier as a "Defendant" when he is not a named party in this lawsuit. In addition, Defendant objects to this request because it is vague and ambiguous. Indeed, the term "Distributors" is subject to more than one interpretation.

Without waiving these objections, Defendant has made reasonable inquiry and the information known or readily obtainable by Defendant is insufficient to enable Defendant to admit or deny this request. Further answering, Defendant denies Divisional Supervisors or Factory Distributors are employees of either Scott Fetzer or Kirby.

72.    Admit or deny that, Defendant Reitmeier did subject that non-Middle Eastern Divisonal (sic) Supervisors or Distributors to incessant phone calls regarding other employees' involvement in the CBD industry.

RESPONSE:  Objection. Defendant objects to Request for Admission No. 72 because it characterizes Kevin Reitmeier as a "Defendant" when he is not a named party in this lawsuit. In addition, Defendant objects to this request because it is vague and ambiguous. Indeed, this request does not make sense as written.

Without waiving these objections, Defendant admits Reitmeier did not subject any Divisional Supervisors or Factory Distributors to incessant phone calls regarding anyone's involvement in the CBD industry. Further answering, Defendant denies Divisional Supervisors or Factory Distributors are employees of Scott Fetzer or Kirby.

73.    Admit or deny that, Defendant Reitmeier did subject that non-Middle Eastern Divisonal (sic) Supervisors or Distributors to incessant text messages regarding other employees' involvement in the CBD industry.

RESPONSE:  Objection. Defendant objects to Request for Admission No. 73 because it characterizes Kevin Reitmeier as a "Defendant" when he is not a named party in this lawsuit. In addition, Defendant objects to this request because it is vague and ambiguous. Indeed, this request does not make sense as written.

Without waiving these objections, Defendant admits Reitmeier did not subject any Divisional Supervisors or Factory Distributors to incessant text messages regarding anyone's involvement in the CBD industry. Further answering, Defendant denies Divisional Supervisors or Factory Distributors are employees of Scott Fetzer or Kirby.

74.    Admit or deny that, Defendant Reitmeier did subject that non-Middle Eastern Divisonal (sic) Supervisors or Distributors to incessant interrogations regarding other employees' involvement in the CBD industry.

RESPONSE:  Objection. Defendant objects to Request for Admission No. 74 because it characterizes Kevin Reitmeier as a "Defendant" when he is not a named party in this lawsuit. In addition, Defendant objects to this request because it is vague and ambiguous. Indeed, this request does not make sense as written.

Without waiving these objections, Defendant admits Reitmeier did not subject any Divisional Supervisors or Factory Distributors to incessant interrogations regarding anyone's involvement in the CBD industry. Further answering, Defendant denies Divisional Supervisors or Factory Distributors are employees of Scott Fetzer or Kirby.

75.    Admit or deny that, soon after Plaintiff's July 12, 2018 conversations with Defendant Reitmeier, Plaintiff reiterated to David Lamb that Defendant Reitmeier was harassing him based on his national origin.

RESPONSE:  Objection. Defendant objects to Request for Admission No. 75 because it characterizes Kevin Reitmeier as a "Defendant" when he is not a named party in this lawsuit.

Without waiving these objections, Defendant denies this request.

76.    Admit or deny that, soon after Plaintiff's July 12, 2018 conversations with Defendant Reitmeier, Plaintiff reiterated to David Lamb that Defendant Reitmeier was discriminating against him based on his national origin.

RESPONSE:  Objection. Defendant objects to Request for Admission No. 76 because it characterizes Kevin Reitmeier as a "Defendant" when he is not a named party in this lawsuit. In addition, Defendant objects to this request because it seeks information regarding Plaintiff's own activities of which Plaintiff has personal knowledge.

Without waiving these objections, Defendant has made reasonable inquiry and the information known or readily obtainable by Defendant regarding Plaintiff's communications with Reitmeier on July 12, 2018 is insufficient to enable Defendant to admit or deny this request. Further answering, Defendant denies the remainder of this request.

77.    Admit or deny that, after Plaintiff reiterated to David Lamb that Defendant Reitmeier was harassing him based on his national origin, neither Lamb nor anyone else from Kirby or Scot (sic) Fetzer, initiated an investigation regarding the harassment and discrimination.

RESPONSE:  Objection. Defendant objects to Request for Admission No. 77 because it

characterizes Kevin Reitmeier as a "Defendant" when he is not a named party in this lawsuit. In

addition, Defendant objects to this request because it seeks information regarding Plaintiff's own

activities of which Plaintiff has personal knowledge.

Without waiving these objections, Defendant denies Plaintiff "reiterated to David Lamb

that Defendant Reitmeier was harassing him based on his national origin" and admits "neither

Lamb nor anyone else from Kirby or Scot (sic) Fetzer, initiated an investigation regarding the

harassment and discrimination" because Plaintiff did not make any complaints about harassment

or discrimination related to his national origin.

78.    Admit or deny that, after Plaintiff reiterated to David Lamb that Defendant Reitmeier was harassing him based on his national origin, neither Lamb nor anyone else from Kirby or Scot (sic) Fetzer, took prompt or effective remedial action to end the harassment and discrimination.

RESPONSE:  Objection. Defendant objects to Request for Admission No. 78 because it

characterizes Kevin Reitmeier as a "Defendant" when he is not a named party in this lawsuit.

Without waiving these objections, Defendant denies Plaintiff "reiterated to David Lamb

that Defendant Reitmeier was harassing him based on his national origin" and admits "neither

Lamb nor anyone else from Kirby or Scot (sic) Fetzer, took prompt or effective remedial action to

end the harassment and discrimination" because there was no harassment or discrimination to end.

79.    Admit or deny that, on March 5, 2020, Daniel Blalock terminated Plaintiff's employment, claiming that Plaintiff violated his contract and was "not using his best efforts."

RESPONSE:  Deny.

80.    Admit or deny that, during the week of August 20, 2018, Defendant Reitmeier traveled with Plaintiff to visit four of the Factory Distributors Plaintiff supervised.

33

RESPONSE:  Objection. Defendant objects to Request for Admission No. 80 because it characterizes Kevin Reitmeier as a "Defendant" when he is not a named party in this lawsuit.

Without waiving these objections, Defendant admits Reitmeier traveled with Plaintiff to visit four Factory Distributors within Plaintiff's territory, and denies the remainder of this request.

81.    Admit or deny that, during the week of August 20, 2018, while Defendant Reitmeier traveled with Plaintiff to visit four of the Factory Distributors Plaintiff supervised, Defendant Reitmeier spent most of the time questioning Plaintiff distributors and supervisors who were involved in the CBD industry.

RESPONSE:  Objection. Defendant objects to Request for Admission No. 81 because it characterizes Kevin Reitmeier as a "Defendant" when he is not a named party in this lawsuit. In addition, Defendant objects to this request because it is vague and ambiguous. Indeed, the phrase "distributors and supervisors" are subject to more than one interpretation.

Without waiving these objections, Defendant admits Reitmeier traveled with Plaintiff to visit four Factory Distributors in Plaintiff's territory during the week of August 20, 2018. Further answering, Defendant has made reasonable inquiry regarding Reitmeier's communications during his trip the week of August 20, 2018 and the information known or readily obtainable by Defendant is insufficient to enable Defendant to admit or deny this request as to those communications. Defendant denies the remainder of this request.

82.    Admit or deny that, during the week of August 20, 2018, while Defendant Reitmeier traveled with Plaintiff to visit four of the Factory Distributors Plaintiff supervised, none of the Factory Distributors were of Middle Eastern descent.

RESPONSE:  Objection. Defendant objects to Request for Admission No. 82 because it characterizes Kevin Reitmeier as a "Defendant" when he is not a named party in this lawsuit.

Without waiving these objections, Defendant admits Reitmeier traveled with Plaintiff to visit four Factory Distributors in Plaintiff's territory during the week of August 20, 2018. Further answering, Defendant has made reasonable inquiry regarding the national origin of the four Factory Distributors and the information known or readily obtainable by Defendant is insufficient

to enable Defendant to admit or deny this request as to their respective national origins. Defendant denies the remainder of this request.

83. Admit or deny that, during the week of August 20, 2018, while Defendant Reitmeier traveled with Plaintiff to visit four of the Factory Distributors Plaintiff supervised, 3 of the 4 Factory Distributors owned a CBD store.

RESPONSE: Objection. Defendant objects to Request for Admission No. 83 because it characterizes Kevin Reitmeier as a "Defendant" when he is not a named party in this lawsuit.

Without waiving these objections, Defendant admits Reitmeier traveled with Plaintiff to visit four Factory Distributors in Plaintiff's territory during the week of August 20, 2018. Further answering, Defendant has made reasonable inquiry regarding whether three of the four Factory Distributors owned a CBD store and the information known or readily obtainable by Defendant is insufficient to enable Defendant to admit or deny this request as to whether any of the four Factory Distributors owned a CBD store. Defendant denies the remainder of this request.

84. Admit or deny that, during the week of August 20, 2018, while Defendant Reitmeier traveled with Plaintiff to visit four of the Factory Distributors Plaintiff supervised, Defendant Reitmeier did not think it was problematic that 3 of the 4 Factory Distributors owned a CBD store.

RESPONSE: Objection. Defendant objects to Request for Admission No. 84 because it characterizes Kevin Reitmeier as a "Defendant" when he is not a named party in this lawsuit.

Without waiving these objections, Defendant admits Reitmeier traveled with Plaintiff to visit four Factory Distributors in Plaintiff's territory during the week of August 20, 2018. Further answering, Defendant has made reasonable inquiry regarding whether Reitmeier thought that "it was problematic that 3 of the 4 Factory Distributors owned a CBD store" and the information known or readily obtainable by Defendant is insufficient to enable Defendant to admit or deny this request as to Reitmeier's thoughts. Defendant denies the remainder of this request.

85. Admit or deny that, on September 17, 2018, Defendant Reitmeier asked Plaintiff to resign in exchange for a month of severance pay.

RESPONSE:  Objection. Defendant objects to Request for Admission No. 85 because it characterizes Kevin Reitmeier as a "Defendant" when he is not a named party in this lawsuit.

Without waiving these objections, Defendant has made reasonable inquiry and the information known or readily obtainable by Defendant is insufficient to enable Defendant to admit or deny this request.

86.    Admit or deny that, on or about September 27, 2018, Defendants received a letter from attorney Caryn M. Groedel informing them that she had been retained to represent Plaintiff.

RESPONSE:  Deny.

87.    Admit or deny that, on or about September 27, 2018, Defendants received a letter from attorney Caryn M. Groedel informing them of what she perceived to be Defendants' various violations of the law.

RESPONSE:  Deny.

88.    Admit or deny that, three weeks after receiving a letter from attorney Caryn M. Groedel, Defendants terminated Plaintiff's employment.

RESPONSE:  Deny.

89.    Admit or deny that, Defendants terminated Plaintiff's employment for allegedly breaching the DSA.

RESPONSE:  Defendant admits Plaintiff breached the DSA, and denies the remainder of this request.

90.    Admit or deny that, at the time Defendants terminated Plaintiff's employment, Defendants did not seek legal action against Plaintiff for allegedly breaching the DSA.

RESPONSE:  Defendant admits no legal action was sought against Plaintiff at the time Plaintiff breached the DSA. Defendant denies the remainder of this request.

91.    Admit or deny that, on or about August 18, 2020, Defendants file a Counterclaim against Plaintiff.

RESPONSE:  Deny.

92.    Admit or deny that, on or about August 18, 2020, Defendants filed a Counterclaim against Plaintiff for allegedly breaching his DSA.

RESPONSE:  Deny.

36

93.     Admit or deny that, on or about August 18, 2020, Defendants filed a Counterclaim against Plaintiff for allegedly breaching his DSA, and make no other allegations.

RESPONSE:  Deny.

94.     Admit or deny that Defendants brought legal action against Plaintiff for allegedly breaching his DSA six months after he filed a Complaint.

RESPONSE:  Deny.

95.     Admit or deny that Defendants brought legal action against Plaintiff for allegedly breaching his DSA approximately 2 years after terminating his employment.

RESPONSE:  Deny.

Respectfully submitted,

/s/*Morena L. Carer*
Ryan J. Morley (0077452)
Morena L. Carter (0088825)
LITTLER MENDELSON, P.C.
Key Tower
127 Public Square, Suite 1600
Cleveland, OH  44114-9612
Telephone: 216.696.7600
Facsimile:  216.696.2038
Email: rmorley@littler.com
           mlcarter@littler.com

Attorneys for Defendants
The Kirby Company and The Scott Fetzer Company

## CERTIFICATE OF SERVICE

On this 14th day of July 2021, I hereby certify that a true and correct copy of the foregoing was served via electronic mail upon the following:

Caryn M. Groedel
cgroedel@groedel-law.com
CARYN GROEDEL & ASSOCIATES CO., LPA
31340 Solon Road, Suite 27
Cleveland, OH  44139

/s/*Morena L. Carter*
One of the Attorneys for Defendants,
The Kirby Company and The Scott Fetzer Company



Littler Mendelson P.C.
Key Tower
127 Public Square
Suite 1600
Cleveland, OH  44114-9612

Morena L. Carter
216.623.6059 direct
216.696.7600 main
216.803.5235 fax
mlcarter@littler.com

August 16, 2021

**VIA E-MAIL - CGROEDEL@GROEDEL-LAW.COM**

Caryn M. Groedel, Esq.
CARYN GROEDEL & ASSOCIATES, CO., L.P.A.
31340 Solon Road, Suite 27
Cleveland, Ohio 44139

Re:     Ibrahim Sharqawi v. The Kirby Company, et al.
        United States District Court for the Northern District
        of Ohio Case No. 1:20-cv-00271-PAB

Dear Caryn:

On May 21, May 25, and August 6, 2021, we received Plaintiff's Answers to Kirby's First Set of Interrogatories, Responses to Kirby's First Set of Requests for Production of Documents, and Amended Responses to Kirby's First Set of Interrogatories, respectively. We have identified several deficiencies in these answers and responses that require correction. We would like to informally resolve the following deficiencies with you, if possible. Please promptly provide the requested information and documents described below **no later than August 25, 2021**. Please contact us if you wish to meet and confer regarding this letter. If we do not hear from you and you do not fully respond to Defendant's discovery requests by August 25, 2021, we will have no choice but to involve the Court.

We are available to confer with you pursuant to Appendix K of the Local Rules. Please advise if you are available on Wednesday, August 18, 2021, between 10:00 a.m. and 12:00 p.m. or 1:00 and 4:00 p.m.; Thursday, August 19, 2021, between 10:00 and 11:00 a.m. or 3:30 and 5:00 p.m.; or Friday, August 20, 2021, between 11:00 a.m. and 12:00 p.m. or 3:30 and 5:00 p.m. for a call. If you are not available during these periods of time, please suggest a couple of alternative dates and times.

Now that the Court has issued the protective order, we expect you produce any documents withheld because they contain confidential information. Specifically, you stated that documents would be produced subject to the protective order in response to Interrogatory No. 10 (which implicates Interrogatory Nos. 10, 11, 12). Please provide responsive documents and electronically stored information.

Caryn M. Groedel, Esq.
August 16, 2021
Page 2


In addition, and as noted specifically below, Plaintiff waived his objections to Kirby's discovery requests because he responded to them nearly a month beyond the date on which they were due. As you know, a 4-week extension was granted, making Plaintiff's responses due on April 27, 2021; however, Plaintiff did not serve his responses to the Interrogatories until May 21, 2021 and Requests for Production of Documents until May 25, 2021. As of August 6, 2021, more than 2 months after serving his discovery responses, you are attempting to "amend" your objections in Plaintiff's Amended Responses to Kirby's Requests for Production of Documents ("Plaintiff's Amended Responses"). This is not permitted by the applicable rules or case law. *Firneno v. Nationwide Mktg. Servs.*, No. 14-cv-10104, 2015 U.S. Dist. LEXIS 195322, at *7 (E.D. Mich. Dec. 10, 2015) ("Although Rule 34, unlike Rule 33, does not specifically state that objections are waived after 30 days, the considerable weight of authority is that the failure to timely object to requests for production of documents also constitutes a waiver."). We respectfully request that you withdraw the new objections asserted and material objections you added to existing objections in response to Request for Production Nos. 46, 47, 48, 49, 50, 54, 55, 57 (mis-numbered as "58" in Plaintiff's Amended Responses)[1], 58 (mis-numbered as "59" in Plaintiff's Amended Responses), 59 (mis-numbered as "60" in Plaintiff's Amended Responses), 60 (mis-numbered as "61" in Plaintiff's Amended Responses), 61 (mis-numbered as "62" in Plaintiff's Amended Responses), 62 (mis-numbered as "63" in Plaintiff's Amended Responses), 63 (mis-numbered as "64" in Plaintiff's Amended Responses), 64 (mis-numbered as "65" in Plaintiff's Amended Responses), 65 (mis-numbered as "66") in Plaintiff's Amended Responses), 66 (mis-numbered as "67" in Plaintiff's Amended Responses), 67 (mis-numbered as "68" in Plaintiff's Amended Responses), 68 (mis-numbered as "69" in Plaintiff's Amended Responses), 69 (mis-numbered as "70") in Plaintiff's Amended Responses), 70 (mis-numbered as "71" in Plaintiff's Amended Responses), 71 (mis-numbered as "72") in Plaintiff's Amended Responses), 72 (mis-numbered as "73") in Plaintiff's Amended Responses), 73 (mis-numbered as "74" in Plaintiff's Amended Responses), 75 (mis-numbered as "76" in Plaintiff's Amended Responses), 80 (mis-numbered as "81" in Plaintiff's Amended Responses), 81 (mis-numbered as "82" in Plaintiff's Amended Responses), 82 (mis-numbered as "83" in Plaintiff's Amended Responses), 83 (mis-numbered as "84" in Plaintiff's Amended Responses), 84 (mis-numbered as "85" in Plaintiff's Amended Responses), 85 (mis-numbered as "86" in Plaintiff's Amended Responses), 87 (mis-numbered as "88" in Plaintiff's Amended Responses), 90 (mis-numbered as "91" in Plaintiff's Amended Responses), 91 (mis-numbered as "92" in Plaintiff's Amended Responses), 93 (mis-numbered as "94" in Plaintiff's Amended Responses), 94 (mis-numbered as "95") in Plaintiff's Amended Responses), 95 (mis-numbered as "96" in Plaintiff's Amended Responses), 96 (mis-numbered as "97" in Plaintiff's Amended Responses), 97 (mis-numbered as "98" in Plaintiff's Amended Responses), and 104 (mis-numbered at "105" in Plaintiff's Amended Responses).


Lastly, as you will see throughout the rest of this letter, your objections on the basis that discovery requests are overly broad in time are not well-founded given Plaintiff's claim that he was

---

[1] In Plaintiff's Amended Responses, you failed to properly number Kirby's Requests for Production of Documents following Request for Production No. 56

Caryn M. Groedel, Esq.
August 16, 2021
Page 3

Defendants' employee. We have already narrowed most requests regarding Plaintiff's activities to the start of Plaintiff's Divisional Supervisor Agreement (November 1, 2010) through the present.

**Interrogatories**:

Interrogatory No. 3:  We asked Plaintiff to identify all persons with any knowledge or information, or those persons Plaintiff or his representatives, including you, believe have knowledge or information about "the claims, allegations, and damage requests that Plaintiff is making against Defendants in the Lawsuit and provide a brief description of the information or knowledge each person possesses." You did not object to this request, however, Plaintiff's response was incomplete. Specifically, Plaintiff failed to provide the relationship he has to each identified individual, their present or last known home and business address (including street name and number, city or town, state, and zip code), and present or last known telephone number. In addition, Plaintiff did not state with specificity the knowledge of or information known to each person listed in his response to this request. Please provide the requested information regarding each individual other than David Lamb and Kevin Reitmeier. For Messrs. Lamb and Reitmeier, Plaintiff only needs to specify the information or knowledge Plaintiff believes each possesses.

Interrogatory No. 4:  We asked Plaintiff to identify all persons with any knowledge or information, or those persons Plaintiff or his representatives, including you, believe have knowledge or information about "Plaintiff's defenses to the Counterclaim and provide a brief description of the information or knowledge each person possesses." You did not object to this request, however, Plaintiff's response was incomplete. Specifically, Plaintiff failed to provide the relationship he has to each identified individual, their present or last known home and business address (including street name and number, city or town, state, and zip code), and present or last known telephone number. In addition, Plaintiff did not state with specificity the knowledge of or information known to each person listed in his response to this request. Please provide the requested information regarding each individual other than David Lamb and Kevin Reitmeier. For Messrs. Lamb and Reitmeier, Plaintiff only needs to specify the information or knowledge Plaintiff believes each possesses.

Interrogatory No. 6:  We asked Plaintiff to identify all persons with whom Plaintiff or his representatives communicated concerning the Divisional Supervisor Agreement, to describe the substance of each communication, and the date and form or each communication. You did not object to this request, however, Plaintiff's response is incomplete. Specifically, Plaintiff failed to provide the relationship he has to each identified individual, their present or last known home and business address (including street name and number, city or town, state, and zip code), and present or last known telephone number. In addition, Plaintiff did not state with specificity the substance of each communication he had with each person listed in his response to this request other than your "September 18, 2018" communication with Mr. Lamb. Please provide the requested information regarding each individual other than David Lamb. For Mr. Lamb, Plaintiff only needs to specify the substance of the communication(s) and form of communication(s). Further, Plaintiff fails to identify his "ex-wife", "his lawyers", or individuals at the "EEOC" with any specificity. Please provide their

Caryn M. Groedel, Esq.
August 16, 2021
Page 4

names, last known home and business address (including street name and number, city or town, state, and zip code), and present or last known telephone number.

Interrogatory No. 7:   We asked Plaintiff to identify all persons with whom Plaintiff or his representatives communicated "concerning the Lawsuit, any of the claims in the Lawsuit, any of the allegations in the Lawsuit, any of the defenses in the Lawsuit, and/or any of the damages being sought in connection with the Lawsuit", to provide the date(s) and form of each communication, and describe the substance of each communication. You did not object to this request, however, Plaintiff's response is incomplete. Specifically, Plaintiff failed to provide the relationship he has to each identified individual, their present or last known home and business address (including street name and number, city or town, state, and zip code), and present or last known telephone number. In addition, Plaintiff did not state with specificity the substance of each communication he had with each person listed in his response to this request other than your "September 18, 2018" communication with Mr. Lamb. Please provide the requested information regarding each individual other than David Lamb. For Mr. Lamb, Plaintiff only needs to specify the substance of the communication(s) and form of communication(s). Further, Plaintiff fails to identify his "ex-wife", "his lawyers", or individuals at the "EEOC" with any specificity. Please provide their names, present or last known home and business address (including street name and number, city or town, state, and zip code), and present or last known telephone number.

Interrogatory No. 8:   We asked Plaintiff to identify "each current employee, former employee, current independent contractor, and former independent contractor of either Kirby or Scott Fetzer" with whom Plaintiff or his representatives communicated, the form(s) of each communication, and date(s) of each communication. You did not object to this request, however, Plaintiff's response is incomplete. In addition, Plaintiff did not state with specificity the substance of each communication he had with each person listed in his response to this request other than your "September 12, 2018" communication with Mr. Lamb. Please provide the requested information regarding each individual other than David Lamb. For Mr. Lamb, Plaintiff only needs to specify the substance of their communication(s) and form of communication(s). Further, Plaintiff fails to identify his "ex-wife", "his lawyers", or individuals at the "EEOC" with any specificity. Please provide their names, present or last known home and business address (including street name and number, city or town, state, and zip code), and present or last known telephone number.

Interrogatory No. 12:   We asked Plaintiff to identify "every place of business (profit or non-profit), governmental agency, and other person or entity to which Plaintiff has applied for employment (including self-employment and work as an independent contractor) from November 1, 2010 through the present". You did not object to this request, however, Plaintiff's response is incomplete. In Plaintiff's answer, he references a "partial log." Based on this information, we are led to believe that the "partial log" document is not fully responsive to this request. Therefore, we expect Plaintiff to provide a full response to this request by responding hereto or providing a supplement to the "partial

Caryn M. Groedel, Esq.
August 16, 2021
Page 5

log" that makes Plaintiff's response complete. For each person and entity listed, we have already asked Plaintiff to provide the following:

> "Identify" or "identification" means:
> a.      When used in reference to a natural person, their:
> > i.     Full name;
> > ii.    Relationship to Plaintiff (e.g., friend, co-worker, familial relationship, spouse, etc.);
> > iii.   Present or last known home and business address (including street name and number, city or town, state, and zip code); and
> > iv.   Present or last known telephone number.
>
> b.      When in reference to an entity:
> > i.     Full name;
> > ii.    Present or first known pertinent business street address, city, state, phone number; and
> > iii.   The person associated with the entity who has knowledge of the information concerning the subject matter of the interrogatory

Please provide the requested information.

<u>Interrogatory No. 13</u>:  We asked Plaintiff to state whether he has "received any income from any source(s) other than from Kirby, since November 1, 2010" and to provide specific information regarding that income. You objected on the basis that the information requested is "confidential, not relevant, not proportional to the needs of the case, and protected from discovery by the collateral source rule." Your objections are not well-founded. Your objections on the basis of confidentiality, relevance, and the collateral source rule cannot stand given that the parties are subject to a protective order and income received by Plaintiff during the course of his Divisional Supervisor Agreement and following its termination is not confidential and is relevant in light of Plaintiff's claims asserted in this matter and Kirby's Counterclaim against Plaintiff for breach of contract. In addition, Plaintiff's discovery related to Plaintiff's mitigation of damages is relevant and discoverable. Whether evidence uncovered during the discovery phase is admissible is an entirely separate matter. Indeed, according to Rule 26(b), "Information within this scope of discovery need not be admissible in evidence to be discoverable." Please provide the requested information.

<u>Interrogatory No. 14</u>: We asked Plaintiff to "[i]dentify every place Plaintiff has been employed (including self-employment and work as an independent contractor) since November 1, 2010" and provide specific information regarding every entity and position. You objected on the basis that the request is "overly broad and seeks information that is not relevant or proportional to the needs of this case. The only employment relevant to this lawsuit is the employment Plaintiff held with Defendants, and the employment he has held since Defendants terminated him." Despite these

Caryn M. Groedel, Esq.
August 16, 2021
Page 6

objections, Plaintiff stated "that he was an independent contractor/franchisee for CBD American Shaman for a short period of time, and was employed by CBD American Shaman." First, your objections are not well-founded given that Plaintiff's Divisional Supervisor Agreement was in effect from November 1, 2010 until its termination on October 8, 2018, and Kirby has a good-faith basis to believe Plaintiff began breaching that agreement in 2018. Thus, Plaintiff's employment during the entirety of the term of the Divisional Supervisor Agreement is relevant given that Plaintiff alleges he was Defendants' employee during that time. Second, regarding the information provided about "CBD American Shaman", Plaintiff's answer is deficient. Specifically, Plaintiff failed to provide the following information requested about CBD American Shaman: the present or first known pertinent business street address, city, state, phone number, and the person associated with the CBD American Shaman who has knowledge of the information concerning the subject matter of this request. In addition, Plaintiff failed to state the dates during which he was (1) "an independent contractor/franchisee" and (2) "employed by CBD American Shaman", and (2) the reason(s) for his separation from each of those roles. Please provide the requested information.

Interrogatory No. 15: We asked Plaintiff to "[i]dentify every business in which Plaintiff has had a financial and/or ownership interest and/or invested money since November 1, 2010" and to provide specific information regarding every business. You objected on the basis that the request "seeks information that is confidential, not relevant, not proportional to the needs of the case, and protected from discovery by the collateral source rule." Your objections are not well-founded. Your objections on the basis of confidentiality, relevance, and the collateral source rule cannot stand given that the parties are subject to a protective order and income received by Plaintiff during the course of his Divisional Supervisor Agreement and following its termination is not confidential and is relevant in light of Plaintiff's claims asserted in this matter and Kirby's Counterclaim against Plaintiff for breach of contract. In addition, Plaintiff's discovery related to Plaintiff's mitigation of damages is relevant and discoverable. Please provide the requested information.

Interrogatory No. 16: We asked Plaintiff to identify all of his e-mail addresses, social networking accounts, professional networking accounts, third-party storage accounts, and all other electronic accounts he has "used or maintained since November 1, 2010." You objected on the basis that the request "is overly broad in scope and time" and provided the following substantive response: "bmibdivision@gmail.com, and BMIB Rhino Division". Your objections are not well-founded. Indeed, given that Plaintiff is alleging the breach of a contract made on November 1, 2010, the time and scope of the request are appropriately tailored Also, please advise what "BMIB Rhino Division" is.

Interrogatory No. 17: We asked Plaintiff to identify every "telephone or cellular phone account and corresponding phone number(s), maintained, used or accessed by Plaintiff, for business or personal use, from November 1, 2010 to the present", and to provide "the carrier (e.g., Verizon, AT&T, etc.), the make and model of the device associated with that phone number, and the range of dates during which Plaintiff used each phone number and associated device." You objected on the

Caryn M. Groedel, Esq.
August 16, 2021
Page 7

basis that the request is "is overly broad in scope and time" and provided a phone number and carrier. Your objections are not well-founded, and the response is incomplete. For the phone number stated, please provide the make and model of every device associated with the phone number and the range of dates during which Plaintiff used the phone number and associated device. This information is relevant and narrowly tailored to determine where potentially discoverable evidence is stored given Plaintiff's allegations pertaining to his communications with Defendants. *See, e.g.*, Paragraphs 20, 26, and 58 of the Amended Complaint.

Interrogatory No. 18:  We asked Plaintiff to identify "each and every electronic storage device (including, but not limited to computers, hard drives, cellular or smart phones, or hand held devices) that Plaintiff has either owned or used for personal and/or professional reasons since November 1, 2010" and information regarding each device. You objected on the basis that the request is "overly broad in scope and duration, seeks information that is confidential, not relevant, not proportional to the needs of the case, and is nothing more than a fishing expedition." Given that Plaintiff is alleging the breach of a contract made on November 1, 2010, the time and scope of the request are appropriately tailored. Moreover, to the extent Plaintiff contends that the requested information is "confidential", the parties have a protective order in place to protect against the disclosure of confidential information. Such information is also relevant to determine where discoverable information may be stored, particularly electronic communications during the period of the Divisional Supervisor Agreement at issue in the Amended Complaint and Kirby's Counterclaim for breach of contract. In addition, if Plaintiff no longer has an electronic storage device that contains potentially discoverable information, then the issue of spoliation may need to be addressed. Please provide the requested information.

Interrogatory No. 19:  We asked Plaintiff to state whether he has ever been convicted of a crime, and if so, to provide specific information regarding each conviction. You objected on the basis that the information sought is "confidential, nor (sic) relevant, and not proportional to the needs of this case, and is intended to harass, embarrass, and annoy Plaintiff" and provided the following substantive response: "Plaintiff states that he has not been convicted of any crime involving dishonesty within the past 10 years." Your objections are not well-founded, and the information provided is not responsive. The Rules of Evidence may preclude the admission of some criminal convictions, but it does not preclude the discovery of that information. Please provide a complete response.

Interrogatory No. 20:  We asked Plaintiff to "[i]dentify all claims, charges, lawsuits, and grievances that Plaintiff has filed; a business owned, operated, controlled, and/or invested in by Plaintiff has filed; to which Plaintiff has been a party; or to which a business owned, operated, controlled, and/or invested in by Plaintiff has been a party (including, but not limited to, bankruptcy claims, workers' compensation claims, unemployment compensation claims, discrimination and retaliation claims, personal injury claims, claims for government benefits, garnishment actions, collection actions, and divorce proceedings)" and to provide specific information regarding each

Caryn M. Groedel, Esq.
August 16, 2021
Page 8

identified claim, charge, lawsuit, and grievance. You objected on the basis that the request is "overly broad in time and scope, seeks information that is not relevant or proportional to the needs of the case, is a fishing expedition, and is intended to harass, embarrass, and annoy Plaintiff." Your objections are not well-founded. Claims, charges, lawsuits, and grievances, including, but not limited to bankruptcy claims, workers' compensation claims, unemployment compensation claims, discrimination and retaliation claims, personal injury claims, claims for government benefits, garnishment actions, collection actions, and divorce proceedings may be relevant. For example, if Plaintiff filed for bankruptcy and failed to list this Lawsuit as an asset, then the bankruptcy trustee may potentially be involved in this matter, even the bankruptcy has been discharged. To the extent you have an issue with the time period, we are willing to limit the scope to those claims, charges, lawsuits, and grievances initiated or pending between November 1, 2010 to the present. With that limitation, please fully respond to this request.

Interrogatory No. 21: We asked Plaintiff to "[i]dentify every proceeding in which Plaintiff has ever provided sworn testimony, including the name, number, date, and location of each such proceeding, and a description of the testimony provided." You objected on the basis that this request is "overly broad in time and scope, seeks information that is not relevant or proportional to the needs of the case, is a fishing expedition, and is intended to harass, embarrass, and annoy Plaintiff." Your objections are not well-founded. That being said, we are willing to limit this request to testimony given since November 1, 2010. With that limitation, please fully respond to this request.

Interrogatory No. 24: We asked Plaintiff for relevant information pertaining to the "physicians, surgeons, therapists (physical or otherwise), psychiatrists, psychologists, or other mental or physical health care professionals or personal, clergy, social workers, marriage or family counselors who examined Plaintiff or from whom Plaintiff sought evaluation or treatment for any physical illness or condition or any psychological or mental illness or condition, during the time period from November 1, 2010 to the present." You objected on the basis that the request is "overbroad in time and scope; seeks information that is confidential and protected from disclosure by HIPAA; not relevant; and not proportional to the needs of the case. Defendants are not entitled to any discovery pertaining to Plaintiff's mental or physical health simply because he is claiming what is often known as 'garden variety' emotional distress damages." Your objections are not well-founded. Indeed, Count One of the Amended Complaint Plaintiff directed you to file is for a breach of the Divisional Supervisor Agreement he entered into on November 1, 2010. Therefore, your objection that this request is "overbroad in time" is not defensible. Moreover, your objections on the basis of relevance and proportionality cannot be maintained given that Plaintiff is seeking compensation for "emotional distress" and "mental anguish". In addition, there is no violation of HIPAA where Plaintiff consents to the disclosure of his health information, and there are no confidentiality concerns here because there is a protective order that allows for protection of medical records as "confidential".

Regarding your objection on the basis that Plaintiff is seeking "garden variety" emotional distress damages, you have offered nothing in support. That being said, it is well established that in

Caryn M. Groedel, Esq.
August 16, 2021
Page 9

cases where "garden variety" emotional distress is claimed, "the evidence of mental suffering is generally limited to the testimony of the plaintiff, who describes his or her injury in vague or conclusory terms, without relating either the severity or consequences of the injury." *Olsen v. County of Nassau*, 615 F. Supp. 2d 35, 46 (E.D.N.Y. 2009). "Such claims typically 'lack extraordinary circumstances' and are not supported by any medical corroboration." *Id. See also Langenfeld v. Armstrong World Indus., Inc.*, 299 F.R.D. 547, 552 (S.D. Ohio 2014) ("garden variety" emotional distress is "when a plaintiff limits his or her damages claim to short-term negative emotions that would typically flow from an adverse employment action"); *Javeed v. Covenant Med. Ctr., Inc.*, 218 F.R.D. 178, 179 (N.D. Iowa 2001) (garden variety emotional distress is where "the plaintiff seeks no diagnosis or treatment. They are accurately characterized as being claims of generalized insult, hurt feelings, and lingering resentment. These claims do not involve a significant disruption of the plaintiff's work life and rarely involve more than a temporary disruption of the claimant's personal life.").

Accordingly, if Plaintiff is willing to stipulate that the evidence of emotional distress at trial will be "limited to the testimony of the plaintiff, who describes… his… injury in vague or conclusory terms, without relating either the severity or consequences of the injury," then we will withdraw this request. Please confirm, in writing, that Plaintiff will make this stipulation. Otherwise, please provide a complete response to this request.

**<u>Requests for Production of Documents</u>**:

<u>Request for Production No. 4</u>:      We asked Plaintiff to produce documents and electronically stored information described in his initial disclosures. In response, you direct us to "[s]ee P1 – P117 attached hereto" in Plaintiff's Amended Responses. None of "Plaintiff's financial records" have been produced, which were listed as documents "within Plaintiff's possession and/or control" and "which he may use to support his claims and/or rebut Defendants' defenses and counterclaim in this case" in Plaintiff's initial disclosures. Please produce the requested documents.

<u>Request for Production No. 5</u>:      We asked Plaintiff to "produce any and all documents and electronically stored information that refer or relate to Plaintiff's answers to the Interrogatories, including documents and electronically stored information identified in response to any Interrogatory, and any and all documents and electronically stored information that were consulted to answer any Interrogatory." You objected on the basis that this request is "overly broad and fails to comply with FRCP 34, which requires RFPs to 'describe with reasonable particularity" an "item or category of items'. An RFP that requests all documents 'that refer or relate to Plaintiff's answers to the Interrogatories…' is not reasonably particular. Please rephrase this RFP so that it complies with FRCP 34." Your objections are not well-founded. This request asked Plaintiff to produce documents identified in response to any interrogatory and documents that were consulted to answer any interrogatory. If a document or electronically stored information contains information that supports, contradicts, discusses, or in any way concerns any of Plaintiff's interrogatory responses, then those

Caryn M. Groedel, Esq.
August 16, 2021
Page 10

are responsive to this request and must be produced as no privilege has been asserted. If you wish to withhold responsive documents or electronically stored information on any basis, you are required to submit an adequate privilege log.

     <u>Request for Production No. 9</u>:     We asked Plaintiff to "produce any and all documents and electronically stored information that contain any statements or admissions by Kirby, Scott Fetzer, or any current or former employee or representative of Kirby or Scott Fetzer that support or relate to the claims or defenses in this Lawsuit." You objected on the basis that this request is "overly broad it fails to describe with reasonable particularity a document or category of documents. Please rephrase this RFP so that it complies with FRCP 34." Your objection is not well-founded. "Documents", "electronically stored information", and "Lawsuit" are defined for Plaintiff's benefit and the category of individuals and entities are clearly set forth in this request. Under Rule 34(b)(1)(A), "the request must describe with reasonable particularity each item or category of items to be inspected." (Emphasis added). Here, we are asking Plaintiff to produce "documents and electronically stored information" regarding a specific category of items, "statements and admissions" that "support or relate to the claims or defenses in this Lawsuit" made by either of the individual defendants, or their current or former employees or representatives. Please provide responsive documents and electronically stored information.

     <u>Request for Production No. 10</u>:     We asked Plaintiff to "produce any and all documents and electronically stored information which support or pertain to Plaintiff's claim for damages including, but not limited to, documents which would support the amount of damages that Plaintiff has sustained, including those identified in Plaintiff's initial disclosures and the Lawsuit." You objected that this request does not comply with Rule 34 and that the use of certain modifiers such as "relating to" make a discovery request facially over broad. Your objections are not well-founded and the case law on which you rely does not support your position. Here, not only are "document" and "electronically stored information" defined, but we also give examples of documents that would be responsive to the request, including documents that would support the amount of damages Plaintiff purportedly sustained and those identified in Plaintiff's initial disclosures. Plaintiff provides a detailed damage estimate in his initial disclosures – the documents upon which that estimate is based are responsive to this request, for example. Please provide responsive documents and electronically stored information.

     <u>Request for Production Nos. 11, 12, 15, 16, and 17</u>: We asked Plaintiff to "produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on" specific allegations Plaintiff made in <u>his</u> Complaint. You objected on the basis that these requests do not meet the requirements of Rule 34 because they purportedly do "not describe with reasonable particularity a document or category of documents." Your objections are not well-founded and are disingenuous. Indeed, you were able to identify documents responsive to Request for Production Nos. 13, 14, 18, 19, 20, 22, 23, 29, 37, 38, 39, 40, 41, 42, and 45 without <u>any objection</u>, which used the exact same format and words as Request for Production Nos. 11, 12, 15, 16, and 17. What's more,

Caryn M. Groedel, Esq.
August 16, 2021
Page 11

Plaintiff, without any objection whatsoever, was able to determine that he had "no responsive documents" to Request for Production Nos. 25, 28, 30, 31, 34, 35, 36, 43, and 44. In addition, "documents" and "electronically stored information" are defined for Plaintiff such that you and he are aware of what types of information that may be responsive to these requests. Plaintiff brought this lawsuit and he should be aware of the responsive, nonprivileged documents in <u>his possession, custody, and control</u> that support each and every claim he is making. Those are the documents sought. Please provide responsive documents and electronically stored information.

    <u>Request for Production No. 21</u>:      We asked Plaintiff to "produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on Plaintiff's allegations that 'Plaintiff reported directly to Kirby's then-president of North American Field Sales, Bud Miley, and worked under Miley's supervision without incident' as alleged in Paragraph 19 of the Complaint." You objected to this request on the basis that "[i]t is not possible to prove something that did not occur." Your objection is not well-founded, and does not make sense. What exactly "did not occur." Is Plaintiff's Complaint and Amended Complaint inaccurate where it says, "Plaintiff reported directly to Kirby's then-president of North American Field Sales, Bud Miley, and worked under Miley's supervision"? Please advise whether this is a false statement or provide responsive documents and electronically stored information that "support, refer to, or otherwise shed light on" this allegation.

    <u>Request for Production No. 24</u>:      We asked Plaintiff to "produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on Plaintiff's allegations that "Upon information and belief, Reitmeier did not harass any non-Middle Eastern Divisional Supervisors, with excessive early morning telephone calls, demands to know their whereabouts, and/or rude, demanding, and harassing text messages" as alleged in Paragraph 22 of the Complaint." You objected to this request on the basis that "Plaintiff cannot prove with documents something that did not occur." Your objection is not well-founded, and does not make sense. For example, if Plaintiff has documents about other Divisional Supervisors regarding their national origin or documents pertaining to telephone calls between Reitmeier and other Divisional Supervisors – those are responsive to this request and must be produced. Please provide responsive documents and electronically stored information.

    <u>Request for Production Nos. 26, 27, and 33</u>:  In response to these requests, Plaintiff responded: "Plaintiff is unable to obtain his phone records." Fortunately, we provided Plaintiff with a release that will allow the parties to obtain phone records on March 2, 2021. Please complete and return the release to us or utilize it obtain the records and provide us with relevant documents responsive to these requests.

    <u>Request for Production No. 32</u>:      We asked Plaintiff to "produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on Plaintiff's allegations that 'Upon information and belief, Reitmeier did not subject non-Middle Eastern

Caryn M. Groedel, Esq.
August 16, 2021
Page 12

Divisional Supervisors or Distributors to such incessant calls, text messages, and/or interrogatories regarding Kirby distributors' and supervisors' involvement in the CBD industry' as alleged in Paragraph 30 of the Complaint." You objected on the basis that "Plaintiff cannot provide documents to establish something that did not occur." Your objection is not well-founded, and does not make sense. For example, if Plaintiff has communications with other Divisional Supervisors that include admissions that Reitmeier did not call, text, or otherwise communicate with them about the CBD industry – those are responsive to this request and must be produced. Please provide responsive documents and electronically stored information.

Request for Production No. 46: We asked Plaintiff to produce documents that "disclose all actual or deferred income earned by Plaintiff from any source or any other compensation or remuneration for services of any kind received by or accruing to Plaintiff from November 1, 2010 to the present." You objected on the basis that the request is overly broad in time and scope, seeks confidential information that is not relevant or proportional to the needs of the case, and not discoverable under the collateral source rule. Your objections are not well-founded, and we disagree with what you consider to be the relevant responsive documents. Also, the documents produced are impermissibly redacted as the parties' protective order allows for all the protection Plaintiff needs to ensure his "confidential" information is not publicly shared. Please produce unredacted copies of Plaintiff's W-2 forms (P111 and P112). Further, your objections on the basis of confidentiality, relevance, and the collateral source rule cannot stand given that the parties are subject to a protective order and income received by Plaintiff during the course of his Divisional Supervisor Agreement and following its termination is not confidential and is relevant in light of Plaintiff's claims asserted in this matter and Kirby's Counterclaim against Plaintiff for breach of contract. In addition, Plaintiff's discovery related to Plaintiff's mitigation of damages is relevant and discoverable. To the extent Plaintiff does not provide his "financial records" identified in his initial disclosures in response to Request for Production No. 4 and such information is responsive to this request, please produce it.

Request for Production No. 47: We asked Plaintiff to produce documents that "disclose all actual or deferred income earned by Plaintiff, including but not limited to any actual or deferred income from any business Plaintiff owned, operated, controlled, invested in, incorporated, served as a board member and/or officer of, or has had any direct or indirect involvement from any source, or any other compensation or remuneration for services of any kind received by or accruing to Plaintiff as related to any business Plaintiff owned, operated, controlled, invested in, incorporated, served as a board member and/or officer of, or has had any direct or indirect involvement from November 1, 2010, to the present." You objected on the same basis as Request for Production No. 46. For all of the reasons stated immediately above, your objections are not well-founded. To the extent Plaintiff does not provide his "financial records" identified in his initial disclosures in response to Request for Production No. 4 and such information is responsive to this request, please produce it.

Request for Production No. 48: We asked Plaintiff "to produce any and all documents related to any and all income from any employer, self-employment, business venture, investment

Caryn M. Groedel, Esq.
August 16, 2021
Page 13


income, gifts, or any income supplement of any form since November 1, 2010." You objected on the same basis as Requests for Production Nos. 46 and 47. For all of the reasons stated immediately above, your objections are not well-founded. To the extent Plaintiff does not provide his "financial records" identified in his initial disclosures in response to Request for Production No. 4 and such information is responsive to this request, please produce it.

Request for Production No. 50:        We asked Plaintiff to "produce any and all documents and electronically stored information reflecting any employment benefits Plaintiff received from any employer since November 1, 2010 (including, but not limited to, 401(k) plans, health care insurance, retirement plans, stock purchase plans, employee discounts, bonuses, etc.)." You objected on the basis that the request is overly broad, not relevant, not proportional to the needs of the case, and not discoverable "due to the collateral source rule." Your objections are not well-founded. Your objections on the basis of relevance, and the collateral source rule cannot stand given that the discovery related to Plaintiff's mitigation of damages is relevant and discoverable.

Request for Production No. 51:        We asked Plaintiff to "produce any and all documents and electronically stored information that refer or relate to the Divisional Supervisor Agreement attached to the Complaint." In response, you state: "Plaintiff does not understand what this RFP is requesting." Given that there is no objection to this request, and "documents" and "electronically stored information" are defined for Plaintiff, we ask that Plaintiff provide documents that refer specifically or implicitly to his Divisional Supervisor Agreement or relate to it. For example, Plaintiff may have emails, letters, and/or other communications that mention, discuss, or reference the Divisional Supervisor Agreement. By way of another example, bank records or documents about or regarding payments made pursuant to the Divisional Supervisor Agreement would be relevant. Yet another example of "documents" and "electronically stored information" is text messages between Plaintiff and other Divisional Supervisors about his Divisional Supervisor Agreement or about the Charges of Discrimination he filed with the EEOC and/or this Lawsuit which are based on Plaintiff's claims involving the Divisional Supervisor Agreement. These are just examples. Please supplement your response.

Request for Production No. 52:        We asked Plaintiff to "produce any and all documents and electronically stored information that refer or relate to any agreements, other than the Divisional Supervisor Agreement attached to the Complaint, between Plaintiff and Kirby." In response, you state: "Plaintiff does not understand what this RFP is requesting." Given that there is no objection to this request, and "documents" and "electronically stored information" are defined for Plaintiff, we ask that Plaintiff provide documents that refer specifically or implicitly to his Divisional Supervisor Agreement or relate to it. For example, Plaintiff may have emails, letters, and/or other communications that mention, discuss, or reference the Divisional Supervisor Agreement. By way of another example, bank records or documents about or regarding payments made pursuant to the Divisional Supervisor Agreement would be relevant. Yet another example of "documents" and "electronically stored information" is text messages between Plaintiff and other Divisional

Caryn M. Groedel, Esq.
August 16, 2021
Page 14

Supervisors about his Divisional Supervisor Agreement or about the Charges of Discrimination he filed with the EEOC and/or this Lawsuit which are based on Plaintiff's claims involving the Divisional Supervisor Agreement. These are just examples. Please supplement your response.

Request for Production No. 53:         In document request 53, we asked Plaintiff to "produce any and all documents and electronically stored information that refer or relate to any agreements between Plaintiff and Scott Fetzer." You objected on the basis that this request is "overly broad and fails to comply with FRCP 34 as it does not describe with reasonable particularity a document or category of documents. Please rephrase this so that it complies with FRCP 34." Your objection is not well-founded. Again, as we state many times above, "documents" and "electronically stored information" are defined. Here, we are seeking agreements between Plaintiff and Scott Fetzer, and those related to them. Please see the examples given immediately above in our response to Plaintiff's response to Request for Production No. 52. Please provide responsive documents and electronically stored information.

Request for Production Nos. 54 and 55:         In document request 54, we asked Plaintiff to "produce any and all documents and electronically stored information that refer or relate to each and every consulting relationship entered into by Plaintiff with any person or entity since November 1, 2010." In document request 55, we asked Plaintiff to "produce any and all documents and electronically stored information that refer or relate to each and every independent contractor relationship entered into by Plaintiff with any person or entity since November 1, 2010." In response to both requests, you objected on the basis that these requests are overly broad in scope, not relevant, and not proportional to the needs of the case. You further state what you believe to be the relevant documents. Your objections are not well-founded, and we disagree with what you consider to be the relevant responsive documents. What's more, you imply that Plaintiff has Form 1099s for consulting work performed in 2019 and 2020; however, no such documents were produced. Given that Plaintiff alleges he was Defendants' employee during the term of his Divisional Supervisor Agreement, documents regarding consulting work and independent contractor work for others are relevant and proportional to the needs of this case. Please produce the referenced Form 1099s (unredacted as there is no basis to redact anything other than tax identification numbers) as well as other documents such as written agreements, communications, other financial records, etc. related to such consulting work (document request 54) and independent contractor work (document request 55).

Request for Production No. 56:         We asked Plaintiff to "produce any and all documents and electronically stored information that refer or relate to each and every employer (including self-employment and work as an independent contractor) of Plaintiff since November 1, 2010 identified in response to Interrogatory No. 14, including, but not limited to, agreements, documents relating to Plaintiff's job title, self-employment, job status, rate of pay or compensation, change in job titles, status, descriptions of jobs or engagements held, work performed, handbooks, policies, benefit statements, policies, and any documents that refer to or relate to Plaintiff's resignation, retirement, layoff, or termination from any subsequent employer or termination of any agreement to perform

Caryn M. Groedel, Esq.
August 16, 2021
Page 15

work as an employee, consultant, and/or independent contractor." You objected on the basis that the request does not meet the requirements of Rule 34, is over broad in time and scope, and is not relevant or proportional to the needs of the case. Your objections are not well-founded, and we disagree with what you consider to be the relevant responsive documents. "Documents" and "electronically stored information" have been defined for Plaintiff, and this request provided several examples of the types of documents sought for the employers identified by Plaintiff in response to Interrogatory No. 14. Therefore, it does meet the requirements of Rule 34. Also, any work Plaintiff performed for himself and others during the term of the Divisional Supervisor Agreement is a relevant area of discovery given the claims made in this case.

<u>Request for Production No. 57 (mis-numbered as "58" in Plaintiff's Amended Responses):</u> We asked Plaintiff to –

[P]roduce any and all documents and electronically stored information, including, but not limited to, any and all business filings (e.g., documents filed with a Secretary of State), expenses reports, receipts, calendars, meeting minutes, bank statements, purchase agreements, rental agreements, real estate records, lease agreements, contracts, credit card statements, telephone records, mobile phone records, invoices, purchase orders, tax records, payroll records, employee lists, employment agreements, and employee personnel records, that refer or relate to the following entities:

      a. Southeast Regional Promotional Club, Inc.
      b. BMIB Division KDA Fund, Inc.
      c. Syatt of Jacksonville, Inc.
      d. First Coast Division Inc.
      e. B.M.I.B., Inc.
      f. NLN Division, Inc.
      g. NLN Enterprises, Inc.
      h. Budzburn, Inc.
      i. Palm Bay American Shaman LLC
      j. EGK Enterprises, Inc.

You objected on the basis that the request is "overly broad in scope and time frame, is not limited to a specific document or category of documents, and seeks documents that are not relevant or proportional to the need of this case" without providing any specificity why documents related to the 10 entities listed are not relevant. In addition, your objection is not well-founded because Kirby described with "reasonable particularity" the documents requested for each entity identified.  Also, this request is absolutely relevant and proportional. Plaintiff contends that he "began his employment with Defendants" in 1991 (Paragraph 12 of the Amended Complaint), and Kirby claims that Plaintiff breached his employment agreement. Moreover, the question as to whether Plaintiff was an employee

Caryn M. Groedel, Esq.
August 16, 2021
Page 16

or an independent contractor of Defendants is at the heart of this action, and Plaintiff is seeking reimbursement for expenses he claims he should not have paid such as travel costs, payroll expenses, office expenses, etc. Therefore, Plaintiff's business interests during his association with Defendants are relevant. However, to provide some limits on the scope of the request, Kirby is willing to limit the time period to January 1, 1991 to the present. Please provide responsive documents and electronically stored information.

Request for Production No. 58 (mis-numbered as "59" in Plaintiff's Amended Responses):
We asked Plaintiff to "produce any and all documents and electronically stored information that refer or relate to each and every business owned by Plaintiff since November 1, 2010, including, but not limited to, any and all business filings (e.g., documents filed with a Secretary of State), expenses reports, receipts, calendars, meeting minutes, bank statements, purchase agreements, rental agreements, real estate records, lease agreements, contracts, credit card statements, telephone records, mobile phone records, invoices, purchase orders, tax records, payroll records, employee lists, and employee personnel records." You objected the basis that this "RFP is overly broad in scope and time frame, is not limited to a specific document or category of documents, and seeks documents that are not relevant or proportional to the need of this case." Your objections are not well-founded for all of the reasons stated in response to your objections stated in Plaintiff's Amended Responses as to Request for Production No. 57. This request is relevant and proportional and appropriately limited in scope because it seeks documents about (1) businesses Plaintiff owned during the term of the Divisional Supervisor Agreement and (2) mitigation efforts following the termination of the Divisional Supervisor Agreement. Please provide responsive documents and electronically stored information.

Request for Production No. 59 (mis-numbered as "60" in Plaintiff's Amended Responses):
We asked Plaintiff to "produce any and all documents and electronically stored information that refer or relate to each and every business Plaintiff invested in since November 1, 2010, including, but not limited to, any and all business filings (e.g., documents filed with a Secretary of State), expenses reports, receipts, calendars, meeting minutes, bank statements, purchase agreements, rental agreements, real estate records, lease agreements, contracts, credit card statements, telephone records, mobile phone records, invoices, purchase orders, tax records, payroll records, employee lists, employment agreements, and employee personnel records." You objected on the same basis as Request for Production Nos. 57 and 58. Your objections are not well-founded for all the reasons stated in response to your objections stated in Plaintiff's Amended Responses as to  Request for Production Nos. 57 and 58. In addition, Plaintiff's investment activities are relevant given the allegations in the Amended Complaint. (*See, e.g.*, Paragraph 23). Moreover, Plaintiff's investment activities are relevant to the issue of Plaintiff's status as an independent contractor and mitigation efforts, and Kirby's Counterclaim.  Please provide responsive documents and electronically stored information.

Caryn M. Groedel, Esq.
August 16, 2021
Page 17


Request for Production No. 60 (mis-numbered as "61" in Plaintiff's Amended Responses):
We asked Plaintiff to "produce any and all documents and electronically stored information that refer or relate to each and every business operated by Plaintiff since November 1, 2010, including, but not limited to, any and all business filings (e.g., documents filed with a Secretary of State), expenses reports, receipts, calendars, meeting minutes, bank statements, purchase agreements, rental agreements, real estate records, lease agreements, contracts, credit card statements, telephone records, mobile phone records, invoices, purchase orders, tax records, payroll records, employee lists, employment agreements, and employee personnel records." You objected on the same basis as Request for Production Nos. 57, 58, and 59. Your objections are not well-founded for all the reasons stated in response to your objections stated in Plaintiff's Amended Responses as to  Request for Production Nos. 57, 58, and 59. Moreover, Plaintiff's involvement in operating one or more businesses at the same time he contracted with Defendants is relevant to the issue of Plaintiff's status as an independent contractor and mitigation efforts, and Kirby's Counterclaim. Please provide responsive documents and electronically stored information.

Request for Production No. 61 (mis-numbered as "62" in Plaintiff's Amended Responses):
We asked Plaintiff to "produce any and all documents and electronically stored information that refer or relate to each and every business Plaintiff controlled since November 1, 2010, including, but not limited to, any and all business filings (e.g., documents filed with a Secretary of State), expenses reports, receipts, calendars, meeting minutes, bank statements, purchase agreements, rental agreements, real estate records, lease agreements, contracts, credit card statements, telephone records, mobile phone records, invoices, purchase orders, tax records, payroll records, employee lists, employment agreements, and employee personnel records." You objected on the same basis as Request for Production Nos. 57, 58, 59, and 60. Your objections are not well-founded for all the reasons stated in response to your objections stated in Plaintiff's Amended Responses as to Request for Production Nos. 57, 58, 59, and 60. Moreover, Plaintiff's control of one or more businesses at the same time he contracted with Defendants is relevant to the issue of Plaintiff's status as an independent contractor and mitigation efforts, and Kirby's Counterclaim. Please provide responsive documents and electronically stored information.

Request for Production No. 62 (mis-numbered as "63" in Plaintiff's Amended Responses):
We asked Plaintiff to "produce any and all documents and electronically stored information that refer or relate to each and every business incorporated by Plaintiff since November 1, 2010, including, but not limited to, any and all business filings (e.g., documents filed with a Secretary of State), expenses reports, receipts, calendars, meeting minutes, bank statements, purchase agreements, rental agreements, real estate records, lease agreements, contracts, credit card statements, telephone records, mobile phone records, invoices, purchase orders, tax records, payroll records, employee lists, employment agreements, and employee personnel records." You objected on the same basis as Request for Production Nos. 57, 58, 59, 60, and 61. Your objections are not well-founded for all the reasons stated in response to your objections stated in Plaintiff's Amended Responses as to Request for Production Nos. 57, 58, 59, 60, and 61. Moreover, Plaintiff's incorporation of one or more

Caryn M. Groedel, Esq.
August 16, 2021
Page 18


businesses during the time he contracted with Defendants is relevant to the issue of Plaintiff's status as an independent contractor and mitigation efforts, and Kirby's Counterclaim. Please provide responsive documents and electronically stored information.

    <u>Request for Production No. 63 (mis-numbered as "64" in Plaintiff's Amended Responses)</u>: We asked Plaintiff to "produce any and all documents and electronically stored information that refer or relate to each and every business of which Plaintiff has served as a board member and/or officer since November 1, 2010, including, but not limited to, any and all business filings (e.g., documents filed with a Secretary of State), expenses reports, receipts, calendars, meeting minutes, bank statements, purchase agreements, rental agreements, real estate records, lease agreements, contracts, credit card statements, telephone records, mobile phone records, invoices, purchase orders, tax records, payroll records, employee lists, employment agreements, and employee personnel records." You objected on the same basis as Request for Production Nos. 57, 58, 59, 60, 61, and 62. Your objections are not well-founded for all the reasons stated in response to your objections stated in Plaintiff's Amended Responses as to Request for Production Nos. 57, 58, 59, 60, 61, and 62. Moreover, Plaintiff's board membership on one or more businesses during the time he contracted with Defendants is relevant to the issue of Plaintiff's status as an independent contractor and mitigation efforts, and Kirby's Counterclaim. Please provide responsive documents and electronically stored information.

    <u>Request for Production No. 64 (mis-numbered as "65" in Plaintiff's Amended Responses)</u>: We asked Plaintiff to "produce any and all documents and electronically stored information that refer or relate to each and every business in which Plaintiff has had any direct or indirect involvement since November 1, 2010, including, but not limited to, any and all business filings (e.g., documents filed with a Secretary of State), expenses reports, receipts, calendars, meeting minutes, bank statements, purchase agreements, rental agreements, real estate records, lease agreements, contracts, credit card statements, telephone records, mobile phone records, invoices, purchase orders, tax records, payroll records, employee lists, employment agreements, employment agreements, and employee personnel records." You objected on the same basis as Request for Production Nos. 57, 58, 59, 60, 61, 62, and 63. Your objections are not well-founded for all the reasons stated in response to your objections stated in Plaintiff's Amended Responses as to Request for Production Nos. 57, 58, 59, 60, 61, 62, and 63. Moreover, Plaintiff's involvement in one or more businesses during the time he contracted with Defendants is relevant to the issue of Plaintiff's status as an independent contractor and mitigation efforts, and Kirby's Counterclaim. Please provide responsive documents and electronically stored information.

    <u>Request for Production No. 65 (mis-numbered as "66" in Plaintiff's Amended Responses)</u>: We asked Plaintiff to "produce any and all documents and electronically stored information that refer or relate to any attempt by Plaintiff to incorporate a business since November 1, 2010." You objected on the same basis as Request for Production Nos. 57, 58, 59, 60, 61, 62, 63, and 64. Your objections are not well-founded for all the reasons stated in response to your objections stated in

Caryn M. Groedel, Esq.
August 16, 2021
Page 19

Plaintiff's Amended Responses as to Request for Production Nos. 57, 58, 59, 60, 61, 62, 63, and 64. Moreover, Plaintiff's attempts to incorporate one or more businesses during the time he contracted with Defendants is relevant to the issue of Plaintiff's status as an independent contractor and mitigation efforts, and Kirby's Counterclaim. For avoidance of doubt and to provide clarity as it seems such is needed for Plaintiff, we are seeking the following documents and electronically stored information in addition to other writings and tangible things described in Kirby's definitions of "documents" and "electronically stored information": any and all business filings (e.g., documents filed with a Secretary of State), expenses reports, receipts, calendars, meeting minutes, bank statements, purchase agreements, rental agreements, real estate records, lease agreements, contracts, credit card statements, telephone records, mobile phone records, invoices, purchase orders, tax records, payroll records, employee lists, employment agreements, employment agreements, and employee personnel records. Please provide responsive documents and electronically stored information.

    <u>Request for Production No. 66 (mis-numbered as "67" in Plaintiff's Amended Responses</u>:
    We asked Plaintiff to "produce any and all agreements and all documents and electronically stored information related to such agreements between Plaintiff and any cannabidiol ("CBD") business." You objected on the same basis as Request for Production Nos. 57, 58, 59, 60, 61, 62, 63, 64, and 65. Your objections are not well-founded for all the reasons stated in response to your objections stated in Plaintiff's Amended Responses as to Request for Production Nos. 57, 58, 59, 60, 61, 62, 63, 64, and 65. Moreover, Plaintiff's involvement in CBD businesses is relevant to the matters alleged in the Amended Complaint, Plaintiff's status as an independent contractor and mitigation efforts, and Kirby's Counterclaim. To the extent Plaintiff takes issue with the time period at issue, Kirby is willing to limit this request to November 1, 2010 to the present. Please provide responsive documents and electronically stored information.

    <u>Request for Production No. 68 (mis-numbered as "69" in Plaintiff's Amended Responses)</u>:
    We asked Plaintiff to "produce any and all documents related to the formation, operation, and status of any business that Plaintiff's immediate family members (i.e., spouse, siblings, parents, in-laws, children, and step-children) have owned, operated, controlled, invested in, incorporated, served as board members and/or officers of, or have had direct or indirect involvement at any time since January 1, 2018. You objected on the same basis as Request for Production Nos. 57, 58, 59, 60, 61, 62, 63, 64, 65, and 66. Your objections are not well-founded. Indeed, this request is limited to "documents" and "electronically stored information" – both defined terms – about the "formation, operation, and status of" the businesses described with particularity in the request. Moreover, this request is limited in time. In addition, given the allegations regarding Plaintiff's daughter's business interests in the Amended Complaint, at a minimum, responsive documents in Plaintiff's possession, custody, or control, regarding her business interests are relevant and must be produced. Please provide responsive documents and electronically stored information.

Caryn M. Groedel, Esq.
August 16, 2021
Page 20

Request for Production No. 69 (mis-numbered as "70" in Plaintiff's Amended Responses):
We asked Plaintiff to "produce any and all documents related to the planning for and opening of stores for any business that Plaintiff owned, operated, controlled, invested in, incorporated, served as a board member and/or officer of, or has had direct or indirect involvement at any time since November 1, 2010. You objected on the same basis as Request for Production Nos. 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, and 68. Your objections are not well-founded. Indeed, this request is limited to "documents" and "electronically stored information" – both defined terms – about the "planning for and opening of stores" in which Plaintiff was involved as an owner, operator, investor, board member, officer, or other involvement. In addition, given the allegations regarding CBD stores in the Amended Complaint, at a minimum, responsive documents in Plaintiff's possession, custody, or control, regarding those stores are relevant and must be produced. Please provide responsive documents and electronically stored information.

Request for Production No. 70 (mis-numbered as "71" in Plaintiff's Amended Responses):
We asked Plaintiff to "produce any and all documents related to the planning for and opening of stores for any business that Plaintiff's immediate family members (i.e., spouse, siblings, parents, in-laws, children, and step-children) owned, operated, controlled, invested in, served as a board members and/or officers of, or have had direct or indirect involvement at any time since January 1, 2018." You objected on the same basis as Request for Production Nos. 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 68, and 69. Your objections are not well-founded. Indeed, this request is limited to "documents" and "electronically stored information" – both defined terms – about the "formation, operation, and status of" the businesses described with particularity in the request. Moreover, this request is limited in time. In addition, given the allegations regarding Plaintiff's daughter's business interests in the Amended Complaint, at a minimum, responsive documents in Plaintiff's possession, custody, or control, regarding her business interests are relevant and must be produced. Please provide responsive documents and electronically stored information.

Request for Production 71 (mis-numbered as "72" in Plaintiff's Amended Responses):
We asked Plaintiff to "produce any and all documents that show the total amount of revenue and profit that has been generated to date by any business Plaintiff owned, operated, controlled, invested in, incorporated, served as a board member and indirect involvement at any time since November 1, 2010." You objected on the same basis as Request for Production Nos. 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 68, 69, and 70. Your objections are not well-founded. First, Plaintiff identified his "financial records" in his initial disclosures. Those need to be produced. Second, revenue and profit generated by Plaintiff's business interests during the term of his Divisional Supervisor Agreement are relevant to the claims and defenses in this case and Plaintiff's mitigation efforts. Please provide responsive documents and electronically stored information.

Request for Production No. 72 (mis-numbered as "73" in Plaintiff's Amended Responses):
We asked Plaintiff to "produce any and all documents that show the total amount of revenue and profit that has been generated to date by any business Plaintiff's immediate family members (i.e.,

Caryn M. Groedel, Esq.
August 16, 2021
Page 21


spouse, siblings, parents, in-laws, children, and step-children) owned, operated, controlled, invested in, incorporated, served as a board member and/or officer of, has had direct and indirect involvement at any time since November 1, 2010." You objected on the same basis as Request for Production Nos. 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 68, 69, 70, and 71. Your objections are not well-founded for the same reasons stated above in our response to your stated objections to Request for Production No. 71. In addition, Plaintiff's involvement in his daughter's CBD business is relevant to the claims and defenses in this case, and Plaintiff's mitigation efforts. Please provide responsive documents and electronically stored information.

    <u>Request for Production No. 73 (mis-numbered as "74" in Plaintiff's Amended Responses)</u>:
We asked Plaintiff to –

[P]roduce any and all documents and electronically stored information, including text messages, phone calls, voice mail messages, emails, other written or oral communications, and recordings of conversations, to or from, or exchanged between Plaintiff or his agents, representatives, or attorneys and the following persons:

a.      Kevin Reitmeier;
b.      Bud Miley;
c.      David Lamb;
d.      Halle Sminchak;
e.      Timothy Updegraph;
f.      Carl Emmert;
g.      Michael Licata;
h.      Rob Terwilliger;
i.      Marc Venditti;
j.      Frank Venditti III;
k.      Matt Bragg;
h.      Any other current or former employee of Kirby or Scott Fetzer;
i.      Any other current or former Divisional Supervisor of Kirby;
j.      Any current or former independent contractors of Kirby or Scott Fetzer;
k.      Potential employers (including self-employment) with whom Plaintiff sought work since November 1, 2010;
l.      Employers that have employed Plaintiff since November 1, 2010;
m.      Persons or entities that have contracted with Plaintiff since November 1, 2010;
n.      Any other person identified in Plaintiff's initial disclosures or responses to the Interrogatories.

You objected on the same basis as Request for Production Nos. 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 68, 69, 70, 71, and 72. Your objections are not well-founded. Indeed, the documents requested are

Caryn M. Groedel, Esq.
August 16, 2021
Page 22

specified with reasonable particularity. That being said, Kirby is willing to limit the scope of this request to documents and electronically stored information regarding this Lawsuit; the claims and defenses in this Lawsuit; the allegations made in the Complaint, Amended Complaint, and Counterclaim; the damages sought in this Lawsuit; Plaintiff's mitigation efforts; Plaintiff's business interests and affiliations since November 1, 2010; and/or solicitation of claims (e.g., demand letters, lawsuits, grievances, etc.) against Kirby and/or Scott Fetzer. Please provide responsive documents and electronically stored information.

Request for Production No. 74 (mis-numbered as "75" in Plaintiff's Amended Responses): We asked Plaintiff to "produce any and all documents and electronically stored information obtained from third parties that refer or relate to this Lawsuit and/or any of the parties thereto." You objected on the basis that the request "is overly broad as to scope and time frame and fails to describe with reasonable particularity a document or category of documents." Your objection is not well-founded. Indeed, "documents" and "electronically stored information" are defined and the request is narrowly tailored in time and scope by the allegations and claims made in this Lawsuit and the parties to the Lawsuit. Please provide responsive documents and electronically stored information.

Request for Production No. 75 (mis-numbered as "76" in Plaintiff's Amended Complaint): We asked Plaintiff to "produce any and all diaries, calendars, appointment books and cards, notes, logs, schedules, memoranda, or any other documents and electronically stored information of Plaintiff's activities since November 1, 2010. You objected on the basis that the request is "overly broad as to scope (none) and time frame (none); seeks documents that are not relevant or proportional to the needs of the case; and fails to describe with reasonable particularity a document or category of documents." Your objections are not well-founded. First, the type of documents are specifically stated in the request. Second, the time period is defined. Third, the request seeks specific documents pertaining to Plaintiff's activities during the defined period of time. Fourth, Plaintiff's activities are relevant and the request proportional because the question as to whether Plaintiff was an employee or an independent contractor of Defendants is at the heart of this action and his activities during the term of his Divisional Supervisor Agreement and activities since it ended – particularly those related to his mitigation efforts and the claims, allegations, and damages alleged in this Lawsuit. Please provide responsive documents and electronically stored information.

Request for Production No. 76 (mis-numbered as "77" in Plaintiff's Amended Responses): We asked Plaintiff to "produce any and all documents and electronically stored information, including, but not limited to, emails and text messages, that relate in any way to Plaintiff's role as a Divisional Supervisor with Kirby, including, but not limited to, Plaintiff's work performance, travel, territories assigned to Plaintiff in each and every Exhibit A to the Divisional Supervisor Agreement, assignments, responsibilities, the formation of Plaintiff's Divisional Supervisor Agreement, the termination of Plaintiff's Divisional Supervisor Agreement, and any policies and procedures that applied to Plaintiff." You objected on the basis that the request is "overly broad as to scope and time frame, and fails to describe with reasonable particularity a document or category of documents." Your

Caryn M. Groedel, Esq.
August 16, 2021
Page 23

objections are not well-founded. Indeed, "documents" and "electronically stored information" are defined and the request states that "emails and text messages" regarding several specific items related to Plaintiff's role as a Divisional Supervisor are responsive to this request. And, the scope and time period are narrowly tailored to the claims and allegations in this Lawsuit. Please provide responsive documents and electronically stored information.

      <u>Request for Production No. 77 (mis-numbered as "78" in Plaintiff's Amended Responses)</u>:
We asked Plaintiff to produce documents and electronically stored information provided to or received from every federal, state, and local government agency "in proceedings that relate in any manner to Plaintiff's alleged employment relationship with Kirby and/or Scott Fetzer and/or the allegations in the Lawsuit." You objected on the basis that the request is "overly broad as to scope and time frame and fails to describe with reasonable particularity a document or category of documents." You further direct our attention to documents produced – P165 – P200. Not only are your objections not well-founded, but the production appears to be deficient. Indeed, this request asks Plaintiff to produce documents provided to and received from the DOL, EEOC, OCRC, and the FCHR, and any other "federal, state, or local government agency" regarding very specific topics. And the documents produced are only those emails exchanged with the EEOC in 2021, and none from previous years when we know Plaintiff and/or his representatives were in communication with more than one of these agencies. Please provide responsive documents and electronically stored information. If Plaintiff does not have these documents in his possession, custody, or control, he must account for their whereabouts or destruction or there may be a spoliation issue.

      <u>Request for Production No. 78 (mis-numbered as "79" in Plaintiff's Amended Responses)</u>:
We asked Plaintiff to "produce any and all correspondence and electronically stored information stored by Plaintiff on (a) personal computer(s), computer hard drive(s), cellular device(s), or any other electronic media, including all embedded information, cookies, email directories, email files, email address books, back-up tapes, software, and all portions of the hard drives and security systems that store any contact or link with the Internet that contain any information relating to the allegations in the Complaint, Counterclaim, and/or Plaintiff's role as a Divisional Supervisor with Kirby." You objected on the basis that the request is "overly broad as to scope and time frame; seeks documents that are not relevant or proportional to the needs of the case; and fails to describe with reasonable particularity a document or category of documents." Your objections are not well-founded. First, "electronically stored information" is defined and "correspondence" is a category of documents that is described with "reasonable particularity". Second, the location as to where Plaintiff may look for such documents is clearly described. Third, the scope of the request is narrowly defined – documents related to the "allegations in the Complaint, Counterclaim, and/or Plaintiff's role as a Divisional Supervisor with Kirby." The time limitations are implied by the scope of the request and are reasonable. Please provide responsive documents and electronically stored information.

Caryn M. Groedel, Esq.
August 16, 2021
Page 24


Request for Production No. 80 (mis-numbered as "81" in Plaintiff's Amended Responses):
We asked Plaintiff to "produce copies of all of the pleadings and/or other documents filed in any other prior or currently pending lawsuit, grievance, charge, complaint, workers' compensation claim, unemployment compensation claim, bankruptcy, or any other claim for redress identified in response to Interrogatory No. 20." You objected on the basis that the request is "is overly broad in scope (none) and time frame (none); seeks documents that are confidential and not relevant or proportional to the needs of the case, and not discoverable. Specifically, any other lawsuits in which Plaintiff may have been involved is precluded by Evid.R. 404(b), and discovery of unemployment compensation claims are precluded by the collateral source rule." Your objections are not well-founded. First, the request is properly limited in scope – to those matters Plaintiff was required to disclose in response to Interrogatory No. 20. Second, unless Plaintiff is contending documents were filed under seal or sealed at some later date, none of the documents requested can be considered "confidential". To the extent Plaintiff has a good faith basis for his belief that a document is confidential, the parties have a protective order which may be used to designate those documents as such. Third, Plaintiff's legal filings are relevant and discoverable even if they ultimately are not admissible at trial, and not precluded from discovery under the collateral source rule or Evid.R. 404(b). Please provide responsive documents and electronically stored information.

Request for Production No. 81 (mis-numbered at "82" in Plaintiff's Amended Responses):
We asked Plaintiff to "produce all documents relating to Plaintiff's conviction, or guilty or no contest plea, and all other documents and electronically stored information that refer to, relate to, shed light upon, or describe such documents and electronically stored information" related to convictions, guilty pleas, and no-contest pleas, if any. You objected on the basis that the request is "overly broad as to content and time frame. It also seeks documents that are not relevant or proportional to the needs of the case, seeks documents precluded by Evid.R. 404(b), and fails to describe with reasonable particularity a document or category of documents." Your objections are not well-founded. Indeed, "documents" and "electronically stored information" have been defined; and Evid.R. 404(b) does not preclude the discovery of the requested documents even if such documents ultimately are not admissible at trial. Because Plaintiff failed to respond to Interrogatory No. 19, we are unable to limit this request at this time. Please provide responsive documents and electronically stored information.

Request for Production No. 82 (mis-numbered as "83" in Plaintiff's Amended Responses):
We asked Plaintiff to "produce any and all documents, electronically stored information, or tangible things that Plaintiff copied or retained from Kirby or Scott Fetzer, including any and all documents, electronically stored information, or tangible things that Plaintiff downloaded or recorded to any electronic storage device." You objected on the basis that the request is "overly broad as to scope and time frame, seeks documents that are not relevant or proportional to the needs of the case, and fails to describe with reasonable particularity a document or category of documents." Your objections are not well-founded, and are shocking, to say the least. We are asking Plaintiff to return Defendants' property, specifically, "documents, electronically stored information, or tangible things

Caryn M. Groedel, Esq.
August 16, 2021
Page 25

that Plaintiff downloaded or recorded to any electronic storage device". We should not have to compel your compliance regarding this request.

Request for Production No. 83 (mis-numbered as "84" in Plaintiff's Amended Responses):
We asked Plaintiff to "produce any and all documents, notes, or records of any kind that Plaintiff (or anyone acting on Plaintiff's behalf) made or kept that relate to this Lawsuit." You objected on the basis that this request is overly broad in scope and time frame, and violates FRCP 34 as it fails to describe with reasonable particularity a document or category of documents." Your objections are not well-founded. Indeed, we are asking Plaintiff to produce documents he created or anyone acting on his behalf created related to the Lawsuit. Thus, the scope of the request is reasonably limited to those "documents" (a defined term), "notes", and "records" related to this Lawsuit and does describe with reasonable particularity the types of documents and categories of documents requested. Please provide responsive documents and electronically stored information.

Request for Production No. 84 (mis-numbered as "85" in Plaintiff's Amended Responses):
We asked Plaintiff to "produce any and all documents and electronically stored information reflecting any communications Plaintiff has had with any other person (other than his attorneys) that relate to this Lawsuit" if he has not produced such documents and electronically stored information in response to other requests. You objected on the basis that the request is "overly broad in scope and time frame, and violates FRCP 34 as it fails to describe with reasonable particularity a document or category of documents." Your objections are not well-founded. Indeed, this request should not even be necessary, but Plaintiff has refused to comply with his discovery obligations. Here, we are asking Plaintiff to provide "documents" and "electronically stored information" that reflect "any communications" Plaintiff has had with "any other person", not including his attorneys, that relate to this Lawsuit. "Documents", "electronically stored information", and "Lawsuit" are all defined for Plaintiff and we are seeking such documents about "communications" related to this "Lawsuit" – this is a reasonably and narrowly tailored request as far as scope and meets the requirements of Rule 34. Please provide responsive documents and electronically stored information.

Request for Production No. 85 (mis-numbered as "86" in Plaintiff's Amended Responses):
We asked Plaintiff to "produce any and all documents and electronically stored information reflecting any communications Plaintiff has had with any other person (other than his attorneys) that relate to Plaintiff's Divisional Supervisor Agreement with Kirby." You objected on the same basis as Request for Production No. 84. Your objections are not well-founded for all the reasons stated in response to your objections stated in Plaintiff's Amended Responses as to Request for Production No. 84. This is a reasonably and narrowly tailored request as far as scope and meets the requirements of Rule 34 in requesting the production of "documents" and "electronically stored information" about "communications" Plaintiff has had with anyone related to the Divisional Supervisor Agreement at issue in this case. Please provide responsive documents and electronically stored information.

Caryn M. Groedel, Esq.
August 16, 2021
Page 26

**Request for Production No. 87 (mis-numbered as "88" in Plaintiff's Amended Responses)**:
We asked Plaintiff to "produce any and all degrees, diplomas, certificates, transcripts, awards, and other documents that reflect Plaintiff's experience, education, and qualifications." You are now objecting on the basis that this request is "overly broad in scope and time frame, and violates FRCP 34 as it fails to describe with reasonable particularity a document or category of documents. It also seeks documents that are not relevant or proportional to the needs of this case." Your objections are not well-founded. Indeed, we are asking for very specific documents about Plaintiff's education, qualifications, and experience. This information is discoverable for a number of reasons including, for example, determining if Plaintiff has appropriately mitigated or attempted to mitigate his damages. Because we do not know when Plaintiff may have attended an institution of learning or other educational program or when Plaintiff earned an award or other accolades related to professional experience, education, and qualifications, we cannot limit the scope of the request in terms of time. Please provide responsive documents and electronically stored information.

**Request for Production No. 89 (mis-numbered as "90" in Plaintiff's Amended Responses)**:
We asked Plaintiff to "produce any and all documents and electronically stored information that pertain to Scott Fetzer's policies, practices, or procedures that applied in any way to Plaintiff, including Plaintiff's training on such policies, practices, and procedures." You objected on the basis that the request is "overly broad as to content and time frame, and fails to describe with reasonable particularity a document or category of documents." Your objections are not well-founded, particularly because you were able to respond without any objection to an identical request (Request for Production 88) for the same documents pertaining to Kirby's policies, practices, and procedures. Given that you and Plaintiff were able to understand and respond to Request for Production 88, your objections here are disingenuous and improper. Please provide responsive documents and electronically stored information.

**Request for Production No. 90 (mis-numbered as "91" in Plaintiff's Amended Responses)**:
We asked Plaintiff to "produce any and all documents and electronically stored information relating to payments made by Kirby to Plaintiff directly or to a person or entity authorized by Plaintiff to receive payments for services rendered by Plaintiff since November 1, 2010." You objected, stating: "This RFP makes no sense (unclear what it is seeking), is overly broad as to scope and time frame, fails to describe with reasonable particularity a document or category of documents, and seeks documents that are not relevant or proportional to the needs of case." Your objections are not well-founded. For avoidance of doubt, we are seeking documents that show payments made by Kirby to Plaintiff directly or to another person or entity authorized by Plaintiff to receive payments from Kirby for services Plaintiff rendered to Kirby since November 1, 2010 and "documents" and "electronically stored information" (terms defined by Kirby) related to those payments. Those records go to the heart of this case and Plaintiff's allegations that he was treated like an employee. Thus, such documents are absolutely relevant and proportional. Moreover, your refusal to provide the financial records identified in Plaintiff's initial disclosures intensifies Kirby's need for the requested information. You have no basis on which to object to this request. Please provide responsive documents and electronically stored information.

Caryn M. Groedel, Esq.
August 16, 2021
Page 27

      <u>Request for Production No. 91 (mis-numbered as "92" in Plaintiff's Amended Responses)</u>:
We asked Plaintiff to "produce any and all documents and electronically stored information
relating to payments made by Scott Fetzer to Plaintiff directly or a person or entity authorized by
Plaintiff to receive payments for services rendered by Plaintiff since November 1, 2010." You
objected, stating: "This RFP makes no sense (unclear what it is seeking), is overly broad as to scope
and time frame, fails to describe with reasonable particularity a document or category of documents,
and seeks documents that are not relevant or proportional to the needs of case." Your objections are
not well-founded. For avoidance of doubt, we are seeking documents that show payments made by
Scott Fetzer to Plaintiff directly or to another person or entity authorized by Plaintiff to receive
payments from Scott Fetzer for services Plaintiff rendered to Scott Fetzer since November 1, 2010
and "documents" and "electronically stored information" (terms defined by Kirby) related to those
payments. Those records go to the heart of this case and Plaintiff's allegations that he was treated like
an employee. Thus, such documents are absolutely relevant and proportional. Moreover, your refusal
to provide the financial records identified in Plaintiff's initial disclosures intensifies Kirby's need for
the requested information.  You have no basis on which to object to this request. Please provide
responsive documents and electronically stored information.

      <u>Request for Production No. 93 (mis-numbered as "94" in Plaintiff's Amended Responses)</u>:
We asked Plaintiff to "produce any and all documents and electronically stored information
relating to Plaintiff's performance under his Divisional Supervisor Agreement with Kirby." You
objected on the basis that the request is "overly broad as to scope ("relating to performance") and
time frame, and fails to describe with reasonable particularity a document or category of documents."
Your objections are not well-founded. The Divisional Supervisor Agreement between Kirby and
Plaintiff set forth the rights and obligations of both parties during the term of the Agreement.
"Documents" and "electronically stored information" are defined for Plaintiff's benefit. In addition,
Plaintiff's performance under the Divisional Supervisor Agreement is at the heart of this Lawsuit and
documents that relate to Plaintiff's performance are relevant and discoverable. Given that you and
Plaintiff have refused to provide all of the documents identified in Plaintiff's initial disclosures and
the vast majority of these discovery requests, it is necessary for Plaintiff to provide documents
regarding his performance under the Divisional Supervisor Agreement such as emails, text messages,
and other correspondence to, from, among, or between Plaintiff and/or Plaintiff's employees or
representatives and Kirby and/or Scott Fetzer; payments made to Plaintiff or an authorized recipient
by Kirby or Scott Fetzer per the terms of the Agreement; documents showing how Plaintiff fulfilled
his obligations under the "best efforts" provision and all other provisions of the Divisional Supervisor
Agreement which may include emails, text messages, and other communications with Factory
Distributors, among others; documents showing expenses paid by Plaintiff in performing his
Divisional Supervisor work including those expenses alleged in his Complaint and Amended
Complaint; and emails, text messages, and other correspondence transmitting documents and
information to Kirby or Scott Fetzer. Only Plaintiff knows what documents and electronically stored
information he has regarding his performance under the Divisional Supervisor Agreement – and those

Caryn M. Groedel, Esq.
August 16, 2021
Page 28

must be produced in response to this request. Please provide responsive documents and electronically stored information.

    <u>Request for Production No. 94 (mis-numbered as "95" in Plaintiff's Amended Responses)</u>:
    We asked Plaintiff to "produce any and all documents and electronically stored information relating to Kirby's performance under Plaintiff's Divisional Supervisor Agreement with Kirby." You objected on the basis that the request is "unclear" and is "overly broad in scope and time frame, and fails to describe with reasonable particularity a document or category of documents." Your objections are not well-founded. The Divisional Supervisor Agreement between Kirby and Plaintiff set forth the rights and obligations of both parties during the term of the Agreement. "Documents" and "electronically stored information" are defined for Plaintiff's benefit. In addition, the breach of contract claim brought by Plaintiff against the Defendants is at the heart of this Lawsuit, and documents and electronically stored information related to Kirby's performance are relevant and discoverable. Such information includes payments made under the Divisional Supervisor Agreement and documents that support Plaintiff's allegations that –

    Defendants breached paragraph 8 of the contract by, *inter alia*, exerting full control over Plaintiff's employment and treating him like an employee -- despite contractually agreeing that he would be an independent contractor, including paying him a fixed salary, which was paid on a set monthly basis; and requiring him to rent and maintain an out-of-the-home office, organize and lead rallies, meetings, and training seminars; travel from Florida to Cleveland four times per year for Divisional Supervisor meetings; visit each store he supervised at least once every three months; document his travel time; submit his calendar and travel reports to Kirby's president of North American Field Sales each month; spend specific hours working in his nonhome office each day he was not traveling; pay all costs associated with training his Sales Representatives, including training materials and conference room rental; employ an administrative assistant; pay all payroll taxes for himself and his administrative assistant; pay into the Florida unemployment and worker's compensation systems; and pay thousands of dollars per month on travel and lodging expenses for the travel Defendants required of him. (Amended Complaint, ¶40).

To date, Plaintiff has provided no documents to support most of these allegations. Please provide responsive documents and electronically stored information.

    <u>Request for Production No. 95 (mis-numbered as "96" in Plaintiff's Amended Responses)</u>:
    We asked Plaintiff to "produce any and all documents and electronically stored information relating to Scott Fetzer's performance under Plaintiff's Divisional Supervisor Agreement with Kirby." You objected on the same basis stated in response to Request for Production No. 94. For all of the

Caryn M. Groedel, Esq.
August 16, 2021
Page 29

reasons stated in response to your objections to Request for Production No. 94, your objections here are not well-founded. Please provide responsive documents and electronically stored information.

<u>Request for Production No. 96 (mis-numbered as "97" in Plaintiff's Amended Responses)</u>:
We asked Plaintiff to "produce any and all documents and electronically stored information concerning any attempt by Plaintiff to obtain employment with any employer since November 1, 2010." You objected on the basis that the request is "overly broad in time as it seeks documents dating back to 2010." Your objections are not well-founded. Indeed, the scope of the request is proper and proportional given that there is a dispute regarding whether Plaintiff was an employee of Defendants and Kirby's Counterclaim for breach of contract against Plaintiff. Thus, if Plaintiff attempted to obtain employment at any time during the term of his Divisional Supervisor Agreement, documents pertaining to those attempts are relevant and discoverable and must be produced. Please provide responsive documents and electronically stored information.

<u>Request for Production No. 97 (mis-numbered as "98" in Plaintiff's Amended Responses)</u>:
We asked Plaintiff to "produce any and all documents and electronically stored information concerning any attempt by Plaintiff to obtain work as a consultant since November 1, 2010." You objected on the basis that the request is "overly broad as it seeks documents dating back to 2010." Your objections are not well-founded. Indeed, the scope of the request is proper and proportional given that there is a dispute regarding whether Plaintiff was an employee or independent contractor of Defendants and Kirby's Counterclaim for breach of contract against Plaintiff. Thus, if Plaintiff attempted to obtain work as a consultant at any time during the term of his Divisional Supervisor Agreement, documents pertaining to those attempts are relevant and discoverable and must be produced. Please provide responsive documents and electronically stored information.

<u>Request for Production No. 98 (mis-numbered as "99" in Plaintiff's Amended Responses)</u>:
We asked Plaintiff to "produce any and all documents and electronically stored information concerning any attempt by Plaintiff to obtain work as an independent contractor since November 1, 2010." You objected on the basis that the request is "overly broad as it seeks documents dating back to 2010." Your objections are not well-founded. Indeed, the scope of the request is proper and proportional given that there is a dispute regarding whether Plaintiff was an employee or independent contractor of Defendants and Kirby's Counterclaim for breach of contract against Plaintiff. Thus, if Plaintiff attempted to obtain work as an independent contractor at any time during the term of his Divisional Supervisor Agreement, documents pertaining to those attempts are relevant and discoverable and must be produced. Please provide responsive documents and electronically stored information.

<u>Request for Production No. 99 (mis-numbered as "100" in Plaintiff's Amended Responses)</u>:
We asked Plaintiff to "produce any and all documents and electronically stored information concerning any attempt by Plaintiff to purchase a business since November 1, 2010." You objected on the basis that the request is "overly broad in scope and time frame, and seeks documents that are

Caryn M. Groedel, Esq.
August 16, 2021
Page 30

not relevant or proportional to the needs of this case." Your objections are not well-founded. Indeed, the scope of the request is relevant and proportional given that there is a dispute regarding whether Plaintiff was an employee or independent contractor of Defendants and Kirby has made a Counterclaim for breach of contract against Plaintiff. In addition, any attempt by Plaintiff to purchase a business following the termination of his Divisional Supervisor Agreement is relevant to his obligation to mitigate his damages. Thus, if Plaintiff attempted to purchase a business at any time during the term of his Divisional Supervisor Agreement, documents pertaining to those attempts are relevant and discoverable and must be produced. Please provide responsive documents and electronically stored information.

     <u>Request for Production No. 100 (mis-numbered as "101" in Plaintiff's Amended Responses)</u>:
     We asked Plaintiff to "produce any and all documents and electronically stored information concerning any attempt by Plaintiff to invest in a business since November 1, 2010. You objected on the basis that the request is "overly broad in scope and time frame, and seeks documents that are not relevant or proportional to the needs of this case." Your objections are not well-founded.   Indeed, the scope of the request is relevant and proportional given that there is a dispute regarding whether Plaintiff was an employee or independent contractor of Defendants and Kirby has made a Counterclaim for breach of contract against Plaintiff. In addition, any attempt by Plaintiff to invest in a business following the termination of his Divisional Supervisor Agreement is relevant to his obligation to mitigate his damages. Thus, if Plaintiff attempted to invest in a business at any time during the term of his Divisional Supervisor Agreement, documents pertaining to those attempts are relevant and discoverable and must be produced. Please provide responsive documents and electronically stored information.

     <u>Request for Production No. 101 (mis-numbered as "102" in Plaintiff's Amended Responses)</u>:
     We asked Plaintiff to "produce any and all documents and electronically stored information concerning any attempt by Plaintiff to incorporate a business since November 1, 2010." You objected on the basis that the request is "overly broad in scope and time frame, and seeks documents that are not relevant or proportional to the needs of this case." Your objections are not well-founded. Indeed, the scope of the request is relevant and proportional given that there is a dispute regarding whether Plaintiff was an employee or independent contractor of Defendants and Kirby has made a Counterclaim for breach of contract against Plaintiff. In addition, any attempt by Plaintiff to incorporate a business following the termination of his Divisional Supervisor Agreement is relevant to his obligation to mitigate his damages. Thus, if Plaintiff attempted to incorporate a business at any time during the term of his Divisional Supervisor Agreement, documents pertaining to those attempts are relevant and discoverable and must be produced. Please provide responsive documents and electronically stored information.

Caryn M. Groedel, Esq.
August 16, 2021
Page 31

<u>Request for Production No. 102 (mis-numbered as "103" in Plaintiff's Amended Responses)</u>:
We asked Plaintiff the following –

Please produce any and all emails, text messages, instant messages, photographs, video recordings, audio recordings, social media posts, "Likes", comments, tags, status updates, tweets, blog entries, and/or messages sent to or from, passing between, hosted on or posted on any email account, Facebook account, Twitter account, LinkedIn account, Skype account, Blogger/Blogspot account, or any other page, social media account or email account created, accessed and/or maintained by Plaintiff since November 1, 2010 relating to, concerning, or referring to:

    a.    Plaintiff's Divisional Supervisor Agreement with Kirby;
    b.    Plaintiff's performance under his Divisional Supervisor Agreement with Kirby;
    c.    Any current and/or former employee, representative, agent, or independent contractor of Kirby including, but not limited to:
        1.    Kevin Reitmeier;
        2.    Bud Miley;
        3.    David Lamb;
        4.    Halle Sminchak;
        5.    Timothy Updegraph;
        6.    Carl Emmert;
        7.    Michael Licata;
        8.    Rob Terwilliger;
        9.    Marc Venditti;
        10.    Frank Venditti III;
        11.    Matt Bragg;
    d.    Any active, concluded, contemplated or threatened claim, charge, litigation, or lawsuit against or involving Kirby, Scott Fetzer, or any of their respective current or former employees or independent contractors;
    e.    Plaintiff's claims in this Lawsuit;
    f.    Plaintiff's allegations and/or damages in this Lawsuit;
    g.    Kirby's claims in this Lawsuit.
    h.    Kirby's allegations and/or damages in this Lawsuit:
    i.    Plaintiff's efforts to obtain employment with a different employer (including self-employment) during the term of his Divisional Supervisor Agreement with Kirby;
    j.    Plaintiff's employment or efforts to obtain employment (including self-employment) since the termination of his Divisional Supervisor Agreement with Kirby;

Caryn M. Groedel, Esq.
August 16, 2021
Page 32

      k.     Any of Plaintiff's complaints to or about Kirby and/or Scott Fetzer or any of their respective current or former employees, parent companies; or independent contractors;

      l.     Payments made by Kirby or Scott Fetzer to Plaintiff directly or a person or entity authorized by Plaintiff to receive payments for services rendered by Plaintiff since November 1, 2010; and

      m.    Plaintiff's other agreements with Kirby and/or Scott Fetzer.

You objected on the basis that the request is "overly broad in scope and time frame and seeks documents that are not relevant or proportional to the needs of this case. It also fails to describe with reasonable particularity a document or category of documents." Your objections are not well-founded. First, the time period is narrowly tailored to the time period encompassing the Divisional Supervisor Agreement through the present. Second, the scope of the request is narrowly tailored to the allegations, claims, defenses, and damages in this Lawsuit and evidence already proffered by Plaintiff in his initial disclosures. Third, the specific documents requested are described with "reasonable particularity" and it is absurd for you to claim otherwise. Please provide responsive documents and electronically stored information.

    <u>Request for Production No. 103 (mis-numbered as "104" in Plaintiff's Amended Responses)</u>:
We asked Plaintiff to "produce any and all documents and electronically stored information generated by Plaintiff, or Plaintiff's agents or representatives, or obtained from other persons or entities, that relate to or refer to the allegations in the Lawsuit. This request includes all notes, timelines, summaries, tape recordings, transcripts, notes of conversations, emails, or text messages which pertain to this Lawsuit, excluding any documents protected by the attorney- client privilege or attorney work product doctrine." You objected on the basis that the request is "overly broad in scope and time frame. It also fails to describe with reasonable particularity a document or category of documents." Your objection is not well-founded. "Documents" and "electronically stored information" are defined for Plaintiff and the request includes specific examples of documents and electronically stored information responsive to this request – thus, the documents requested are described with "reasonable particularity". In addition, this request seeks documents about the allegations made in this Lawsuit – the claims and Counterclaim – thus, the scope of the request is narrowly tailored in time and subject. Please provide responsive documents and electronically stored information.

    <u>Request for Production No. 104 (mis-numbered as "105" in Plaintiff's Amended Responses)</u>:
We asked Plaintiff to "produce any and all documents and electronically stored information that, although not specifically requested herein, refer, relate to, or otherwise support the allegations in Plaintiff's Complaint, as well as the acts described therein, or Plaintiff's responses or defenses to the Counterclaim." You objected on the basis that the request is "overly broad and fails to comply with FRCP 34 as it does not describe with reasonable particularity a document or category of documents. It also seeks Plaintiff's counsel mental impressions of the specific documents that support

Caryn M. Groedel, Esq.
August 16, 2021
Page 33

Plaintiff's claims, which is protected from disclosure by the attorney work product doctrine." Your objections are not well-founded. First, "documents" and "electronically stored information" are defined for Plaintiff. Second, the scope of the request is narrowly tailored in time and content as it requests documents that "refer, relate to, or otherwise support the allegations in Plaintiff's Complaint, as well as the acts described therein, or Plaintiff's responses or defenses to the Counterclaim." Third, this request is not asking for Plaintiff's counsel's mental impressions or attorney-client privileged communications; it is asking <u>Plaintiff</u> to produce documents related to the allegations and acts described in the Complaint or related to Plaintiff's responses or defenses in the Counterclaim. Please provide responsive documents and electronically stored information.

    <u>Request for Production No. 105 (mis-numbered as "106" in Plaintiff's Amended Responses)</u>:
    We asked Plaintiff to execute the Authorization to Release Cell Phone Records for each cellular phone number identified in response to Interrogatory No. 17. You object on the basis that this request is "overly broad in scope and time frame, and seeks documents that are not relevant or proportional to the needs of this case." To the extent your concern is with simply with the time period, Defendants are willing to limit the request for phone records from January 1, 2018 to the present. In addition, as we have already stated, Plaintiff may use this authorization to obtain the phone records he claims he is unable to obtain in response to Request for Production Nos. 26, 27, and 33. Therefore, please return the authorization requested with the updated time frame noted or provide us with the phone records.

    <u>Request for Production No. 107 (mis-numbered as "108" in Plaintiff's Amended Responses)</u>:
    We asked Plaintiff the following –

To the extent not already produced in response to any other document request, please produce any and all documents and electronically stored information, including text messages, phone calls, voice mail messages, emails, other written or oral communications, and recordings of conversations, to or from, or exchanged between Plaintiff or his agents, representatives, or attorneys and the following persons from January 1, 2018 to the present:

    a.    Plaintiff's daughter described in Paragraphs 23 to 25 of the Complaint that refer or relate to the CBD store described in Paragraphs 23 to 25 of the Complaint ("CBD Store"), any other business or entity Plaintiff and/or Plaintiff's daughter owned, operated, controlled, invested in, incorporated, served as a board member and/or officer of, or has had any direct or indirect involvement;
    b.    Employees of the CBD Store;
    c.    Customers of the CBD Store;
    d.    All other persons associated with the CBD Store;
    e.    All persons related to the CBD Store or any other business or entity Plaintiff and/or Plaintiff's daughter owned, operated, controlled,

Caryn M. Groedel, Esq.
August 16, 2021
Page 34

invested in, incorporated, served as a board member and/or officer of, or
has had any direct or indirect involvement.

You objected on the basis that the request is "overly broad in scope and time frame, seeks documents
that are not relevant or proportional to the need of this case, and fails to describe with reasonable
particularity a document or category of documents." The scope of the request is narrowly tailored in
time (January 1, 2018 to the present) and the documents requested are relevant and proportional to
the case, particularly because Plaintiff's involvement in the CBD business and his daughter's CBD
Store are at the heart of Kirby's Counterclaim and some of the allegations made by Plaintiff. Please
provide responsive documents and electronically stored information.

Request for Production No. 108 (mis-numbered as "109" in Plaintiff's Amended Responses):
We asked Plaintiff to "Please produce any and all documents and electronically stored
information which pertain to the opening and/or operation of the CBD Store." You objected on the
basis that the request is "overly broad in scope and time frame, and seeks documents that are neither
relevant nor proportional to the needs of this case." Your objections are not well-founded. For
avoidance of doubt, we define "CBD Store" in Request for Production No. 107. Plaintiff has made
information pertaining to the CBD Store relevant. This request is narrowly tailored to "documents"
and "electronically stored information" – both defined for Plaintiff – related to the opening and/or
operation of the CBD Store. The requested information is relevant given that Plaintiff's independent
contractor status is at issue in this matter, as is Plaintiff's involvement in his daughter's CBD Store.
Thus, your objection on the basis that this request is overly broad in scope and time is absurd. Please
provide responsive documents and electronically stored information.

Request for Production No. 109 (mis-numbered as "110" in Plaintiff's Amended Responses):
We asked Plaintiff to "produce any and all documents and electronically stored information
which pertain to the opening and/or operation of any and all CBD stores and/or CBD businesses (other
than the CBD Store) in which Plaintiff has a financial and/or ownership interest." You objected on
the basis that the request is "overly broad in scope and time frame, and seeks documents that are
neither relevant nor proportional to the needs of this case." Your objections are not well-founded.
Indeed, Plaintiff's involvement in the CBD industry during the term of his Divisional Supervisor
Agreement is relevant to the breach of contract claim and Kirby's Counterclaim; and documents
pertaining to his involvement following the termination of the Divisional Supervisor Agreement are
relevant to his mitigation efforts. Please provide responsive documents and electronically stored
information.

Request for Production No. 110 (mis-numbered as "111" in Plaintiff's Amended Responses):
We asked you to "produce any and all documents and electronically stored information
(including, but not limited to, full and complete clinical records, office notes, diagnoses, prescriptions,
communications, hospital charts, examination records, history records, x-rays, laboratory specimens,
or information related to medical expenses) prepared by, submitted to, or otherwise maintained by

Caryn M. Groedel, Esq.
August 16, 2021
Page 35

any of the health professionals identified in response to Interrogatory No. 24. For each such health professional from whom such documents will be retrieved, Plaintiff is requested to execute and return to the undersigned counsel for Kirby (1) the attached Authorization for Disclosure of Health Information so that Kirby may obtain relevant records; and (2) any specific authorization for disclosure required by Plaintiff's health providers or health systems where Plaintiff sought and/or received medical treatment." You objected on the basis that the request "seeks documents that are confidential and HIPAA- protected. It also seeks documents that are not relevant or discoverable because Plaintiff has not waived his privilege in his medical records by seeking damages for what is commonly referred to as "garden variety emotional stress damages" as a result of the events described in his lawsuit." If Plaintiff is willing to stipulate that the evidence of emotional distress at trial will be "limited to the testimony of the plaintiff, who describes… his… injury in vague or conclusory terms, without relating either the severity or consequences of the injury," as described in our response to your objections to Interrogatory No. 24, above, then we will withdraw this request. Please confirm, in writing, that Plaintiff will make this stipulation. Otherwise, please provide a complete response to this request because your objections are not well-founded.

We look forward to your complete response to Defendant's discovery requests and this letter and conferring with you pursuant to Appendix K of the Local Rules.

Sincerely,


/s/ Morena L. Carter

Morena L. Carter
Associate

MLC/tsb
cc:    Ryan J. Morley, Esq.

4846-0344-0374.1 / 056013-1160



31340 Solon Road
Suite 27
Cleveland, OH  44139
T:  (440) 544-1122
F:  (440) 996-0064
E:  cgroedel@groedel-law.com



*Labor and Employment*

August 30, 2021

*by email:  mlcarter@littler.com; rmorley@littler.com*

Morena L. Carter, Esq.
Ryan S. Morley, Esq.
Littler Mendelson P.C.
Key Tower
127 Public Square, Suite 1600
Cleveland, OH  44114

   Re: *Ibrahim Sharqawi v. The Kirby Co., et al. Case No. 1:20-cv-00271-PAB*

Counsel:

   I am writing this letter in an effort to resolve our ongoing discovery disputes.  It has become clear through our communications that the scope and relevance of certain documents and information has brought us to an impasse.  Defendants continue to harass Plaintiff with expansive discovery requests seeking irrelevant documents and information with requests that are over broad, not proportional to the needs of the case, and unduly burdensome in light of the allegations in this case.  Should Defendants continue to harass Plaintiff with such requests, and/or refuse to withdraw or resubmit requests that are within the bounds of the Rules of Civil Procedure, we will have no choice but to involve the Court.

   **Discovery Requests Dating Back to November 1, 2010 and Earlier**

   Defendants' discovery requests make repeated requests for information and documents dating back to November 1, 2010, and earlier.  You claim in your August 16, 2021 letter that discovery requests dating back to November 1, 2010 are appropriate because Plaintiff claims he was an employee, and November 1, 2010 was the start of his contractual relationship with Kirby.

   Your argument is not convincing.  The fact that an employee-Plaintiff began his employment on a specific date does not support expanding the relevant period of discovery to the entire period of employment for all aspects of the case.  Discovery must be relevant to the claims asserted.  FRCP 26(b)(1).  Defendant's counterclaim asserts Plaintiff breached his contract in 2018, thereby justifying Defendant's termination of their relationship with Plaintiff.  The only claim of Plaintiff's that pre-dates 2018 is his claim for unjust enrichment.  However, Defendants'

EXHIBIT 5

Morena L. Carter, Esq.
Ryan S. Morley, Esq.
August 30th, 2021
Page 2

discovery requests seeking discovery from 2010 and earlier, seek far more than that; they seek, *inter alia*, information relating to Plaintiff's personal business activities, independent contractor relationships, consulting relationships, as well as documents showing all compensation, changes in job titles, and his employment benefits.  None of these requests relates to Plaintiff's unjust enrichment claim.

Unless Defendants explain how expanding the time frame for discovery for every aspect of this case is justified, Plaintiff will continue to object to these requests on the grounds they are over broad, not relevant, and not proportional to the needs of this case, and will seek a protective order.

### Discovery Requests Seeking Plaintiff's and Third-Parties' Personal Business Records

You propounded numerous requests for information and documents concerning Plaintiff's private business affairs, and the personal affairs of his immediate family members, who are party to this case.  These discovery requests are utterly unrelated to any claims or counterclaims asserted in this matter.

You claim that Plaintiff's outside business activities resulted in a breach of his employment contract with Defendants; specifically, paragraphs 6, 12, and 13.  However, **none** of those paragraphs prohibits divisional supervisors from engaging in outside  business activity.

Unless you clarify the specific actions of Plaintiff that breached an express provision of his contract, we will continue to object to all requests for documents and information concerning his non-Kirby business affairs, and those of non-parties to this action.

### Discovery Requests Seeking All of Plaintiff's Financial Records

You have also requested Plaintiff's financial records from November 1, 2010 through the present, including his income, earnings, and receipts of payment from any and all employment independent contractors, and consulting relationships he may have had between November 1, 2010 and the present.  These requests are likewise over broad, not relevant, and not proportional to the needs of the case.

To the extent these requests are based on Plaintiff's claim of unjust enrichment, Plaintiff will produce documents showing the expenses on which he bases his unjust enrichment claim.  Otherwise, Plaintiff will continue to object to these requests on the grounds they are not relevant, over broad, not proportional to the needs of the case, and unduly burdensome.

I look forward to your prompt response to these concerns.

Morena L. Carter, Esq.
Ryan S. Morley, Esq.
August 30th, 2021
Page 3


Very truly yours,

Caryn M. Groedel, Esq.


CMG:nk
cc:  Ibrahim Sharqawi by email

31340 Solon Road
Suite 27
Cleveland, OH  44139
T:  (440) 544-1122
F:  (440) 996-0064
E:  cgroedel@groedel-law.com





*Labor and Employment*

September 13, 2021

*by email:  mlcarter@littler.com; rsmorley@littler.com*

Morena L. Carter, Esq.
Ryan S. Morley, Esq.
Littler Mendelson P.C.
Key Tower
127 Public Square, Suite 1600
Cleveland, OH  44114

Re:     <u>*Ibrahim Shargawi v. The Kirby Co., et al. Case No. 1:20-cv-00271-PAB*</u>

Counsel:

I am writing in response to your August 16, 2021 letter regarding Plaintiff's Responses to Defendants' discovery requests.

**Interrogatory nos. 3, 4, 6, 7, 8, and 12:**   We are in the process of obtaining this information and hope to have it to you by the end of this week.

**Plaintiff's Answers to Interrogatory no. 24 and RFP 110:**

You've requested that Plaintiff identify all health professionals "who examined Plaintiff or from whom Plaintiff sough evaluation or treatment" and state the dates of the "examination, consultation, or treatment", the "condition for which such examination, consultation, or treatment was provided", "a description of the treatment provided", and "the date, location, and duration of any hospitalization or institutionalization resulting therefrom," and to "produce any and all documents and electronically stored information… prepared by, submitted to, or otherwise maintained by any of the health professionals identified in response to Interrogatory No. 24." Plaintiff maintains his objection that such information is privileged and protected from disclosure as confidential HIPAA-protected information, and he has not waived his privilege in these matters, as Plaintiff is merely seeking what is known as "garden variety emotional damages".

Morena L. Carter, Esq.
Ryan S. Morley, Esq.
September 13, 2021
Page 2

Plaintiff's medical information is privileged, confidential, and statutorily protected.  *See* R.C. 2317.02(B)(1); *Groening v. Pitney Bowes*, 8th Dist. No. 91394, 2009–Ohio–357, ¶ 11 ("Pursuant to R.C. 2317.02, a person's medical records are privileged and, therefore, undiscoverable."); *see also Jaffe v. Redmond*, 518 U.S. 1, 116 S.Ct.1923, 1928-29, 135 L.Ed.2d 337 (1996) (psychotherapist privilege serves public interest by facilitating provision of appropriate treatment for individuals suffering effects of mental or emotional problem, and if privilege were rejected, confidential conversations between psychotherapists and their patients would surely be chilled).

Federal courts have held that, in employment cases, a plaintiff does not waive the physician-client privilege by simply seeking what is commonly referred to as "garden variety" emotional damages.  "Garden-variety" emotional distress has been described as "ordinary or commonplace emotional distress," that which is "simple or usual", as opposed to "complex" emotional distress, "such as that resulting in a specific psychiatric disorder."  *Ruhlmann v. Ulster County Dep't of Soc. Servs.*, 194 F.R.D. 445, 449 n. 6 (N.D.N.Y.2000); *see also, Murdock v. L.A. Fitness Int'l, LLC*, D. Minn. No. 12-975, 2012 WL 5331224, at *4, fn. 8 (Oct. 29, 2012) (garden variety damages include "'[d]epression, chronic fatigue, irritability, sleep abnormalities, insomnia, tiredness throughout the day, malaise[.] a significantly grim outlook for future, and a feeling [of] never regain[ing] the prominence in [plaintiff's] career, or [plaintiff's] personal life.'"); *Seaton v. Sky Realty Co.*, 491 F.2d 634, 637–38 (7th Cir.1974) (holding that compensatory damages may be awarded for humiliation, either inferred from circumstances or established by testimony, and that medical evidence of mental or emotional impairment is not necessary to sustain such an award).

A claim for "garden variety" damages does not waive privilege.  *See, e.g., Sabree v. United Bhd. of Carpenters & Joiners*, 126 F.R.D. 422, 426 (D. Mass. 1989.  Because Plaintiff is not claiming that he suffered a physical injury, permanent emotional injury, or exacerbation of a pre-existing injury; he has not retained a psychological expert; and he has not brought an intentional infliction of emotional distress claim, he has certainly not waived his privilege in his health care records.

We stand by our objections to Interrogatory no. 24 and RFP 110.

### Defendants' Failure to Comply with FRCP 34:

Regarding Plaintiff's responses to RFPs 5, 9-12, 15-17, 53-78, 81-85, 87, 89-91, 93-95, 102-104, and 107, you asserted, without citing case law supporting your claim, that these requests were reasonably particular enough to mandate a response, and ask that we withdraw our R. 34 objections on the grounds that they are untimely.  We decline your request because a request for production under Rule 34 "must describe with reasonable particularity each item or category of items to be inspected."  Fed. R. Civ. Pro. 34(b)(1)(A).  "What

Morena L. Carter, Esq.
Ryan S. Morley, Esq.
September 13, 2021
Page 3

is reasonably particular is dependent upon the facts and circumstances in each
case." *Mallinckrodt Chemical Works v. Goldman, Sachs & Co.,* 58 F.R.D. 348, 353 (S.D.N.Y.1973).
"The test for reasonable particularity is whether the request places the party upon 'reasonable
notice of what is called for and what is not.'" *Lopez v. Chertoff,* No. CV 07-1566-LEW, 2009 WL
1575214, at *2 (E.D. Cal. June 2, 2009), quoting *Kidwiler v. Progressive Paloverde Ins. Co.,* 192
F.R.D. 193, 202 (N.D.W.Va.2000).

    **Courts tend to find document requests seeking all documents related to a claim or
defense as lacking particularity**.  *See Kidwiler,* 192 F.R.D. at 202; *Devore v. City of Phila.,* 2002
U.S. Dist. LEXIS 23522 (E.D.Pa. Nov. 14, 2002) (request lacked reasonable particularity where it
sought documents related to Plaintiff's claims or damages).  For example, a district court found
that **a document request for all documents that 'refer or relate to' the plaintiff was too broad**
because "a copy of every document in [the Defendants'] possession could conceivably 'refer or
relate' to the plaintiff. *Robbins v. Camden City Bd. of Education,* 105 F.R.D. 49, 60
(D.N.J.1985). *See Regan–Touhy v. Walgreen Co.,* 526 F.3d 641, 650 (10th Cir.2008) (request for
"'all documents ... that refer to, mention or relate in any way to Plaintiff, [ ] or the litigation or
the allegations, facts and circumstances concerning the litigation,' [was] overly broad.").

    Your RFPs 5, 9-12, 15-17, 53-78, 81-85, 87, 89-91, 93-95, 102-104, and 107 all contain
non-particular, over broad language that courts have determined do not comply with R. 34.  For
these reasons, we stand by our R. 34 objections to these RFPs.

    With respect to your contention that our objections to these RFPs are late:  (a) Neither
our client, nor we, can respond to RFPs that do not allow us to discern what is actually being
requested.  If you modify these RFPs, we can respond.  Otherwise, we simply can't.  When our
client originally responded to these RFPs, he thought he knew what you were requesting, but
upon supplementing, realized that he did not.  Neither do we.  If you want to make an issue out
of this, rather than simply revising the RFPs in a way that complies with FRCP 34 and that we
can understand and respond to, we can bring it to the Court's attention.  Please let us know
which way you wish to proceed.

    **Defendants' Over Broad Requests:**

    Defendants' Interrogatories 14, 16-21, and RFPs 46-48, 50, 53-78, 80-85, 87, 89-91, 93-105, and
107-109 are over broad.

    The use of omnibus phrases such as "relating to", when used to modify a request for "all
documents", constitutes a facially overly broad request. *Cotracom Commodity Trading Co. v.
Seaboard Corp.*, 189 F.R.D. 655, 656-66 (D. Kan. 1999). *Doricent v. American Airlines, Inc.*, Civil
Action No. 91-12084Y, 1993 U.S. Dist. LEXIS 15143, at *21-22 (D. Mass. Oct. 19, 1993) ("as all
life, like law, is a seamless web, . . . , employment of the phrase "relating to" is essentially

Morena L. Carter, Esq.
Ryan S. Morley, Esq.
September 13, 2021
Page 4

meaningless. The 'relating to' rubric of itself mandates nothing and explains nothing."); see also *W. Restaurant, Inc. v. Union Pacific R.R. Co.*, No. 00-2043-CM, 2002 U.S. Dist. LEXIS 14796, at *5-6 (D. Kan. July 23, 2002) ("Use of broad terms such as "relate to" or "relating to" provides no basis upon which an individual or entity can reasonably determine what documents may or may not be responsive. . . **The phrases 'relate to' and 'relating to' do not modify a specific type of document, but rather all documents; thus, their very use make the requests overly broad on their face.**"); *Robbins v. Camden City Bd. Of Educ.*, 105 F.R.D. 49, 60 (D.N.J. 1985) ("A literal reading of [the discovery request] would require the defendant to provide a copy of every document in its possession, since all of these documents could conceivably 'refer or relate' to plaintiff's employment. Such a request is too broad and ambiguous").

Additionally, discovery requests must be within a relevant time frame and proportionate to the needs of the case.  In employment discrimination cases, "courts have permitted discovery periods as long as eight to ten years," but "the norm ... seems to be anywhere between three and five years." *Briddell v. Saint Gobain Abrasives Inc.*, 233 F.R.D. 57, 60 (D.Mass.2005); see also *Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 655 (D.Kan.2004).

Your Interrogatories 14, 16-21, and RFPs 46-48, 50, 53-78, 80-85, 87, 89-91, 93-105, and 107-109, **all** make facially over broad requests for documents or information dating back **11 years or more**, which is well beyond the relevant time frame in this case, and beyond time frames accepted by courts in employment discrimination cases.

For these reasons, we stand by our objections to Interrogatories 14, 16-21, and RFPs 46-48, 50, 53-78, 80-85, 87, 89-91, 93-105, and 107-109.

### Defendants' Requests for Proof of Negative Claims:

Defendants' RFPs 21, 24, and 32 all request documents to prove a negative claim.  RFP 21 requests documents proving that Plaintiff worked under Bud Miley "**without incident**".  RFPs 24 and 32 request documents proving that Kevin Reitmeier "**did not** harass non-Middle Eastern Divisional Supervisors…"

Plaintiff cannot produce documents to prove that Plaintiff worked under Bud Miley **without incident**, or that Mr. Reitmeier **did not** harass non-Middle Eastern Divisional Supervisors, because documents proving something did not happen, by the very nature of negative claims, do not exist.

Accordingly, Plaintiff has no responsive documents.

### Defendants' Requests for Plaintiff's Phone Records

Morena L. Carter, Esq.
Ryan S. Morley, Esq.
September 13, 2021
Page 5


Plaintiff requested his phone records.  By the end of the week, we hope to be providing you with proof of a statement supporting his good faith efforts to obtain the requested phone records, and produce them to Defendant as they become available.

### Your Objections to our Redactions:

We will agree to produce unredacted copies of Plaintiff's post-termination W-2s if you stipulate that neither you, your clients, and/or your/their agents/representations will not subpoena or otherwise involve Plaintiff's current employer in this matter.

### Our Collateral Source Objection:

"In Ohio, the collateral source rule provides 'that benefits the plaintiff receives from a source wholly independent of the wrongdoer should not benefit the wrongdoer by reducing the amount of damages which a plaintiff might otherwise recover from him.'" *Libbey-Owens-Ford Co. v. Skeddle*, 86 F.3d 1155 (6th Cir. 1996), quoting *Klosterman v. Fussner***,** 651 N.E.2d 64, 67 (Ohio Ct.App.1994).  "Certain payments the plaintiff receives from sources collateral to, or independent of, the tortfeasor may not be offset from a back pay award under the collateral source rule." *Hylind v. Xerox Corp.*, 31 F. Supp. 3d 729, 734 (D. Md. 2014), aff'd, 632 F. App'x 114 (4th Cir. 2015).

Your Interrogatories 13, 15, and RFPs 46 and 47, which request documents and information relating to Plaintiff's income for services of any kind, and from any businesses, from **November 1, 2010**, to the present, are requesting discovery protected by the collateral sources.  Because such documents and information cannot be used to reduce back pay damages, we stand by our objection to the discovery requests for information and documents from November 1, 2010 to October 8, 2018, but will produce, by this Friday, any 1099s and W-2s from October 8, 2018, to the present that have not yet been produced.

### Your Non-Relevant and Non-Proportional Requests:

Your Interrogatories 13, 14, 15, 18, 19, 20, and 21, and RFPs 46-50, 54-65, 67-73, 75, 78, 80-82, 87, 90-91, 99-102, and 105, request discovery that is neither relevant nor proportional to the needs of this case.

FRCP 26(b)(1) states:

Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is **relevant to any party's claim or defense and proportional to the needs of the case, considering the**

Morena L. Carter, Esq.
Ryan S. Morley, Esq.
September 13, 2021
Page 6

importance of the issues at stake in the action, the amount in controversy, the parties'
relative access to relevant information, the parties' resources, the importance of the
discovery in resolving the issues, and whether the burden or expense of the proposed
discovery outweighs its likely benefit. Information within this scope of discovery need
not be admissible in evidence to be discoverable.  (Emphasis added.)

Your Interrogatories 13, 14, 15, 18, 19, 20, and 21, and RFPs 46-50, 54-65, 67-73, 75, 78,
80-82, 87, 90-91, 99-102, and 105, request, *inter alia*, documents and information from as early
as November 1, 2010, relating to Plaintiff's employment relationships, tax documents, bank
documents, business relationships, consulting relationships, businesses owned, operated,
managed, or invested in by Plaintiff and his **immediate family members**, and ask whether
Plaintiff has **ever** been convicted of a crime -- rather than limiting the request to crimes
involving dishonesty or moral turpitude for the last 10 years.

These requests seek documents and information not relevant to the claims or defenses
in this case, as they do not prove, disprove, support, or fail to support, any claim or defense in
this case.  His unjust enrichment is based on the events that support his breach of contract
claim.  His remaining claims concern conduct and events that occurred from late 2017/early
2018 through the present.

Additionally, Defendants' breach of contract counterclaim is based on Plaintiff's alleged
involvement in a CBD business they claim violates paragraphs 6, 12, and 13 of the Divisional
Supervisor Agreement, none of which prohibit personal business ventures.

As of the date of this letter, you have failed to produce a *single* document supporting or
elaborating upon your amorphous counterclaim.

Your l8/16/21 letter to us states that Plaintiff's alleged involvement in a CBD business is
at the heart of your clients' counterclaim.  Yet, your letter fails to explain how Plaintiff's private
business affairs, or those of his **mediate family members**, are relevant to this case.

Further, your requests go beyond Plaintiff's alleged involvement in a CBD business.  In
fact, only **4 of your RFPs** (66, 107, 108, and 109) request documents related to CBD businesses.
The rest seek discovery relating to, *inter alia*, **any** businesses Plaintiff has incorporated, sought
to incorporate, operated, been a board member on, invested in, etc., and as such, are are not
relevant to Plaintiff's claims or Defendants' counterclaim.

Lastly, many of these requests are not proportional to the needs of the case, including:
they seek discovery from November 1, 2010, to the present -- 11 years -- and request
information/documents about items and actions not at issue in this case, though we realize you

Morena L. Carter, Esq.
Ryan S. Morley, Esq.
September 13, 2021
Page 7


are trying to make them issues.  Perhaps this is another issue we should bring to the Court's
attention.

       --

     If you wish to discuss how these requests are relevant to any claim or the counterclaim
in this case, please let us know.


           Very truly yours,


           Caryn M. Groedel, Esq.


CMG:nk
cc:  Ibrahim Sharqawi by email

**From:**          Nicholas Kerr
**Sent:**          9/17/2021 3:30:57 PM
**To:**            'Carter, Morena L.'; 'rmorley@littler.com'
**Cc:**            'cgroedel@groedel-law.com'
**Subject:**       Sharqawi v. Kirby- Follow-up to 9/14 meet and confer
**Attachments:**   Witness Identification Sheet-Filled.docx

Dear counsel,

As a follow-up to our 9/14 meet and confer, I'm providing information we agreed to provide.

**ID of Witnesses**
I've attached a sheet with the witness information. You asked for any addresses our Client may have, including old addresses. We will supplement this list with additional address information as it becomes available.

**1099s/W-2s**
Our client is in the process of searching for and providing additional 1099s and W-2s from 2018-2020.

**Stipulation Not to Contact Current Employer**
In exchange for receiving our Client's unredacted W-2s and 1099s, Caryn would like you, your clients, your agents/representatives, and your clients' agents/representatives, to stipulate that you will not contact our Client's current employer at all. We will provide documents showing our Client's current wage and benefits. Should you want additional documents, all requests must go through Caryn.

**Devices and Numbers**
Our client is unaware of the specific model of the devices he has used over the years. But the phone number

**Good Faith Efforts to Get Phone Records**
We are in the process of drafting and having our client execute an affidavit detailing his good faith efforts. This affidavit will be produced with any other documentation we have.

**Emotional Damages Evidence**
Caryn stated she intends to use the testimony of our client's family and friends to prove his emotional damages at trial.

**Mitigation Documents**
Our client is in the process of obtaining these documents. We will produce them as they become available.

Nicholas Kerr, J.D.
*Law Clerk*



EXHIBIT 7

31340 Solon Road, Suite 27
Cleveland, OH  44139
phone: (440) 544-1122 x 114
fax:      (440) 996-0064
email:   nkerr@groedel-law.com

CONFIDENTIALITY NOTE:  This e-mail is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure.  Dissemination, distribution or copying of this e-mail or the information herein by anyone other than the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, is prohibited.  If you have received this e-mail in error, please call Nicholas Kerr at 440-544-1122 and destroy the original message and all copies.



**Littler Mendelson P.C.**
Key Tower
127 Public Square
Suite 1600
Cleveland, OH  44114-9612

Morena L. Carter
216.623.6059 direct
216.696.7600 main
216.803.5235 fax
mlcarter@littler.com

October 1, 2021

**VIA E-MAIL - CGROEDEL@GROEDEL-LAW.COM**

Caryn M. Groedel, Esq.
CARYN GROEDEL & ASSOCIATES, CO., L.P.A.
31340 Solon Road, Suite 27
Cleveland, Ohio 44139

Re:    Ibrahim Sharqawi v. The Kirby Company, et al.
       United States District Court for the Northern District
       of Ohio Case No. 1:20-cv-00271-PAB

Dear Caryn:

We received your three responses to our discovery deficiency letter dated August 16, 2021—letters dated August 30, 2021 and September 13, 2021, and an email from your law clerk, Nicholas Kerr, on September 17, 2021. Plaintiff's responses, however, remain deficient in nearly all regards.

In addition, on September 14, 2021, you inexplicably failed to attend the telephonic meet and confer we scheduled based on your stated availability. Instead, you sent Mr. Kerr, a non-attorney, to speak with us. Although he told us that your absence was due to some last-minute unavoidable conflict, you have not communicated with us regarding your absence or contacted us to have a further conversation regarding outstanding discovery issues.

Below, we outline our discovery concerns and look forward to Plaintiff's compliance with his discovery obligation by **October 8, 2021**.

<u>**Late Objections Added to Plaintiff's August 6 and 9, 2021 Supplemental Discovery Responses**</u>:

First, we note that Plaintiff's Amended Responses to Defendant Kirby Company's Requests for Production of Documents dated August 6, 2021 did not contain a proper Certificate of Service. Without prompting by us, the Certificate of Service was corrected in the version of Plaintiff's Amended Responses to Defendant Kirby Company's Requests for Production of Documents sent to us on August 9, 2021. Other than the correction to the Certificate of Service,

littler.com

Caryn M. Groedel, Esq.
October 1, 2021
Page 2

Plaintiff's responses in both the August 6th and August 9th versions of Plaintiff's Amended Responses to Defendant Kirby Company's Requests for Production of Documents are the same. Therefore, for all intents and purposes, when reference is made to Plaintiff's Amended Responses to Defendant Kirby Company's Requests for Production of Documents, we are referring to the August 9th version ("Plaintiff's Amended Responses").

Second, Plaintiff's Amended Responses were provided in response to our email dated August 2, 2021, in which we stated in relevant part: "We have been waiting for Plaintiff to produce the documents we requested on March 2, 2021." This was not an invitation for you to materially change the objections you asserted on May 25, 2021 in your original response to Kirby's First Set of Requests for Production of Documents propounded on Plaintiff on March 2, 2021. In fact, it was an inquiry regarding the status of the actual production of documents as none had been produced. As you are well aware from our August 16th discovery deficiency letter, serving objections after the date on which discovery responses are due is not permitted. *Firneno v. Nationwide Mktg. Servs.*, No. 14-cv-10104, 2015 U.S. Dist. LEXIS 195322, at *7 (E.D. Mich. Dec. 10, 2015) ("Although Rule 34, unlike Rule 33, does not specifically state that objections are waived after 30 days, the considerable weight of authority is that the failure to timely object to requests for production of documents also constitutes a waiver.").

Again, we respectfully request that you withdraw the new objections asserted and material objections added to existing objections in response to Request for Production Nos. 46, 47, 48, 49, 50, 54, 55, 57 (mis-numbered as "58" in Plaintiff's Amended Responses), 58 (mis-numbered as "59" in Plaintiff's Amended Responses), 59 (mis-numbered as "60" in Plaintiff's Amended Responses), 60 (mis-numbered as "61" in Plaintiff's Amended Responses), 61 (mis-numbered as "62" in Plaintiff's Amended Responses), 62 (mis-numbered as "63" in Plaintiff's Amended Responses), 63 (mis-numbered as "64" in Plaintiff's Amended Responses), 64 (mis-numbered as "65" in Plaintiff's Amended Responses), 65 (mis-numbered as "66") in Plaintiff's Amended Responses), 66 (mis-numbered as "67" in Plaintiff's Amended Responses), 67 (mis-numbered as "68" in Plaintiff's Amended Responses), 68 (mis-numbered as "69" in Plaintiff's Amended Responses), 69 (mis-numbered as "70" in Plaintiff's Amended Responses), 70 (mis-numbered as "71" in Plaintiff's Amended Responses), 71 (mis-numbered as "72" in Plaintiff's Amended Responses), 72 (mis-numbered as "73" in Plaintiff's Amended Responses), 73 (mis-numbered as "74" in Plaintiff's Amended Responses), 75 (mis-numbered as "76" in Plaintiff's Amended Responses), 80 (mis-numbered as "81" in Plaintiff's Amended Responses), 81 (mis-numbered as "82" in Plaintiff's Amended Responses), 82 (mis-numbered as "83" in Plaintiff's Amended Responses), 83 (mis-numbered as "84" in Plaintiff's Amended Responses), 84 (mis-numbered as "85" in Plaintiff's Amended Responses), 85 (mis-numbered as "86" in Plaintiff's Amended Responses), 87 (mis-numbered as "88" in Plaintiff's Amended Responses), 90 (mis-numbered as "91" in Plaintiff's Amended Responses), 91 (mis-numbered as "92" in Plaintiff's Amended Responses), 93 (mis-numbered as "94" in Plaintiff's Amended Responses), 94 (mis-numbered as "95") in Plaintiff's Amended Responses), 95 (mis-numbered as "96" in Plaintiff's Amended

Caryn M. Groedel, Esq.
October 1, 2021
Page 3


Responses), 96 (mis-numbered as "97" in Plaintiff's Amended Responses), 97 (mis-numbered as "98" in Plaintiff's Amended Responses), and 104 (mis-numbered at "105" in Plaintiff's Amended Responses). (*See* Kirby's Discovery Deficiency Letter dated August 16, 2021, p. 2).

## "Plaintiff's Financial Records"

Please identify the documents produced by Plaintiff that correspond to the documents described as "Plaintiff's financial records" in Plaintiff's initial disclosures.

## Plaintiff's Cell Phone Records

Plaintiff stated in response to Request for Production Nos. 26, 27, and 33 that he "is unable to obtain his phone records." When we met with you on September 2, 2021, and inquired as to why Plaintiff had not preserved his phone records when he decided to pursue legal action in 2018, you responded that Plaintiff had no preservation obligations. We had planned to revisit this topic on September 13, 2021 at our next agreed upon meet and confer; however, you inexplicably did not attend, and sent Mr. Kerr to meet with us. Mr. Kerr stated that Plaintiff was going to sign an affidavit outlining his efforts to obtain this phone records. We have not received this affidavit. Further, when we asked Mr. Kerr about the location of Plaintiff's cell phones and electronic storage devices, Mr. Kerr stated that he would investigate and get back to us. On September 17, 2021, Mr. Kerr stated the following in an email: "[Plaintiff] is unaware of the specific model of the devices he has used over the years. But the phone number[.]" Mr. Kerr also stated: "We are in the process of drafting and having our client execute an affidavit detailing his good faith efforts [to obtain his phone records]. This affidavit will be produced with any other documentation we have." Nothing has been produced.

### Plaintiff had a duty to preserve his cell phone:

A party has a duty to preserve relevant information, including electronically stored information ("ESI"), if they had "notice that the evidence is relevant to litigation or … should have known that the evidence may be relevant to future litigation." *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008); *Guyzik v. Moore*, No. 16-12430, 2017 U.S. Dist. LEXIS 207167, at *4 (E.D. Mich. Dec. 18, 2017). Evidence is relevant if a jury could find that it is "supportive of one party's version of contested issues." *Guyzik v. Moore*, No. 16-12430, at *4.

In *Guyzik v. Moore*, Guyzik did not preserve ADT security camera footage of the defendants entering his home 30 minutes before his arrest despite being able to do so on a phone app. *Id*. at *4. While ADT maintains recorded footage on its servers, the footage is deleted after 30 days. Thus, the footage was gone and could not be reviewed by the defendants. Guyzik claimed he had no duty to preserve the video because the events recorded occurred 30 minutes before his arrest. In addition, he claimed that he did not have the legal knowledge necessary to comprehend

Caryn M. Groedel, Esq.
October 1, 2021
Page 4

that the video would be relevant. Finding that the obligation to preserve evidence is based on an objective standard, the court held that Guyzik had a duty to preserve the video footage. Not only was the footage relevant to whether the defendants maintained their professionalism, but Guyzik was on notice that the video could be relevant to future litigation after contacting an attorney about filing a lawsuit mere days after his arrest. Therefore, Guyzik should have known that the video would be relevant.

Here, Plaintiff had control over the cell phone(s) he was using in 2018 and should have known that his cell phone(s) would be relevant to future litigation after contacting you, an attorney, about filing a lawsuit against Defendants. Indeed, your communications with David Lamb in September 2018 regarding possible claims against the Company – including those allegations concerning early morning phone calls – further proves that Plaintiff was put on notice and had a duty to preserve his cell phone and the relevant information stored on the phone.

**<u>Plaintiff had a duty to preserve his cell phone records</u>**:

When a party has the "right, authority, or practical ability to obtain" the evidence from the third-party or non-party to the action, courts will consider the evidence to be under the party's control for spoliation purposes. *Crown Battery Mfg. Co. v. Club Car, Inc*., 185 F. Supp. 3d 987, 997 (N.D. Ohio 2016). Thus, the duty to preserve this evidence will attach to the party, despite the evidence being in the possession of a third party.

Where a party does not own or control the evidence, the party has a duty to provide the opposing party with "notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving that evidence.'" *Lexington Insurance Co. v. Tubbs*, No. 06-2847-STA, 2009 U.S. Dist. LEXIS 46824, at *7 (W.D. Tenn. June 2, 2009); *see also Smith v. Norcold, Inc*., No. 13-10841, 2014 U.S. Dist. LEXIS 158524, at *21 (E.D. Mich. Nov. 10, 2014) ("In this Circuit, a duty to preserve evidence has been found where the evidence was destroyed while in the custody of a third party"). Whether sanctions will be granted against a party for spoliation of evidence by third-parties, however, is determined on a case-by-case basis by examining the circumstances surrounding the destruction of evidence and the nature of the relationship between the party and third-party. *Coach, Inc. v. Dequindre Plaza*, LLC, No. 11-14032, 2013 U.S. Dist. LEXIS 69611, at *18 (E.D. Mich. Mar. 25, 2013); *see also J.S.T., Corp. v. Robert Bosch, LLC,* No. 15-13842, 2019 U.S. Dist. LEXIS 90645, at *25 (E.D. Mich. May 29, 2019) (finding that "courts in this district have sanctioned parties for failing to ensure the preservation of information in the possession, custody, or control of a third party where the party had a special relationship with the third party or unique circumstances demanded preservation").

Here, Plaintiff had control over his phone records. Not only did he have the "right, authority, [and] practical ability to obtain" the evidence from his phone carrier, but he was on notice that the evidence may be relevant to future litigation. Therefore, Plaintiff had a duty to take

Caryn M. Groedel, Esq.
October 1, 2021
Page 5

steps to preserve the phone records. Alternatively, if he did not have control over the records, Plaintiff was still required to notify Defendants about the possibility of destruction. It appears that Plaintiff did nothing to ensure that his phone(s) or records maintained by his carrier were preserved, which is a violation of his duty to preserve evidence.

## Plaintiff's Alleged Emotional Distress

You claim that Plaintiff is merely alleging "garden variety" emotional distress damages as the basis for your objections to Interrogatory No. 24 and Request for Production No. 110. However, the allegations asserted in the Complaint and its amendments do not make this position clear. While you state in your September 13th letter that "Plaintiff's medical information is privileged, confidential, and statutorily protected," that is not a completely accurate statement of the law. Indeed, while the case you cite, *Groening v. Pitney Bowes*, does state that medical records are privileged and undiscoverable, it also states: "If, however, a person files a civil action, that person waives any privilege of medical records that are *causally or historically related to the issues in that civil action*." 8th Dist. No. 91394, 2009 Ohio 357, ¶11 (emphasis in original). *Groening* goes on to state that "[g]enerally, when there is a dispute over whether certain medical records are causally or historically related to the issues in the case, a trial court should conduct an in camera inspection of those records in order to make its determination." *Id.* at ¶ 12. Moreover, plaintiffs waive the privilege protecting psychotherapist-patient by putting their mental health at issue in a case. *See Simon v. Cook*, 261 F. App'x 873, 886 (6th Cir. 2008). Therefore, your blanket assertion that Plaintiff's medical records are privileged and not discoverable is not well-founded.

That being said, in our August 16th discovery deficiency letter, we offered the following compromise:

> [I]f Plaintiff is willing to stipulate that the evidence of emotional distress at trial will be "limited to the testimony of the plaintiff, who describes… his… injury in vague or conclusory terms, without relating either the severity or consequences of the injury," [citing *Olsen v. County of Nassau*, 615 F. Supp. 2d 35, 46 (E.D.N.Y. 2009)] then we will withdraw this request. Please confirm, in writing, that Plaintiff will make this stipulation. Otherwise, please provide a complete response to [Interrogatory No. 24 and Request for Production No. 110].

In your September 13th letter, you doubled down on your objections, but failed to respond to our specific compromise. On September 14, 2021, we reiterated our request for the stipulation during our conversation with Mr. Kerr. In the September 17, 2021 email Mr. Kerr sent to us, he stated the following: "Caryn [Groedel] stated she intends to use the testimony of our client's family and friends to prove his emotional damages at trial." Based on your statement, please identify the

Caryn M. Groedel, Esq.
October 1, 2021
Page 6


"family and friends" by providing us with their full name, relationship to Plaintiff, present or last known address (including street name and number, city or town, state, and zip code), present or last known telephone number, and a brief description of the injury allegedly suffered by Plaintiff on which each will testify. At a minimum, this information is responsive to Interrogatory Nos. 1 and 3. We reserve the right to compel the discovery sought in Interrogatory No. 24 and Request for Production No. 110.

### Plaintiff's Unsupported Withholding of Employer Information

You produced two tax forms with Plaintiff's employer's name redacted—P111 and P112. That information is not confidential, and is discoverable and relevant. You conveyed the following proposal via Mr. Kerr's September 17th regarding the redacted information:

> In exchange for receiving [Plaintiff's] unredacted W-2s and 1099s, Caryn would like you, your clients, your agents/representatives, and your clients' agents/representatives, to stipulate that you will not contact [Plaintiff's] current employer at all. We will provide documents showing our Client's current wage and benefits. Should you want additional documents, all requests must go through Caryn.

This compromise is not acceptable because the information we plan to seek from all of the entities that have contracted with or employed Plaintiff since November 1, 2010 will include far more that Plaintiff's wage rate and benefits, including job applications, discipline records, termination records, dates of employment or work, and the like. If all of our requests must go through you, we are not confident that you will convey our requests or produce all the information you receive in response to such requests. Moreover, if an employer or contractor refuses to provide the requested information, we will have no choice but to subpoena the records. Our doubts about the workability of your proposal are well-founded given that you and Plaintiff have not provided fulsome responses to Kirby's discovery requests regarding Plaintiff's business activities, independent contractor work, or employment. Therefore, we expect you to produce unredacted copies of P111 and P112.

### Kirby's Compliance with Federal Rules of Civil Procedure 26 and 34

You state in your September 13th letter that you "simply can't" respond to the discovery requests that you claim do not comply with Rule 34's requirements. You further state that you are unable to respond to some of the same requests, as well as others, because they are overly broad. In addition, you state that several requests, many of which you claim are overly broad and are not Rule 34 compliant, are not relevant or proportional. Most of these objections contain boilerplate language and lack any specificity as to how each request fails under the Federal Rules of Civil Procedure.

Caryn M. Groedel, Esq.
October 1, 2021
Page 7

Rule 26(b)(1) states that—

> Parties may obtain discovery regarding any nonprivileged matter that is **relevant to any party's** claim or **defense** and proportional to the needs of the case, **considering the importance of the issues at stake in the action**, the amount in controversy, the parties' relative access to relevant information, the parties' resources, **the importance of the discovery in resolving the issues**, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable. (Emphasis added).

"[T]he concept of proportionality . . . appropriately turns on how central the proposed discovery is to the claim or defense to which it relates in light of the proven burden imposed on the responding party. *Brown v. Tax Ease Lien Servicing, LLC*, No. 3:15-CV-208-CRS, 2016 U.S. Dist. LEXIS 195843, at \*28-29 (W.D. Ky.).

You have not stated the burden, if any, the discovery requested by Kirby has placed on Plaintiff. In addition, your objection regarding the relevant time period makes no sense. You state that "[i]n employment discrimination cases, 'courts have permitted discovery periods as long as eight to ten years,' but 'the norm ... seems to be anywhere between three and five years. *Briddell v. Saint Gobain Abrasives Inc.*, 233 F.R.D. 57, 60 (D.Mass.2005); see also *Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 655 (D.Kan.2004)." Although the Second Amended Complaint contains three employment-related claims (Counts Three, Four, and Five), Counts One and Two are for Breach of Contract and Unjust Enrichment, respectively, based on Defendants' alleged treatment or misclassification of Plaintiff as an independent contractor, which started on November 1, 2010, the date on which Plaintiff and Kirby entered into the Divisional Supervisor Agreement. (Sec. Am. Compl. ¶¶15-17). Therefore, the cases to which you cite are inapposite for your position that discovery is limited to three, five, eight, or even ten years.

Kirby has already compromised by limiting the time period to November 1, 2010 to the present for Interrogatory Nos. 12-18, and 24, and Requests for Production of Documents 46-48, 50, 54-56, 58-65, 67, 69, 71-73, 75, 86, 90-91, and 96-102. This is an appropriate time period for discovering information pertaining to Plaintiff's activities during the term of his Divisional Supervisor Agreement given that Plaintiff alleges Defendants' began breaching that agreement on November 1, 2010 by treating Plaintiff like an employee, not an independent contractor. Therefore, information relevant to Defendants' defenses, including that Plaintiff was not an employee of either Kirby or Scott Fetzer, is discoverable. For example, who employed or contracted with Plaintiff, and Plaintiff's other business activities, are relevant to the central question of whether

Caryn M. Groedel, Esq.
October 1, 2021
Page 8


Plaintiff was Defendants' employee. Your attempts to arbitrarily limit discovery to as little as three years makes no sense in this case.

With respect to whether Kirby's document requests "describe with reasonable particularity each item or category of items to be inspected" as required by Rule 34(b)(1)(A), this standard is met. Kirby's document requests put Plaintiff on "reasonable notice of what is called for and what is not." *Pan v. Kohl's Dep't Stores*, Inc., No. 2:12-CV-1063, 2015 U.S. Dist. LEXIS 92001, 2015 WL 4346218, at *2 (S.D. Ohio July 15, 2015); *Mallinckrodt Chemical Works v. Goldman, Sachs & Co.*, 58 F.R.D. 348, 354 (S.D.N.Y. 1973) ("The appropriate question 'is whether a reasonable man would know what documents or things are called for.'") (quoting 4A J. Moore, Federal Practice, para. 34.07, at 34-57 & n. 18.). Here, Plaintiff knows what documents are called for under Kirby's document requests. This is evident from Plaintiff's substantive responses to, for example, Request for Production Nos. 13, 14, 18, 19, 20, 22, 23, 25, 26, 27, 28, 29, 30, 31, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, and 45, and demonstrates that Plaintiff's objections and refusals to respond to Request for Production Nos. 11, 12, 15, 16, and 17 are not made in good faith. In fact, you offer no substantive basis for most of your objections that many of Kirby's document requests fail to comply with Rule 34. All you provide are boilerplate objections to the vast majority of the requests. Plaintiff cannot hide behind hollow objections and refuse to comply with his discovery obligations. To the extent Plaintiff expressed confusion or stated that he did not know what was requested, our letter dated August 16, 2021 provided clarity. To further assist you and Plaintiff, this letter also provides clarity regarding Kirby's discovery requests.

Turning to your objections, in Plaintiff's May 25th response to Kirby's requests for production of documents, you object to the following requests on the basis that Kirby's requests are "overly broad": Requests for Production No. 5, 9, 10, 12, 15, 16, 17, 46, 47, 48, 50, 53, 54, 55, 56, 57 (mis-numbered as "58" in Plaintiff's Amended Responses), 58 (mis-numbered as "59" in Plaintiff's Amended Responses), 59 (mis-numbered as "60" in Plaintiff's Amended Responses), 60 (mis-numbered as "61" in Plaintiff's Amended Responses), 61 (mis-numbered as "62" in Plaintiff's Amended Responses), 62 (mis-numbered as "63" in Plaintiff's Amended Responses), 63 (mis-numbered as "64" in Plaintiff's Amended Responses), 64 (mis-numbered as "65" in Plaintiff's Amended Responses), 65 (mis-numbered as "66" in Plaintiff's Amended Responses), 66 (mis-numbered as "67" in Plaintiff's Amended Responses), 67 (mis-numbered as 68 in Plaintiff's Amended Responses), 68 (mis-numbered as 69 in Plaintiff's Amended Responses), 69 (mis-numbered as 70 in Plaintiff's Amended Responses), 70 (mis-numbered as 71 in Plaintiff's Amended Responses), 71 (mis-numbered as 72 in Plaintiff's Amended Responses), 72 (mis-numbered as 73 in Plaintiff's Amended Responses), 73 (mis-numbered as 74 in Plaintiff's Amended Responses), 74 (mis-numbered as 75 in Plaintiff's Amended Responses), 75 (mis-numbered as 76 in Plaintiff's Amended Responses), 76 (mis-numbered as 77 in Plaintiff's Amended Responses), 77 (mis-numbered as 78 in Plaintiff's Amended Responses), 78 (mis-numbered as 79 in Plaintiff's Amended Responses), 81 (mis-numbered as 82 in Plaintiff's Amended Responses), 82 (mis-numbered as 83 in Plaintiff's Amended Responses), 83 (mis-

Caryn M. Groedel, Esq.
October 1, 2021
Page 9

numbered as 84 in Plaintiff's Amended Responses), 84 (mis-numbered as 85 in Plaintiff's Amended Responses), 85 (mis-numbered as 86 in Plaintiff's Amended Responses), 89 (mis-numbered as 90 in Plaintiff's Amended Responses), 90 (mis-numbered as 91 in Plaintiff's Amended Responses), 91 (mis-numbered as 92 in Plaintiff's Amended Responses), 93 (mis-numbered as 94 in Plaintiff's Amended Responses), 94 (mis-numbered as 95 in Plaintiff's Amended Responses), 95 (mis-numbered as 96 in Plaintiff's Amended Responses), 97 (mis-numbered as 98 in Plaintiff's Amended Responses), 98 (mis-numbered as 99 in Plaintiff's Amended Responses), 99 (mis-numbered as 100 in Plaintiff's Amended Responses), 100 (mis-numbered as 101 in Plaintiff's Amended Responses), 101 (mis-numbered as 102 in Plaintiff's Amended Responses), 102 (mis-numbered as 103 in Plaintiff's Amended Responses), 103 (mis-numbered as 104 in Plaintiff's Amended Responses), 104 (mis-numbered as 105 in Plaintiff's Amended Responses), 105 (mis-numbered as 106 in Plaintiff's Amended Responses), 107 (mis-numbered as 108 in Plaintiff's Amended Responses), 108 (mis-numbered as 109 in Plaintiff's Amended Responses), and 109 (mis-numbered as 110 in Plaintiff's Amended Responses).

Then, in Plaintiff's Amended Responses, you make additional, material objections to Kirby's discovery requests—claiming the following requests are suddenly "overly broad": Request for Production Nos. 49, 80 (mis-numbered as 81 in Plaintiff's Amended Responses), 87 (mis-numbered as 88 in Plaintiff's Amended Responses), and 96 (mis-numbered as 97 in Plaintiff's Amended Responses); and you withdrew your "overly broad" objection (and all of your objections) as to Request for Production Nos. 13 and 14.

Below, we outline our response to your "overly broad" and Rule 34 "reasonable particularity" objections, as we have done before, and expect you to produce the documents requested or provide a specific basis for your objections.

**<u>Specific Requests for Production of Documents to which you objected on the basis that they are purportedly overly broad and do not comply with Rule 34's reasonable particularity requirement</u>**:

<u>Requests for Production of Documents Related to the Allegations in the Complaint</u>: To be clear, you have no objection to document requests that ask Plaintiff to "produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on Plaintiff's allegations" made in specific paragraphs of the Complaint in Request for Production Nos. 13, 14, 18, 19, 20, 22, 23, 25, 26, 27, 28, 29, 30, 31, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, and 45. However, you claim that Request for Production Nos. 11, 12, 15, 16, and 17—which use the exact same language—are overly broad and fail to comply with Rule 34. This makes absolutely no sense and demonstrates that your objections are not well-founded. Please produce the documents requested in Request for Production Nos. 11, 12, 15, 16, and 17 and withdraw your objections.

Caryn M. Groedel, Esq.
October 1, 2021
Page 10

Request for Production No. 5: We asked Plaintiff to "produce any and all documents and electronically stored information that refer or relate to Plaintiff's answers to the Interrogatories, including documents and electronically stored information identified in response to any Interrogatory, and any and all documents and electronically stored information that were consulted to answer any Interrogatory." You objected on the basis that this request is "overly broad and fails to comply with FRCP 34, which requires RFPs to 'describe with reasonable particularity" an "item or category of items'. An RFP that requests all documents 'that refer or relate to Plaintiff's answers to the Interrogatories…' is not reasonably particular. Please rephrase this RFP so that it complies with FRCP 34." Your objections are not well-founded. Even if you have a reasonable basis for objecting to the request for documents that "refer or relate to Plaintiff's answers to the Interrogatories," we specifically asked for "documents and electronically stored information identified in response to any Interrogatory, and any and all documents and electronically stored information that were consulted to answer any Interrogatory." These are requests for specific documents, and should not be difficult to produce or describe if they are no longer in Plaintiff's possession, custody, or control, or are being withheld on a legitimate basis. For example, Plaintiff identifies documents in response to Interrogatories No. 10, 11, and 12,  yet it is unclear if those have been produced based on Plaintiff's responses to Request for Production No. 5 and Interrogatory Nos. 10, 11, and 12. In addition, to the extent Plaintiff does not understand the rest of the request, we are also asking Plaintiff to produce documents and electronically stored information that contains information that supports, contradicts, discusses, or in any way concerns any of Plaintiff's interrogatory responses. If you are withholding responsive documents or electronically stored information on any basis, you are required to submit an adequate privilege log.

Request for Production No. 9: We asked Plaintiff to "produce any and all documents and electronically stored information that contain any statements or admissions by Kirby, Scott Fetzer, or any current or former employee or representative of Kirby or Scott Fetzer that support or relate to the claims or defenses in this Lawsuit." You objected on the basis that this request is "overly broad it fails to describe with reasonable particularity a document or category of documents. Please rephrase this RFP so that it complies with FRCP 34." Your objection is not well-founded. First, "documents", "electronically stored information", and "Lawsuit" are defined for Plaintiff's benefit. Second, this request is asking for specific documents—those that contain "statements or admissions" by either defendant or their current or former representatives that "support or relate to the claims or defenses in this Lawsuit." Under Rule 34(b)(1)(A), "the request must describe with reasonable particularity each item or category of items to be inspected." (Emphasis added). We do that here. We are asking for documents that contain "statements or admissions" made by the entities or individuals described with particularity in the request. Please provide responsive documents and electronically stored information.

Request for Production No. 10: We asked Plaintiff to "produce any and all documents and electronically stored information which support or pertain to Plaintiff's claim for damages

Caryn M. Groedel, Esq.
October 1, 2021
Page 11

including, but not limited to, documents which would support the amount of damages that Plaintiff has sustained, including those identified in Plaintiff's initial disclosures and the Lawsuit." You objected that this request does not comply with Rule 34 and that the use of certain modifiers such as "relating to" make a discovery request facially over broad. Your objections are not well-founded and the case law on which you rely does not support your position. Here, not only are "document" and "electronically stored information" defined, but we also give examples of documents that would be responsive to the request, including documents that would support the amount of damages Plaintiff purportedly sustained and those identified in Plaintiff's initial disclosures. Plaintiff provides a detailed damage estimate in his initial disclosures – the documents upon which that estimate is based are responsive to this request, for example. Please provide responsive documents and electronically stored information.

      <u>Request for Production No. 53</u>: In document request 53, we asked Plaintiff to "produce any and all documents and electronically stored information that refer or relate to any agreements between Plaintiff and Scott Fetzer." You objected on the basis that this request is "overly broad and fails to comply with FRCP 34 as it does not describe with reasonable particularity a document or category of documents. Please rephrase this so that it complies with FRCP 34." Your objection is not well-founded. As we state many times in this letter, "documents" and "electronically stored information" are defined. Here, we are seeking agreements between Plaintiff and Scott Fetzer, and those related to them. For example, Plaintiff may have emails, letters, and/or other communications that mention, discuss, or reference agreements between Plaintiff and Scott Fetzer—such as transmittal communications. By way of another example, bank records or documents about or regarding payments made pursuant to an agreement would be relevant. Please supplement your response with responsive documents and electronically stored information.

      <u>Request for Production Nos. 54 and 55</u>: In Request for Production No. 54, we asked Plaintiff to "produce any and all documents and electronically stored information that refer or relate to each and every consulting relationship entered into by Plaintiff with any person or entity since November 1, 2010." In document request 55, we asked Plaintiff to "produce any and all documents and electronically stored information that refer or relate to each and every independent contractor relationship entered into by Plaintiff with any person or entity since November 1, 2010." In response to both requests, you objected on the basis that these requests are overly broad, not relevant, not proportional to the needs of the case, and fail to comply with Rule 34. You further state what you believe to be the relevant documents. Your objections are not well-founded, and we disagree with what you consider to be the relevant responsive documents. What's more, you imply that Plaintiff has Form 1099s for consulting work performed in 2019 and 2020; however, no such documents were produced. Given that Plaintiff alleges he was Defendants' employee during the term of his Divisional Supervisor Agreement, documents regarding consulting work and independent contractor work for others are relevant and proportional to the needs of this case. Mr. Kerr stated in his September 17th email that Plaintiff "is in the process of searching for and providing additional 1099s and W-2s from 2018-2020" and that Plaintiff is in the process of

Caryn M. Groedel, Esq.
October 1, 2021
Page 12


"obtaining" documents pertaining to his mitigation efforts; however, none have been produced. Please produce the referenced Form 1099s and W-2s (unredacted as there is no basis to redact anything other than tax identification numbers), Form 1099s and W-2s for the period November 1, 2010 to the present, and all other documents such as written agreements, communications, other financial records, etc. related to such consulting work (document request 54) and independent contractor work (document request 55).

Request for Production No. 56: We asked Plaintiff to "produce any and all documents and electronically stored information that refer or relate to each and every employer (including self-employment and work as an independent contractor) of Plaintiff since November 1, 2010 identified in response to Interrogatory No. 14, including, but not limited to, agreements, documents relating to Plaintiff's job title, self-employment, job status, rate of pay or compensation, change in job titles, status, descriptions of jobs or engagements held, work performed, handbooks, policies, benefit statements, policies, and any documents that refer to or relate to Plaintiff's resignation, retirement, layoff, or termination from any subsequent employer or termination of any agreement to perform work as an employee, consultant, and/or independent contractor." You objected on the basis that the request does not meet the requirements of Rule 34, is overly broad in time and scope, and is not relevant or proportional to the needs of the case. Your objections are not well-founded, and we disagree with what you consider to be the relevant responsive documents. This request identifies specific documents sought for the employers identified by Plaintiff in response to Interrogatory No. 14. Therefore, it does meet the requirements of Rule 34. Also, any work Plaintiff performed for himself and others during the term of the Divisional Supervisor Agreement is a relevant area of discovery given the claims made in this case (e.g., that Plaintiff was an employee of Defendants). Mr. Kerr's September 17th email states that mitigation documents are going to be produced – please do so now.

Request for Production No. 57 (mis-numbered as "58" in Plaintiff's Amended Responses): We asked Plaintiff to –

[P]roduce any and all documents and electronically stored information, including, but not limited to, any and all business filings (e.g., documents filed with a Secretary of State), expenses reports, receipts, calendars, meeting minutes, bank statements, purchase agreements, rental agreements, real estate records, lease agreements, contracts, credit card statements, telephone records, mobile phone records, invoices, purchase orders, tax records, payroll records, employee lists, employment agreements, and employee personnel records, that refer or relate to the following entities:

a. Southeast Regional Promotional Club, Inc.
b. BMIB Division KDA Fund, Inc.
c. Syatt of Jacksonville, Inc.

Caryn M. Groedel, Esq.
October 1, 2021
Page 13

        d. First Coast Division Inc.
        e. B.M.I.B., Inc.
        f. NLN Division, Inc.
        g. NLN Enterprises, Inc.
        h. Budzburn, Inc.
        i. Palm Bay American Shaman LLC
        j. EGK Enterprises, Inc.

You objected on the basis that the request is "overly broad in scope and time frame, is not limited to a specific document or category of documents, and seeks documents that are not relevant or proportional to the need of this case" without providing any specificity why documents related to the 10 entities listed are not relevant. In addition, your objection is not well-founded because Kirby described with "reasonable particularity" the documents requested for each entity identified. Also, this request is absolutely relevant and proportional. Plaintiff contends that he "began his employment with Defendants" in 1991 (Paragraph 12 of the Amended Complaint), and Kirby claims that Plaintiff breached his employment agreement. Moreover, the question as to whether Plaintiff was an employee or an independent contractor of Defendants is at the heart of this action, and Plaintiff is seeking reimbursement for expenses he claims he should not have paid such as travel costs, payroll expenses, office expenses, etc. Therefore, Plaintiff's business interests during his association with Defendants are relevant. However, to provide some limits on the scope of the request, Kirby is willing to limit the time period to January 1, 1991 to the present. Please provide responsive documents and electronically stored information.

    <u>Request for Production No. 58 (mis-numbered as "59" in Plaintiff's Amended Responses)</u>: We asked Plaintiff to "produce any and all documents and electronically stored information that refer or relate to each and every business owned by Plaintiff since November 1, 2010, including, but not limited to, any and all business filings (e.g., documents filed with a Secretary of State), expenses reports, receipts, calendars, meeting minutes, bank statements, purchase agreements, rental agreements, real estate records, lease agreements, contracts, credit card statements, telephone records, mobile phone records, invoices, purchase orders, tax records, payroll records, employee lists, and employee personnel records." You objected the basis that this "RFP is overly broad in scope and time frame, is not limited to a specific document or category of documents, and seeks documents that are not relevant or proportional to the need of this case." Your objections are not well-founded for all of the reasons stated in response to your objections stated in Plaintiff's Amended Responses as to Request for Production No. 57. This request is relevant and proportional and appropriately limited in scope because it seeks documents about (1) businesses Plaintiff owned during the term of the Divisional Supervisor Agreement and (2) mitigation efforts following the termination of the Divisional Supervisor Agreement. Please provide responsive documents and electronically stored information.

Caryn M. Groedel, Esq.
October 1, 2021
Page 14

Request for Production No. 59 (mis-numbered as "60" in Plaintiff's Amended Responses):
We asked Plaintiff to "produce any and all documents and electronically stored information that refer or relate to each and every business Plaintiff invested in since November 1, 2010, including, but not limited to, any and all business filings (e.g., documents filed with a Secretary of State), expenses reports, receipts, calendars, meeting minutes, bank statements, purchase agreements, rental agreements, real estate records, lease agreements, contracts, credit card statements, telephone records, mobile phone records, invoices, purchase orders, tax records, payroll records, employee lists, employment agreements, and employee personnel records." You objected on the same basis as Request for Production Nos. 57 and 58. Your objections are not well-founded for all the reasons stated in response to your objections stated in Plaintiff's Amended Responses as to Request for Production Nos. 57 and 58. In addition, Plaintiff's investment activities are relevant given the allegations in the Amended Complaint. (*See, e.g.*, Paragraph 23). Moreover, Plaintiff's investment activities are relevant to the issue of Plaintiff's status as an independent contractor and mitigation efforts, and Kirby's Counterclaim.  Please provide responsive documents and electronically stored information.

Request for Production No. 60 (mis-numbered as "61" in Plaintiff's Amended Responses):
We asked Plaintiff to "produce any and all documents and electronically stored information that refer or relate to each and every business operated by Plaintiff since November 1, 2010, including, but not limited to, any and all business filings (e.g., documents filed with a Secretary of State), expenses reports, receipts, calendars, meeting minutes, bank statements, purchase agreements, rental agreements, real estate records, lease agreements, contracts, credit card statements, telephone records, mobile phone records, invoices, purchase orders, tax records, payroll records, employee lists, employment agreements, and employee personnel records." You objected on the same basis as Request for Production Nos. 57, 58, and 59. Your objections are not well-founded for all the reasons stated in response to your objections stated in Plaintiff's Amended Responses as to Request for Production Nos. 57, 58, and 59. Moreover, Plaintiff's involvement in operating one or more businesses at the same time he contracted with Defendants is relevant to the issue of Plaintiff's status as an independent contractor and mitigation efforts, and Kirby's Counterclaim. Please provide responsive documents and electronically stored information.

Request for Production No. 61 (mis-numbered as "62" in Plaintiff's Amended Responses):
We asked Plaintiff to "produce any and all documents and electronically stored information that refer or relate to each and every business Plaintiff controlled since November 1, 2010, including, but not limited to, any and all business filings (e.g., documents filed with a Secretary of State), expenses reports, receipts, calendars, meeting minutes, bank statements, purchase agreements, rental agreements, real estate records, lease agreements, contracts, credit card statements, telephone records, mobile phone records, invoices, purchase orders, tax records, payroll records, employee lists, employment agreements, and employee personnel records." You objected on the same basis as Request for Production Nos. 57, 58, 59, and 60. Your objections are not well-founded for all the reasons stated in response to your objections stated in Plaintiff's

Caryn M. Groedel, Esq.
October 1, 2021
Page 15

Amended Responses as to Request for Production Nos. 57, 58, 59, and 60. Moreover, Plaintiff's control of one or more businesses at the same time he contracted with Defendants is relevant to the issue of Plaintiff's status as an independent contractor and mitigation efforts, and Kirby's Counterclaim. Please provide responsive documents and electronically stored information.

    <u>Request for Production No. 62 (mis-numbered as "63" in Plaintiff's Amended Responses)</u>: We asked Plaintiff to "produce any and all documents and electronically stored information that refer or relate to each and every business incorporated by Plaintiff since November 1, 2010, including, but not limited to, any and all business filings (e.g., documents filed with a Secretary of State), expenses reports, receipts, calendars, meeting minutes, bank statements, purchase agreements, rental agreements, real estate records, lease agreements, contracts, credit card statements, telephone records, mobile phone records, invoices, purchase orders, tax records, payroll records, employee lists, employment agreements, and employee personnel records." You objected on the same basis as Request for Production Nos. 57, 58, 59, 60, and 61. Your objections are not well-founded for all the reasons stated in response to your objections stated in Plaintiff's Amended Responses as to Request for Production Nos. 57, 58, 59, 60, and 61. Moreover, Plaintiff's incorporation of one or more businesses during the time he contracted with Defendants is relevant to the issue of Plaintiff's status as an independent contractor and mitigation efforts, and Kirby's Counterclaim. Please provide responsive documents and electronically stored information.

    <u>Request for Production No. 63 (mis-numbered as "64" in Plaintiff's Amended Responses)</u>: We asked Plaintiff to "produce any and all documents and electronically stored information that refer or relate to each and every business of which Plaintiff has served as a board member and/or officer since November 1, 2010, including, but not limited to, any and all business filings (e.g., documents filed with a Secretary of State), expenses reports, receipts, calendars, meeting minutes, bank statements, purchase agreements, rental agreements, real estate records, lease agreements, contracts, credit card statements, telephone records, mobile phone records, invoices, purchase orders, tax records, payroll records, employee lists, employment agreements, and employee personnel records." You objected on the basis that this request does not meet the requirements of Rule 34, is overly broad in time and scope, and is not relevant or proportional to the needs of the case. Your objections are not well-founded, and we disagree with what you consider to be the relevant responsive documents. This request identifies specific documents sought for the businesses on which Plaintiff serves (or served) as a board member. Therefore, it does meet the requirements of Rule 34. Also, any board service performed by Plaintiff during the term of the Divisional Supervisor Agreement is a relevant area of discovery given the claims made in this case (e.g., that Plaintiff was an employee of Defendants), his mitigation of damages, and Kirby's Counterclaim. Please provide responsive documents and electronically stored information.

    <u>Request for Production No. 64 (mis-numbered as "65" in Plaintiff's Amended Responses)</u>: We asked Plaintiff to "produce any and all documents and electronically stored information that refer or relate to each and every business in which Plaintiff has had any direct or indirect

Caryn M. Groedel, Esq.
October 1, 2021
Page 16

involvement since November 1, 2010, including, but not limited to, any and all business filings (e.g., documents filed with a Secretary of State), expenses reports, receipts, calendars, meeting minutes, bank statements, purchase agreements, rental agreements, real estate records, lease agreements, contracts, credit card statements, telephone records, mobile phone records, invoices, purchase orders, tax records, payroll records, employee lists, employment agreements, employment agreements, and employee personnel records." You objected on the basis that this request does not meet the requirements of Rule 34, is overly broad in time and scope, and is not relevant or proportional to the needs of the case. Your objections are not well-founded, and we disagree with what you consider to be the relevant responsive documents. This request identifies specific documents sought for the businesses in which Plaintiff has (or had) direct or indirect involvement (e.g., his daughter's CBD store). Therefore, it does meet the requirements of Rule 34. Also, any time spent on business activities outside of his Divisional Supervisor Agreement is a relevant area of discovery given the claims made in this case (e.g., that Plaintiff was an employee of Defendants), his mitigation of damages, and Kirby's Counterclaim. Please provide responsive documents and electronically stored information.

 <u>Request for Production No. 65 (mis-numbered as "66" in Plaintiff's Amended Responses)</u>: We asked Plaintiff to "produce any and all documents and electronically stored information that refer or relate to any attempt by Plaintiff to incorporate a business since November 1, 2010." You objected on the basis that this request does not meet the requirements of Rule 34, is overly broad in time and scope, and is not relevant or proportional to the needs of the case. Your objections are not well-founded, and we disagree with what you consider to be the relevant responsive documents. Moreover, Plaintiff's attempts to incorporate one or more businesses during the time he contracted with Defendants is relevant to the issue of Plaintiff's status as an independent contractor and mitigation efforts, and Kirby's Counterclaim. For avoidance of doubt and to provide clarity as it seems such is needed for Plaintiff, we are seeking the following documents and electronically stored information in addition to other writings and tangible things described in Kirby's definitions of "documents" and "electronically stored information": any and all business filings (e.g., documents filed with a Secretary of State), expenses reports, receipts, calendars, meeting minutes, bank statements, purchase agreements, rental agreements, real estate records, lease agreements, contracts, credit card statements, telephone records, mobile phone records, invoices, purchase orders, tax records, payroll records, employee lists, employment agreements, employment agreements, and employee personnel records. Please provide responsive documents and electronically stored information.

 <u>Request for Production No. 66 (mis-numbered as "67" in Plaintiff's Amended Responses)</u>: We asked Plaintiff to "produce any and all agreements and all documents and electronically stored information related to such agreements between Plaintiff and any cannabidiol ("CBD") business." You objected on the basis that this request does not meet the requirements of Rule 34, is overly broad in time and scope, and is not relevant or proportional to the needs of the case. Your objections are not well-founded, and we disagree with what you consider to be the relevant

Caryn M. Groedel, Esq.
October 1, 2021
Page 17

responsive documents. Moreover, Plaintiff's involvement in CBD businesses is relevant to the matters alleged in the Amended Complaint, Plaintiff's status as an independent contractor and mitigation efforts, and Kirby's Counterclaim. To the extent Plaintiff takes issue with the time period at issue, Kirby is willing to limit this request to November 1, 2010 to the present. And, for avoidance of doubt, we are requesting all agreements between Plaintiff and any CBD business, including notes, emails, and text messages mentioning or referring to such agreements and communications between Plaintiff and each CBD business discussing or referencing their agreement(s). Please provide responsive documents and electronically stored information.

Request for Production No. 68 (mis-numbered as "69" in Plaintiff's Amended Responses): We asked Plaintiff to "produce any and all documents related to the formation, operation, and status of any business that Plaintiff's immediate family members (i.e., spouse, siblings, parents, in-laws, children, and step-children) have owned, operated, controlled, invested in, incorporated, served as board members and/or officers of, or have had direct or indirect involvement at any time since January 1, 2018. You objected on the basis that this request does not meet the requirements of Rule 34, is overly broad in time and scope, and is not relevant or proportional to the needs of the case. Your objections are not well-founded, and we disagree with what you consider to be the relevant responsive documents. Indeed, this request is limited to "documents" and "electronically stored information" – both defined terms – about the "formation, operation, and status of" the businesses described with particularity in the request. Moreover, this request is limited in time. In addition, given the allegations regarding Plaintiff's daughter's business interests in the Complaint and all of its amendments, at a minimum, responsive documents in Plaintiff's possession, custody, or control, regarding her business interests are relevant and must be produced. Please provide responsive documents and electronically stored information. If you refuse to provide the requested documents, please identify Plaintiff's family members who own businesses and their businesses, including their full names, and their business' names, addresses, and phone numbers.

Request for Production No. 69 (mis-numbered as "70" in Plaintiff's Amended Responses): We asked Plaintiff to "produce any and all documents related to the planning for and opening of stores for any business that Plaintiff owned, operated, controlled, invested in, incorporated, served as a board member and/or officer of, or has had direct or indirect involvement at any time since November 1, 2010. You objected on the basis that this request does not meet the requirements of Rule 34, is overly broad in time and scope, and is not relevant or proportional to the needs of the case. Your objections are not well-founded, and we disagree with what you consider to be the relevant responsive documents. Indeed, this request is limited to "documents" and "electronically stored information" – both defined terms – about the "planning for and opening of stores" in which Plaintiff was involved as an owner, operator, investor, board member, officer, or other involvement. In addition, given the allegations regarding CBD stores in the Complaint and its amendments, at a minimum, responsive documents in Plaintiff's possession, custody, or control, regarding those stores are relevant and must be produced. Please provide responsive documents and electronically stored information.

Caryn M. Groedel, Esq.
October 1, 2021
Page 18

Request for Production No. 70 (mis-numbered as "71" in Plaintiff's Amended Responses):
We asked Plaintiff to "produce any and all documents related to the planning for and opening of
stores for any business that Plaintiff's immediate family members (i.e., spouse, siblings, parents,
in-laws, children, and step-children) owned, operated, controlled, invested in, served as a board
members and/or officers of, or have had direct or indirect involvement at any time since January
1, 2018." You objected on the basis that this request does not meet the requirements of Rule 34,
is overly broad in time and scope, and is not relevant or proportional to the needs of the case.
Your objections are not well-founded, and we disagree with what you consider to be the relevant
responsive documents. Indeed, this request is limited to "documents" and "electronically stored
information" – both defined terms – about the "formation, operation, and status of" the businesses
described with particularity in the request. Moreover, this request is limited in time. In addition,
given the allegations regarding Plaintiff's daughter's business interests in the Complaint and its
amendments, at a minimum, responsive documents in Plaintiff's possession, custody, or control,
regarding her business interests are relevant and must be produced. Please provide responsive
documents and electronically stored information.

Request for Production 71 (mis-numbered as "72" in Plaintiff's Amended Responses): We
asked Plaintiff to "produce any and all documents that show the total amount of revenue and
profit that has been generated to date by any business Plaintiff owned, operated, controlled,
invested in, incorporated, served as a board member and/or officer of, has had direct and indirect
involvement at any time since November 1, 2010." You objected on the basis that this request
does not meet the requirements of Rule 34, is overly broad in time and scope, and is not relevant
or proportional to the needs of the case. Your objections are not well-founded, and we disagree
with what you consider to be the relevant responsive documents. First, Plaintiff identified his
"financial records" in his initial disclosures. Those need to be produced. Second, revenue and
profit generated by Plaintiff's business interests during the term of his Divisional Supervisor
Agreement are relevant to the claims and defenses in this case (e.g., that Plaintiff was an employee
of Defendants), Kirby's Counterclaim, and Plaintiff's mitigation efforts. Please provide
responsive documents and electronically stored information.

Request for Production No. 72 (mis-numbered as "73" in Plaintiff's Amended Responses):
We asked Plaintiff to "produce any and all documents that show the total amount of revenue and
profit that has been generated to date by any business Plaintiff's immediate family members (i.e.,
spouse, siblings, parents, in-laws, children, and step-children) owned, operated, controlled,
invested in, incorporated, served as a board member and/or officer of, has had direct and indirect
involvement at any time since November 1, 2010." You objected on the basis that this request does
not meet the requirements of Rule 34, is overly broad in time and scope, and is not relevant or
proportional to the needs of the case. Your objections are not well-founded, and we disagree with
what you consider to be the relevant responsive documents. In addition, Plaintiff's involvement in
his daughter's CBD business is relevant to the claims and defenses in this case (e.g. that Plaintiff
was an employee of Defendants), Kirby's Counterclaim, and Plaintiff's mitigation efforts. Please
provide responsive documents and electronically stored information.

Caryn M. Groedel, Esq.
October 1, 2021
Page 19

 

 

Request for Production No. 73 (mis-numbered as "74" in Plaintiff's Amended Responses):
We asked Plaintiff to –

> [P]roduce any and all documents and electronically stored information, including text messages, phone calls, voice mail messages, emails, other written or oral communications, and recordings of conversations, to or from, or exchanged between Plaintiff or his agents, representatives, or attorneys and the following persons:
>
> a.     Kevin Reitmeier;
> b.     Bud Miley;
> c.     David Lamb;
> d.     Halle Sminchak;
> e.     Timothy Updegraph;
> f.     Carl Emmert;
> g.     Michael Licata;
> h.     Rob Terwilliger;
> i.     Marc Venditti;
> j.     Frank Venditti III;
> k.     Matt Bragg;
> h.     Any other current or former employee of Kirby or Scott Fetzer;
> i.     Any other current or former Divisional Supervisor of Kirby;
> j.     Any current or former independent contractors of Kirby or Scott Fetzer;
> k.     Potential employers (including self-employment) with whom Plaintiff sought work since November 1, 2010;
> l.     Employers that have employed Plaintiff since November 1, 2010;
> m.     Persons or entities that have contracted with Plaintiff since November 1, 2010;
> n.     Any other person identified in Plaintiff's initial disclosures or responses to the Interrogatories.

You objected on the basis that this request does not meet the requirements of Rule 34, is overly broad in time and scope, seeks privileged communications, and is not relevant or proportional to the needs of the case. Your objections are not well-founded, and we disagree with what you consider to be the relevant responsive documents. That being said, Kirby is willing to limit the scope of this request to documents and electronically stored information regarding this Lawsuit;

Caryn M. Groedel, Esq.
October 1, 2021
Page 20

the claims and defenses in this Lawsuit; the allegations made in the Complaint, Amended
Complaint, Second Amended Complaint, and Counterclaim; the damages sought in this Lawsuit;
Plaintiff's mitigation efforts; Plaintiff's business interests and affiliations since November 1, 2010;
and/or solicitation of claims (e.g., demand letters, lawsuits, grievances, etc.) against Kirby and/or
Scott Fetzer. To the extent Plaintiff is withholding documents on the basis of privilege, please
produce an adequate privilege log. Please provide responsive documents and electronically stored
information.

Request for Production No. 74 (mis-numbered as "75" in Plaintiff's Amended Responses):
We asked Plaintiff to "produce any and all documents and electronically stored information
obtained from third parties that refer or relate to this Lawsuit and/or any of the parties thereto."
You objected on the basis that the request "is overly broad as to scope and time frame and fails to
describe with reasonable particularity a document or category of documents." Your objection is
not well-founded. Indeed, "documents" and "electronically stored information" are defined and
the request is narrowly tailored in time and scope by the allegations and claims made in this
Lawsuit and the parties to the Lawsuit. Please provide responsive documents and electronically
stored information.

Request for Production No. 75 (mis-numbered as "76" in Plaintiff's Amended Complaint):
We asked Plaintiff to "produce any and all diaries, calendars, appointment books and cards, notes,
logs, schedules, memoranda, or any other documents and electronically stored information of
Plaintiff's activities since November 1, 2010. You objected on the basis that the request is "overly
broad as to scope (none) and time frame (none); seeks documents that are not relevant or
proportional to the needs of the case; and fails to describe with reasonable particularity a document
or category of documents." Your objections are not well-founded. First, the type of documents are
specifically stated in the request. Second, the time period is defined. Third, the request seeks
specific documents pertaining to Plaintiff's activities during the defined period of time. Fourth,
Plaintiff's activities are relevant and the request proportional because the question as to whether
Plaintiff was an employee or an independent contractor of Defendants is at the heart of this action
and his activities during the term of his Divisional Supervisor Agreement and activities since it
ended – particularly those related to his mitigation efforts and the claims, allegations, and damages
alleged in this Lawsuit. Please provide responsive documents and electronically stored
information.

Request for Production No. 76 (mis-numbered as "77" in Plaintiff's Amended Responses):
We asked Plaintiff to "produce any and all documents and electronically stored information,
including, but not limited to, emails and text messages, that relate in any way to Plaintiff's role as
a Divisional Supervisor with Kirby, including, but not limited to, Plaintiff's work performance,
travel, territories assigned to Plaintiff in each and every Exhibit A to the Divisional Supervisor
Agreement, assignments, responsibilities, the formation of Plaintiff's Divisional Supervisor
Agreement, the termination of Plaintiff's Divisional Supervisor Agreement, and any policies and

Caryn M. Groedel, Esq.
October 1, 2021
Page 21

procedures that applied to Plaintiff." You objected on the basis that the request is "overly broad as to scope and time frame, and fails to describe with reasonable particularity a document or category of documents." Your objections are not well-founded. Indeed, "documents" and "electronically stored information" are defined and the request states that "emails and text messages" regarding several specific items related to Plaintiff's role as a Divisional Supervisor are responsive to this request. And, the scope and time period are narrowly tailored to the claims and allegations in this Lawsuit. Please provide responsive documents and electronically stored information.

<u>Request for Production No. 77 (mis-numbered as "78" in Plaintiff's Amended Responses)</u>: We asked Plaintiff to produce documents and electronically stored information provided to or received from every federal, state, and local government agency "in proceedings that relate in any manner to Plaintiff's alleged employment relationship with Kirby and/or Scott Fetzer and/or the allegations in the Lawsuit." You objected on the basis that the request is "overly broad as to scope and time frame and fails to describe with reasonable particularity a document or category of documents." You further direct our attention to documents produced – P165 – P200. Not only are your objections not well-founded, but the production appears to be deficient. Indeed, this request asks Plaintiff to produce documents provided to and received from the DOL, EEOC, OCRC, and the FCHR, and any other "federal, state, or local government agency" regarding very specific topics. And the documents produced are only those emails exchanged with the EEOC in 2021, and none from previous years when we know Plaintiff and/or his representatives were in communication with more than one of these agencies. Please provide responsive documents and electronically stored information. If Plaintiff does not have these documents in his possession, custody, or control, he must account for their whereabouts or destruction or there may be a spoliation issue.

<u>Request for Production No. 78 (mis-numbered as "79" in Plaintiff's Amended Responses)</u>: We asked Plaintiff to "produce any and all correspondence and electronically stored information stored by Plaintiff on (a) personal computer(s), computer hard drive(s), cellular device(s), or any other electronic media, including all embedded information, cookies, email directories, email files, email address books, back-up tapes, software, and all portions of the hard drives and security systems that store any contact or link with the Internet that contain any information relating to the allegations in the Complaint, Counterclaim, and/or Plaintiff's role as a Divisional Supervisor with Kirby." You objected on the basis that this request does not meet the requirements of Rule 34, is overly broad in time and scope, and is not relevant or proportional to the needs of the case. Your objections are not well-founded, and we disagree with what you consider to be the relevant responsive documents. First, "electronically stored information" is defined and "correspondence" is a category of documents that is described with "reasonable particularity". Second, the location as to where Plaintiff may look for such documents is clearly described. Third, the scope of the request is narrowly defined – documents related to the "allegations in the Complaint, Counterclaim, and/or Plaintiff's role as a Divisional Supervisor with Kirby." The time limitations

Caryn M. Groedel, Esq.
October 1, 2021
Page 22

are implied by the scope of the request and are reasonable. Please provide responsive documents and electronically stored information.

Request for Production No. 81 (mis-numbered at "82" in Plaintiff's Amended Responses):
We asked Plaintiff to "produce all documents relating to Plaintiff's conviction, or guilty or no contest plea, and all other documents and electronically stored information that refer to, relate to, shed light upon, or describe such documents and electronically stored information" related to convictions, guilty pleas, and no-contest pleas, if any. You objected on the basis that the request is "overly broad as to content and time frame. It also seeks documents that are not relevant or proportional to the needs of the case, seeks documents precluded by Evid.R. 404(b), and fails to describe with reasonable particularity a document or category of documents." Your objections are not well-founded. Indeed, "documents" and "electronically stored information" have been defined; and Evid.R. 404(b) does not preclude the discovery of the requested documents even if such documents ultimately are not admissible at trial. Because Plaintiff failed to respond to Interrogatory No. 19, we are unable to limit this request at this time. Please provide responsive documents and electronically stored information.

Request for Production No. 82 (mis-numbered as "83" in Plaintiff's Amended Responses):
We asked Plaintiff to "produce any and all documents, electronically stored information, or tangible things that Plaintiff copied or retained from Kirby or Scott Fetzer, including any and all documents, electronically stored information, or tangible things that Plaintiff downloaded or recorded to any electronic storage device." You objected on the basis that this request does not meet the requirements of Rule 34, is overly broad in time and scope, and is not relevant or proportional to the needs of the case. Your objections are not well-founded, and we disagree with what you consider to be the relevant responsive documents. Your objections are shocking, to say the least. We are asking Plaintiff to return Defendants' property, specifically, "documents, electronically stored information, or tangible things that Plaintiff downloaded or recorded to any electronic storage device." We should not have to compel your compliance regarding this request.

Request for Production No. 83 (mis-numbered as "84" in Plaintiff's Amended Responses):
We asked Plaintiff to "produce any and all documents, notes, or records of any kind that Plaintiff (or anyone acting on Plaintiff's behalf) made or kept that relate to this Lawsuit." You objected on the basis that this request is overly broad in scope and time frame, and violates FRCP 34 as it fails to describe with reasonable particularity a document or category of documents." Your objections are not well-founded. Indeed, we are asking Plaintiff to produce documents he created or anyone acting on his behalf created related to the Lawsuit. Thus, the scope of the request is reasonably limited to those "documents" (a defined term), "notes", and "records" related to this Lawsuit and does describe with reasonable particularity the types of documents and categories of documents requested. Please provide responsive documents and electronically stored information.

Caryn M. Groedel, Esq.
October 1, 2021
Page 23

Request for Production No. 84 (mis-numbered as "85" in Plaintiff's Amended Responses):
We asked Plaintiff to "produce any and all documents and electronically stored information
reflecting any communications Plaintiff has had with any other person (other than his attorneys)
that relate to this Lawsuit" if he has not produced such documents and electronically stored
information in response to other requests. You objected on the basis that the request is "overly
broad in scope and time frame, and violates FRCP 34 as it fails to describe with reasonable
particularity a document or category of documents." Your objections are not well-founded. Indeed,
this request should not even be necessary, but Plaintiff has refused to comply with his discovery
obligations. Here, we are asking Plaintiff to provide "documents" and "electronically stored
information" that reflect "any communications" Plaintiff has had with "any other person", not
including his attorneys, that relate to this Lawsuit. "Documents", "electronically stored
information", and "Lawsuit" are all defined for Plaintiff and we are seeking such documents about
"communications" related to this "Lawsuit" – this is a reasonably and narrowly tailored request as
far as scope and meets the requirements of Rule 34. Please provide responsive documents and
electronically stored information.

Request for Production No. 85 (mis-numbered as "86" in Plaintiff's Amended Responses):
We asked Plaintiff to "produce any and all documents and electronically stored information
reflecting any communications Plaintiff has had with any other person (other than his attorneys)
that relate to Plaintiff's Divisional Supervisor Agreement with Kirby." You objected on the same
basis as Request for Production No. 84. Your objections are not well-founded for all the reasons
stated in response to your objections stated in Plaintiff's Amended Responses as to Request for
Production No. 84. This is a reasonably and narrowly tailored request as far as scope and meets
the requirements of Rule 34 in requesting the production of "documents" and "electronically stored
information" reflecting "communications" Plaintiff has had with anyone related to the Divisional
Supervisor Agreement at issue in this case. Please provide responsive documents and
electronically stored information.

Request for Production No. 87 (mis-numbered as "88" in Plaintiff's Amended Responses):
We asked Plaintiff to "produce any and all degrees, diplomas, certificates, transcripts, awards, and
other documents that reflect Plaintiff's experience, education, and qualifications." You are now
objecting on the basis that this request is "overly broad in scope and time frame, and violates FRCP
34 as it fails to describe with reasonable particularity a document or category of documents. It also
seeks documents that are not relevant or proportional to the needs of this case." Your objections
are not well-founded. Indeed, we are asking for very specific documents about Plaintiff's
education, qualifications, and experience. This information is discoverable for a number of reasons
including, for example, determining if Plaintiff has appropriately mitigated or attempted to
mitigate his damages. Because we do not know when Plaintiff may have attended an institution of
learning or other educational program or when Plaintiff earned an award or other accolades related
to professional experience, education, and qualifications, we cannot limit the scope of the request
in terms of time. Please provide responsive documents and electronically stored information.

Caryn M. Groedel, Esq.
October 1, 2021
Page 24

Request for Production No. 89 (mis-numbered as "90" in Plaintiff's Amended Responses):
We asked Plaintiff to "produce any and all documents and electronically stored information that
pertain to Scott Fetzer's policies, practices, or procedures that applied in any way to Plaintiff,
including Plaintiff's training on such policies, practices, and procedures." You objected on the
basis that the request is "overly broad as to content and time frame, and fails to describe with
reasonable particularity a document or category of documents." Your objections are not well-
founded, particularly because you were able to respond without any objection to an identical
request (Request for Production 88) for the same documents pertaining to Kirby's policies,
practices, and procedures. Given that you and Plaintiff were able to understand and respond to
Request for Production 88, your objections here are disingenuous and improper. Please provide
responsive documents and electronically stored information.

Request for Production No. 90 (mis-numbered as "91" in Plaintiff's Amended Responses):
We asked Plaintiff to "produce any and all documents and electronically stored information
relating to payments made by Kirby to Plaintiff directly or to a person or entity authorized by
Plaintiff to receive payments for services rendered by Plaintiff since November 1, 2010." You
objected, stating: "This RFP makes no sense (unclear what it is seeking), is overly broad as to
scope and time frame, fails to describe with reasonable particularity a document or category of
documents, and seeks documents that are not relevant or proportional to the needs of case." Your
objections are not well-founded. For avoidance of doubt, we are seeking documents that show
payments made by Kirby to Plaintiff directly or to another person or entity authorized by Plaintiff
to receive payments from Kirby for services Plaintiff rendered to Kirby since November 1, 2010
and "documents" and "electronically stored information" (terms defined by Kirby) related to those
payments. Those records go to the heart of this case and Plaintiff's allegations that he was treated
like an employee. Thus, such documents are absolutely relevant and proportional. Moreover, your
refusal to provide the financial records identified in Plaintiff's initial disclosures intensifies
Kirby's need for the requested information.  You have no basis on which to object to this request.
Please provide responsive documents and electronically stored information.

Request for Production No. 91 (mis-numbered as "92" in Plaintiff's Amended Responses):
We asked Plaintiff to "produce any and all documents and electronically stored information
relating to payments made by Scott Fetzer to Plaintiff directly or a person or entity authorized by
Plaintiff to receive payments for services rendered by Plaintiff since November 1, 2010." You
objected, stating: "This RFP makes no sense (unclear what it is seeking), is overly broad as to
scope and time frame, fails to describe with reasonable particularity a document or category of
documents, and seeks documents that are not relevant or proportional to the needs of case." Your
objections are not well-founded. For avoidance of doubt, we are seeking documents that show
payments made by Scott Fetzer to Plaintiff directly or to another person or entity authorized by
Plaintiff to receive payments from Scott Fetzer for services Plaintiff rendered to Scott Fetzer since
November 1, 2010 and "documents" and "electronically stored information" (terms defined by
Kirby) related to those payments. Those records go to the heart of this case and Plaintiff's
allegations that he was treated like an employee. Thus, such documents are absolutely relevant and

Caryn M. Groedel, Esq.
October 1, 2021
Page 25

proportional. Moreover, your refusal to provide the financial records identified in Plaintiff's initial disclosures intensifies Kirby's need for the requested information.  You have no basis on which to object to this request. Please provide responsive documents and electronically stored information.

Request for Production No. 93 (mis-numbered as "94" in Plaintiff's Amended Responses): We asked Plaintiff to "produce any and all documents and electronically stored information relating to Plaintiff's performance under his Divisional Supervisor Agreement with Kirby." You objected on the basis that the request is "overly broad as to scope ("relating to performance") and time frame, and fails to describe with reasonable particularity a document or category of documents." Your objections are not well-founded. The Divisional Supervisor Agreement between Kirby and Plaintiff set forth the rights and obligations of both parties during the term of the Agreement. "Documents" and "electronically stored information" are defined for Plaintiff's benefit. In addition, Plaintiff's performance under the Divisional Supervisor Agreement is at the heart of this Lawsuit and documents that relate to Plaintiff's performance are relevant and discoverable. Given that you and Plaintiff have refused to provide all of the documents identified in Plaintiff's initial disclosures and the vast majority of these discovery requests, it is necessary for Plaintiff to provide documents regarding his performance under the Divisional Supervisor Agreement such as emails, text messages, and other correspondence to, from, among, or between Plaintiff and/or Plaintiff's employees or representatives and Kirby and/or Scott Fetzer; payments made to Plaintiff or an authorized recipient by Kirby or Scott Fetzer per the terms of the Agreement; documents showing how Plaintiff fulfilled his obligations under the "best efforts" provision and all other provisions of the Divisional Supervisor Agreement which may include emails, text messages, and other communications with Factory Distributors, among others; documents showing expenses paid by Plaintiff in performing his Divisional Supervisor work including those expenses alleged in his Complaint and its amendments; and emails, text messages, and other correspondence transmitting documents and information to Kirby or Scott Fetzer. Only Plaintiff knows what documents and electronically stored information he has regarding his performance under the Divisional Supervisor Agreement – and those must be produced in response to this request. Please provide responsive documents and electronically stored information.

Request for Production No. 94 (mis-numbered as "95" in Plaintiff's Amended Responses): We asked Plaintiff to "produce any and all documents and electronically stored information relating to Kirby's performance under Plaintiff's Divisional Supervisor Agreement with Kirby." You objected on the basis that the request is "unclear" and is "overly broad in scope and time frame, and fails to describe with reasonable particularity a document or category of documents." Your objections are not well-founded. The Divisional Supervisor Agreement between Kirby and Plaintiff set forth the rights and obligations of both parties during the term of the Agreement. "Documents" and "electronically stored information" are defined for Plaintiff's benefit. In addition, the breach of contract claim brought by Plaintiff against the Defendants is at the heart of this Lawsuit, and documents and electronically stored information related to Kirby's performance

Caryn M. Groedel, Esq.
October 1, 2021
Page 26

are relevant and discoverable. Such information includes payments made under the Divisional Supervisor Agreement and documents that support Plaintiff's allegations that –

> Defendants breached paragraph 8 of the contract by, *inter alia*, exerting full control over Plaintiff's employment and treating him like an employee -- despite contractually agreeing that he would be an independent contractor, including paying him a fixed salary, which was paid on a set monthly basis; and requiring him to rent and maintain an out-of-the-home office, organize and lead rallies, meetings, and training seminars; travel from Florida to Cleveland four times per year for Divisional Supervisor meetings; visit each store he supervised at least once every three months; document his travel time; submit his calendar and travel reports to Kirby's president of North American Field Sales each month; spend specific hours working in his nonhome office each day he was not traveling; pay all costs associated with training his Sales Representatives, including training materials and conference room rental; employ an administrative assistant; pay all payroll taxes for himself and his administrative assistant; pay into the Florida unemployment and worker's compensation systems; and pay thousands of dollars per month on travel and lodging expenses for the travel Defendants required of him. (Amended Complaint, ¶40).

To date, Plaintiff has provided no documents to support most of these allegations. Please provide responsive documents and electronically stored information.

> Request for Production No. 95 (mis-numbered as "96" in Plaintiff's Amended Responses): We asked Plaintiff to "produce any and all documents and electronically stored information relating to Scott Fetzer's performance under Plaintiff's Divisional Supervisor Agreement with Kirby." You objected on the same basis stated in response to Request for Production No. 94. For all of the reasons stated in response to your objections to Request for Production No. 94, your objections here are not well-founded. Please provide responsive documents and electronically stored information.

> Request for Production No. 102 (mis-numbered as "103" in Plaintiff's Amended Responses): We asked Plaintiff the following –

> > Please produce any and all emails, text messages, instant messages, photographs, video recordings, audio recordings, social media posts, "Likes", comments, tags, status updates, tweets, blog entries, and/or messages sent to or from, passing between, hosted on or posted on

Caryn M. Groedel, Esq.
October 1, 2021
Page 27

any email account, Facebook account, Twitter account, LinkedIn
account, Skype account, Blogger/Blogspot account, or any other
page, social media account or email account created, accessed
and/or maintained by Plaintiff since November 1, 2010 relating to,
concerning, or referring to:

a.  Plaintiff's Divisional Supervisor Agreement with Kirby;
b.  Plaintiff's performance under his Divisional Supervisor
    Agreement with Kirby;
c.  Any current and/or former employee, representative, agent, or
    independent contractor of Kirby including, but not limited to:

    1.    Kevin Reitmeier;
    2.    Bud Miley;
    3.    David Lamb;
    4.    Halle Sminchak;
    5.    Timothy Updegraph;
    6.    Carl Emmert;
    7.    Michael Licata;
    8.    Rob Terwilliger;
    9.    Marc Venditti;
    10.   Frank Venditti III;

    11.   Matt Bragg;

d.  Any active, concluded, contemplated or threatened claim,
    charge, litigation, or lawsuit against or involving Kirby, Scott
    Fetzer, or any of their respective current or former employees or
    independent contractors;
e.  Plaintiff's claims in this Lawsuit;
f.  Plaintiff's allegations and/or damages in this Lawsuit;
g.  Kirby's claims in this Lawsuit.
h.  Kirby's allegations and/or damages in this Lawsuit:
i.  Plaintiff's efforts to obtain employment with a different
    employer (including self-employment) during the term of his
    Divisional Supervisor Agreement with Kirby;
j.  Plaintiff's employment or efforts to obtain employment
    (including self- employment) since the termination of his
    Divisional Supervisor Agreement with Kirby;
k.  Any of Plaintiff's complaints to or about Kirby and/or Scott
    Fetzer or any of their respective current or former employees,
    parent companies; or independent contractors;
l.  Payments made by Kirby or Scott Fetzer to Plaintiff directly or a
    person or entity authorized by Plaintiff to receive payments for

Caryn M. Groedel, Esq.
October 1, 2021
Page 28


                      services rendered by Plaintiff since November 1, 2010; and
                      m. Plaintiff's other agreements with Kirby and/or Scott Fetzer.

You objected on the basis that this request does not meet the requirements of Rule 34, is overly broad in time and scope, and is not relevant or proportional to the needs of the case. Your objections are not well-founded, and we disagree with what you consider to be the relevant responsive documents. First, the time period is narrowly tailored to the time period encompassing the Divisional Supervisor Agreement through the present. Second, the scope of the request is narrowly tailored to the allegations, claims, defenses, and damages in this Lawsuit and evidence already proffered by Plaintiff in his initial disclosures. Third, the specific documents requested are described with "reasonable particularity" and it is absurd for you to claim otherwise. Please provide responsive documents and electronically stored information.

    Request for Production No. 103 (mis-numbered as "104" in Plaintiff's Amended Responses): We asked Plaintiff to "produce any and all documents and electronically stored information generated by Plaintiff, or Plaintiff's agents or representatives, or obtained from other persons or entities, that relate to or refer to the allegations in the Lawsuit. This request includes all notes, timelines, summaries, tape recordings, transcripts, notes of conversations, emails, or text messages which pertain to this Lawsuit, excluding any documents protected by the attorney-client privilege or attorney work product doctrine." You objected on the basis that the request is "overly broad in scope and time frame. It also fails to describe with reasonable particularity a document or category of documents." Your objection is not well-founded. "Documents" and "electronically stored information" are defined for Plaintiff and the request includes specific examples of documents and electronically stored information responsive to this request – thus, the documents requested are described with "reasonable particularity". In addition, this request seeks documents about the allegations made in this Lawsuit – the claims and Counterclaim – thus, the scope of the request is narrowly tailored in time and subject. Please provide responsive documents and electronically stored information.

    Request for Production No. 104 (mis-numbered as "105" in Plaintiff's Amended Responses): We asked Plaintiff to "produce any and all documents and electronically stored information that, although not specifically requested herein, refer, relate to, or otherwise support the allegations in Plaintiff's Complaint, as well as the acts described therein, or Plaintiff's responses or defenses to the Counterclaim." You objected on the basis that the request is "overly broad and fails to comply with FRCP 34 as it does not describe with reasonable particularity a document or category of documents. It also seeks Plaintiff's counsel mental impressions of the specific documents that support Plaintiff's claims, which is protected from disclosure by the attorney work product doctrine." Your objections are not well-founded. First, "documents" and "electronically stored information" are defined for Plaintiff. Second, the scope of the request is narrowly tailored in time and content as it requests documents that "refer, relate to, or otherwise support the allegations in Plaintiff's Complaint, as well as the acts described therein, or Plaintiff's

Caryn M. Groedel, Esq.
October 1, 2021
Page 29

responses or defenses to the Counterclaim." Third, this request is not asking for Plaintiff's
counsel's mental impressions or attorney-client privileged communications; it is asking <u>Plaintiff</u>
to produce documents related to the allegations and acts described in the Complaint or related to
Plaintiff's responses or defenses in the Counterclaim. Please provide responsive documents and
electronically stored information.

<u>Request for Production No. 107 (mis-numbered as "108" in Plaintiff's Amended
Responses)</u>: We asked Plaintiff the following –

> To the extent not already produced in response to any other document
> request, please produce any and all documents and electronically stored
> information, including text messages, phone calls, voice mail messages,
> emails, other written or oral communications, and recordings of
> conversations, to or from, or exchanged between Plaintiff or his agents,
> representatives, or attorneys and the following persons from January 1,
> 2018 to the present:
>
> a. Plaintiff's daughter described in Paragraphs 23 to 25 of the
>    Complaint that refer or relate to the CBD store described in
>    Paragraphs 23 to 25 of the Complaint ("CBD Store"), any other
>    business or entity Plaintiff and/or Plaintiff's daughter owned,
>    operated, controlled, invested in, incorporated, served as a board
>    member and/or officer of, or has had any direct or indirect
>    involvement;
> b. Employees of the CBD Store;
> c. Customers of the CBD Store;
> d. All other persons associated with the CBD Store;
> e. All persons related to the CBD Store or any other business or entity
>    Plaintiff and/or Plaintiff's daughter owned, operated, controlled,
>    invested in, incorporated, served as a board member and/or officer
>    of, or has had any direct or indirect involvement.

You objected on the basis that this request does not meet the requirements of Rule 34, is overly
broad in time and scope, and is not relevant or proportional to the needs of the case. Your
objections are not well-founded, and we disagree with what you consider to be the relevant
responsive documents. The scope of the request is narrowly tailored in time (January 1, 2018 to
the present) and the documents requested are relevant and proportional to the case, particularly
because Plaintiff's involvement in the CBD business and his daughter's CBD Store are at the heart
of Kirby's Counterclaim and some of the allegations made by Plaintiff. Please provide responsive
documents and electronically stored information.

Caryn M. Groedel, Esq.
October 1, 2021
Page 30

### Additional Response to Your September 13, 2021 Letter Addressing Kirby's August 16, 2021 Discovery Deficiency Letter and September 17, 2021 Email

**Interrogatories**:

Interrogatory No. 3:   We asked Plaintiff to identify all persons with any knowledge or information, or those persons Plaintiff or his representatives, including you, believe have knowledge or information about "the claims, allegations, and damage requests that Plaintiff is making against Defendants in the Lawsuit and provide a brief description of the information or knowledge each person possesses." Plaintiff has not provided the following information for the individuals he identified in his answers on May 21, 2021:

- **Bud Miley**: Present or last known home and business address (including street name and number, city or town, state, and zip code); or information or knowledge he specifically possesses.

- **Tim Updegraph**: Present or last known home and business address (including street name and number, city or town, state, and zip code); or information or knowledge he specifically possesses.

- **Matt Bragg**: Present or last known home and business address (including street name and number, city or town, state, and zip code); or information or knowledge he specifically possesses.

- **Mike Licata**: Present or last known home and business address (including street name and number, city or town, state, and zip code); present or last known telephone number; relationship to Plaintiff; or information or knowledge he specifically possesses.

- **Tesha Finley**: Present or last known home and business address (including street name and number, city or town, state, and zip code); present or last known telephone number; relationship to Plaintiff; or information or knowledge she specifically possesses.

- **Rob Terwilliger**: Present or last known home and business address (including street name and number, city or town, state, and zip code); or information or knowledge he specifically possesses.

- **Kevin Reitmeier**: Information or knowledge he specifically possesses.

- **David Lamb**: Information or knowledge he specifically possesses.

Caryn M. Groedel, Esq.
October 1, 2021
Page 31

- **Bob McBride**: Information or knowledge he specifically possesses.

Interrogatory No. 4:   We asked Plaintiff to identify all persons with any knowledge or information, or those persons Plaintiff or his representatives, including you, believe have knowledge or information about "Plaintiff's defenses to the Counterclaim and provide a brief description of the information or knowledge each person possesses." Plaintiff has not provided the following information for the individuals he identified in his answers on May 21, 2021:

- **Bud Miley**: Present or last known home and business address (including street name and number, city or town, state, and zip code); or information or knowledge he specifically possesses.

- **Tim Updegraph**: Present or last known home and business address (including street name and number, city or town, state, and zip code); or information or knowledge he specifically possesses.

- **Matt Bragg**: Present or last known home and business address (including street name and number, city or town, state, and zip code); or information or knowledge he specifically possesses.

- **Carl Emmert**: Present or last known home and business address (including street name and number, city or town, state, and zip code); or information or knowledge he specifically possesses.

- **Mike Licata**: Present or last known home and business address (including street name and number, city or town, state, and zip code); present or last known telephone number; relationship to Plaintiff; or information or knowledge he specifically possesses.

- **Tesha Finley**: Present or last known home and business address (including street name and number, city or town, state, and zip code); present or last known telephone number; relationship to Plaintiff; or information or knowledge she specifically possesses.

- **Rob Terwilliger**: Present or last known home and business address (including street name and number, city or town, state, and zip code); or information or knowledge he specifically possesses.

- **Kevin Reitmeier**: Information or knowledge he specifically possesses.

Caryn M. Groedel, Esq.
October 1, 2021
Page 32

- **David Lamb**: Information or knowledge he specifically possesses.

- **Marcus Quinn**: Present or last known home and business address (including street name and number, city or town, state, and zip code); or information or knowledge he specifically possesses.

- **Bob McBride**: Information or knowledge he specifically possesses.

- **Joyce Conway**: Present or last known home and business address (including street name and number, city or town, state, and zip code); or present or last known telephone number.

Interrogatory No. 6:    We asked Plaintiff to identify all persons with whom Plaintiff or his representatives communicated concerning the Divisional Supervisor Agreement, to describe the substance of each communication, and the date and form or each communication. You did not object to this request, however, Plaintiff's response is incomplete. Plaintiff has not provided the following information for the individuals identified in his answers on May 21, 2021:

- **Tim Updegraph**: Present or last known home and business address (including street name and number, city or town, state, and zip code); and substance of each communication with Plaintiff. For the communications Plaintiff recalls having, but cannot recall the dates of, please provide the form used for his communications with Updegraph. Please provide the substance, date, and form of each communication Plaintiff's counsel had with Updegraph.

- **Matt Bragg**: Present or last known home and business address (including street name and number, city or town, state, and zip code); and substance of each communication with Plaintiff. For the communications Plaintiff recalls having, but cannot recall the dates of, please provide the form used for his communications with Bragg. Please provide the substance, date, and form of each communication Plaintiff's counsel had with Bragg.

- **Carl Emmert**: Present or last known home and business address (including street name and number, city or town, state, and zip code); and substance and date of each communication Plaintiff's counsel had with Emmert.

- **Michael Licata**: Present or last known home and business address (including street name and number, city or town, state, and zip code); and substance, date, and form of each communication Plaintiff's counsel had with Licata.

Caryn M. Groedel, Esq.
October 1, 2021
Page 33

- **Bud Miley**: Present or last known home and business address (including street name and number, city or town, state, and zip code); and substance of each communication with Plaintiff. For the communications Plaintiff recalls having, but cannot recall the dates of, please provide the form used for his communications with Miley. Please provide the substance, date, and form of each communication Plaintiff's counsel had with Miley.

- **Charles Nugent**: Present or last known home and business address (including street name and number, city or town, state, and zip code); and substance of each communication with Plaintiff. For the communications Plaintiff recalls having, but cannot recall the dates of, please provide the form used for his communications with Nugent. Please provide the substance, date, and form of each communication Plaintiff's counsel had with Nugent.

- **Tony Bryan**: Present or last known home and business address (including street name and number, city or town, state, and zip code); and substance of each communication with Plaintiff. For the communications Plaintiff recalls having, but cannot recall the dates of, please provide the form used for his communications with Bryan. Please provide the substance, date, and form of each communication Plaintiff's counsel had with Bryan.

- **The "EEOC"**: Name of each EEOC representative with whom Plaintiff communicated; present or last known business address (including street name and number, city or town, state, and zip code); present or last known telephone number; and substance of each communication with Plaintiff. For the communications Plaintiff recalls having, but cannot recall the dates of, please provide the form used for his communication(s) with (each) EEOC representative(s). For each EEOC representative with whom Plaintiff's counsel has communicated, please provide their name; present or last known business address (including street name and number, city or town, state, and zip code); present or last known telephone number; and substance, date, and form of each communication and date and form of each communication.

- **David Lamb**: The substance and form of each communication Plaintiff had with Lamb.

- **"Ex-Wife"**: Name of the "ex-wife" with whom Plaintiff communicated; present or last known business address (including street name and number, city or town, state, and zip code); present or last known telephone number; and substance and form of each communication.

Caryn M. Groedel, Esq.
October 1, 2021
Page 34

- **Plaintiff's "Lawyers"**: For any "lawyer" other than Caryn Groedel, please provide their names, last known home and business address (including street name and number, city or town, state, and zip code), and present or last known telephone number.

Interrogatory No. 7:   We asked Plaintiff to identify all persons with whom Plaintiff or his representatives communicated "concerning the Lawsuit, any of the claims in the Lawsuit, any of the allegations in the Lawsuit, any of the defenses in the Lawsuit, and/or any of the damages being sought in connection with the Lawsuit", to provide the date(s) and form of each communication, and describe the substance of each communication. You did not object to this request, however, Plaintiff's response is incomplete. Plaintiff has not provided the following information for the individuals identified in his answers on May 21, 2021:

- **Tim Updegraph**: Present or last known home and business address (including street name and number, city or town, state, and zip code); and substance of each communication with Plaintiff. For the communications Plaintiff recalls having, but cannot recall the dates of, please provide the form used for his communications with Updegraph. Please provide the substance, date, and form of each communication Plaintiff's counsel had with Updegraph.

- **Matt Bragg**: Present or last known home and business address (including street name and number, city or town, state, and zip code); and substance of each communication with Plaintiff. For the communications Plaintiff recalls having, but cannot recall the dates of, please provide the form used for his communications with Bragg. Please provide the substance, date, and form of each communication Plaintiff's counsel had with Bragg.

- **Carl Emmert**: Present or last known home and business address (including street name and number, city or town, state, and zip code); and substance of each communication with Plaintiff. For the communications Plaintiff recalls having, but cannot recall the dates of, please provide the form used for his communications with Emmert. Please provide the substance, date, and form of each communication Plaintiff's counsel had with Emmert.

- **Michael Licata**: Present or last known home and business address (including street name and number, city or town, state, and zip code); and substance of each communication with Plaintiff. For the communications Plaintiff recalls having, but cannot recall the dates of, please provide the form used for his communications with Licata. Please provide the substance, date, and form of each communication Plaintiff's counsel had with Licata.

206 of 267

Caryn M. Groedel, Esq.
October 1, 2021
Page 35

- **<u>Bud Miley</u>**: Present or last known home and business address (including street name and number, city or town, state, and zip code); and substance of each communication with Plaintiff. For the communications Plaintiff recalls having, but cannot recall the dates of, please provide the form used for his communications with Miley. Please provide the substance, date, and form of each communication Plaintiff's counsel had with Miley.

- **<u>Charles Nugent</u>**: Present or last known home and business address (including street name and number, city or town, state, and zip code); and substance of each communication with Plaintiff. For the communications Plaintiff recalls having, but cannot recall the dates of, please provide the form used for his communications with Nugent. Please provide the substance, date, and form of each communication Plaintiff's counsel had with Nugent.

- **<u>Tony Bryan</u>**: Present or last known home and business address (including street name and number, city or town, state, and zip code); and substance of each communication with Plaintiff. For the communications Plaintiff recalls having, but cannot recall the dates of, please provide the form used for his communications with Bryan. Please provide the substance, date, and form of each communication Plaintiff's counsel had with Bryan.

- **<u>The "EEOC"</u>**: Name of each EEOC representative with whom Plaintiff communicated; present or last known business address (including street name and number, city or town, state, and zip code); present or last known telephone number; and substance of each communication with Plaintiff. For the communications Plaintiff recalls having, but cannot recall the dates of, please provide the form used for his communication(s) with (each) EEOC representative(s). For each EEOC representative with whom Plaintiff's counsel has communicated, please provide their name; present or last known business address (including street name and number, city or town, state, and zip code); present or last known telephone number; and substance, date, and form of each communication and date and form of each communication.

- **<u>David Lamb</u>**: The substance and form of each communication Plaintiff had with Lamb.

- **<u>"Ex-Wife"</u>**: Name of the "ex-wife" with whom Plaintiff communicated; present or last known business address (including street name and number, city or town, state, and zip code); present or last known telephone number; and substance and form of each communication.

littler.com

207 of 267

Caryn M. Groedel, Esq.
October 1, 2021
Page 36


- **<u>Plaintiff's "Lawyers"</u>**: For any "lawyer" other than Caryn Groedel, please provide their names, last known home and business address (including street name and number, city or town, state, and zip code), and present or last known telephone number.

Interrogatory No. 8: We asked Plaintiff to identify "each current employee, former employee, current independent contractor, and former independent contractor of either Kirby or Scott Fetzer" with whom Plaintiff or his representatives communicated, the form(s) of each communication, and date(s) of each communication. You did not object to this request, however, Plaintiff's response is incomplete. Plaintiff has not provided the following information for the individuals identified in his answers on May 21, 2021:

- **<u>Tim Updegraph</u>**: Present or last known home and business address (including street name and number, city or town, state, and zip code); and substance of each communication with Plaintiff. For the communications Plaintiff recalls having, but cannot recall the dates of, please provide the form used for his communications with Updegraph. Please provide the substance, date, and form of each communication Plaintiff's counsel had with Updegraph.

- **<u>Matt Bragg</u>**: Present or last known home and business address (including street name and number, city or town, state, and zip code); and substance of each communication with Plaintiff. For the communications Plaintiff recalls having, but cannot recall the dates of, please provide the form used for his communications with Bragg. Please provide the substance, date, and form of each communication Plaintiff's counsel had with Bragg.

- **<u>Carl Emmert</u>**: Present or last known home and business address (including street name and number, city or town, state, and zip code); and substance, date, and form of each communication with Plaintiff's counsel.

- **<u>Michael Licata</u>**: Present or last known home and business address (including street name and number, city or town, state, and zip code); and substance, date, and form of each communication with Plaintiff' counsel.

- **<u>Bud Miley</u>**: Present or last known home and business address (including street name and number, city or town, state, and zip code); and substance of each communication with Plaintiff. For the communications Plaintiff recalls having, but cannot recall the dates of, please provide the form used for his communications with Miley. Please provide the substance, date, and form of each communication Plaintiff's counsel had with Miley.

littler.com

Caryn M. Groedel, Esq.
October 1, 2021
Page 37

- **<u>Charles Nugent</u>**: Present or last known home and business address (including street name and number, city or town, state, and zip code); and substance of each communication with Plaintiff. For the communications Plaintiff recalls having, but cannot recall the dates of, please provide the form used for his communications with Nugent. Please provide the substance, date, and form of each communication Plaintiff's counsel had with Nugent.

- **<u>Tony Bryan</u>**: Present or last known home and business address (including street name and number, city or town, state, and zip code); and substance of each communication with Plaintiff. For the communications Plaintiff recalls having, but cannot recall the dates of, please provide the form used for his communications with Bryan. Please provide the substance, date, and form of each communication Plaintiff's counsel had with Bryan.

- **<u>The "EEOC"</u>**: Name of each EEOC representative with whom Plaintiff communicated; present or last known business address (including street name and number, city or town, state, and zip code); present or last known telephone number; and substance of each communication with Plaintiff. For the communications Plaintiff recalls having, but cannot recall the form used for his communication(s) with (each) EEOC representative(s). For each EEOC representative with whom Plaintiff's counsel has communicated, please provide their name; present or last known business address (including street name and number, city or town, state, and zip code); present or last known telephone number; and substance, date, and form of each communication and date and form of each communication.

- **<u>David Lamb</u>**: The substance and form of each communication Plaintiff had with Lamb.

- **<u>"Ex-Wife"</u>**: Name of the "ex-wife" with whom Plaintiff communicated; present or last known business address (including street name and number, city or town, state, and zip code); present or last known telephone number; and substance and form of each communication.

- **<u>Plaintiff's "Lawyers"</u>**: For any "lawyer" other than Caryn Groedel, please provide their names, last known home and business address (including street name and number, city or town, state, and zip code), and present or last known telephone number.

<u>Interrogatory No. 12</u>: We asked Plaintiff to identify "every place of business (profit or non-profit), governmental agency, and other person or entity to which Plaintiff has applied for

Caryn M. Groedel, Esq.
October 1, 2021
Page 38


employment (including self-employment and work as an independent contractor) from November 1, 2010 through the present". You did not object to this request, however, Plaintiff's response is still incomplete. In fact, he has not supplemented his response despite his attorney's unlicensed law clerk, Mr. Kerr, stating on September 14, 2021, that Plaintiff would supplement his response because the information requested is not included in the documents provided with Plaintiff's Amended Responses. The requested information also was not provided in Mr. Kerr's email dated September 17, 2021. In fact, the only response provided on September 17th was, "Our client is in the process of obtaining [mitigation] documents. We will produce them as they become available." Please provide the requested information, in full, as you have made no objections.

Interrogatory No. 13: We asked Plaintiff to state whether he has "received any income from any source(s) other than from Kirby, since November 1, 2010" and to provide specific information regarding that income. You objected on the basis that the information requested is "confidential, not relevant, not proportional to the needs of the case, and protected from discovery by the collateral source rule." Your objections are not well-founded:

1. The information sought is not "confidential" and you have provided no basis for taking such a position. Indeed, because the parties are subject to a protective order, Plaintiff's concerns about producing truly confidential information are not well-founded.

2. The amount of income, source of income, and dates of receipt of the income received by Plaintiff since November 1, 2010—the effective date of the Divisional Supervisor Agreement and the earliest date of Defendants' alleged breach of that agreement—is relevant and proportional to (a) Plaintiff's breach of contract claim, (b) Defendants' defenses, and (c) Kirby's Counterclaim. Rule 26(b)(1) states: "Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is"—

    (a) "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action,"

    (b) "the amount in controversy,"

    (c) "the parties' relative access to relevant information,"

    (d) "the parties' resources,"

    (e) "the importance of the discovery in resolving the issues, and"

    (f) "whether the burden or expense of the proposed discovery outweighs its likely benefit."

Caryn M. Groedel, Esq.
October 1, 2021
Page 39

Relevance and proportionality: Plaintiff's entire case is based on his averment that he was Defendants' employee, despite the Divisional Supervisor Agreement explicitly stating that Plaintiff was an independent contractor. Plaintiff alleges that Defendants breached the Divisional Supervisor Agreement from its effective date "by, *inter alia*, exerting full control over Plaintiff's employment and treating him like an employee -- despite contractually agreeing that he would be an independent contractor . . . ." (Second Am. Compl. ¶40; *see also* ¶15). Kirby also alleges that Plaintiff breached the Divisional Supervisor Agreement in 2018 in its Counterclaim by not performing the work he was engaged to accomplish. Thus, Plaintiff's activities outside of the scope of work he was engaged to perform under the Divisional Supervisor and income received from any source since November 1, 2010 is discoverable and relevant to the claims asserted by Plaintiff and Kirby's counterclaim, and their respective defenses. *See* Defendants' Affirmative Defenses asserted in response to Plaintiff's Amended Complaint, nos. 3, 4, 7, 9, and 10. In addition, the discovery requested by Defendants is already proportional by Defendants' limiting every discovery request save one to the time period beginning November 1, 2010, despite Plaintiff's averment that he began his employment with Defendants in 1991. (Second Am. Compl. ¶12).

Amount in Controversy: Plaintiff stated in his initial disclosures that his damages amount to $2,408,077 exclusive of "emotional damages", "punitive damages", and "attorney's fees and costs." Thus, discovery of the scope (time and subject matter) requested by Kirby is appropriate.

Parties' Access to Relevant Information: Plaintiff easily has access to the information requested; whereas Defendants do not.

The Parties' Resources: Plaintiff has been asked to provide information he should easily be able to obtain from his own records or that can be obtained from his bank records, business records, and/or the government agency(ies) providing the benefits (if any). If Plaintiff does not wish to obtain records from governmental agencies or other third parties, he can easily authorize Defendants' counsel to obtain such information at their expense.

Importance of the Discovery In Resolving the Issues: Because the Plaintiff's entire case, and many of Defendants' defenses, turns on whether Plaintiff was an employee or an independent contractor, information and documents about the income received by Plaintiff (and his income-generating or attempts at income-generating work) during the term of the Divisional Supervisor Agreement (November 1, 2010 through October 8, 2018) are discoverable, relevant, and extremely important to this case. In addition, Plaintiff's mitigation efforts since his Divisional Supervisor Agreement was terminated on October

Caryn M. Groedel, Esq.
October 1, 2021
Page 40

8, 2018 are discoverable and relevant. Moreover, Plaintiff's activities January 1 through October 8, 2018 are discoverable and relevant to Kirby's Counterclaim.

> Whether the Burden or Expense of the Proposed Discovery Outweighs Its Likely Benefit: Plaintiff has not argued or provided any information to demonstrate that this request is burdensome in terms of time or expense. Even if he had taken such a position, the discovery requested is essential to Defendants' defense of Plaintiff's claims.

3.  The information requested is not protected from discovery by the "collateral source rule." You state the following in your September 13th letter:

> "In Ohio, the collateral source rule provides 'that benefits the plaintiff receives from a source wholly independent of the wrongdoer should not benefit the wrongdoer by reducing the amount of damages which a plaintiff might otherwise recover from him.'" *Libbey-Owens-Ford Co. v. Skeddle*, 86 F.3d 1155 (6th Cir. 1996), quoting *Klosterman v. Fussner*, 651 N.E.2d 64, 67 (Ohio Ct.App.1994). "Certain payments the plaintiff receives from sources collateral to, or independent of, the tortfeasor may not be offset from a back pay award under the collateral source rule." *Hyland v. Xerox Corp.*, 31 F. Supp. 3d 729, 734 (D. Md. 2014), aff'd, 632 F. App'x 114 (4th Cir. 2015)."

While the "collateral source rule" may prevent the reduction of a damages award, you have not provided any case law or other source that states income from sources other than Kirby and/or Scott Fetzer is not discoverable. As we have said to you in writing and via telephone call, Plaintiff's work as an employee or independent contractor or any other income generating activity or business activity undertaken from November 1, 2010 to the present is relevant to Plaintiff's claims, Kirby's Counterclaim, and Defendants' defenses regardless of the impact on the damages that Plaintiff could be awarded. Your objection is inappropriate and not well-founded. In addition, you claim that you will produce "any 1099s and W-2s from October 8, 2018, to the present that have not yet been produced." Instead of producing such documents, Mr. Kerr stated in this September 17th email that "[Plaintiff] is in the process of searching for and providing additional 1099s and W-2s from 2018-2020." These documents have not been produced. In addition, the information requested in Interrogatory No. 13 is not just for 1099 and W-2 income—it covers other sources of income such as, but not limited to, "unemployment compensation, workers' compensation, disability benefits, pension or other retirement benefits, social security benefits, welfare benefits, loans, or other government benefits" from November 1, 2010 to the present. So, to the extent Plaintiff has information about income that is not reflected on a 1099 or W-2 (such as, for example,

Caryn M. Groedel, Esq.
October 1, 2021
Page 41

income paid to him in 2021), he is obligated to produce it under the Federal Rules of Civil Procedure governing discovery.

Please provide the information requested in Interrogatory No. 13.

Interrogatory No. 14: We asked Plaintiff to "[i]dentify every place Plaintiff has been employed (including self-employment and work as an independent contractor) since November 1, 2010" and provide specific information regarding every entity and position. You objected on the basis that the request is "overly broad and seeks information that is not relevant or proportional to the needs of this case. The only employment relevant to this lawsuit is the employment Plaintiff held with Defendants, and the employment he has held since Defendants terminated him." Despite these objections, Plaintiff stated "that he was an independent contractor/franchisee for CBD American Shaman for a short period of time, and was employed by CBD American Shaman."

First, your objections are not well-founded for all the reasons set forth above in our response to your deficient answer to Interrogatory No. 13, #2 (discussion concerning relevance and proportionality). Please provide the requested information for the time period November 1, 2010 to the present.

Second, regarding the information provided about "CBD American Shaman", Plaintiff's answer is still deficient. Specifically, Plaintiff failed to provide the following information requested about CBD American Shaman: the present or first known pertinent business street address, city, state, phone number, and the person associated with the CBD American Shaman who has knowledge of the information concerning the subject matter of this request. In addition, Plaintiff failed to state the dates during which he was (1) "an independent contractor/franchisee" and (2) "employed by CBD American Shaman", and (2) the reason(s) for his separation from each of those roles. Please provide the requested information.

Interrogatory No. 15: We asked Plaintiff to "[i]dentify every business in which Plaintiff has had a financial and/or ownership interest and/or invested money since November 1, 2010" and to provide specific information regarding every business. You objected on the basis that the request "seeks information that is confidential, not relevant, not proportional to the needs of the case, and protected from discovery by the collateral source rule." For all the reasons set forth above in our response to your deficient answer to Interrogatory No. 13, we are entitled to information pertaining to Plaintiff's activities outside of his work under the Divisional Supervisor Agreement as that information is relevant to Defendants' defenses and Kirby's Counterclaim. Please provide the requested information.

Interrogatory No. 16: We asked Plaintiff to identify all of his e-mail addresses, social networking accounts, professional networking accounts, third-party storage accounts, and all other electronic accounts he has "used or maintained since November 1, 2010." You objected on the

Caryn M. Groedel, Esq.
October 1, 2021
Page 42

basis that the request "is overly broad in scope and time" and provided the following substantive
response: "bmibdivision@gmail.com, and BMIB Rhino Division". Your objections are not well-
founded. Again, as we have said every single time we have communicated with you, given that
Plaintiff is alleging that a the breach of a contract occurred beginning on November 1, 2010, the
time and scope of the request are appropriately tailored. Also, you have not answered our inquiry
from our August 16th discovery deficiency letter about what "BMIB Rhino Division" is.

Interrogatory No. 17:  We asked Plaintiff to identify every "telephone or cellular phone
account and corresponding phone number(s), maintained, used or accessed by Plaintiff, for
business or personal use, from November 1, 2010 to the present", and to provide "the carrier (e.g.,
Verizon, AT&T, etc.), the make and model of the device associated with that phone number, and
the range of dates during which Plaintiff used each phone number and associated device." You
objected on the basis that the request is "is overly broad in scope and time" and provided a phone
number and carrier. Your objections are not well-founded. Again, as we have said every single
time we have communicated with you, given that Plaintiff is alleging that a the breach of a contract
occurred beginning on November 1, 2010, the time and scope of the request are appropriately
tailored. Mr. Kerr communicated in his September 17th email that Plaintiff "is unaware of the
specific model or the devices he has used over the years." We find it extremely hard to believe that
Plaintiff cannot remember a single cell phone he has used since November 1, 2010, and it defies
logic that he is unable to identify his current phone or the date on or about which he began using
it. Please produce the requested information.

Interrogatory No. 18:  We asked Plaintiff to identify "each and every electronic storage
device (including, but not limited to computers, hard drives, cellular or smart phones, or hand held
devices) that Plaintiff has either owned or used for personal and/or professional reasons since
November 1, 2010" and information regarding each device. You objected on the basis that the
request is "overly broad in scope and duration, seeks information that is confidential, not relevant,
not proportional to the needs of the case, and is nothing more than a fishing expedition." Your
objections are not well-founded. Again, as we have said every single time we have communicated
with you, given that Plaintiff is alleging that a the breach of a contract occurred beginning on
November 1, 2010, the time and scope of the request are appropriately tailored. Mr. Kerr
communicated in his September 17th email that Plaintiff "is unaware of the specific model or the
devices he has used over the years." We find it extremely hard to believe that Plaintiff cannot
remember a single electronic storage device he has used since November 1, 2010, and it defies
logic that he is unable to identify his current electronic storage devices or the date on or about
which he began using them. In addition, if Plaintiff no longer has an electronic storage device that
contains potentially discoverable information, then the issue of spoliation may need to be
addressed. Pleaser produce the requested information.

Interrogatory No. 19:  We asked Plaintiff to state whether he has ever been convicted of a
crime, and if so, to provide specific information regarding each conviction. You objected on the

Caryn M. Groedel, Esq.
October 1, 2021
Page 43

basis that the information sought is "confidential, nor (sic) relevant, and not proportional to the needs of this case, and is intended to harass, embarrass, and annoy Plaintiff" and provided the following substantive response: "Plaintiff states that he has not been convicted of any crime involving dishonesty within the past 10 years." Your objections are not well-founded for the reasons set forth in our response to your answer to Interrogatory No. 13 regarding confidentiality. With respect to relevance and proportionality, Plaintiff's criminal background could be relevant and admissible, even if the Rules of Evidence preclude the admission of some criminal convictions. Information pertaining to Plaintiff's criminal history, if any, is discoverable information. Please produce the requested information.

Interrogatory No. 20: We asked Plaintiff to "[i]dentify all claims, charges, lawsuits, and grievances that Plaintiff has filed; a business owned, operated, controlled, and/or invested in by Plaintiff has filed; to which Plaintiff has been a party; or to which a business owned, operated, controlled, and/or invested in by Plaintiff has been a party (including, but not limited to, bankruptcy claims, workers' compensation claims, unemployment compensation claims, discrimination and retaliation claims, personal injury claims, claims for government benefits, garnishment actions, collection actions, and divorce proceedings)" and to provide specific information regarding each identified claim, charge, lawsuit, and grievance. You objected on the basis that the request is "overly broad in time and scope, seeks information that is not relevant or proportional to the needs of the case, is a fishing expedition, and is intended to harass, embarrass, and annoy Plaintiff." Your objections are not well-founded. Claims, charges, lawsuits, and grievances, including, but not limited to bankruptcy claims, workers' compensation claims, unemployment compensation claims, discrimination and retaliation claims, personal injury claims, claims for government benefits, garnishment actions, collection actions, and divorce proceedings may be relevant. For example, if Plaintiff filed for bankruptcy and failed to list this Lawsuit as an asset, then the bankruptcy trustee may potentially be involved in this matter, even the bankruptcy has been discharged. To the extent you have an issue with the time period, we are willing to limit the scope to those claims, charges, lawsuits, and grievances initiated or pending between November 1, 2010 to the present. With that limitation, please fully respond to this request.

Interrogatory No. 21: We asked Plaintiff to "[i]dentify every proceeding in which Plaintiff has ever provided sworn testimony, including the name, number, date, and location of each such proceeding, and a description of the testimony provided." You objected on the basis that this request is "overly broad in time and scope, seeks information that is not relevant or proportional to the needs of the case, is a fishing expedition, and is intended to harass, embarrass, and annoy Plaintiff." Your objections are not well-founded. That being said, we are willing to limit this request to testimony given since November 1, 2010. With that limitation, please fully respond to this request.

Caryn M. Groedel, Esq.
October 1, 2021
Page 44


**Requests for Production of Documents**:

Request for Production No. 4: We asked Plaintiff to produce documents and electronically stored information described in his initial disclosures. In response, you direct us to "[s]ee P1 – P117 attached hereto" in Plaintiff's Amended Responses. None of "Plaintiff's financial records" have been produced, which were listed as documents "within Plaintiff's possession and/or control" and "which he may use to support his claims and/or rebut Defendants' defenses and counterclaim in this case" in Plaintiff's initial disclosures. Please produce the requested documents or identify the documents that correspond to "Plaintiff's financial records" described in Plaintiff's initial disclosures.

Request for Production No. 21: We asked Plaintiff to "produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on Plaintiff's allegations that 'Plaintiff reported directly to Kirby's then-president of North American Field Sales, Bud Miley, and worked under Miley's supervision without incident' as alleged in Paragraph 19 of the Complaint." You objected to this request on the basis that "[i]t is not possible to prove something that did not occur." Your objection is not well-founded, and does not make sense. What exactly "did not occur"? Is Plaintiff's Complaint and its amendments inaccurate where they state, "Plaintiff reported directly to Kirby's then-president of North American Field Sales, Bud Miley, and worked under Miley's supervision"? Please advise whether this is a false statement or provide responsive documents and electronically stored information that "support, refer to, or otherwise shed light on" this allegation.

Request for Production No. 24: We asked Plaintiff to "produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on Plaintiff's allegations that "[u]pon information and belief, Reitmeier did not harass any non-Middle Eastern Divisional Supervisors, with excessive early morning telephone calls, demands to know their whereabouts, and/or rude, demanding, and harassing text messages" as alleged in Paragraph 22 of the Complaint." You objected to this request on the basis that "Plaintiff cannot prove with documents something that did not occur." Your objection is not well-founded, and does not make sense. For example, if Plaintiff has documents about other Divisional Supervisors regarding their national origin or documents pertaining to telephone calls between Reitmeier and other Divisional Supervisors – those are responsive to this request and must be produced. Please provide responsive documents and electronically stored information.

Request for Production No. 32: We asked Plaintiff to "produce any and all documents and electronically stored information that support, refer to, or otherwise shed light on Plaintiff's allegations that 'Upon information and belief, Reitmeier did not subject non-Middle Eastern Divisional Supervisors or Distributors to such incessant calls, text messages, and/or interrogatories regarding Kirby distributors' and supervisors' involvement in the CBD industry' as alleged in Paragraph 30 of the Complaint." You objected on the basis that "Plaintiff cannot provide

Caryn M. Groedel, Esq.
October 1, 2021
Page 45

documents to establish something that did not occur." Your objection is not well-founded, and does not make sense. For example, if Plaintiff has communications with other Divisional Supervisors that include admissions that Reitmeier did not call, text, or otherwise communicate with them about the CBD industry – those are responsive to this request and must be produced. Please provide responsive documents and electronically stored information.

Request for Production No. 46: We asked Plaintiff to produce documents that "disclose all actual or deferred income earned by Plaintiff from any source or any other compensation or remuneration for services of any kind received by or accruing to Plaintiff from November 1, 2010 to the present." You objected on the basis that the request is overly broad in time and scope, seeks confidential information that is not relevant or proportional to the needs of the case, and not discoverable under the collateral source rule. Your objections are not well-founded, and we disagree with what you consider to be the relevant responsive documents. Also, the documents produced are impermissibly redacted as the parties' protective order allows for all the protection Plaintiff needs to ensure his "confidential" information is not publicly shared. Please produce unredacted copies of Plaintiff's W-2 forms (P111 and P112). Further, your objections on the basis of confidentiality, relevance, and the collateral source rule cannot stand given that the parties are subject to a protective order and income received by Plaintiff during the course of his Divisional Supervisor Agreement and following its termination is not confidential and is relevant in light of Plaintiff's claims asserted in this matter (e.g., that Plaintiff was an employee of Defendants) and Kirby's Counterclaim against Plaintiff for breach of contract. In addition, Plaintiff's discovery related to Plaintiff's mitigation of damages is relevant and discoverable. To the extent Plaintiff does not provide his "financial records" identified in his initial disclosures in response to Request for Production No. 4 and such information is responsive to this request, please produce it.

Request for Production No. 47: We asked Plaintiff to produce documents that "disclose all actual or deferred income earned by Plaintiff, including but not limited to any actual or deferred income from any business Plaintiff owned, operated, controlled, invested in, incorporated, served as a board member and/or officer of, or has had any direct or indirect involvement from any source, or any other compensation or remuneration for services of any kind received by or accruing to Plaintiff as related to any business Plaintiff owned, operated, controlled, invested in, incorporated, served as a board member and/or officer of, or has had any direct or indirect involvement from November 1, 2010, to the present." You objected on the same basis as Request for Production No. 46. For all of the reasons stated immediately above, your objections are not well-founded. To the extent Plaintiff does not provide his "financial records" identified in his initial disclosures in response to Request for Production No. 4 and such information is responsive to this request, please produce it.

Request for Production No. 48: We asked Plaintiff "to produce any and all documents related to any and all income from any employer, self-employment, business venture, investment income, gifts, or any income supplement of any form since November 1, 2010." You objected on

Caryn M. Groedel, Esq.
October 1, 2021
Page 46


the same basis as Requests for Production Nos. 46 and 47. For all of the reasons stated immediately above, your objections are not well-founded. To the extent Plaintiff does not provide his "financial records" identified in his initial disclosures in response to Request for Production No. 4 and such information is responsive to this request, please produce it.

Request for Production No. 50: We asked Plaintiff to "produce any and all documents and electronically stored information reflecting any employment benefits Plaintiff received from any employer since November 1, 2010 (including, but not limited to, 401(k) plans, health care insurance, retirement plans, stock purchase plans, employee discounts, bonuses, etc.)." You objected on the basis that the request is overly broad, not relevant, not proportional to the needs of the case, and not discoverable "due to the collateral source rule." Your objections are not well-founded. Your objections on the basis of relevance, and the collateral source rule cannot stand being given that the discovery related to Plaintiff's mitigation of damages is relevant and discoverable. Please produce the requested information.

Request for Production No. 51: We asked Plaintiff to "produce any and all documents and electronically stored information that refer or relate to the Divisional Supervisor Agreement attached to the Complaint." In response, you state: "Plaintiff does not understand what this RFP is requesting." Given that there is no objection to this request, and "documents" and "electronically stored information" are defined for Plaintiff, we ask that Plaintiff provide documents that refer specifically or implicitly to his Divisional Supervisor Agreement or relate to it. For example, Plaintiff may have emails, letters, and/or other communications that mention, discuss, or reference the Divisional Supervisor Agreement. By way of another example, bank records or documents about or regarding payments made pursuant to the Divisional Supervisor Agreement would be relevant. Yet another example of "documents" and "electronically stored information" is text messages between Plaintiff and other Divisional Supervisors about his Divisional Supervisor Agreement or about the Charges of Discrimination he filed with the EEOC and/or this Lawsuit which are based on Plaintiff's claims involving the Divisional Supervisor Agreement. These are just examples. Please supplement your response.

Request for Production No. 52: We asked Plaintiff to "produce any and all documents and electronically stored information that refer or relate to any agreements, other than the Divisional Supervisor Agreement attached to the Complaint, between Plaintiff and Kirby." In response, you state: "Plaintiff does not understand what this RFP is requesting." Given that there is no objection to this request, and "documents" and "electronically stored information" are defined for Plaintiff, we ask that Plaintiff provide documents that refer specifically or implicitly to his Divisional Supervisor Agreement or relate to it. For example, Plaintiff may have emails, letters, and/or other communications that mention, discuss, or reference the Divisional Supervisor Agreement. By way of another example, bank records or documents about or regarding payments made pursuant to the Divisional Supervisor Agreement would be relevant. Yet another example of "documents" and "electronically stored information" is text messages between Plaintiff and other Divisional

Caryn M. Groedel, Esq.
October 1, 2021
Page 47


Supervisors about his Divisional Supervisor Agreement or about the Charges of Discrimination he filed with the EEOC and/or this Lawsuit which are based on Plaintiff's claims involving the Divisional Supervisor Agreement. These are just examples. Please supplement your response.

Request for Production No. 80 (mis-numbered as "81" in Plaintiff's Amended Responses): We asked Plaintiff to "produce copies of all of the pleadings and/or other documents filed in any other prior or currently pending lawsuit, grievance, charge, complaint, workers' compensation claim, unemployment compensation claim, bankruptcy, or any other claim for redress identified in response to Interrogatory No. 20." You objected on the basis that the request is "is overly broad in scope (none) and time frame (none); seeks documents that are confidential and not relevant or proportional to the needs of the case, and not discoverable. Specifically, any other lawsuits in which Plaintiff may have been involved is precluded by Evid.R. 404(b), and discovery of unemployment compensation claims are precluded by the collateral source rule." Your objections are not well-founded. First, the request is properly limited in scope – to those matters Plaintiff was required to disclose in response to Interrogatory No. 20. Second, unless Plaintiff is contending documents were filed under seal or sealed at some later date, none of the documents requested can be considered "confidential". To the extent Plaintiff has a good faith basis for his belief that a document is confidential, the parties have a protective order which may be used to designate those documents as such. Third, Plaintiff's legal filings are relevant and discoverable even if they ultimately are not admissible at trial, and they are not precluded from discovery under the collateral source rule or Evid.R. 404(b). Please provide responsive documents and electronically stored information.

Request for Production No. 96 (mis-numbered as "97" in Plaintiff's Amended Responses): We asked Plaintiff to "produce any and all documents and electronically stored information concerning any attempt by Plaintiff to obtain employment with any employer since November 1, 2010." You objected on the basis that the request is "overly broad in time as it seeks documents dating back to 2010." Your objections are not well-founded. Indeed, the scope of the request is proper and proportional given that there is a dispute regarding whether Plaintiff was an employee of Defendants and Kirby's Counterclaim for breach of contract against Plaintiff. Thus, if Plaintiff attempted to obtain employment at any time during the term of his Divisional Supervisor Agreement, documents pertaining to those attempts are relevant and discoverable and must be produced. We have yet to receive documents pertaining to Plaintiff's mitigation efforts despite Mr. Kerr's September 17th email indicating that such records are forthcoming. Please provide responsive documents and electronically stored information.

Request for Production No. 97 (mis-numbered as "98" in Plaintiff's Amended Responses): We asked Plaintiff to "produce any and all documents and electronically stored information concerning any attempt by Plaintiff to obtain work as a consultant since November 1, 2010." You objected on the basis that the request is "overly broad as it seeks documents dating back to 2010." Your objections are not well-founded. Indeed, the scope of the request is proper and proportional

Caryn M. Groedel, Esq.
October 1, 2021
Page 48

given that there is a dispute regarding whether Plaintiff was an employee or independent contractor of Defendants and Kirby's Counterclaim for breach of contract against Plaintiff. Thus, if Plaintiff attempted to obtain work as a consultant at any time during the term of his Divisional Supervisor Agreement, documents pertaining to those attempts are relevant and discoverable and must be produced. We have yet to receive documents pertaining to Plaintiff's mitigation efforts despite Mr. Kerr's September 17th email indicating that such records are forthcoming. Please provide responsive documents and electronically stored information.

<u>Request for Production No. 98 (mis-numbered as "99" in Plaintiff's Amended Responses)</u>: We asked Plaintiff to "produce any and all documents and electronically stored information concerning any attempt by Plaintiff to obtain work as an independent contractor since November 1, 2010." You objected on the basis that the request is "overly broad as it seeks documents dating back to 2010." Your objections are not well-founded. Indeed, the scope of the request is proper and proportional given that there is a dispute regarding whether Plaintiff was an employee or independent contractor of Defendants and Kirby's Counterclaim for breach of contract against Plaintiff. Thus, if Plaintiff attempted to obtain work as an independent contractor at any time during the term of his Divisional Supervisor Agreement, documents pertaining to those attempts are relevant and discoverable and must be produced. We have yet to receive documents pertaining to Plaintiff's mitigation efforts despite Mr. Kerr's September 17th email indicating that such records are forthcoming. Please provide responsive documents and electronically stored information.

<u>Request for Production No. 99 (mis-numbered as "100" in Plaintiff's Amended Responses)</u>: We asked Plaintiff to "produce any and all documents and electronically stored information concerning any attempt by Plaintiff to purchase a business since November 1, 2010." You objected on the basis that the request is "overly broad in scope and time frame, and seeks documents that are not relevant or proportional to the needs of this case." Your objections are not well-founded. Indeed, the scope of the request is relevant and proportional given that there is a dispute regarding whether Plaintiff was an employee or independent contractor of Defendants and Kirby has made a Counterclaim for breach of contract against Plaintiff. In addition, any attempt by Plaintiff to purchase a business following the termination of his Divisional Supervisor Agreement is relevant to his obligation to mitigate his damages. Thus, if Plaintiff attempted to purchase a business at any time during the term of his Divisional Supervisor Agreement, documents pertaining to those attempts are relevant and discoverable and must be produced. We have yet to receive documents pertaining to Plaintiff's mitigation efforts despite Mr. Kerr's September 17th email indicating that such records are forthcoming. Please provide responsive documents and electronically stored information.

<u>Request for Production No. 100 (mis-numbered as "101" in Plaintiff's Amended Responses)</u>: We asked Plaintiff to "produce any and all documents and electronically stored information concerning any attempt by Plaintiff to invest in a business since November 1, 2010.

Caryn M. Groedel, Esq.
October 1, 2021
Page 49

You objected on the basis that the request is "overly broad in scope and time frame, and seeks documents that are not relevant or proportional to the needs of this case." Your objections are not well-founded.  Indeed, the scope of the request is relevant and proportional given that there is a dispute regarding whether Plaintiff was an employee or independent contractor of Defendants and Kirby has made a Counterclaim for breach of contract against Plaintiff. In addition, any attempt by Plaintiff to invest in a business following the termination of his Divisional Supervisor Agreement is relevant to his obligation to mitigate his damages. Thus, if Plaintiff attempted to invest in a business at any time during the term of his Divisional Supervisor Agreement, documents pertaining to those attempts are relevant and discoverable and must be produced. We have yet to receive documents pertaining to Plaintiff's mitigation efforts despite Mr. Kerr's September 17th email indicating that such records are forthcoming. Please provide responsive documents and electronically stored information.

Request for Production No. 101 (mis-numbered as "102" in Plaintiff's Amended Responses):  We asked Plaintiff to "produce any and all documents and electronically stored information concerning any attempt by Plaintiff to incorporate a business since November 1, 2010." You objected on the basis that the request is "overly broad in scope and time frame, and seeks documents that are not relevant or proportional to the needs of this case." Your objections are not well-founded. Indeed, the scope of the request is relevant and proportional given that there is a dispute regarding whether Plaintiff was an employee or independent contractor of Defendants and Kirby has made a Counterclaim for breach of contract against Plaintiff. In addition, any attempt by Plaintiff to incorporate a business following the termination of his Divisional Supervisor Agreement is relevant to his obligation to mitigate his damages. Thus, if Plaintiff attempted to incorporate a business at any time during the term of his Divisional Supervisor Agreement, documents pertaining to those attempts are relevant and discoverable and must be produced. We have yet to receive documents pertaining to Plaintiff's mitigation efforts despite Mr. Kerr's September 17th email indicating that such records are forthcoming. Please provide responsive documents and electronically stored information.

Request for Production No. 108 (mis-numbered as "109" in Plaintiff's Amended Responses): We asked Plaintiff to "Please produce any and all documents and electronically stored information which pertain to the opening and/or operation of the CBD Store." You objected on the basis that the request is "overly broad in scope and time frame, and seeks documents that are neither relevant nor proportional to the needs of this case." Your objections are not well-founded. For avoidance of doubt, we define "CBD Store" in Request for Production No. 107. Plaintiff has made information pertaining to the CBD Store relevant. This request is narrowly tailored to "documents" and "electronically stored information" – both defined for Plaintiff – related to the opening and/or operation of the CBD Store. The requested information is relevant given that Plaintiff's independent contractor status is at issue in this matter, as is Plaintiff's involvement in his daughter's CBD Store. Thus, your objection on the basis that this request is overly broad in

Caryn M. Groedel, Esq.
October 1, 2021
Page 50

scope and time is absurd. Please provide responsive documents and electronically stored information.

Request for Production No. 109 (mis-numbered as "110" in Plaintiff's Amended Responses): We asked Plaintiff to "produce any and all documents and electronically stored information which pertain to the opening and/or operation of any and all CBD stores and/or CBD businesses (other than the CBD Store) in which Plaintiff has a financial and/or ownership interest." You objected on the basis that the request is "overly broad in scope and time frame, and seeks documents that are neither relevant nor proportional to the needs of this case." Your objections are not well-founded. Indeed, Plaintiff's involvement in the CBD industry during the term of his Divisional Supervisor Agreement is relevant to the breach of contract claim and Kirby's Counterclaim; and documents pertaining to his involvement following the termination of the Divisional Supervisor Agreement are relevant to his mitigation efforts. Please provide responsive documents and electronically stored information.

We look forward to your complete response to Defendant's discovery requests and this letter.

Sincerely,


*/s/ Morena L. Carter*

Morena L. Carter
Associate

MLC/tsb
cc:     Ryan J. Morley, Esq.

4840-4282-1115.1 / 113066-1004

31340 Solon Road
Suite 27
Cleveland, OH  44139
T:  (440) 544-1122
F:  (440) 996-0064
E:  cgroedel@groedel-law.com





*Labor and Employment*

October 13, 2021

*by email:  mlcarter@littler.com; rmorley@littler.com*

Morena L. Carter, Esq.
Ryan J. Morley, Esq.
Littler Mendelson, P.C.
Key Tower
127 Public Sq., Ste. 1600
Cleveland, OH  44114

   Re: <u>*Ibrahim Sharqawi v. The Kirby Co., et al.,*</u> Case No. 1:20-cv-00271

Counsel:

   Please consider this yet another good faith effort to resolve, without the Court's intervention, your client's deficient discovery responses.

<u>**GENERAL DEFICIENCIES**</u>

<u>**You made unsupported "vague" and/or "ambiguous" objections in response to our Interrogatories 4, 5, 6, 8, 11, and 13, and our RFPs 2, 3, 11, and 17.**</u>

   "The party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity."  *McCoo v. Denny's Inc*., 192 F.R.D. 675, 694 (D.Kan. Apr.18, 2000); *see also American Rock Salt Co., LLC v. Norfolk Southern Corp*., 228 F.R.D. 426, 432 (W.D.N.Y. 2005) ("generalized objections that discovery requests are vague, overly broad, or unduly burdensome are not acceptable"); *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1030 (E.D. Cal. 2010) ("The party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity. . ."); *Milinazzo v. State Farm Ins. Co.,* 247 F.R.D. 691, 695 (S.D.Fla. 2007) ("party properly objecting to an objection on the grounds of vagueness must explain the particular ways in which a request is vague").

   Moreover, when responding to discovery requests, parties are expected to exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in the discovery requests.  *McCoo v. Denny's Inc*., 192 F.R.D. 675, 694 (D.Kan. Apr.18, 2000) ("A party

Morena L. Carter, Esq.
Ryan J. Morley, Esq.
October 13, 2021
Page 2

responding to discovery requests 'should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in interrogatories.'"), quoting *Pulsecard, Inc. v. Discover Card Services, Inc.,* 168 F.R.D. 295, 310 (D.Kan.1996); *see also Lahart v. BNSF Railway Co.*, 4:15-cv-464-JAJ-HCA, 2016 WL 10586171, *3 (S.D. Iowa Nov. 10, 2016); *Roesberg v. Johns-Manville Corp.,* 85 F.R.D. 292, 296-97 (E.D. Pa. 1980) ("Since plaintiffs have not assigned a particular meaning to these phrases, the ordinary, everyday usage and meaning must have been intended").

### You asserted unsupported "attorney work product doctrine" and/or "attorney-client privilege" objections in response to our Interrogatories 1, 2, 6, 8, 11, 15, 19, and 21, and our RFPs 2, 3, 7, 8, 9, 10, 11, 13, 14, 15, and 16.

A party resisting discovery based on a privilege has the burden of establishing that the privilege applies.  *Deya v. Hiawatha Hospital Ass'n*, D.Kan. No. 10–2563–JAR/GLR, 2011 WL 1559425, *2-3 (Apr. 25, 2011).  The attorney-client privilege only applies when a client is seeking legal advice, and the work-product privilege only applies to documents prepared in anticipation of litigation.  The *identity* of witnesses and their contact information, and other facts pertaining to individuals (i.e., their dates of birth) are *not* protected.  *See State v. Hoop*, 134 Ohio App. 3d 627, 640, 731 N.E.2d 1177 (12th Dist.1999); *Lauritzen v. Atlantic Greyhound Corp.*, 8 F.R.D. 237, 238 (E.D.Tenn.1948), *aff'd*, 182 F.2d 540 (6th Cir.1950); Staff Notes to Civ.R. 26; *Gotch v. Ensco Offshore Co*. (W.D. La. 1996), 168 F.R.D. 567, 570 ("the qualified work product immunity contained in Rule 26(b)(3) applies only to documents and tangible things – not to facts"); *Mead Corp. v. Riverwood Natural Resources Corp.*, 145 F.R.D 512, 518 (D.Minn.1992).  Please identify all documents and information you are withholding based on privilege or otherwise, or fully respond to each of these discovery requests.

### You made unsupported "overly broad" objections in response to our Interrogatories 4, 6, 13, and 15, and our RFPs 2, 3, 7, 8, 9, 10, 11, 15, 16 and 17.

Many of your objections are vague, claiming a discovery request is "overly broad" without stating the basis for your contention.  These non-specific objections are improper.  *See, e.g., Kafele v. Javitch, Block*, S.D.Ohio No. Civ.A. 2:03-CV-638, 2005 WL 5095186, *2 (April 20, 2005) ("The mere statement by a party that an interrogatory or request for production is overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection."); *In re Heparin Products Liab. Litig*., 273 F.R.D. 399, 411 (N.D.Ohio 2011) ("At the very least, where a party claims burdensomeness, it must explain why that is so.  It should also propose alternatives, if such might be possible, that could enable some degree of production.").

In fact, "[t]he raising of insubstantial objections has been held to be a refusal to answer, justifying imposition of costs and expenses. . ."  *See, e.g., Kennedy v. General Motors*, 6th Dist. No. E-84-45, 1985 WL 4664, *3 (Dec. 20, 1985).

Morena L. Carter, Esq.
Ryan J. Morley, Esq.
October 13, 2021
Page 3

### <u>You failed to fully "identify" the individuals named in your Answers to Interrogatories 1, 2, 4, 5, 8, 11, 13, 15, and 21.</u>

You failed to fully "identify", in accordance with the definition of "identify" on p. 2 of our discovery requests, the individuals you've named in your responses.  Please see p. 2 of our discovery requests, which states:  "When asked to "<u>identify</u>", or "<u>for the identity of</u>", any natural person, shall set forth such person's:  (i) full name; (ii) present or last known home and work address; (iii) home and work phone numbers; (iv) present and last known job title; and **(v** .  . When asked to "<u>identify</u>", or "<u>for the identity</u> of", any entity other than a natural person, shall set forth their:  (i) full name or title; (ii) address, telephone number with area code prefix; (iii) date and jurisdiction under the laws of which it was organized or incorporated or, in the case of any entity other than a corporation, state the type of organization, the names of its members, and the date and place of its organization; and (iv) the identity of all persons who acted or who authorized another to act on its behalf in connection with the matters referred to.

### <u>SPECIFIC DEFICIENCIES IN KIRBY'S ANSWERS TO PLAINTIFF'S INTERROGATORIES</u>

**Interrogatory no. 1 states:**  Identify all individuals who provided information for Defendant's Answers to **each** of these Interrogatories, Requests for Production of Documents, and Requests for Admission.  If more than one individual supplied information, identify each individual and state the precise discovery requests for which each individual provided information.

**You answered by stating:**  Objection.  Interrogatory No. 1 seeks information that may be protected from disclosure by the attorney-client privilege and/or work product doctrine.  The allegations in Plaintiff's Complaint have been investigated by or at the direction of counsel.  Therefore, information relating to those investigations is protected by the attorney-client privilege and/or work-product doctrine.  Without waiving these objections, Defendant states its answers to Plaintiff's discovery requests were prepared by undersigned counsel in conjunction with Defendant's compliance department.  The identities of the individuals interviewed by undersigned counsel prior to preparing these answers are protected by the attorney-client privilege and work-product doctrine.  For the identity of all individuals who may have information relevant to Plaintiff's claims, see Defendant's answer to Interrogatory No. 2.  Please also note that any individual who has information relevant to Plaintiff's claims can be contacted through undersigned counsel.

Morena L. Carter, Esq.
Ryan J. Morley, Esq.
October 13, 2021
Page 4

**Comment:**  First, you failed to identify the named individuals pursuant to the definition of "identify" in the definition section of our Interrogatories.  We are entitled to everyone's contact information -- even those individuals who we are not permitted to contact *ex parte.*

Second, as to your frivolous objection that this Interrogatory "seeks information that may be protected from disclosure by the attorney-client and/or work-product privileges", the identity of individuals is never privileged.  *See*, *e.g.*, *In re Theragenics Corp Securities Litigation,* 205 F.R.D 631 (N.D. Ga 2002) (names and address of individuals interviewed by counsel are not work product); and *Kim v. Columbia Univ.,* 2009 LEXIS 16243 (S.D.N.Y Mar. 2, 2009) (sanctioning defense counsel for refusing to provide contact information).

Third, your statement that "this interrogatory requests information that **may** be protected from disclosure by the attorney-client privilege and/or work-product doctrine" (emphasis added) is absurd.  Either the information requested is protected or it is not.  As attorneys for the Defendants, you are obligated to know the answer to that question -- especially since you have been representing them in this case for more than a year now.  Moreover, you are obligated to provide a full, verified answer, unless you are SURE the information is privileged.  And if it IS privileged, you are required to produce a sufficient privilege log for us to make that assessment.

I ask that you stop playing discovery games in this case, and in every other Kirby/Fetzer case in which you represent the Defendants, and produce the discovery requested and worry about admissibility later.  The harder you fight against producing information and documents, the more apparent it becomes that your clients have a lot to hide.

**Interrogatory no. 2 states:**  Identify each and every individual known to Defendant, its agents, independent contractors, employees, and/or attorneys who has knowledge or information pertaining to the facts and/or allegations set forth in the Complaint and/or Answer filed in this case, and for each individual, describe his/her knowledge, and state whether it is personal knowledge.

**Defendant's answered:**  Objection. Interrogatory No. 2 requests information that may be protected from disclosure by the attorney-client privilege and/or work-product doctrine. Without waiving these objections, at this time, Defendant believes the following individuals likely have knowledge regarding facts concerning Plaintiff's claims:
- Plaintiff
- Halle Sminchak
- Kevin Reitmeier
- David Lamb
- Glenn Novak

Morena L. Carter, Esq.
Ryan J. Morley, Esq.
October 13, 2021
Page 5

- Mike Nichols
- Adrienne Cvetkovic

**Comment:**  First, you failed to fully identify these individuals pursuant to the definition of "identify" in the definition section of our Interrogatories.

Second, an individual's identity is never privileged.  See cases cited above.   Unless responsive information pertains to confidential communications between Defendant and defense counsel or another professional legal advisory for the purposes of procuring legal advice, your attorney-client privilege objection is frivolous and inapplicable.

Third, you failed to describe the knowledge you believe each individual has, as specifically requested in this Interrogatory.

Fourth, your statement that "this interrogatory requests information that **may** be protected from disclosure by the attorney-client privilege and/or work-product doctrine" (emphasis added) is absurd.  Either the information requested is protected or it is not.  As attorneys for the Defendants, you are obligated to know the answer to that question -- especially since you have been representing them in this case for more than a year now.  Moreover, you are obligated to provide a full, verified answer, unless you are SURE the information is privileged.  And if it IS privileged, you are required to produce a sufficient privilege log for us to make that assessment.

Fifth, your qualification that "at this time Defendant believes the following individuals likely have knowledge regarding facts concerning Plaintiff's claims…" is insufficient.  You have had these Interrogatories for nearly 5 months now.  We are thus entitled to an unqualified answer.

Sixth, in response to your attorney-client privilege and/or work product objections, the privilege log you provided us on or around September 3, 2021, does not include an entry for this Interrogatory.  Please withdraw your objection, or provide us with an **accurate** privilege log.

**Interrogatory no. 4 states:**  Identify and provide a specific description of all electronic databases and/or information-management systems that Defendant maintained at any and all times between January 1, 2012 and October 31, 2020, which hold, maintain, and/or store employee and/or independent contractor discipline-related documents, performance reviews, emails, and/or communications by and/or between supervisors, managers, H.R. Department employees, and/or internal investigators who investigate employees and/or independent contractors for allegations of wrongdoing.

Morena L. Carter, Esq.
Ryan J. Morley, Esq.
October 13, 2021
Page 6

**You  answered:**  Objection.  Interrogatory No. 4 is overbroad in scope and time, vague and ambiguous, and seeks information that is not relevant to the claims and defenses in this lawsuit.  In particular, it is not clear what is meant by "electronic databases" and "information-management systems."  Without waiving these objections, Defendant states Kirby maintained the following systems for storing information pertaining to and communications with and regarding Kirby's independent contractors (such as Plaintiff):

- Email (Outlook)
- AS/400

**Comment:**  Your objections are frivolous.  First, you are required to use the normal every day meaning associate with words such as "electronic databases" and "information management systems".  Second, you failed to provide a specific description of the databases identified in your Answer.

**Interrogatory no. 5 states:**  Identify the individual(s) most knowledgeable about the databases and/or information management systems identified in Defendant's Answer to the preceding Interrogatory.

**You answered:**  Objection.  Interrogatory No. 6 is overbroad in scope and time, vague and ambiguous, and seeks information that is not relevant to the claims and defenses in this lawsuit.  In particular, this interrogatory calls for Defendant to speculate as to who would have "the most" knowledge of Plaintiff's about the "databases" and/or "information management systems" discussed in Interrogatory No. 5.  Without waiving these objections, the following individual has knowledge regarding Kirby's Outlook and AS/400 system: Gary Turton, Manager of MIS, The Kirby Company.

**Comment:**  Your objections are frivolous.  First, this Interrogatory is extremely specific and narrow.    Second, you failed to fully identify the individuals you named.  We are entitled to their contact information, even if we cannot contact them *ex parte.*

**Interrogatory no. 6 states:**  If, in order to respond to Plaintiff's discovery requests, Defendant searched, or caused to be searched, any physical and/or electronic files, and/or databases, describe the parameters set for the searches, and describe -- by title and location -- the files searched. If Defendant did not conduct, or cause to be conducted, a thorough review of its books, records, and electronic databases, and/or did not seek information from any individuals in order to respond to these discovery requests, state why not.

**You answered:**  Objection.  Interrogatory No. 6 is vague and ambiguous and seeks information that is not relevant to the claims and defenses in this lawsuit.  In particular, it is not clear what is meant by "databases," "files searched," "books," "records," or "electronic databases."  In addition, this interrogatory requests information that may be protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Morena L. Carter, Esq.
Ryan J. Morley, Esq.
October 13, 2021
Page 7


**Comment:**  Your objections are ridiculous.  First, when responding to discovery requests, parties are expected to exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in the discovery requests.  *McCoo v. Denny's Inc*., 192 F.R.D. 675, 694 (D.Kan. Apr.18, 2000) ("A party responding to discovery requests 'should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in interrogatories.'"), quoting *Pulsecard, Inc. v. Discover Card Services, Inc.,* 168 F.R.D. 295, 310 (D.Kan.1996); also, *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567 (N.D. Tex. 2018).

Second, as to your objection that this interrogatory "seeks information that may be protected from disclosure by the attorney-client and/or work-product privileges", the identity of individuals are never privileged.

Third, your assertion that "this interrogatory requests information that **may** be protected from disclosure by the attorney-client privilege and/or work-product doctrine" (emphasis added) is absurd.  Either the information requested is protected or it is not.  As attorneys for the Defendants, you are obligated to know the answer to that question -- especially since you have been representing them in this case for more than a year now.  Moreover, you are obligated to provide a full, verified answer, unless you are SURE the information is privileged.  And if it IS privileged, you are required to produce a sufficient privilege log for us to make that assessment.


**Interrogatory no. 8 states:**  Identify all of Defendant's employees and/or independent contractors who reported to, and/or worked under the supervision of, Kevin Reitmeier at any and all times between December 1, 2017 and October 30, 2019, including in your Answer: their hire or contract date, all positions they held, the dates they held each position, and their current employment status (e.g., resigned, terminated, transferred, etc.).


**You answered:**  Objection. Interrogatory No. 8 is over broad in scope and time, vague and ambiguous, and seeks information that is not relevant to the claims and defenses in this lawsuit.  Without waiving these objections, Defendant states no independent contractors "reported to" or "worked under the supervision of" Kevin Reitmeier.


**Comment:** Your objections are frivolous.  First, this interrogatory seeks information for a period of less than 2 years.  Secondly, it is narrowly tailored to seek information pertaining to Plaintiff's comparators.

Second, you failed to fully answer this Interrogatory, which states, "[i]dentify all of Defendant's **employees and/or independent contractors**…" (emphasis added).  You failed to respond with respect to "employees".  As you know, whether Plaintiff was an employee or an independent contractor is an issue in this case.  Therefore, information concerning employees who worked under Kevin Reitmeier is relevant and discoverable.

Morena L. Carter, Esq.
Ryan J. Morley, Esq.
October 13, 2021
Page 8

**Interrogatory no. 11 states:**  Identify the individual who first raised the subject of terminating Plaintiff's contract with Defendant, state the date it was first raised, identify all individuals involved in the decision to terminate Plaintiff's contract and the ultimate decision maker, and state the specific reason(s) for the termination.

**You answered:**  Objection. Interrogatory No. 11 is vague and ambiguous as to what is meant by "contract" and requests information that may be protected from disclosure by the attorney-client privilege and/or work-product doctrine.  If Plaintiff wishes to clarify what is meant by the term "contract", Defendant will re-visit its response to this interrogatory.

**Comment:**  Your objections are frivolous.  First, you don't know what "contract" means? That's vague and ambiguous?  Are you kidding?

To assist you in your comprehension of the word "contract", simply replace the word "contract" with the phrase "Divisional Supervisor Agreement", and then answer the Interrogatory.

Second, your bad faith objection is illuminated by the fact that you claim to not know what "contract" means in this Interrogatory or the next one, but you clearly understand what it means in response to Interrogatory no. 14.

**Interrogatory no. 13 states:**  Identify each Divisional Supervisor whom Defendant terminated for the same or similar reason(s) it terminated Plaintiff, identify all individuals involved in each termination decision as well as the ultimate decision maker, and state the specific reason(s) for each such termination, and the date thereof.

**You answered:**  Objection.  Interrogatory No. 13 is overbroad in time and scope, vague and ambiguous, and seeks information that is not relevant to the claims and defenses in this lawsuit.  In particular, it is not clear what is meant by "terminated" or "termination".  If Plaintiff wishes to clarify what is meant by the terms "terminated" and "termination", Defendant will re-visit its response to this interrogatory.

**Comment:**  First, your litany of kitchen sink objections is unprofessional and unethical. Second, this interrogatory is not "overbroad in time and scope", nor is it "vague and ambiguous".  In fact, it seeks very specific information for a specific group of people.  Please stop playing games.

Second, to assist you in your comprehension of the words "terminate", "terminated", and "termination", here are some synonyms of the word "terminate" that might help you:

- close out

Morena L. Carter, Esq.
Ryan J. Morley, Esq.
October 13, 2021
Page 9

- conclude
- end
- cease
- wind up
- finish
- cancel
- annul
- avoid
- rescind
- denounce
- void

It is rather ironic that you claim to not know what "terminate" means in this Interrogatory, but had no trouble understanding the meaning of the word in your answer to the next Interrogatory.

Stop playing games and answer the Interrogatory.

**Interrogatory no. 14 states:** Describe in detail each occasion on which Kirby/Scott Fetzer believes Plaintiff breached any provision of the DSA, and state the dates on which Kirby/Scott Fetzer believes the breach occurred, and the manner in which Kirby/Scott Fetzer believes the breaches occurred, and the manners in which Kirby/Scott Fetzer believes Plaintiff breached the DSA.

**You answered:**  Objection. Interrogatory No. 14 calls for a narrative response best suited for deposition.  Without waiving these objections, Defendant states the basis for the termination of Plaintiff's Divisional Supervisor Agreement was set forth in a written communication provided to Plaintiff, which will be produced.

**Comment:**  First, your objection based on "narrative" is not well-founded.  "The fact that a [party] has a choice between using interrogatories and depositions does not bar the use of interrogatories." *Babcock Swine, Inc. v. Shelbco, Inc.*, 126 F.R.D. 43, 45 (S.D. Ohio 1989). Second, none of the documents you produced are responsive to this Interrogatory.

**Interrogatory no. 15 states:**  Identify all individuals whom Defendants filed a complaint (see definition of "complaint" in paragraph 10 of the Definitions section, *supra*) or commenced administrative or court action against, alleging breach of contract, between January 1, 2012 and October 31, 2020, and state the administrative agency or court in which each matter was filed; the identifying charge or case number; and a brief description of the nature of the action and its outcome.

Morena L. Carter, Esq.
Ryan J. Morley, Esq.
October 13, 2021
Page 10

**You answered:** Objection. Interrogatory No. 15 is overbroad in time and scope, seeks information that is not relevant to the claims and defenses in this lawsuit, and requests information that may be protected from disclosure by the attorney-client privilege and/or work-product doctrine. Interrogatory No. 15 also seeks information that is equally available to Plaintiff from public sources.

**Comment:** First, your objection about the time frame being overbroad is hypocritical in light of your document requests, some of which seek documents as far back as 1991. Second, you are not the arbiter of relevance; the court is. Third, your assertion that the information sought by this interrogatory "may be protected from disclosure by the attorney-client privilege and/or work-product doctrine" is outrageous. You should know by now what information is protected. Either the information requested is protected or it is not. As attorneys for the Defendants, you are obligated to know the answer to that question -- especially since you have been representing them in this case for more than a year now. Moreover, you are obligated to provide a full, verified answer, unless you are SURE the information is privileged. And if it IS privileged, you are required to produce a sufficient privilege log for us to make that assessment.

**Interrogatory no. 16 states:** Describe in detail the independent economic value (if any), and or/the potential independent economic value (if any) derived from the purported breach of contract alleged in Kirby/Scott Fetzer's Counterclaim against Plaintiff.

**You answered:** Objection. Interrogatory No. 16 calls for a narrative response best suited for deposition.

**Comment:** Your objection is utterly frivolous and sanctionable. "The fact that a [party] has a choice between using interrogatories and depositions does not bar the use of interrogatories." *Babcock Swine, Inc. v. Shelbco, Inc.*, 126 F.R.D. 43, 45 (S.D. Ohio 1989). "Particularly when an opponent seeks a *party's* position on a matter, interrogatories may be better suited than a series of depositions." *Id*.

**Interrogatory no. 17 states:** Describe in detail the specific damages Kirby/Scott Fetzer claims to have suffered as a result of Plaintiff's alleged breach of contract.

**You answered:** Objection. Interrogatory No. 17 calls for a narrative response best suited for deposition.

**Comment:** First, your objection is utterly frivolous and sanctionable, and we intend to seek sanctions. Second, you asserted in your counterclaim that your clients "continue[] to suffer damages" as a result of Plaintiff's alleged breach of contract, and that their damages are

Morena L. Carter, Esq.
Ryan J. Morley, Esq.
October 13, 2021
Page 11


"not presently calculable".  You have failed to produce any documents establishing the damages they allegedly suffered.  We intend to bring this to the Court's attention as well.

**Interrogatory no. 18 states:**  Describe in detail all efforts Kirby/Scott Fetzer undertook to mitigate any damages, if any, suffered as a result of Plaintiff's purported breach of his DSA.

**You answered:**  Objection.  Interrogatory No. 18 calls for a narrative response best suited for deposition.

**Comment:**  Your objection to this Interrogatory is frivolous.  Narrative Interrogatories have long been acceptable in both state and federal court.  Pursuant to FRCP 26, you are obligated to answer our Interrogatories or seek a protective order.


**Interrogatory no. 19 states:**  Describe in detail Defendant's reason for classifying Divisional Supervisors as independent contractors.

**Defendant's Answer:**  Objection. Interrogatory No. 19 seeks information that is not relevant to the claims and defenses in this lawsuit and requests information that may be protected from disclosure by the attorney-client privilege and/or work-product doctrine. Without waiving these objections, Defendant states Kirby's Divisional Supervisors are classified as independent contractors in accordance with applicable law.

**Comment:** First, your objections are ridiculous. Whether your clients properly classified Plaintiff, a Divisional Supervisor, as an independent contractor, rather than as an employee, is a primary dispute in this lawsuit.  Therefore, your clients' reasons for classifying Divisional Supervisors as independent contractors are relevant. Second, your boilerplate assertion of "attorney-client privilege and/or work-product doctrine" is unsupported.

Third, your statement that this Interrogatory "may seek information protected from disclosure by the attorney-client privilege and/or work-product doctrine" reflects your continued bad faith discovery tactics.  By this time in the litigation you should know what information is protected.  Either the information requested is protected or it is not.  As attorneys for the Defendants, you are obligated to know the answer to that question -- especially since you have been representing them in this case for more than a year now. Moreover, you are obligated to provide a full, verified answer, unless you are SURE the information is privileged.  And if it IS privileged, you are required to produce a sufficient privilege log for us to make that assessment.

Morena L. Carter, Esq.
Ryan J. Morley, Esq.
October 13, 2021
Page 12

**Interrogatory no. 21 states:**  For all Requests for Admission to which Defendant responds/responded with anything other than an unqualified admission, state the basis for each denial or qualification, the facts supporting it, and identify each person with knowledge of the reasons(s) for Defendant's failure to provide an unqualified admission.

**Defendant's Answer:**  Objection.  Interrogatory No. 21 seeks information that is not relevant to the claims and defenses in this lawsuit, calls for a narrative response best suited for deposition, and requests information that may be protected from disclosure by the attorney-client privilege and/or work-product doctrine.

**Comment:**  First, you are not the arbiter of relevance; the Court is.  Second, the fact that an interrogatory may call for a narrative response does not relieve a party from having to answer it.  *Babcock Swine, Inc. v. Shelbco, Inc.*, 126 F.R.D. 43, 45 (S.D. Ohio 1989).  Third, you failed to support your assertion that documents responsive to this interrogatory are protected by the "attorney-client privilege and/or work-product doctrine".  Fourth, your statement that this Interrogatory "may seek information protected from disclosure by the attorney-client privilege and/or work-product doctrine" reflects your continued bad faith discovery tactics.  By this time in the litigation you should know what information is protected.  Either the information requested is protected or it is not.  As attorneys for the Defendants, you are obligated to know the answer to that question -- especially since you have been representing them in this case for more than a year now.  Moreover, you are obligated to provide a full, verified answer, unless you are SURE the information is privileged.  And if it IS privileged, you are required to produce a sufficient privilege log for us to make that assessment.

**Interrogatory no. 22 states:**  State the facts supporting each affirmative defense Defendant asserted in its Answer to Plaintiff's Complaint.

**Defendant's Answer:**  Objection.  Interrogatory No. 22 calls for a narrative response best suited for deposition.

**Comment:**  Your objection is frivolous.  First, the fact that a [party] has a choice between using interrogatories and depositions does not bar the use of interrogatories.  Second, the facts supporting affirmative defenses are not legal in nature.

**SPECIFIC DEFICIENCIES IN KIRBY'S RESPONSES TO PLAINTIFF'S RFP'S**

**Our RFP no. 2 requests:**  All W-2s, 1099s, performance reviews, disciplinary actions, promotion-related documents, transfer-related documents, attendance records, licenses, certifications, training documents, job descriptions, job duties, job applications, resumes, job offer letters from Defendant, interview notes, stock grants and awards, calendars, and all

Morena L. Carter, Esq.
Ryan J. Morley, Esq.
October 13, 2021
Page 13

documents pertaining to demotions, promotions, lateral transfers, severance agreements, termination, and unemployment compensation for Plaintiff; Kevin Reitmeier; any and all individuals who performed the duties of a Kirby Divisional Supervisor at any and all times between January 1, 2012 and October 31, 2020; and all individuals involved in the decision to terminate Plaintiff's contract.

**You responded:**  Objection. Request No. 2 is overbroad in time and scope, vague and ambiguous, seeks information that is not relevant to the claims and defenses in this lawsuit, and requests information that may be protected from disclosure by the attorney-client privilege and/or work-product doctrine.  In particular, the documents requested pertaining to Kevin Reitmeier, individuals who performed the duties of a Kirby Divisional Supervisor other than Plaintiff, and all individuals involved in the decision to terminate Plaintiff's Divisional Supervisor Agreement are not relevant to the claims and defenses in this lawsuit.  Without waiving these objections, Defendant states it is unaware of any IRS Form W-2s, IRS Form 1099s, disciplinary actions, promotion-related documents, transfer-related documents, attendance records, licenses, certifications, training documents, job descriptions, job duties, job applications, resumes, or job offer letters from Defendant to Plaintiff, or of any interview notes, stock grants and awards, or documents pertaining to demotions, promotions, lateral transfers, severance agreements, termination, and unemployment compensation for Plaintiff.  Further answering, relevant, responsive, non-privileged documents pertaining to Plaintiff will be produced pursuant to the protective order, where permitted by such order.

**Comment:**  Your objections are frivolous.  First, this document request is narrowly tailored as to time frame and specific documents requested. Second, your claim that documents relating to Kevin Reitmeier and individuals who performed the duties of a Kirby Divisional Supervisor are not relevant, is preposterous.  The Complaint sets forth facts supporting Plaintiff's contention that Kevin Reitmeier harassed him and took adverse employment actions against him.  Third, Plaintiff was a Divisional Supervisor, and as such, the other Divisional Supervisors are his comparators, and comparator data is relevant and admissible.  Fourth, your claim to have none of the requested documents pertaining to Plaintiff is unbelievable, **particularly in light of your production of documents that you claimed to not have (e.g., promotion and job offer letters to him from Defendants).**  Fifth, this request asks for documents related to Kevin Reitmeier and Kirby Divisional Supervisors from 2012-2020, not just Plaintiff.  These other individuals are relevant to the claims at issue, and thus documents related to them and the claims in this case are discoverable.

**Our RFP no. 3 requests:**  All documents between January 1, 2012 and October 31, 2020 pertaining to performance targets, performance goals, and actual performance of Plaintiff and all Kirby Divisional Supervisors.

Morena L. Carter, Esq.
Ryan J. Morley, Esq.
October 13, 2021
Page 14

**You responded:**  Objection.  Request No. 3 is overbroad in time and scope, vague and ambiguous, seeks information that is not relevant to the claims and defenses in this lawsuit, and requests information that may be protected from disclosure by the attorney-client privilege and/or work-product doctrine. In particular, documents pertaining to the performance or anyone other than Plaintiff is not relevant to the claims and defenses in this lawsuit.  Without waiving these objections, relevant, responsive, non-privileged documents
pertaining to Plaintiff will be produced pursuant to the protective order, where permitted by such order.

**Comment:**  Your objections are frivolous.  First, whether Defendants correctly classified Plaintiff as an independent contractor is an important issue in this case, and the level of control Defendants exerted over Plaintiff during his employment is relevant to the issue of classification.  Plaintiff claims that, for the time period above, Defendants misclassified him and failed to reimburse him for expenses he incurred.  Moreover, Defendant asserted a counterclaim for breach of contract, claiming Plaintiff failed to abide by the "best efforts" provision of the DSA.  Therefore, this RFP is appropriate in both time and scope, and relevant, because performance targets, performance goals, and the actual performance of Plaintiff and the other Divisional Supervisors are relevant to the level of control Defendants exerted over Plaintiff and the other Divisional Supervisors, and with respect to how Plaintiff's performance compared to other Divisional Supervisors.

Second, unless responsive documents pertain to confidential communications between Defendants and defense counsel or another professional legal advisory for the purposes of procuring legal advice, your attorney-client privilege objection is baseless.

Third, unless documents responsive to this RFP were drafted by an attorney in anticipation of litigation, your work-product objection is similarly baseless.

Fourth, your objections to producing documents not directly related to Plaintiff are outright silly.  Plaintiff was a Divisional Supervisor, and as such, Divisional Supervisors are Plaintiff's comparators, and comparator documents pertaining to performance targets and actual performance are relevant and discoverable.

Fifth, your clients claim that Plaintiff's reduction in sales, compared to his 2017 sales, constitute a breach of his contract.  Plaintiff is therefore entitled to documents pertaining to the other Divisional Supervisors' sales performance.

**Our RFP no. 7 requests:**  All documents, including, but not limited to, handbooks, memoranda, policies, procedures, and agreements, including all drafts, revisions, amendments, supplements, and updates thereto, that exist and/or existed at any and all times between January 1, 2012 and October 31, 2020, reflecting Defendants' requirements for Divisional

Morena L. Carter, Esq.
Ryan J. Morley, Esq.
October 13, 2021
Page 15

Supervisors, including, but not limited to, hiring an administrator, renting office space, keeping a work calendar, travel, and maintaining office hours.

**You responded:**  Objection. Request No. 7 is overbroad in time and scope, seeks information that is not relevant to the claims and defenses in this lawsuit, and requests information that may be protected from disclosure by the attorney-client privilege and/or work-product doctrine.  In particular, handbooks, policies, agreements, and any other documents pertaining to anyone other than Plaintiff are not relevant to the claims and defenses in this lawsuit.  Without waiving these objections, relevant, responsive, non-privileged documents will be produced pursuant to the protective order, where permitted by such order.

**Comment:**  First, 8-9 years has been held to be a reasonable period for discovery.  *E.E.O.C. v. Autozone, Inc.*, 259 F.Supp. 2d 831 (W.D. Tenn. 2003).  Second, unless responsive documents contain confidential communications between Defendant and defense counsel or another professional legal advisory for the purposes of procuring legal advice, your attorney-client privilege objection is baseless.

Third, unless responsive documents were drafted by an attorney in anticipation of litigation, your work-product objection is likewise baseless.

Fourth, your objections to producing documents not directly related to Plaintiff are ridiculous.  Plaintiff was a Divisional Supervisor, and as such, documents pertaining to other Divisional Supervisors -- Plaintiff's comparators -- are relevant, discoverable, and admissible.

**Our RFP no. 8 requests:**  All documents on which Defendant relied when deciding to classify its Divisional Supervisors as independent contractors.

**You responded:**  Objection.  Request No. 8 is overbroad in time and scope, seeks information that is not relevant to the claims and defenses in this lawsuit, and requests information that may be protected from disclosure by the attorney-client privilege and/or work-product doctrine. In particular, this request seeks documents pertaining to persons other than Plaintiff for an unspecified period of time.

**Comment:**  First, your objection that this request is overbroad in time and scope is ridiculous in light of what this RFP requests:  the documents upon which Defendants relied upon when deciding to classify Divisional Supervisors as independent contractors.  A specific timeframe is not needed for this request because it relates to a one specific decision, at whatever point in time that decision was made. whenever that decision may have been made.

Morena L. Carter, Esq.
Ryan J. Morley, Esq.
October 13, 2021
Page 16

Second, whether Defendants  properly classified Plaintiff as an independent contractor is a significant issue in this case, as the Court has twice noted.[1]  The documents upon which Defendants relied when deciding to classify Divisional Supervisors as independent contractors are relevant to both the claims and defenses asserted in this case.

Third, your boilerplate objections based on "protected from disclosure by the attorney-client privilege and/or work-product doctrine" are baseless, as evidenced by the fact that there is no mention of this RFP on your 9/3/21 privilege log.  .

Fourth, your objection that this RFP "may request" privileged documents is continued evidence of your and your firm's unethical and abusive discovery practices. Surely you should know by now whether this document request seeks privileged documents.

**Our RFP no. 9 requests:**  All documents discussing and/or reflecting how and/or why Defendant requires Kirby distributors to dissolve their Kirby Distributorship when entering into a Divisional Supervisor Agreement/contract with Scott Fetzer.

**You responded:**  Objection.  Request No. 9 is overbroad in time and scope, seeks information that is not relevant to the claims and defenses in this lawsuit, and requests information that may be protected from disclosure by the attorney-client privilege and/or work-product doctrine. In particular, this request seeks documents pertaining to persons other than Plaintiff for an unspecified period of time.  Without waiving these objections, relevant, responsive, non-privileged documents regarding the requirement that Plaintiff dissolve his Kirby factory distributorship will be produced pursuant to the protective order, where permitted by such order.

**Comment:**  Your objections are frivolous.  First, unless responsive documents reflect confidential communications between Defendants and defense counsel or another professional legal advisory for the purposes of procuring legal advice, attorney-client privilege is wholly inapplicable.  Additionally, unless documents responsive to this request were drafted by an attorney in anticipation of litigation, your objection on the basis of work-product doctrine is similarly inapplicable.

Second, your objections to producing documents not directly related to Plaintiff are ridiculous.  Plaintiff was a Divisional Supervisor, and thus, the other Divisional Supervisors are his comparators.

---

[1] "The key analysis with respect to Sharqawi's breach of contract claim is whether Sharqawi remained an independent contract as set forth in the DSA, or if Defendants exerted enough control over his work performance to transform him into an employee."  Sept. 7, 2021 Memorandum Opinion and Order, quoting October 23, 2020 Memorandum Opinion and Order.

Morena L. Carter, Esq.
Ryan J. Morley, Esq.
October 13, 2021
Page 17

Third, you have yet to produce responsive documents.

**Our RFP no. 10 requests:**  All documents that explain, reference, and/or describe Defendant's policies, procedures, and protocols, at any and all times between January 1, 2012 and October 31, 2020, for reimbursing its employees for work-related expenses.

**You responded:**  Objection.  Request No. 10 is overbroad in time and scope, seeks information that is not relevant to the claims and defenses in this lawsuit, and requests information that may be protected from disclosure by the attorney-client privilege and/or work-product doctrine.  In particular, policies pertaining to the reimbursement of work-related expenses for employees are not relevant to Plaintiff.  Without waiving these objections, Plaintiff's Divisional Supervisor Agreement and amendments thereto and other documents pertaining the reimbursement of Plaintiff's expenses will be produced pursuant to the protective order, where permitted by such order.

**Comment:**  The SPO is in place.  Please produce the responsive documents so we need not file a Motion to Compel.

**Our RFP no. 11 requests:**  All documents that explain, reference, and/or describe Defendant's procedures and protocol, at any and all times between January 1, 2012 and October 31, 2020, for reimbursing its Divisional Supervisors for work-related expenses.

**You responded:**  Objection.  Request No. 11 is overbroad in time and scope, vague and ambiguous, seeks information that is not relevant to the claims and defenses in this lawsuit, and requests information that may be protected from disclosure by the attorney-client privilege and/or work-product doctrine.  In particular, it is not clear what is meant by "procedures and protocols" and the documents pertaining to the reimbursement of expenses to any person other than Plaintiff are not relevant to the claims in this lawsuit.  Without waiving these objections, relevant, responsive, non-privileged documents, to the extent any exist, will be produced pursuant to the protective order, where permitted by such order.

**Comment:**  Your objections are frivolous.  First, unless responsive documents are confidential communications made between Defendant and defense counsel or another professional legal advisory for the purposes of procuring legal advice, your attorney-client privilege is baseless. Second, unless responsive documents were drafted by an attorney in anticipation of litigation, your work production objection is likewise baseless. Third, your refusal to produce documents not directly related to Plaintiff is ridiculous since Divisional Supervisors are Plaintiff's comparators. Fourth, your frivolous statement that you don't know what "procedures and protocols" means is sanctionable and we intend to raise this, along with your dozens of other discovery abuses, with the Court -- unless you promptly correct ALL of them.

Morena L. Carter, Esq.
Ryan J. Morley, Esq.
October 13, 2021
Page 18

**Our RFP no. 13 requests:**  All documents on which Defendant relied when deciding to terminate Plaintiff's Divisional Supervisor Agreement.

**You responded:**  Objection.  Request No. 13 requests information that may be protected from disclosure by the attorney-client privilege and/or work-product doctrine. Without waiving these objections, responsive, non-privileged documents, to the extent any exist, will be produced pursuant to the protective order, where permitted by such order.

**Comment:**  Your statement that "[r]equest [n]o. 13 requests information that **may** be protected from disclosure by the attorney-client privilege and/or work-product doctrine" (emphasis added) is absurd.  Either the documents requested are protected or they are not.  As attorneys for the Defendants, you are obligated to know the answer to that question -- especially since you have been representing them in this case for more than a year now. Moreover, you are obligated to provide a full, verified answer, unless you are SURE the documents are privileged.  And if they are privileged, you are required to produce a sufficient privilege log for us to make that assessment.

**Our RFP no. 14 requests:**  All documents on which Defendant relies for its contention that Plaintiff breached his Divisional Supervisor Agreement.

**You responded:**  Objection.  Request No. 14 requests information that may be protected from disclosure by the attorney-client privilege and/or work-product doctrine. Without waiving these objections, responsive, non-privileged documents, to the extent any exist, will be produced pursuant to the protective order, where permitted by such order.

**Comment:**  First, your contention that this RFP "may" request privileged information is frivolous and sanctionable.  Second, you have yet to produce responsive documents.

**Our RFP no. 15 requests:**  All investigation-related documents dated at any and all times between January 1, 2012 and October 31, 2020, that pertain to investigations conducted by, and/or on behalf of, Defendant regarding Divisional Supervisors' involvement in an outside business, including statements taken, statements given, investigation protocol followed, complaint or report that initiated each such investigation, and investigation results.

**You responded:**  Objection.  Request No. 15 is overbroad in time and scope, seeks information that is not relevant to the claims and defenses in this lawsuit insofar as it seeks information about anyone other than Plaintiff, and requests information that may be protected from disclosure by the attorney-client privilege and/or work-product doctrine.

**Comment:**  Your objections are frivolous.  First, unless responsive documents  reflect confidential communications between Defendant and defense counsel or another professional

Morena L. Carter, Esq.
Ryan J. Morley, Esq.
October 13, 2021
Page 19

legal advisory for the purposes of procuring legal advice, your attorney-client privilege
objection is baseless.  Second, unless the responsive documents were drafted by an attorney in
anticipation of litigation, your work product objection is likewise baseless.  Third, your refusal to
producing documents relating to Plaintiff's comparators is an abusive and obstructive discovery
tactic, which we will be addressing with the Court.  Lastly, we agree to limit this RFP to the
period of 1/1/17 through 12/31/20.

      **Our RFP no. 16 requests:**  All complaints, charges, allegations, and/or reports to and/or
about Defendant regarding unfair restraint of trade, misclassification of employees, breach of
Divisional Supervisor Agreements, unjust enrichment, and/or wrongful termination in violation
of public policy, at any and all times between January 1, 2012 and October 31, 2020.

      **Defendant responded:**  Objection. Request No. 16 is overbroad in time and scope, seeks
information that is not relevant to the claims and defenses in this lawsuit, and requests
information that may be protected from disclosure by the attorney-client privilege and/or
work-product doctrine.  Request No. 16 also seeks information that is equally available to
Plaintiff from public sources.  Without waiving these objections, documents obtained from the
Florida Commission on Human Relations pertaining to Plaintiff will be produced.

      **Comment:**  First, your privilege objections are unsupported. Second, this request is not
limited to complaints, charges, allegations, and/or reports that *Plaintiff* filed; it requests
documents pertaining to ALL Divisional Supervisors.  Third, we agree to  limit this RFP to the
period of 1/1/17 through 12/31/20.

      **Our RFP no. 17 requests:**  All of Defendant's document retention policies, including all
drafts, revisions, amendments, supplements, and updates thereto, that exist and/or existed at
any and all times between January 1, 2012 and October 31, 2020.

      **You responded:**  Objection.  Request No. 17 is overbroad in time and scope, vague and
ambiguous, and seeks information that is not relevant to the claims and defenses in this
lawsuit. I n particular, it is not clear what is meant by "retention policies".  If Plaintiff wishes to
clarify what is meant by the phrase "retention policies", Defendant will re-visit its response to
this request.

      **Comment:**  Your objections are ridiculous and continue to demonstrate your abusive
discovery tactics.   Second, "document retention policies" is both sufficiently clear and a well-
known term.  You decision to feign a lack of knowledge or understanding of the term
"document retention policies" violates the Code of Professional Conduct in more than one way,
and I will be bringing this matter, as well as the matter of all of your frivolous and unethical
objections and discovery tactics, to the Ohio Supreme Court's Disciplinary Counsel as your
professional conduct fails to meet Ohio's code of ethics for lawyers.

Morena L. Carter, Esq.
Ryan J. Morley, Esq.
October 13, 2021
Page 20


For your edification, a "document retention policy" is a policy or set of policies that establishes and describes how a company expects or directs its employees to manage company data and documents, from creation until its eventual destruction.

In sum:

1.      I ask that you promptly withdraw your frivolous objections.

2.      I look forward to sharing your discovery responses in this case with this Court, as well as all the Court in all other cases in which you are representing these Defendants as evidence of your continued bad faith discovery tactics.

3.      I look forward to sharing the article about your firm's dishonesty in discovery as background evidence of your gamesmanship in this case and the other Kirby/Fetzer cases.

4.      I ask that you promptly provide us with the **full identity** of all individuals and/or entities named in your Interrogatory Answers, as well as **all documents** responsive to each of our requests.

5.      We expect you to produce an updated privilege log as discussed herein above.

6.      Please provide all outstanding information and documents within one week from today, along with a signed and notarized verification.

Your gamesmanship will no longer be tolerated.


Very truly yours,

Caryn M. Groedel

**From:**       Nicholas Kerr
**Sent:**       10/22/2021 4:13:19 PM
**To:**         rmorley@littler.com; Carter, Morena L.
**Subject:**    Fwd: Sharqawi v. The Kirby Company, et al.
**Attachments:** image003.jpg, image004.png, image005.png

I apologize, I forgot to add Ryan onto our correspondence.

---------- Forwarded message ---------
From: **Nicholas Kerr** <nkerr@groedel-law.com>
Date: Fri, Oct 22, 2021, 3:36 PM
Subject: RE: Sharqawi v. The Kirby Company, et al.
To: Carter, Morena L. <MLCarter@littler.com>
Cc: Caryn Groedel <cgroedel@groedel-law.com>

Morena:

Per our 10/20/21 meet and confer, here is our list of categories of documents we still need.

If you believe you have already provided us the following information, it would be helpful if you would tell us the bates numbers.

1.  The full identity and contact Information – including full name, present or last

known home and work address, last known home, work, and cell phone numbers, and

position and business affiliation -- for:

   a.  Halle Sminchak

   b.  Kevin Reitmeier

   c.  Glenn Novak

   d.  Mike Nichols

   e.  Adrienne Cvetkovic

   f.  Gary Tuton

2.   Documents supporting Kirby's alleged damages proximately caused by Plaintiff's alleged breach of contract.

3.   Documents supporting Kirby's rationale for classifying Plaintiff and other Divisional Supervisors as "independent contractors".

4.   Documents upon which Kirby/Fetzer relied terminating Plaintiff, including but not limited to:

  a. Plaintiff's sales reports, such as Firabi reports, as well as sales quotas, revenue reports, sales commitment reports, and all other metrics Kirby/Fetzer used to calculate Divisional Supervisor sales, in 2017 and in 2018.

5.   Documents upon which Kirby/Fetzer relied when determining that Plaintiff had breached his contract.

6.   Documents reflecting each of Kirby's/Fetzer's investigations into the outside business activities of Divisional Supervisors who reported to Kevin Reitmeier at any and all times between 2010 and 2018.

7.   Comparator documents

  a. Sales reports, such as Firabi reports, for all Divisional Supervisors who reported to Kevin Reitmeier in 2017 and/or 2018.

  b. Sales FD and DT monthly sales commitment forms for all Divisional Supervisors who reported to Kevin Reitmeier in 2017 and/or 2018.

c. The size of all Kirby Divisions, including the number of listed factory distributors in each division, the number of active factory distributors in each division, and the geographical area of each division, for each year from 2010 through 2018.

d. Communications (text messages, memos, emails, etc.) between Kevin Reitmeier and all Divisional Supervisors throughout 2017 and 2018 relating or referring to:

- Assignments

- Reports

- Performance

- Directives

- Admonitions

- Sales-related matters

- Responding or not responding to their communications

- Travel schedules

- Calendars

- Territory assignments and reassignments

- Divisional Supervisor Agreements, amendments, supplements, and/or revisions

- Requirements to maintain an out-of-home office

- CBD businesses

**Depositions**

You asked us to provide dates for depositions, including the depositions of Kevin Reitmeier, David Lamb, Bud Miley, Bob McBride, and any R. 30(b)(6) deposition we plan on taking.   Below is a list of dates on which we are available for depositions:

Nov. 22, 24, 25, 26, 29, 30

Dec. 1, 3, 6, 7, 8, 9, and 10

**<u>Phone Records</u>**

We have received our clients cell phone records from AT&T. We will produce those records and the subpoenas requesting them next week after we review them.

Thank you in advance.

Nicholas Kerr, J.D.

*Law Clerk*



31340 Solon Road, Suite 27

Cleveland, OH  44139

phone: (440) 544-1122 x 114

fax:      (440) 996-0064

email:   nkerr@groedel-law.com

CONFIDENTIALITY NOTE:  This e-mail is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure.  Dissemination, distribution or copying of this e-mail or the information herein by anyone other than the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, is prohibited.  If you have received this e-mail in error, please call Nicholas Kerr at 440-544-1122 and destroy the original message and all copies.

---

**From:** Carter, Morena L. <MLCarter@littler.com>
**Sent:** Thursday, October 21, 2021 10:17 AM
**To:** Caryn M. Groedel (cgroedel@groedel-law.com) <cgroedel@groedel-law.com>
**Cc:** Morley, Ryan J. <RMorley@littler.com>; Nicholas Kerr <nkerr@groedel-law.com>
**Subject:** Sharqawi v. The Kirby Company, et al.


Caryn:

Per our telephonic meet and confer on October 20, 2021, below is a list of information and documents or categories of documents that Defendants need. If a document doesn't exist or is not in Plaintiff's possession, custody, or control but does or did exist, please say so and describe why the document cannot be produced. We have not yet received your 8-category list – please provide that so that we can continue with working towards resolving, or at least narrowing, discovery issues.


We reserve the right to take all available action to ensure that we receive complete responses to the discovery requests propounded on Plaintiff.


List of information, documents (includes ESI, communications, etc.) needed from Plaintiff:

1. Please correct the following deficiencies with the tax records produced; we reserve the right to request additional documents that we identify as missing from these tax records or that we contend are relevant to the Lawsuit:
    a. Plaintiff's personal tax returns: please produce the following:

        i.   Form 2848 for tax year 2012

        ii.  Form 2210 for tax year 2014

        iii. Form 1040-ES for tax years 2014 and 2015

          iv.   Form 8895 for tax year 2018

          v.   Form W-2s for tax years 2010, 2012, and 2015 through 2020

b.  Syatt of Jacksonville, Inc.

          i.   Tax year 2010: need the documents underlying Statement 1 on P00688

c.  B.M.I.B., Inc.: please produce the following:

          i.   Documents underlying Statement 1 for tax years 2010 through 2014 (P00665, P00747, P00718, P00773, and P00800)

          ii.   Tax year 2013 letter and list from tax preparer, as provided by the tax preparer for all other years

d.  NLN Division, Inc.: please produce the following:

          i.   Tax year 2018: Form 4562, Form 1125-A, Form 1125-E, Basic Schedule, all Statements, and letter and list from the tax preparer, as provided for all other years

          ii.   Documents underlying Statement 1 for tax years 2015 through 2018 (P00827, P00850, and P00879)

          iii.   Produce documents, including, but not limited to the Form 1099, related to the "subcontractor" described on P00851 and P00880

e.  NLN Enterprises, Inc.: please produce the following:

          i.   Tax year 2018: Basic Schedule, letter or list from the tax preparer, and the "note payable - American Shaman" in Statement 5 on P00905

          ii.   Tax year 2019: the "Note Payable - American Shaman" in Statement 4 on P00947

          iii.   Tax year 2020 tax return and all attachments, schedules, statements, and forms; and letter and list from the tax preparer

f.  Budzburn, Inc.: please provide the following:

          i.   Tax year 2019: Letter and list from the tax preparer

        ii.   Tax year 2020 tax return and all attachments, schedules, statements, and forms; and letter and list from the tax preparer

2. AT&T subpoenas (2) and documents produced pursuant to same and nonprivileged communications regarding same, and any other documents requested from third parties, if any, and nonprivileged communications regarding same

3. Complete responses to Interrogatory Nos. 3, 4, 6, 7, 8, 12, 14, 16, 17, and 18 – please see our letter dated 10/1/2021 regarding what we believe to be the issues

4. "Plaintiff's financial records" identified in his initial disclosures

5. Plaintiff's cell phone records requested

6. Identities of individuals with knowledge of Plaintiff's "emotional damages"; you identified "family and friends"

7. Unredacted versions of P111 and P112

8. Documents that support Plaintiff's claims for damages, including, but not limited to the "expenses" identified in Plaintiff's initial disclosures:

- $950/month for car lease x 95 months5 = $90,250

- $900/month for health insurance x 95 months = $85,500

- $550/month for life insurance x 95 months = $52,250

- $450/month for business cell phone x 95 months = $42,750

- $1,000/month for office space x 95 months = $95,000

- $3,167/month for an administrative assistant x 95 months= $300,865

- $5,000/month (average) for travel and food less $3,000 monthly allowance = $2,000 difference/month x 95 months = $190,000

9. Documents showing all payments made to Plaintiff or his company(ies) under his Divisional Supervisor Agreement

10. Documents showing that Plaintiff was required to set up one or more businesses by Kirby and/or Scott Fetzer

11. Documents responsive to Request for Production Nos. 11-12, 15-17, 21 (documents showing "Plaintiff reported directly to . . . Bud Miley")

12. Form W-2s for the following years: 2010, 2012, 2015 through 2018, and 2020.

13. All agreements under which Plaintiff or a company he owned, was a member of, or was a shareholder of, received or was entitled to receive remuneration between 11/1/2010 to the present

14. For every employer of Plaintiff since 11/1/2010, please provide the following: agreements, documents relating to Plaintiff's job title, self-employment, job status, rate of pay or compensation, change in job titles, status, descriptions of jobs or engagements held, work performed, handbooks, policies, benefit statements, policies, and any documents that refer to or relate to Plaintiff's resignation, retirement, layoff, or termination from any subsequent employer or termination of any agreement to perform work as an employee, consultant, and/or independent contractor.

15. Produce the following documents for the entities for which tax returns were produced (listed below): all business filings (e.g., documents filed with a Secretary of State), expenses reports, receipts, calendars, meeting minutes, bank statements, purchase agreements, rental agreements, real estate records, lease agreements, contracts, credit card statements, telephone records, mobile phone records, invoices, purchase orders, payroll records, W-2s, Form 1099s, employee lists, employment agreements, and employee personnel records.

    a. Syatt of Jacksonville, Inc.
    b. B.M.I.B., Inc.
    c. NLN Division, Inc.
    d. NLN Enterprises, Inc.
    e. Budzburn, Inc.

16. Documents showing money loaned to the daughter or to a company or individual related to the daughter's CBD business identified in Paragraph 22 of the Second Amended Complaint, including, but not limited to, loan agreement(s) and documents pertaining to the terms of such loan(s); cancelled checks; etc.

17. Documents showing text messages, phone calls, voice mail messages, emails, other written or oral communications, and recordings of conversations, to or from, or exchanged between Plaintiff or his agents, representatives, or attorneys and the following persons between 1/1/2017 to the present regarding this Lawsuit (allegations, damages, and/or claims), the alleged requirement that he set up a business in order to be paid under his Divisional Supervisor Agreement, and/or CBD:

a. Kevin Reitmeier;

b. Bud Miley;

c. David Lamb;

d. Halle Sminchak;

e. Timothy Updegraph;

f. Carl Emmert;

g. Michael Licata;

h. Rob Terwilliger;

i. Marc Venditti;

j. Frank Venditti III;

k. Matt Bragg;

h. Any other current or former employee of Kirby or Scott Fetzer;

i. Any other current or former Divisional Supervisor of Kirby;

j. Any current or former independent contractor of Kirby or Scott Fetzer;

k. Any other person identified in Plaintiff's initial disclosures or responses to the Interrogatories.

18. Diaries, calendars, appointment books and cards, notes, logs, schedules, memoranda, or similar documents that show Plaintiff's activities since November 1, 2010

19.  Documents pertaining to the following bankruptcy petition, 3:16-bk-00148-PMG

20. Documents Plaintiff contends shows that he complied with his obligations under his Divisional
    Supervisor Agreement in 2018

21. Mitigation documents – e.g., the actual applications filled out for jobs he applied to, responses received from prospective employers, communications regarding interviews, rejection communications, etc.

22. Communications (emails, texts, WhatsApp communications, voicemails, etc.) to, from, or among Plaintiff and Updegraph, Emmert, Licata, Lerch, their respective spouses or romantic partners, and/or any other Divisional Supervisor, independent contractor, or employee of Kirby and/or Scott Fetzer since 1/1/2018 regarding: Kirby, Scott Fetzer, Berkshire Hathaway, Warren Buffett, this Lawsuit, the lawsuits filed by or contemplated by the individuals listed here, CBD, their Divisional Supervisor Agreements or Factory Distributor Agreements and/or the terms thereof, termination of their Divisional Supervisor Agreements or Factory Distributor Agreements, and/or Caryn Groedel or anyone at her firm – we are not seeking any attorney-client privileged communications

23.  Documents showing Plaintiff reported being treated like an independent contractor instead of an employee or reported concerns about reimbursement or non-reimbursement for expenses he paid during the course of his Divisional Supervisor Agreement

**Morena Carter**
Attorney at Law
216.623.6059 direct, 216.904.6044 mobile
MLCarter@littler.com



Labor & Employment Law Solutions | Local Everywhere
127 Public Sq, Key Tower, Ste 1600, Cleveland, OH 44114

--------------------------

This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.

Littler Mendelson, P.C. is part of the international legal practice Littler Global, which operates worldwide through a number of separate legal entities. Please visit www.littler.com for more information.

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| IBRAHIM SHARQAWI, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No. 1:20-cv-00271-PAB |
| v. | : | |
| | : | Judge Pamela A. Barker |
| THE KIRBY COMPANY et al., | : | |
| | : | JURY DEMAND ENDORSED |
| Defendants. | : | HEREIN |
| | : | |
| | : | |

**DEFENDANT AND COUNTERCLAIMANT THE KIRBY COMPANY'S
COUNTERCLAIM FOR BREACH OF CONTRACT**

For its Counterclaim against Plaintiff and Counterclaim Defendant Ibrahim Sharqawi ("Sharqawi"), Defendant and Counterclaimant The Kirby Company ("Kirby"), by and through its attorneys, states as follows:

**PARTIES, VENUE, JURISDICTION, FACTS**

1. Kirby incorporates all the averments, allegations, denials, and defenses raised by it in its Answer as if fully incorporated herein.

2. Kirby is an unincorporated division of The Scott Company, which is located at 1920 West 114th Street, Cleveland, Ohio 44102.

3. Sharqawi is an individual who, upon information and belief, is a resident of the State of Florida.

4. This Court has personal jurisdiction over Kirby given that Kirby is an Ohio corporation and conducts business within the State of Ohio.

5. Personal jurisdiction is proper because Sharqawi is a party to an agreement with Kirby titled the Divisional Supervisor Agreement, attached to the Complaint as Exhibit 1.

6. This Court has subject matter jurisdiction over the claims asserted against Kirby in this case.

7. Headquartered in Cleveland, Ohio, Kirby has manufactured high-end home cleaning systems, parts, and related accessories ("Kirby Products") for over a century.

8. Kirby sells high-end home cleaning systems exclusively through in-home demonstrations conducted under the direction of authorized Distributors. Distributors are independent contractors who enter into a contractual relationship with Kirby through a Distributor Agreement. In their role, Distributors recruit Dealers to join their sales team to perform in-home demonstrations of Kirby Products. Distributors then recommend certain Dealers be appointed to the position of Distributor Trainee. Dealers and Distributor Trainees are independent contractors of particular Distributors. Ultimately, a Distributor Trainee may operate their own distributorship if recommended by their appointing Distributor and approved by Kirby.

9. Divisional Supervisors locate, recommend, and thereafter service Distributors for sale and distribution of Kirby Products pursuant to Kirby's policies and procedures within a geographic territory determined by Kirby.

10. Sharqawi became a Distributor Trainee in or about August, 2002. He worked as a Distributor Trainee until in or about December, 2002

11. In or about December, 2002, Sharqawi became an authorized Distributor for Kirby.

12. In or about February, 2005, Sharqawi contracted with Kirby to serve as a Division Manager. As a Division Manager, Sharqawi continued to be an independent contractor of Kirby.

13.     On or about November 1, 2010, Kirby offered Sharqawi the opportunity to contract with Kirby as a Divisional Supervisor. Sharqawi freely signed the Divisional Supervisor Agreement with Kirby. (Exhibit 1 to the Complaint). The Divisional Supervisor Agreement was made in Cleveland, Ohio.

14.     In the Divisional Supervisor Agreement, Sharqawi agreed that he was an independent contractor. (Exhibit 1 to the Complaint, Paragraph 8).

15.     As a Divisional Supervisor, Sharqawi was responsible for locating, recommending, and thereafter servicing Distributors for sale and distribution of Kirby Products pursuant to Kirby's policies and procedures within a geographic region determined by Kirby.

16.     As a Divisional Supervisor, Sharqawi agreed to use his "best efforts," as determined by Kirby, to "provide prompt Aid and Service to each and every Distributor in the [geographic territory] without additional charge or expense to the [Kirby]. The words 'Aid and Service' as used herein shall include, but shall not be limited to, the educating and training of Distributors in successful methods for the sale in the consumer's home of the Products by the Distributor, his Distributor Trainees and Dealers, the scheduling and promotion of all regular follow-up procedures needed to maintain a high degree of such sales and service efficiency on the part of the Distributors in the [geographic territory], and the total support and promotion of National, and Divisional contests and programs as may be initiated by [Kirby], or Divisional Supervisor from time to time. It is the essence of this Agreement that the Divisional Supervisor holds himself out as capable of locating, training, and maintaining the efficiency of Distributors who can successfully devote their energies to accomplish the primary purpose for which the [Kirby] manufactures its [home cleaning systems], namely the sale and service of the [home

cleaning systems] to the consumer in the convenience of the consumer's home. **The Divisional Supervisor is expected to devote whatever efforts are necessary to achieve the highest level of such performance on the part of the Distributors in the [geographic territory] in keeping with applicable law and ethical selling practices as promulgated from time to time by [Kirby].**" (Exhibit 1 to the Complaint, Paragraph 6) (emphasis added).

17.     In return for his services under the Divisional Supervisor Agreement, Kirby paid Sharqawi a guaranteed monthly minimum of $20,833.00 per month. (Exhibit 1 to the Complaint, Paragraph 3 and Exhibit B). These monthly payments were made to one or more business entities controlled by Sharqawi upon Sharqawi's request.

18.     In 2018, Charging Party's division was not performing at the level expected by Kirby. Its sales numbers were down significantly from those of the prior year.

19.     In or about June, 2018, Kirby learned that Charging Party owned a cannabidiol or "CBD" business.

20.     When Kirby asked Sharqawi about his involvement with the CBD business, he denied any involvement with it.

21.     As Sharqawi's division's performance continued to suffer, however, Kirby investigated the extent of Sharqawi's involvement with the CBD business he owned. The investigation revealed that, contrary to his representations to Kirby, Sharqawi was spending significant amounts of time at the CBD business.

22.     Kirby determined that Sharqawi's involvement with a CBD business violated Paragraphs 6, 12, and 13 of the Divisional Supervisor Agreement, which, *inter alia*, required Sharqawi to use his best efforts to sell Kirby-licensed products, not solicit or recruit Distributors

other than to sell Kirby systems, and not engage in inappropriate conduct that reflected poorly on Kirby.

23.     Accordingly, Kirby exercised its right to terminate the Divisional Supervisor Agreement with Sharqawi with cause pursuant to the terms of Paragraph 19, which allowed either Sharqawi or Kirby to terminate the Divisional Supervisor Agreement "immediately with cause by giving written notice to the other party." (Exhibit 1 to the Complaint, Paragraph 19).

## COUNT I
### Breach of Contract

24.     Kirby incorporates by reference the allegations set forth in paragraphs 1 through 23 of the Complaint as if fully set forth herein.

25.     Kirby and Sharqawi entered into the Divisional Supervisor Agreement attached as Exhibit 1 to the Complaint effective November 1, 2010.

26.     The Divisional Supervisor Agreement is valid and enforceable.

27.     Kirby fully performed its obligations under the Divisional Supervisor Agreement.

28.     As described in detail above, Sharqawi breached his contractual obligations to Kirby by violating numerous covenants and provisions in the Divisional Supervisor Agreement including, without limitation, Paragraphs 6, 12, and 13.

29.     The breaches described in the preceding paragraph are material.

30.     As a direct and proximate result of Sharqawi's wrongful conduct, Kirby has suffered and continues to suffer damages in an amount that is not presently ascertainable but exceeds $75,000.00 and will be established at trial.

## PRAYER FOR RELIEF

As a result of Sharqawi's breach of the Divisional Supervisor Agreement, Kirby is entitled to an award of monetary damages for its loss and injury and an award of its costs and expenses in bringing these claims, including an award of its reasonable attorneys' fees.

WHEREFORE, Kirby prays for the following relief:

1.     That judgment be entered for Kirby and against Sharqawi for compensatory and related damages, all available statutory damages, and punitive or exemplary damages;

2.     That Kirby be awarded its costs of suit and attorneys' fees as otherwise appropriate; and

3.     For such other and further relief as this Court deems just and proper.

## JURY DEMAND

**JURY TRIAL REQUESTED**

Kirby hereby requests a trial by jury on all issues so triable in this matter.

/s/ *Ryan J. Morley*
Ryan J. Morley

Respectfully submitted,

/s/ *Ryan J. Morley*
Ryan J. Morley (0077452)
Morena L. Carter (0088825)
LITTLER MENDELSON, P.C.
1100 Superior Avenue, 20th Floor
Cleveland, OH  44114
Telephone: 216.696.7600
Facsimile:  216.696.2038
Email: rmorley@littler.com
          mlcarter@littler.com

Attorneys for Defendants, The Scott Fetzer Company and Defendant/Counter-Claimant The Kirby Company

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 11, 2020, a copy of the foregoing *Defendant and Counterclaimant The Kirby Company's Counterclaim for Breach of Contract* was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Ryan J. Morley*
Ryan J. Morley

One of the Attorneys for Defendants The Scott Fetzer Company and Defendant/Counterclaimant The Kirby Company

4850-3478-9585.1 056013.1160

| | |
|---|---|
| **From:** | Carter, Morena L. |
| **Sent:** | 10/13/2021 2:56:02 PM |
| **To:** | Nicholas Kerr; Morley, Ryan J. |
| **Cc:** | cgroedel@groedel-law.com |
| **Subject:** | RE: Sharqawi v. Kirby- Plaintiff's discovery dispute letter and depositions |

Nick:

We will review the letter you transmitted and provide a response. That being said, Plaintiff has no basis for holding his document production back (or any of his discovery responses) on any basis related to Defendants' discovery responses. What's more, you already communicated to us that fulsome responses to many of our discovery requests and the outstanding tax returns, schedules, forms, and attachments were being produced (see your emails dated September 17, 2021 and October 8, 2021 and your verbal commitments on September 14, 2021). In fact, we expected the missing tax records on October 8, 2021. In addition, you have not provided all of the personal and corporate tax records for the period 2010 through 2020, of which you are aware from our email correspondence dated October 7, 2021. As you may not be aware, however, we have been waiting for Plaintiff to fully comply with his discovery obligations since April 2021.

You also may not know that we have conferred with Caryn about deposing Mr. Sharqawi. There may be others we will wish to depose as well; however, Plaintiff has not sufficiently responded to written discovery requests directed to him or our discovery deficiency letters, which you've had for weeks, for us to make a determination. We look forward to working with you to schedule depositions once we can resolve the outstanding issues with written discovery.

**Morena Carter**
Attorney at Law
216.623.6059 direct, 216.904.6044 mobile
MLCarter@littler.com



**Fueled by ingenuity. Inspired by you.**

Labor & Employment Law Solutions | Local Everywhere
127 Public Sq, Key Tower, Ste 1600, Cleveland, OH 44114

**From:** Nicholas Kerr <nkerr@groedel-law.com>
**Sent:** Wednesday, October 13, 2021 1:59 PM
**To:** Carter, Morena L. <MLCarter@littler.com>; Morley, Ryan J. <RMorley@littler.com>
**Cc:** cgroedel@groedel-law.com
**Subject:** Sharqawi v. Kirby- Plaintiff's discovery dispute letter and depositions


**[EXTERNAL E-MAIL]**

Counsel,

We have been in the process of reviewing your discovery responses and we have found very concerning deficiencies.  We have not received any documents detailing the damages your client has allegedly suffered, nor any documents concerning our client's comparators.  The attached letter explains your deficient responses in more detail.

In light of these realizations, we will not be producing our clients full tax returns as we have already produced his personal 1040s and the 1020S forms for his business.

Also, Caryn would like to start scheduling depositions. She would like to depose Kevin Reitmeier, David Lamb, Bud Miley, and Bob McBride.  Could you provide our office with dates and times you are available over the next 4 weeks or so?

Yours truly,
Nicholas Kerr, J.D.
*Law Clerk*



31340 Solon Road, Suite 27
Cleveland, OH  44139
phone: (440) 544-1122 x 114
fax:     (440) 996-0064
email:   nkerr@groedel-law.com


CONFIDENTIALITY NOTE:  This e-mail is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure.  Dissemination, distribution or copying of this e-mail or the information herein by anyone other than the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, is prohibited.  If you have received this e-mail in error, please call Nicholas Kerr at 440-544-1122 and destroy the original message and all copies.


--------------------------
This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.

Littler Mendelson, P.C. is part of the international legal practice Littler Global, which operates worldwide through a number of separate legal entities. Please visit www.littler.com for more

information.



VIA ELECTRONIC MAIL AND UPS OVERNIGHT DELIVERY

October 8, 2018

Mr. Ibrahim Sharqawi
1301 Riverplace Boulevard, Suite 800
Jacksonville, Florida 32207
bmibdivision@gmail.com

Dear Abe:

The Kirby Company hereby notifies you that the Divisional Supervisor Agreement between The
Kirby Company and Ibrahim Sharqawi dated November 1, 2010 (hereinafter, "Agreement") is
terminated effective immediately for your breach of Paragraphs 6,12, and 13 of said Agreement.
The termination of the Agreement is pursuant to Paragraph 19 thereof, with this letter constituting
the written notice required by said Paragraph.

As a reminder, even though the Company has terminated the Agreement, you still must comply with
Paragraphs 11, 12, and 13, with any breach of these Paragraphs resulting in your reimbursement to
The Kirby Company of all costs, attorneys' fees, and/or other expenses incurred by The Kirby
Company in connection with the enforcement of said provisions.

Very truly yours,

Kevin Reitmeier
President, North American Field Sales

CC:    David Lamb
       Halle Sminchak

1920 West 114th Street      •      Cleveland, Ohio 44102
Phone      216-228-2400      •      FAX      216-221-3162
http://www.kirby.com

A Scott Fetzer Company

EXHIBIT 13

D-0000425