**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **IBRAHIM SHARQAWI** | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No. 1:20-cv-00271-BMB |
| v. | : | |
| | : | |
| **THE KIRBY COMPANY,** *et al.,* | : | Judge Bridget Meehan Brennan |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

---

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

---

Ryan J. Morley (0077452)
John W. Hofstetter (0087731)
LITTLER MENDELSON, P.C.
Key Tower
127 Public Square, Suite 1600
Cleveland, OH 44114-9612
Telephone: 216.696.7600
Facsimile:  216.696.2038
rmorley@littler.com
jhofstetter@littler.com

Attorneys for Defendants
The Kirby Company and
The Scott Fetzer Company

**TABLE OF CONTENTS**

PAGE

I.     INTRODUCTION ................................................................................................. 1

II.    FACTUAL BACKGROUND ............................................................................... 2

       A.     The Parties ................................................................................................ 2

       B.     The Parties' Relationship ........................................................................ 2

       C.     Termination of the Divisional Supervisor Agreement ........................... 3

       D.     Kirby Also Terminates the Divisional Supervisor Agreements and Factory
              Distributor Agreements for Several Other Non-Middle Eastern
              Independent Contractors Who Either Were Not Performing and/or Were
              Involved in CBD .......................................................................................... 4

III.   LAW AND ANALYSIS ....................................................................................... 4

       A.     Summary Judgment Standard .................................................................. 4

       B.     Plaintiff's Breach of Contract Claim Fails as a Matter of Law ............ 5

              1.     Plaintiff's Breach of Contract Claim ......................................... 5

              2.     Plaintiff Cannot Establish He Was an "Employee"; Rather, as a
                     Matter of Law, He Was Always an Independent Contractor .................... 5

              3.     Plaintiff's Other Alleged Indicia of "Breach" Were Expressly
                     Contemplated by the Agreement ................................................. 9

              4.     Regardless of His Status, Plaintiff Has No Contractual Damages ........... 11

              5.     Regardless of His Status, Plaintiff Waived His Breach of Contract
                     Claim by Performing His Contract for Four More Years ...................... 11

       C.     Plaintiff's Unjust Enrichment Claim Fails as a Matter of Law .......................... 12

       D.     Because Plaintiff Was Always an Independent Contractor, His Title VII
              Discrimination and Retaliation Claims Fails as a Matter of Law ...................... 13

       E.     Plaintiff Cannot Establish a Prima Facie National Origin Discrimination
              Claim ........................................................................................................ 13

              1.     Plaintiff Cannot Establish a Prima Facie Disparate-Treatment
                     Claim Based on National Origin ................................................. 13

                     a.     "Calls and Text Messages," "Interrogation," and Requiring
                            "Reporting" Are Not Adverse Employment Actions ................ 14

                     b.     Plaintiff Cannot Establish That Any Similarly Situated
                            Non-Middle Eastern Divisional Supervisors Were Treated
                            More Favorably .............................................................. 15

              2.     Plaintiff Cannot Establish a Prima Facie Hostile Work
                     Environment Claim Based on National Origin ........................ 16

# TABLE OF CONTENTS
(CONTINUED)

PAGE

      a.    Plaintiff Cannot Establish That the Alleged Harassment Was Based on His Middle Eastern National Origin ................... 17

      b.    Plaintiff Cannot Establish That Any of the Alleged Harassment Was "Severe or Pervasive" ..................................... 17

  F.    Plaintiff Cannot Establish a Prima Facie Claim for Retaliation ........................ 18

      a.    Plaintiff Cannot Establish "But-For" Causation ........................ 18

  G.    Plaintiff Cannot Establish the Termination of His Divisional Supervisor Agreement Was Pretext for Unlawful Discrimination ......................... 18

IV.    CONCLUSION ............................................................................. 19

CERTIFICATION AS TO ADHERENCE TO LOCAL RULE 7.1(f) ....................................... 21

ii.

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adebisi v. Univ. of Tennessee,*
  341 F. App'x 111 (6th Cir. 2009) ..........................................................................14

*Ayad v. Radio One, Inc.,*
  412 F. Supp. 2d 716 (N.D. Ohio 2005)................................................................13

*Barcus v. Buehrer,*
  2015-Ohio-3122 (10th Dist. Aug. 4, 2015)............................................................5

*Booher Carpet Sales v. Erickson,*
  1998 Ohio App. LEXIS 4643 (2d Dist. Oct. 2, 1998) .........................................12

*Bostic v. Connor,*
  37 Ohio St.3d 144 (1988) ..................................................................................5, 6

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986)................................................................................................4

*Community for Creative Non-Violence v. Reid,*
  490 U.S. 730 (1989)................................................................................................8

*Emmert v. The Kirby Company, et al.*
  Cuy. Common Pleas No. CV-20-940157 ..............................................................15

*Falls v. Sporting News Pub. Co.,*
  834 F.2d 611 (6th Cir. 1987) ...............................................................................13

*Fesler v. Whelen Eng'g Co.,*
  794 F. Supp. 2d 994 (S.D. Iowa 2011), aff'd, 688 F.3d 439 (8th Cir. 2012) ...........7

*Firefighters Cmty. Credit Union v. Woodside Mortg. Servs.,*
  2019-Ohio-3363 (8th Dist. Aug. 22, 2019)............................................................5

*Fox v. Nationwide Mut. Ins. Co.,*
  2018-Ohio-2830 (10th Dist. July 17, 2018)..................................................5, 6, 7

*Grosjean v. First Energy Corp.,*
  349 F.3d 332 (6th Cir. 2003) ...............................................................................15

*Harris v. Forklift Sys., Inc.,*
  510 U.S. 17 (1993)................................................................................................16

*Haynes v. Kirby Co.*,
    1996 U.S. App. LEXIS 5709 (6th Cir. 1996) .................................................5, 8

*Iyengar v. Mercy Mem'l Hosp. Corp.*,
    No. 08-10778, 2009 WL 2840509 (E.D. Mich. Aug. 31, 2009)...............................17

*Jones v. Johanns*,
    264 Fed.Appx. 463 (6th Cir.2007)........................................................................18

*Jones v. St. Jude Med. S.C., Inc.*,
    823 F. Supp. 2d 699 (S.D. Ohio 2011), *aff'd*, 504 F. App'x 473 (6th Cir.
    2012) ..................................................................................................................14

*Kaminsky v. Wilkie*,
    No. 5:19-CV-20, 2020 WL 3893521 (N.D. Ohio July 10, 2020)...........................19

*Kirvard E. Div. Inc. v. Antero Res. Corp.*,
    No. 2:15-CV-633, 2016 WL 7868902 (S.D. Ohio Aug. 9, 2016) ..........................11

*Kuhn v. Washtenaw Cty.*,
    709 F.3d 612 (6th Cir. 2013) ...............................................................................14

*Kuhn v. Youlten*,
    118 Ohio App.3d 168, 692 N.E.2d 226 (8th Dist.1997)..........................................7

*L.I. Development-Ohio, L.L.C. v. 6150 SOM Ctr. Rd., L.L.C.*,
    2019-Ohio-3514 (8th Dist. Aug. 29, 2019).............................................................5

*Ladd v. Grand Trunk W. R.R., Inc.*,
    552 F.3d 495 (6th Cir.2009) .................................................................................19

*May v. GMC Mansfield Metal Fabricating*,
    61 F. App'x 171 (6th Cir. 2003) ..........................................................................16

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973)..............................................................................................13

*Mitchell v. Toledo Hosp.*,
    964 F.2d 577 (6th Cir. 1992) ..........................................................................15, 16

*Moholt v. Dooney & Bourke, Inc.*,
    63 F. Supp. 3d 1289 (D. Or. 2014) ......................................................................11

*Ogle v. BAC Home Loans Servicing LP*,
    924 F. Supp. 2d 902 (S.D. Ohio 2013) ..................................................................5

*Redlin v. Grosse Pointe Pub. Sch. Sys.*,
    921 F.3d 599 (6th Cir. 2019) ...............................................................................13

iv

*Saraf v. Maronda Homes, Inc. of Ohio*,
    10th Dist. Franklin No. 02AP-461, 2002-Ohio-6741 ............................................................12

*Sharqawi v. Kirby Co.*,
    496 F. Supp. 3d 1093 (N.D. Ohio 2020)............................................................................5

*Simplifi Health Ben. Mgmt., LLC v. Cayman Islands Nat'l Ins. Co.*,
    2016 U.S. Dist. LEXIS 101386 (S.D. Ohio Aug. 2, 2016)....................................................12

*Singleton v. PSA Airlines, Inc.*,
    No. 21-3423, 2022 WL 875869 (6th Cir. Mar. 24, 2022)....................................................17

*Smith Clinic v. Savage*,
    3rd Dist. Marion No. 9-12-40, 2013-Ohio-748....................................................................12

*Spees v. James Marine, Inc.*,
    617 F.3d 380 (6th Cir. 2010) ............................................................................................14

*St. Mary's Honor Ctr. v. Hicks*,
    509 U.S. 502 (1993)........................................................................................................19

*Sterling Constr., Inc. v. Alkire*,
    12th Dist. Nos. CA2013-08-028 ........................................................................................12

*Taylor v. Honda Motorcars, Inc.*,
    8th Dist. No. 107840, 2019-Ohio-1891, 135 N.E.3d 1284....................................................11

*Teknol, Inc. v. Buechel*,
    1999 U.S. Dist. LEXIS 22017 (S.D. Ohio Aug. 9, 1999)......................................................12

*In re Tetirick*,
    84 B.R. 505 (Bankr. S.D. Ohio 1988)..................................................................................11

*Univ. of Texas Sw. Med. Ctr. v. Nassar*,
    570 U.S. 338 (2013)........................................................................................................18

*Updegraph v. The Kirby Company, et al.*
    Cuy. Common Pleas o. CV-19-919912 ............................................................................4, 15

*Ware v. United States*,
    67 F.3d 574 (6th Cir. 1995) ..............................................................................................8

*Wellman v. Montes*,
    288 F. Supp. 2d 860 (6th Cir. 2003) ..................................................................................6

*Williams v. CSX Transp. Co., Inc.*,
    643 F.3d 502 (6th Cir. 2011) ............................................................................................17

*Yousef v. Yousef,*
  8th Dist. No. 107453, 2019-Ohio-3656 ................................................................................12

**Statutes**

ADEA ..........................................................................................................................................13

Rule 56 ..........................................................................................................................................4

## I.     INTRODUCTION

Plaintiff asserts claims against Defendants The Scott Fetzer Company ("Scott Fetzer") and The Kirby Company ("Kirby" or "the Company") (collectively, "Defendants") for breach of contract, unjust enrichment, national origin discrimination under Title VII, and retaliation under Title VII.  Each claim fails as a matter of law.

Plaintiff cannot establish his breach of contract claim (Count I).  The undisputed facts show Plaintiff entered into a Divisional Supervisor Agreement ("DSA" or the "Agreement") with Kirby, under which he was always an independent contractor, and not an employee of Kirby.  Because Plaintiff was always an independent contractor, Defendants did not "breach" the Agreement by "treating him as an employee."  Nor did Defendants breach any other express provision of the DSA.  Additionally, Plaintiff has no evidence he suffered any cognizable damages because of Defendants' alleged breach of the DSA, thus destroying his *prima facie* claim.  Even assuming Plaintiff has a valid claim for breach of contract (which he does not), Plaintiff waived any such claim by continuing to perform the DSA for ***over four more*** years after suddenly discovering Defendants' alleged "breach" of the contract.

Plaintiff cannot establish his unjust enrichment claim (Count II) because a party pursuing relief for breach of contract cannot simultaneously seek equitable relief for unjust enrichment.  Since Plaintiff may only have relief—if at all—through the DSA, Plaintiff's unjust enrichment claim fails as a matter of law.

Plaintiff cannot establish his Title VII national origin discrimination and retaliation claims (Counts III and IV, respectively) because, to reiterate, Plaintiff was always an independent contractor, and Title VII does not apply to independent contractors.  Yet even if Plaintiff were Defendants' employee (which he was not), Plaintiff's claims also fail because Kirby had a legitimate, non-discriminatory reason for terminating his DSA:  Plaintiff engaged in an illegal CBD distribution business, which kept him from putting his best efforts toward Kirby's business and thereby reducing sales, and he lied to the Company about his involvement with that business.

For all the foregoing reasons, and as demonstrated in greater detail, *infra*, this Court should grant summary judgment to Defendants on all counts.

## II.     FACTUAL BACKGROUND

### A.     The Parties

The Kirby Company was an unincorporated division of The Scott Fetzer Company at all times relevant to this litigation.  (Deposition of David Lamb ("Lamb Dep.") 34:7-11, attached as Exhibit A). Kirby manufactures, assembles, and sells home cleaning systems and related accessories for consumers through in-home demonstrations by Kirby's network of authorized, independent Kirby distributors.  (*Id.* at 89:13-18; 98:1-2).  Plaintiff is a Florida resident claiming Middle Eastern descent.  (Pl.'s Second. Am. Compl. ("SAC") ¶ 2).

### B.     The Parties' Relationship

On November 1, 2010, Plaintiff entered into the DSA[1] with Kirby, whereby he agreed to locate, recommend, and service authorized Distributors for the sale and distribution of Kirby products.  (Plaintiff's Deposition ("Pl.'s Dep.") 115:6-10, attached as Exhibit B; SAC ¶ 15; Agreement).  The DSA unambiguously created an independent contractor relationship.  (Lamb Dep. 14:6-12).  Indeed, in the Agreement, Plaintiff expressly agreed:

> that the parties hereto are separate entities, ***that the Company is contracting with the Divisional Supervisor as an independent contractor, and that neither is the agent nor the employee of the other for any purpose*** . . . .

(Agreement ¶ 8 (emphasis added)).

Numerous other provisions in the Agreement underscore that the parties' relationship was an independent contractor relationship. (*See id.* at Recitals, p. 1 (Plaintiff "is, and represents himself to be, skilled in the area of consumer product promotion and merchandising and adept in the locating, training, and servicing of Distributors"); ¶ 8 (Plaintiff accepted liability for any payroll, unemployment, or workers' compensation tax); ¶ 9 ("[b]y reason of [Plaintiff] being an independent contractor, [Plaintiff] agrees that under no circumstances will he represent himself as an agent of the Company, pledge or attempt to pledge

---

[1] Although it is not attached as an Exhibit to Plaintiff's Second Amended Complaint, the Divisional Supervisor Agreement is incorporated into the Second Amended Complaint by reference to Plaintiff's initial Complaint.  (*See* Complaint, Doc. No. 1-4).  That document is cited herein as the "Agreement."

the credit of the Company, or enter into any contract or agreement of any kind wherein he represents himself as an agent, solicitor, or representative of the Company."); and ¶ 9 (Plaintiff agreed to defend, indemnify, and hold harmless Kirby from all claims, actions, damages, and suits).

The parties' course of conduct was also consistent with an independent contractor relationship.  For example, Kirby paid Plaintiff based on the results of his independent efforts.  (Pl.'s Dep. 188:10-189:2; Agreement ¶ 3).  Plaintiff incorporated his own business.  (Pl.'s Dep. 94:21-95:3).  Plaintiff was responsible for maintaining his own records and his own staff, (*see* Pl.'s Dep. 33:16-34:2, 124:21), and Kirby issued Plaintiff's company an IRS Form 1099.  (Pl.'s Dep. 201:4-11).

### C.    Termination of the Divisional Supervisor Agreement

In 2018, Plaintiff's division—i.e., his assigned territory—was not performing well.  Its sales numbers were down significantly from prior years.  (Lamb Dep. 19:5-8; 31:17-20; 44:6-13; 101:21-23).  At or about the time his division's performance was declining precipitously, Kirby began to suspect he may be involved in a CBD distributorship (Cannabidiol, or "CBD," is a marijuana component), which was illegal under federal law at the time.  (Lamb Dep. 32:25-33:2)

When David Lamb, Scott Fetzer's then-Vice President and General Counsel, asked Plaintiff about his involvement with the CBD distributorship, Plaintiff lied, giving the impression he did not work there, and that the business was run by his daughter.  (Lamb Dep. 37:21-38:4; Pl.'s Dep. 207:7-14).  Concerned that he was not in compliance with the DSA and also concerned about the illegality of the CBD business at that time, the Company investigated the extent of Plaintiff's involvement with the CBD distributorship.  (Lamb Dep. 37:2-5, 103:4-12, Pl.'s Exs. 2-3).  The investigation revealed that, contrary to his representations to the Company, he was spending significant amounts of time at the CBD distributorship.  (Lamb Dep. 37:21-38:13, Pl.'s Exs. 2-3).

Kirby determined that Plaintiff had lied, and that his significant involvement with a CBD distributorship violated the Agreement, which, *inter alia*, required Plaintiff to use his best efforts towards growing Kirby's business.  (Lamb Dep. 44:6-13, 72:7-17, Pl.'s Ex. 7).  Accordingly, on October 8, 2018, the Company sent Plaintiff formal written notice of its termination of the Agreement, effective immediately,

in accordance with the termination provisions of the DSA.  (Lamb Dep. 31:17-20, 72:7-25, 102:12-17, Pl.'s Ex. 7).

>       **D.      Kirby Also Terminates the Divisional Supervisor Agreements and Factory Distributor Agreements for Several Other Non-Middle Eastern Independent Contractors Who Had Poor Sales Results and/or Who Were Involved in CBD**

Notably, Plaintiff was not the only independent contractor whose agreement was terminated for involvement with a CBD distribution business and/or for poor sales.  In fact, Kirby terminated multiple other Distributors (none of whom are Middle Eastern) who the Company learned were involved with CBD distribution businesses.  (Lamb Dep. 81:21-82:2).  Moreover, on December 11, 2018, the Company terminated the agreement of a fellow Divisional Supervisor (also not Middle Eastern) whose division had poor sales, and who was also involved in CBD.  *See Updegraph v. The Kirby Company, et al.*, Cuy. Common Pleas No. CV-19-919912.

## III.    LAW AND ANALYSIS

>    **A.    Summary Judgment Standard**

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  To avoid summary judgment, a plaintiff must come forward with admissible evidence demonstrating that specific facts exist that raise genuine issues for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  A defendant does not have the burden of proof, but is only required to show there is no evidence to support the plaintiff's claims.  *Id.* at 323.  "[T]he plain language of Rule 56 [] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id.* at 322.  Defendants are entitled to summary judgment on all of Plaintiff's claims.

B.    **Plaintiff's Breach of Contract Claim Fails as a Matter of Law**

1.    **Plaintiff's Breach of Contract Claim**

Plaintiff agreed in the DSA that he was an independent contractor.  (Agreement ¶ 8).  Yet, Plaintiff's first claim alleges Defendants breached Paragraph 8 of the Agreement by "exerting full control over Plaintiff's employment and treating him like an employee" but still requiring him to perform services and pay various costs throughout the term of the Agreement.  (SAC ¶ 41).[2]

To establish a breach of contract claim, Plaintiff has the burden of proving four elements: "(1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff."  *L.I. Development-Ohio, L.L.C. v. 6150 SOM Ctr. Rd., L.L.C.*, 2019-Ohio-3514, ¶ 12 (8th Dist. Aug. 29, 2019).

Here, there is no disputing the Company and Plaintiff were parties to a contract.[3]  Thus, as this Court has already recognized: "The key analysis with respect to [Plaintiff's] breach of contract claim is whether [he] remained an independent contractor as set forth in the DSA, or if Defendants exerted enough control over his work performance to transform him into an employee."  *Sharqawi v. Kirby Co.*, 496 F. Supp. 3d 1093, 1101 (N.D. Ohio 2020).

2.    **Plaintiff Cannot Establish He Was an "Employee"; Rather, as a Matter of Law, He Was Always an Independent Contractor**

The parties' actions, as alleged by Plaintiff, did not change Plaintiff's independent contractor relationship with the Company to that of an employee-employer.  The key question in determining whether an independent contractor is an employee is whether the company or plaintiff "had the right to control the manner and means of doing the work."  *Fox v. Nationwide Mut. Ins. Co.*, 2018-Ohio-2830, ¶29 (10th Dist.

---

[2] Plaintiff also alleges "Defendants breached the implied covenant of good faith and fair dealing by engaging in opportunistic behavior and conduct that was beyond Plaintiff's reasonable expectations."  (SAC ¶ 42).  However, as a matter of Ohio law, a breach of covenant of good faith and fair dealing "does not stand alone as a separate cause of action from a breach of contract claim."  *Ogle v. BAC Home Loans Servicing LP*, 924 F. Supp. 2d 902, 914–15 (S.D. Ohio 2013).

[3] In Ohio, "contract formation requires an offer, acceptance, consideration, and mutual assent between two or more parties with the legal capacity to act." *Firefighters Cmty. Credit Union v. Woodside Mortg. Servs.*, 2019-Ohio-3363, ¶18 (8th Dist. Aug. 22, 2019).

July 17, 2018) (*quoting Barcus v. Buehrer*, 2015-Ohio-3122, ¶7 (10th Dist. Aug. 4, 2015) (*citing Bostic v. Connor*, 37 Ohio St.3d 144 (1988)).  An employee-employer relationship is created only if the Company retains the right to control the manner and means of completing the work and the result of the work.  *Id.* (citations omitted); *see also Haynes v. Kirby Co.*, 1996 U.S. App. LEXIS 5709, at *9 (6th Cir. 1996).  On the other hand, when, like here, the company simply reserves the right to control the result of the work, only an independent contractor relationship is created.  *Fox*, 2018-Ohio-2830 at ¶ 29 (citations omitted).

Ohio courts consider the following factors in determining the type of relationship created: "'who controls the details and quality of the work; who controls the hours worked; who selects the materials, tools, and personnel used; who selects the routes traveled; the length of employment; the type of business; the method of payment; and any pertinent agreements or contracts.'" *Id.* (citations omitted); *see also Wellman v. Montes*, 288 F. Supp. 2d 860, 866 (6th Cir. 2003).  "If there is no dispute about the work performed, whether the work creates an independent contractor relationship is a question of law.  *Fox*, 2018-Ohio-2830 at ¶44 (*citing Bostic v. Connor*, 37 Ohio St. 3d 144, 146 (1988)); *Wellman*, 288 F. Supp. 2d at 867.

Notably, in 2016—during his Chapter 7 Bankruptcy proceeding—Plaintiff admitted that he was an independent contractor of Kirby, and not an employee.  Specifically, in his January 15, 2016 Voluntary Petition for Individuals Filing for Bankruptcy, Plaintiff did not disclose Kirby as his "employer"; rather, he only disclosed "NLN Division, Inc." as his employer, which were characterized in filings as "merely a conduit for income tax purposes."  (*See* Voluntary Petition for Individuals Filing for Bankruptcy, attached as Exhibit C; Trustee's Motion for Order Approving Compromise of Claims, attached as Exhibit D).  Plaintiff himself conceded in a separate legal proceeding that he was an independent contractor.[4]

In an analogous case, *Fox v. Nationwide Mutual Insurance Company*, the Court determined that the individual plaintiff who alleged she was an employee of Nationwide was, in fact, an independent contractor. The Court determined Fox was an independent contractor for the following reasons: (1) the

---

[4] Incidentally, despite being aware of his alleged "misclassification" as early as 2014, Plaintiff did not bother to disclose his current claims in his 2016 bankruptcy proceedings.  (*See generally* Voluntary Petition for Individuals Filing for Bankruptcy).

contract governing Fox's relationship with Nationwide specifically stated that Fox was an independent contractor; (2) the contract explicitly stated that Fox was responsible for paying all federal, state, and local employment taxes; (3) the contract explicitly required Fox to pay all expenses related to her insurance agency, including expenses for her staff and compliance with the contract; (4) Fox maintained the office where her business was located; and (5) Fox's agency was paid on a commission basis. *Fox*, 2018-Ohio-2830 at ¶¶31-33, 35-37, 40-41. The *Fox* Court found that the duration of the contract had "little impact on defining the parties' relationship" and that Nationwide's requirement that Fox remain open to the public at specific times did not permit "the inference of control." *Id.* at ¶42. Further, the *Fox* Court found the weekly reports that Nationwide required Fox to submit related to the sale of Nationwide's products and services and the activities of her employees entirely regarded tracking Fox's results and "had little to do with the means and methods employed by Fox or her employees in order to achieve those results." *Id.* at ¶38.

Here, the independent contractor relationship between the Company and Plaintiff ***is even stronger than that outlined in Fox***.  Specifically, there is no factual dispute that: (1) the Agreement specifically characterized Plaintiff as an independent contractor; (2) Plaintiff agreed to accept "exclusive liability as an independent contractor for all payroll, Social Security, unemployment, or worker's compensation tax, and for any tax imposed by any corresponding State or Federal law, with respect to ***his operations*** under the Agreement[]"; (3) Plaintiff agreed to perform his obligations under the Agreement at his own expense; (4) Plaintiff maintained the office in which his business was located; and (5) Plaintiff's compensation was determined in part based upon the amount of products actually shipped to Distributors in his Territory.  (*See* Agreement ¶¶ 5-6, 8 (emphasis added); Pl.'s Dep. 27:3-29:10).

Moreover, unlike in *Fox*, there is no dispute Plaintiff managed and controlled his own travel (*see* Pl.'s Dep'n 196:19-197:11) and selected and hired his own personnel (*see id.* at 33:22-34).  *Compare with Fox*, ¶ 29.  And, Plaintiff's main alleged indicator of "control"—i.e., his contention that Kirby required him to maintain an office—actually further demonstrates his independent-contractor status.  *See, e.g., Fesler v. Whelen Eng'g Co.*, 794 F. Supp. 2d 994, 1010 (S.D. Iowa 2011), *aff'd*, 688 F.3d 439 (8th Cir. 2012)

(plaintiff's setting up of his office—even when such office could not be in certain locations—was an indicator of his independence, not control).

Thus, as a matter of law, what applied to Fox also applied to Plaintiff, and he should also be deemed an independent contractor.  *See also Kuhn v. Youlten*, 118 Ohio App.3d 168, 179, 692 N.E.2d 226 (8th Dist.1997) (that a contract specifies independent contractor status, when taken together with other indicia of independent control by the contract, will establish the relationship as one of independent contractor).

In another case—*Haynes v. Kirby Company*[5]—where the plaintiff alleged she was an employee rather than an independent contractor, the Court held that plaintiff *as a matter of law* was an independent contractor for the following reasons: (1) Haynes's contract with Kirby described Hayes as an independent contractor; (2) Kirby did not pay Haynes a salary or benefits; and (3) Kirby did not "withhold or pay taxes on behalf of Haynes." *Haynes*, 1996 U.S. App. LEXIS at *9.  The *Haynes* Court did not find that Kirby's "rigorously demanded compliance with an extensive Kirby policy framework" on its own "raised a genuine issue of fact as to whether Haynes enjoyed an employer/employee relationship with Kirby instead of the independent contractor status expressly mentioned in the parties' agreement." *Id*. at *10.  In fact, courts have held that "'the extent of control the hiring party exercises over the details of the product is not dispositive'" of determining whether an individual is an employee or an independent contractor. *Id.* (*citing Ware v. United States*, 67 F.3d 574, 577 (6th Cir. 1995) (*quoting Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 752 (1989)).

Here, there are simply no facts suggesting—let alone establishing—the Company breached the Agreement by either exerting so much control over "Plaintiff's employment and treating him like an employee" or so destroying the Plaintiff and Company's intent to be bound in an independent contractor relationship.  Accordingly, for this reason alone, Plaintiff's breach of contract claim fails as a matter of law.

---

[5] The Company is the same defendant in *Haynes v. Kirby Company*. The Company's business model maintaining lawful independent contractor relationships with its Divisional Supervisors and Distributors has not changed between 1996 (the year in which *Haynes* was decided) and today. In fact, the Sixth Circuit described the Distributor in *Haynes* as an independent contractor.  1996 U.S. App. LEXIS at *5.

### 3. Plaintiff's Other Alleged Indicia of "Breach" Were Expressly Contemplated by the Agreement

Plaintiff's other alleged indicia of breach—i.e., the alleged "requirements" in the Agreement that transformed him into an employee—do not create an employee-employer relationship because the Agreement ***specifically contemplates*** such behavior as that of an independent contractor.

Plaintiff first alleges that Defendants breached the Agreement because he was paid a "fixed salary, which was paid on a set monthly basis." (SAC ¶ 41). Yet, the Agreement specifically provided that Plaintiff would be paid "each month a sum equal to the sums of the amounts shown on Exhibit B" of the Agreement. (Agreement ¶ 3). Thus, paying Plaintiff monthly in accordance with the contract is not a breach of contract—it was required by the explicit terms of the Agreement.

Plaintiff then alleges that Defendants breached the Agreement by "requiring him to rent and maintain an out-of-the-home office," "spend specific hours working in his non-home office each day he was not traveling," and "employ an administrative assistant." (SAC ¶ 41). Plaintiff, however, cannot show how these purported requirements violated any terms of the Agreement. If anything, Plaintiff's maintenance of an out-of-home-office and his employment of an administrative assistant constitute expenses to be paid out of the fee paid to Plaintiff or paid by Plaintiff under Paragraph 8 of the Agreement, and are indicative of him operating his own business (i.e., being an independent contractor). In addition, Plaintiff agreed to spend time performing the activities specified in the Agreement. (Agreement ¶ 6).

Next, Plaintiff alleges that Defendants breached the Agreement because Plaintiff was required to "organize and lead rallies, meetings, and training seminars." (SAC ¶ 41). Again, Plaintiff's performance of these services was contemplated by the Agreement. (Agreement ¶ 6, "Whereas" statement). Therefore, even if Plaintiff was required to organize and lead rallies, meetings, and training seminars, he was required to do so per the clear terms of the Agreement.

Plaintiff also alleges that Defendants breached the Agreement by requiring him to "pay all costs associated with his training of Sales Representatives, including training materials and conference room rentals," and "pay thousands of dollars per month on travel and lodging expenses for the travel Defendants

9

required of him." (SAC ¶ 41).  Nonetheless, the Agreement explicitly states that the money paid to Plaintiff by the Company under the Agreement was meant to cover those types of expenses. (Agreement ¶ 6 (emphasis added)).  Plaintiff fails to allege any breach of contract because Plaintiff cannot show he did not receive the $250,000 due to him annually under the Agreement.

In addition, Plaintiff alleges that Defendants breached the Agreement by requiring him to "travel from Florida to Cleveland four times per year" and "visit each store he supervised at least once every three months."  (SAC ¶ 41).  Yet Plaintiff contractually agreed to service Distributors outside of Florida. (Agreement ¶ 1).  Further, because Kirby is in Cleveland, Ohio, Plaintiff understood he had to travel to Ohio to attend meetings.  (Pl.'s Dep. 66:11-14; 126:5-19; 188:21-189:3).  Moreover, Plaintiff knew from the plain language in Paragraph 6 of the Agreement that these travel expenses were covered by the amounts paid to him under Paragraph 3 of the Agreement—all of which he received.  (*Id.* at 188:10-189:3).

What's more, Plaintiff alleges Defendants breached the Agreement because it required him to "document his travel time" and "submit his calendar and travel reports [] each month."  (SAC ¶ 41). However, the Agreement contemplated that Plaintiff would maintain business records and "furnish to the Company all information, including reports, answers to questionnaires, and other data" to "assist the Company in the computation of [Plaintiff's] fees . . . and in the proper conduct of his business." (Agreement ¶ 7).  Thus, Plaintiff contractually agreed to perform these very tasks under the terms of the Agreement, and these purposed requirements cannot constitute a breach of contract.

Finally, Plaintiff alleges that Defendants breached the Agreement because he was improperly required to "pay all payroll taxes for himself and his administrative assistant [and] pay into the Florida unemployment and worker's compensation systems."  (SAC ¶ 41).  Yet Paragraph 8 of the Agreement covers this as well. (Agreement ¶ 8).  Plaintiff cannot claim breach when he received money to cover these costs and agreed to pay these costs himself—which, in any event, is indicative of an independent-contractor relationship.

Because there is simply no evidence the Company ever breached the Agreement, Plaintiff's claim for breach of contract should be dismissed.

### 4.      Regardless of His Status, Plaintiff Has No Contractual Damages

Even assuming, solely for the sake of argument, that Plaintiff was an "employee"—and he was not—Plaintiff still cannot maintain a claim for breach of contract because he has no cognizable contractual damages.  Pursuant to the Agreement, Plaintiff was guranteed $250,000 annually, to cover all of his necessary expenses.  Plaintiff does not claim—and cannot claim—that he was never paid this amount.  (Pl.'s Dep. 66:11-14; 126:5-19; 188:21-189:3).  And even assuming the Agreement was a conventional employment contract, Plaintiff has not shown how any breach of its provisions caused him any particularized damages flowing from its breach.  Indeed, at his deposition, Plaintiff merely characterized his damages as being "very emotional."  (Pl.'s Dep. 215:10-12).  But "[u]nder Ohio law, emotional distress damages are not generally allowed for a breach of contract."  *Taylor v. Honda Motorcars, Inc.*, 8th Dist. No. 107840, 2019-Ohio-1891, 135 N.E.3d 1284, ¶ 28.  Because Plaintiff has no cognizable damages, Plaintiff's breach of contract claim should be dismissed.  *See, e.g., Moholt v. Dooney & Bourke, Inc.*, 63 F. Supp. 3d 1289, 1311 (D. Or. 2014) (as to plaintiff's breach of contract claim, issue of "employee" versus "independent contractor" was a distinction without a difference; in either event, the parties' contract governed their rights and duties, and plaintiff failed to show how he was harmed under that contract).

### 5.      Regardless of His Status, Plaintiff Waived His Breach of Contract Claim by Performing His Contract for Four Years After He Decided His Contract Was Being Breached

Plaintiff's breach of contract claim fails for yet another reason:  waiver.  "An established principle of law is that where a party to a contract has defaulted and is in breach, and the nondefaulting party, with knowledge of the breach, accepts payments in the performance of the contract, his acceptance of those payments will constitute a waiver of that breach."  *In re Tetirick*, 84 B.R. 505, 507 (Bankr. S.D. Ohio 1988). Here, Plaintiff alleges he learned of his "misclassification" no later than 2014 and immediately inquired about it to Kirby's then-head of field sales, Bud Miley.  (Pl.'s Dep. 190:12-192:17).  But thereafter— ***throughout the next four years***—Plaintiff was happy to accept the accept the fruits of the Agreement in its entirety—including the $250,000 annual payment to him.  (*Id.* 188:10-16; 192:21-23).  Because Plaintiff

11

clearly waived any right to assert his alleged misclassification-based breach, Plaintiff's breach of contract claim also should be dismissed.  *See, e.g., Kirvard E. Div. Inc. v. Antero Res. Corp.*, No. 2:15-CV-633, 2016 WL 7868902, at *8–9 (S.D. Ohio Aug. 9, 2016) (where one party submits invoices for payment under a contract, and the other party receives, approves, and pays the invoices, even if the invoicing party was in breach (and not entitled to payment), the party that knowingly approved and paid the invoices 'waived its ability to later claim that [the invoicing party] breached the agreement'").

## C. Plaintiff's Unjust Enrichment Claim Fails as a Matter of Law

Plaintiff also alleges a claim for "unjust enrichment" arising out of the Company's alleged "misclassifying [of] Plaintiff as an independent contractor. . . . ."  (SAC ¶ 46).

Unjust enrichment "is an alternative theory of recovery, which **operates in the absence of an express contract** or a contract implied in fact to prevent a party from retaining money or benefits that in justice and equity belong to another." *Yousef v. Yousef*, 8th Dist. No. 107453, 2019-Ohio-3656, ¶17 (internal quotations omitted) (emphasis added).  Under Ohio law, "[u]njust enrichment and breach of contract are mutually exclusive theories of recovery."  *Simplifi Health Ben. Mgmt., LLC v. Cayman Islands Nat'l Ins. Co.*, 2016 U.S. Dist. LEXIS 101386, *19 (S.D. Ohio Aug. 2, 2016) (*quoting Booher Carpet Sales v. Erickson,* 1998 Ohio App. LEXIS 4643, *14 (2d Dist. Oct. 2, 1998)).  "[A] party pursuing relief for breach of contract cannot at the same time seek equitable relief for unjust enrichment." *Sterling Constr., Inc. v. Alkire*, 12th Dist. Nos. CA2013-08-028 and CA2013-08-030, 2014-Ohio-2897, ¶29; *see also Teknol, Inc. v. Buechel,* 1999 U.S. Dist. LEXIS 22017, *5-6 (S.D. Ohio Aug. 9, 1999).  Thus, "where damages are available for breach of contract or in tort, the party cannot also invoke the equitable remedy for unjust enrichment."  *Saraf v. Maronda Homes, Inc. of Ohio*, 10th Dist. Franklin No. 02AP-461, 2002-Ohio-6741, ¶ 12.

Here, Plaintiff admits he had a contract with the Company—the Agreement—which specifically states: "the Company is contracting with the Divisional Supervisor as an independent contractor, and that neither is the agent nor the employee of the other for any purpose…." (Agreement ¶ 8).  Because Plaintiff only could have compensation—if at all—through the parties' DSA, Plaintiff's unjust enrichment claim

fails as a matter of law.  *See also Smith Clinic v. Savage*, 3rd Dist. Marion No. 9-12-40, 2013-Ohio-748, ¶ 30 ("[T]he doctrine of unjust enrichment cannot apply when an express contract exists.").

### D.   Because Plaintiff Was Always an Independent Contractor, His Title VII Discrimination and Retaliation Claims Fail as a Matter of Law

Because Plaintiff was always an independent contractor, and never an employee, Plaintiff's Title VII discrimination and retaliation claims against Defendants necessarily fail as a matter of law.  *See Falls v. Sporting News Pub. Co.*, 834 F.2d 611, 613 (6th Cir. 1987) ("Although this court has rejected a narrow construction of the term "employee" under both Title VII and the ADEA, it has nevertheless adhered to a standard that would exclude from the protection of either act a person who cannot be considered an employee, but is instead clearly an independent contractor.").  Accordingly, for this reason alone, Plaintiff's Title VII discrimination and retaliation claims should be dismissed with prejudice.  *See, e.g., Ayad v. Radio One, Inc.*, 412 F. Supp. 2d 716, 719 (N.D. Ohio 2005) ("To the extent that the Plaintiffs are alleging an employment discrimination claim, the Court has already held that such a claim lacks merit because they admit that they were never employees . . . and Title VII does not protect independent contractors.").

### E.   Plaintiff Cannot Establish a *Prima Facie* National Origin Discrimination Claim

#### 1.   Plaintiff Cannot Establish a *Prima Facie* Disparate-Treatment Claim Based on National Origin

Even assuming Plaintiff was an employee of Defendants (and he was not), Plaintiff's Title VII claims still fail as a matter of law.

Plaintiff asserts that Defendants discriminated against him because of his Middle Eastern national origin by "subjecting him to incessant calls and text messages; interrogating him regarding other employees' CBD industry involvement; requiring him to report on other employees' CBD industry involvement; requesting he resign; and terminating his employment" with Defendants.  (SAC ¶ 59).

A plaintiff must prove a disparate-treatment claim with direct or indirect evidence of discrimination. *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606 (6th Cir. 2019) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973)).  Here, Plaintiff has no direct evidence to support

13

his national origin discrimination claim. Thus, to establish a *prima facie* case of national origin discrimination based on disparate treatment, Plaintiff must show he: (1) belongs to a protected class; (2) was subjected to an adverse employment action; (3) was qualified to do the job; and (4) was replaced by a person outside his protected class or was treated less favorably than a similarly situated individual outside his protected class. *Adebisi v. Univ. of Tennessee*, 341 F. App'x 111, 112 (6th Cir. 2009).

### a.     "Calls and Text Messages," "Interrogation," and Requiring "Reporting" Are Not Adverse Employment Actions

Plaintiff cannot even state a *prima facie* claim based on the alleged "calls and text messages," "interrogation," or required "reporting" because such conduct does not rise to the level of adverse employment actions. "To constitute an adverse employment action, such action must result in a materially adverse change in the terms and conditions of the plaintiff's employment, such as a decrease in wage or salary." *Jones v. St. Jude Med. S.C., Inc.*, 823 F. Supp. 2d 699, 727 (S.D. Ohio 2011), *aff'd*, 504 F. App'x 473 (6th Cir. 2012). "A 'bruised ego' or a 'mere inconvenience or an alteration of job responsibilities' is not sufficient to constitute an adverse employment action." *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010). "Adverse employment actions are typically marked by a "significant change in employment status," including "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.*

Here, even assuming the alleged conduct above occurred, such actions would not constitute adverse employment actions under Title VII. Because each alleged act did not affect Plaintiff's alleged employment status, Plaintiff cannot establish this first *prima facie* element of his discrimination claim. *See Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 625–26 (affirming summary judgment) (6th Cir. 2013) (employer's internal investigation of rape allegedly committed by employee did not constitute adverse employment action, despite claim that investigation was conducted in bad faith; "an inquiry into the employer's subjective motive [in conducting an investigation] would be contrary to the objective analysis of whether an employment action is adverse").

**b.**   **Plaintiff Cannot Establish That Any Similarly Situated Non-Middle Eastern Divisional Supervisors Were Treated More Favorably**

Second, even assuming—solely for the sake of argument—that Plaintiff was an "employee" (which he was not), Plaintiff cannot show he was treated less favorably than any similarly situated individual outside his protected class.  "It is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the 'comparables' are similarly-situated *in all respects*.  *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (emphasis original). Thus, to be deemed "similarly-situated," the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."  *Id.*

Here, Plaintiff has no evidence that he was "replaced" by anyone.[6]  Plaintiff cannot point to a single similarly situated non-Middle Eastern Divisional Supervisor whose division's performance was declining, who was involved with a CBD distributorship, and who lied to the Company when questioned about the extent of his involvement with it, yet was treated more favorably than he.  And, Plaintiff was not the only independent contractor whose agreement was terminated for involvement with CBD distribution businesses (which were illegal)—Kirby terminated the agreements of other Factory Distributors, all of whom are not of Middle Eastern descent, for their involvement with CBD distributorships.  Additionally, the Company terminated the agreement of another Divisional Supervisor (who is also not Middle Eastern) for poor performance and involvement in the CBD industry.  In fact, Plaintiff's counsel is presently representing the aforementioned Divisional Supervisor and two other non-Middle Eastern Divisional Supervisors who have

---

[6] A "person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work.  A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties."  *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003).

filed identical breach of contract claims against Defendants.[7]  Because Plaintiff was treated no differently than any other non-Middle Eastern Divisional Supervisor, Plaintiff likewise cannot establish the fourth *prima facie* element of his discrimination claim.  *See Mitchell*, 964 F.2d at 584 (affirming summary judgment) ("Because Plaintiff failed to produce sufficient affirmative evidence to establish that the non-minority employees with whom she compares her treatment were 'similarly situated in all respects,' or that their conduct was of 'comparable seriousness' to the conduct for which she was discharged, no claim for discrimination can be based upon a comparison of Plaintiff's and their treatment.").

### 2. Plaintiff Cannot Establish a *Prima Facie* Hostile Work Environment Claim Based on National Origin

Plaintiff also asserts that Kevin Reitmeier, Bud Miley's successor as Kirby's head of sales, "harassed" Plaintiff because of his Middle-Eastern national origin by "calling [and texting] him between 6:00 AM and 7:00 AM nearly every morning; . . . demanding to know his whereabout and activities at all times"; and "requiring Plaintiff to re-compile and re-submit numerous extensive reports that Plaintiff had already completed and submitted."  (SAC ¶¶ 20, 26).  And although he could not recall the specific year, Plaintiff gratuitously alleges that, once, Bud Miley referred to him as a "Paki" in a joking but inappropriate manner.  (Pl.'s Dep. 70:17-23).

To establish a hostile environment claim based on national origin, Plaintiff must show that (1) he belonged to a protected group; (2) he was subject to unwelcome harassment; (3) the harassment was based on him being in a protected group; (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment; and, (5) the defendant knew or should have known about the harassment and failed to act.  *May v. GMC Mansfield Metal Fabricating*, 61 F. App'x 171, 173 (6th Cir. 2003).  The conduct must be severe enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively view the environment in that manner.  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993).

---

[7] *See, e.g., Licata v. The Kirby Company, et al.*, Cuy. Common Pleas No. CV-21-946124, *Updegraph v. The Kirby Company, et al.*, Cuy. Common Pleas No. CV-19-919912, and *Emmert v. The Kirby Company, et al.*, Cuy. Common Pleas No. CV-20-940157.

### a. Plaintiff Cannot Establish That the Alleged Harassment Was Based on His Middle Eastern National Origin

Here, to the extent Plaintiff is alleging a hostile work environment based on his national origin, his claim rests solely on a stray remark by Bud Miley, and his assertion that Kevin Reitmeier, Kirby's then head of sales, harassed him by "calling him between 6:00 AM and 7:00 AM nearly every morning; sending him rude, demanding, and bullying text messages between 6:00 AM and 7:00 AM nearly every morning; . . . demanding to know his whereabout and activities at all times"; and "requiring Plaintiff to re-compile and re-submit numerous extensive reports that Plaintiff had already completed and submitted." But "[s]tray remarks not related to the decision-making process are not evidence of unlawful discrimination." *Iyengar v. Mercy Mem'l Hosp. Corp.*, No. 08-10778, 2009 WL 2840509, at *6 (E.D. Mich. Aug. 31, 2009). And, even assuming the alleged acts by Mr. Reitmeier occurred, Plaintiff has no evidence showing that they ***were linked to or because of Plaintiff's national origin***. For this reason alone, Plaintiff's hostile work environment claim fails as a matter of law. *See Singleton v. PSA Airlines, Inc.*, No. 21-3423, 2022 WL 875869, at *2 (6th Cir. Mar. 24, 2022) (affirming summary judgment) (in analyzing the alleged severe and pervasive conduct, "we only consider harassment directed at African Americans [i.e., based on the protected class category].").

### b. Plaintiff Cannot Establish That Any of the Alleged Harassment Was "Severe or Pervasive"

In addition, there is simply no evidence that Plaintiff's alleged national origin-based "harassment" was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. Indeed, none of these acts, "individually or collectively, amounts to severe [national-origin based] harassment. [The Sixth Circuit] regularly reject hostile-work-environment claims involving conduct considerably more egregious." *See Singleton v. PSA Airlines, Inc.*, No. 21-3423, 2022 WL 875869, at *3. *See also Williams v. CSX Transp. Co., Inc.*, 643 F.3d 502, 513 (6th Cir. 2011) (no hostile work environment where conduct alleged was substantially more severe than that alleged by Plaintiff). Because Plaintiff's

alleged "harassment" was neither "severe" nor "pervasive," Plaintiff's hostile work environment claim also fails as a matter of law.

### F. Plaintiff Cannot Establish a *Prima Facie* Claim for Retaliation

Plaintiff also alleges that Defendants unlawfully retaliated against him for "reporting and opposing Reitmeier's discrimination and harassment to David Lamb" by calling and texting him more frequently outside regular business hours; increasing the frequency of his interrogations; requesting he resign; and terminating his employment." (SAC ¶ 65).

"To establish a *prima facie* case of retaliation under Title VII, Plaintiff must demonstrate that: "(1) he engaged in activity protected by Title VII; (2) his exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was "materially adverse" to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action." *Jones v. Johanns*, 264 Fed.Appx. 463, 466 (6th Cir.2007). Title VII retaliation claims "must be proved according to traditional principles of but-for causation," which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

### a. Plaintiff Cannot Establish "But-For" Causation

In addition, Plaintiff cannot meet his difficult burden to show that his alleged complaints or retention of counsel were the "but-for" cause of, or even a factor in, the Company's decision to terminate the Agreement. As noted above, the Company terminated Plaintiff's Agreement for failing to provide his best efforts to the Company, given his involvement with a CBD distributorship. He can point to no evidence that Kirby acted with any retaliatory motive or intent. Therefore, for this reason, too, Plaintiff cannot establish a prima facie case of retaliation, and that claim should be dismissed.

### G. Plaintiff Cannot Establish the Termination of His Divisional Supervisor Agreement Was Pretext for Unlawful Discrimination

Even if Plaintiff could establish that he was an employee (which he cannot do) and establish a *prima facie* case of discrimination or retaliation (which he likewise cannot do), the Company proffered a

legitimate, non-discriminatory, and non-retaliatory reason for terminating Plaintiff's Agreement.  Because Plaintiff has no direct evidence of discrimination or retaliation, the burden thus shifts back to Plaintiff to demonstrate that Defendants' proffered reason is merely pretext—i.e., a sham—to cover up unlawful discrimination or retaliation.

To prove pretext, Plaintiff must demonstrate that Defendants' proffered reason for the adverse action: "(1) has no basis in fact; (2) did not actually motivate the adverse employment action; or (3) was insufficient to warrant the adverse action." *Ladd v. Grand Trunk W. R.R., Inc.*, 552 F.3d 495, 502 (6th Cir.2009).  "[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *Kaminsky v. Wilkie*, No. 5:19-CV-20, 2020 WL 3893521, at *7 (N.D. Ohio July 10, 2020) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)).

Here, Plaintiff cannot establish pretext.  As discussed, there is no dispute Plaintiff engaged in a CBD distribution business, which kept him from putting his best efforts toward Kirby's business, and he lied to the Company about his involvement with the then-illegal CBD distributorship.  There is simply no credible evidence that Plaintiff's national origin played any role, let alone a determinative one, in the decision to terminate the Divisional Supervisor Agreement—including no evidence of similarly situated non-Middle Eastern Divisional Supervisors treated more favorably despite engaging in the same conduct. Because Plaintiff has no evidence Kirby terminated the Divisional Supervisor Agreement because of his national origin, his Title VII claim fails as a matter of law.

## IV.    CONCLUSION

No issues of fact require a jury trial—each of Plaintiff's claims are legally and factual deficient and ripe for summary dismissal.  Accordingly, this Court should grant summary judgment in favor of Defendants on all counts.

Dated:  June 17, 2022

Respectfully submitted,

/s/ Ryan J. Morley

Ryan J. Morley (0077452)
John W. Hofstetter (0087731)
LITTLER MENDELSON, P.C.
Key Tower
127 Public Square, Suite 1600
Cleveland, OH 44114-9612
Telephone: 216.696.7600
Facsimile:  216.696.2038
rmorley@littler.com
jhofstetter@littler.com

Attorneys for Defendants,
The Kirby Company and The Scott Fetzer
Company

## **CERTIFICATION AS TO ADHERENCE TO LOCAL RULE 7.1(f)**

Pursuant to Local Rule 7.1(f), the undersigned certifies the foregoing adheres to the page limitations set forth in Local Rule 7.1(f) for standard track cases.

*/s/ Ryan J. Morley*
One of the Attorneys for Defendants
The Kirby Company and The Scott Fetzer Company

21

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 17th day of June 2022, true and accurate copies of the foregoing *Memorandum in Support of Defendants' Motion for Summary Judgment* was electronically filed.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this document through the Court's electronic filing system.

*/s/ Ryan J. Morley*
Ryan J. Morley